IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW
JERROD HART,

Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation,

Defendant.

Case No.
Hon.

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiffs, Kevin Swope, Paul Vanderplow, and Jerrod Hart, by and through their attorneys, Fausone & Grysko, PLC, and for their Complaint against the City of Dearborn Heights ("City" or "Defendant"), states the following:

### JURISDICTION AND PARTIES

1. This is an action for deprivation of Plaintiffs' rights under the United States Constitution, the Fair Labor Standards Act ("FLSA"), 29 USC § 201 *et seq.*, the Michigan Whistleblower Protection Act ("WPA"), MCL § 15.361 *et seq.*, and other laws arising from Plaintiffs' employment with the Dearborn Heights Police Department ("DHPD").

2. This action is brought pursuant to 29 USC §§ 216 and 217; 42 USC §§ 1983 and 1988, and the First Amendment and Fourteenth Amendment to the United

1

States Constitution. Jurisdiction is conferred by 28 USC §§ 1331, 1343(a)(3), and (4).

3. This Court also has supplemental jurisdiction under 28 USC § 1367(a) to hear and decide the state-law claims because they arise out of the same set of facts as the federal claims and are so related to the federal claims that they form part of the same case or controversy.

4. The events giving rise to this cause of action arose within the Eastern District of Michigan, and this matter is otherwise within the jurisdiction of this Court.

5. Venue is proper under 28 USC §1391(b) and (c) because the Defendant is a Michigan municipal corporation that resides in the Eastern District of Michigan, and the events giving rise to this cause of action occurred within the boundaries of the Eastern District of Michigan.

6. This Court has personal jurisdiction over the Defendant because Defendant resides in and conducts substantial business in the Eastern District of Michigan.

7. Defendant, City of Dearborn Heights, is a Michigan municipal corporation residing in Wayne County, Michigan.

8. Plaintiff, Jerrod Hart ("Hart"), is an individual residing in Washtenaw County, Michigan, and at all material times was employed by the City of Dearborn

Heights as the Police Chief of the DHPD.

9. Plaintiff, Paul Vanderplow ("Vanderplow"), is an individual residing in Wayne County, Michigan, and at all material times was employed by the City of Dearborn Heights as the Director of Support Services for the DHPD.

10. Plaintiff, Kevin Swope ("Swope"), is an individual residing in Livingston County, Michigan, and at all material times was employed by the City of Dearborn Heights as the Director of Police Operations for the DHPD.

11. Defendant, the City of Dearborn Heights (the "City"), is a municipal corporation with a principal place of business located at 6045 Fenton, Dearborn Heights, MI 48127 within the Eastern District Court of Michigan.

## GENERAL ALLEGATIONS

12. Plaintiffs reallege and incorporate allegations 1 through 11

13. Hart, Vanderplow, and Swope each has over 25 years of experience in federal or state law enforcement.

14. The City hired Hart as its Chief of Police on February 28, 2022.

15. On January 9, 2023, the City hired Vanderplow and Swope as Directors in the DHPD working immediately under Chief Hart.

16. The City hired Vanderplow as the Director of Support Services.

17. The City hired Swope as the Director of Police Operations.

18. The Dearborn Heights City Council (the "City Council") approved

3

Swope and Vanderplow's employment on February 28, 2023 through Resolution 23-099, approving the Collective Bargaining Agreement ("CBA") between the City and the Dearborn Heights Police Supervisor's Association (the "Police Supervisor's Union"). City Council Resolution 23-099 approving the Union CBA and the Directors positions is attached as Exhibit 1.

    19.    In relevant part, the CBA approved by the City Council states:

> The parties recognize that under this Agreement reached under PERA [Michigan Public Employment Relations Act, MCL §423.201 *et seq.*], the following individuals will retain their positions:
> *     Jerrod S. Hart, Chief of Police
> *     Paul D. Vanderplow, Director of Support Services
> *     Kevin M. Swope, Director of Police Operations.

(Exhibit 1, p. 5).

    20.    Beginning in January 2023, Plaintiffs collectively reported violations and suspected violations of law concerning corruption in the City government, corruption in the DHPD, and civil rights violations to the City of Dearborn Heights through its Mayor and City Council, to the Michigan State Police, the United States Department of Justice, and the Federal Bureau of Investigations.

    21.    At all relevant times, Plaintiffs were engaged in the exercise of protected free speech on matters of significant public concern.

    22.    In or around January 2023, Plaintiffs reported that the chain of custody for evidence and the evidence management system within the DHPD were so deficient as to jeopardize the right to a fair trial for every criminal defendant whose

case relied on evidence retained by the DHPD.

23. In or around January and February of 2023, Plaintiffs reported that nearly 900 pistol sales records had not been processed by the DHPD in violation of MCL §28.422a(3), which requires the police department to process pistol sales records within 10 days of receipt.

24. In March 2023, Plaintiffs reported that police overtime work was subject to an illegal ticket quota system, which is prohibited under MCL §257.750(1).

25. Plaintiffs also reported widespread corruption involving mismanagement of federal and state forfeiture funds, a "ticket fixing" scheme for friends of law enforcement officers and elected officials, and other civil rights violations to various public bodies and/or law enforcement agencies.

26. After reporting the violations to the proper authorities, members of the City Council publicly and privately threatened and retaliated against the Plaintiffs.

27. Moreover, private citizens acting in concert with the City Council also threatened and took adverse action against the Plaintiffs.

28. The threats, retaliation, and other adverse action were, in part, attempts to force Plaintiffs to provide illegal preferential treatment for a Police Supervisor who was under investigation.

29. On January 26, 2023, Council Member Mo Baydoun asked on three

(3) separate occasions that DHPD Sergeant Mohamad Bazzy ("Sgt. Bazzy") be promoted outside of the established promotional system and CBA requirements.

30. Providing Sgt. Bazzy preferential treatment would violate the Firemen and Policemen Civil Service System Act, MCL §38.501 *et seq.*, the CBA, and it would constitute misconduct in office and a breach of the public trust.

31. Hart reported this to members of the City Council and the Mayor, via email dated June 15, 2023, wherein Hart also described that Plaintiffs were being publicly and privately defamed and accused of being derelict in their duties. See Email from Hart dated 12/14/2023 attached as Exhibit 2 and an Email from Hart dated 06/15/2023 is attached as Exhibit 3.

32. On or around June 16, 2023, an excessive force incident/civil rights violation occurred during the arrest of a criminal subject.

33. On or around July 21, 2023, Plaintiffs identified that Sgt. Bazzy and other officers and supervisors committed policy violations and suspected legal violations in their handling of the incident.

34. Plaintiffs reported the excessive force incident to the City and referred the matter to the Michigan State Police for a criminal investigation.

35. Plaintiffs also conducted an internal disciplinary investigation.

36. On or around September 27, 2023, Council Member Hassan Saab told Swope and Vanderplow directly that he wanted internal disciplinary charges against

6

Sgt. Bazzy to be dropped, or else Council Member Saab would "release skeletons" from Swope's and Vanderplow's closets.

37. On September 28, 2023, Swope filed a police report due to threats of defamation and other adverse employment action from Council Member Saab. This criminal complaint was forwarded to another law enforcement agency for review.

38. On October 26, 2023, Hart, Swope, and Mayor Bazzi met with a prominent member of the community, Khalil Rahal ("Rahal"), Director of Economic Development for an international corporation.

39. Rahal threatened Plaintiffs with adverse employment consequences due to their reporting and investigation of Sgt. Bazzy.

40. Rahal was acting in concert with the City Council.

41. During the meeting Rahal commented the City Council wanted the U.S. Department of Justice ("DOJ") operational assessment and other reports of wrongdoing and corruption with the City to fail to secure the City Council members' political futures. A memorandum from Chief Hart detailing the Rahal meeting is attached as Exhibit 4.

42. On December 12, 2023, a City Council member submitted a motion to "de-fund" Vanderplow and Swope's positions. The resolution would eliminate all compensation for Swope and Vanderplow and effectively reduce their wages to zero.

43. The resolution was tabled, but City Council Member Saab, who

previously threatened Plaintiffs, re-submitted the motion in January 2024.

44. On January 9, 2024, on a vote of 5-2, the City Council voted in favor of the resolution, thereby defunding Plaintiffs' positions. City Council Resolution 11-A (the "Resolution") is attached as Exhibit 5.

45. The Resolution was discriminatory and retaliatory for the purpose of retaliating against and punishing Plaintiffs for the exercise of protected speech and protected whistleblower activities.

46. On or around January 22, 2024, Dearborn Heights Mayor Bill Bazzi (the "Mayor") notified the City Council that Resolution 11-A was illegal, ultra vires, and of no force or legal effect (Exhibit 6, Mayor Bazzi Ultra Vires Memorandum).

47. The Mayor communicated to the Council that its Resolution was a blatant violation of the FLSA, Michigan's WPA, and Plaintiffs' First Amendment Rights and Fourteenth Amendment Rights and was otherwise illegal. The Mayor's Memorandum provided, in part as follows:

> Resolution 11-A of 1/9/24 is a legal nullity [and ...] to the extent this council or any tribunal deems the resolution to be in order, please also consider this correspondence as a formal veto of that resolution. I note also that Council, in passing this ordinance, has done so contrary to advice that both Corporation Counsel and special Labor Counsel rendered several times.
> \* \* \*
> To begin with and most obviously, the City is subject to the Fair Labor Standards Act which clearly requires that the Directors [Swope and Vanderplow] be compensated for the time that they work. This Council's resolution is a clear violation of federal law exposing the city to double damages, attorneys fees, and fines.

8

> \* \* \*
>
> Comments from this Council make clear that its actions are retaliatory in nature in violation of these employees First Amendment Constitutional Rights as well as violations of the Whistleblowers Protect Act. I have no intention of allowing this City to trample the rights of its dedicated employees and thereby exposing the taxpayers to civil liability.

(Exhibit 6, p 2-3).

48. Yet City Council Member Baydoun doubled down on his illegal actions and demanded that city officials and employees take the adverse employment action to stop payroll for Swope and Vanderplow. Email from Council Member Baydoun is attached as Exhibit 7.

49. Mayor Bazzi ordered Swope and Vanderplow to remain in their positions and to continue with their duties. Memoranda attached as Exhibit 8.

## COUNT I
## Violation of First Amendment Right of Free Speech of Public Employees
## 42 USC § 1983

50. Plaintiffs incorporate by reference each and every allegation contained in this Complaint as if fully set forth herein.

51. The First Amendment to the United States Constitution is incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution.

52. By reason of the aforementioned acts, policies, practices, procedures, resolutions, and/or customs, created, adopted, and enforced under color of state law,

9

Defendant has deprived Plaintiffs of their rights to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 USC § 1983.

53. Defendant's actions, as set forth in this Complaint, injured Plaintiffs in a way likely to chill a person of ordinary firmness from further participation in his free speech activity.

54. Plaintiffs' constitutionally protected activity directly motivated Defendants' adverse actions. Thus, Defendant acted with a retaliatory intent or motive.

55. As a direct and proximate result of Defendant's violation of the First Amendment and other wrongful acts and omissions, as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of fundamental constitutional rights, as well as physical and emotional injury ad economic and non-economic injuries, entitling Plaintiffs to declaratory and injunctive relief and damages.

## COUNT II
### Violation of Whistleblowers' Protection Act, MCL 15.361 et seq.

56. Plaintiffs incorporate by reference each and every allegation contained in this Complaint as if fully set forth herein.

57. At all material times, the Plaintiffs were employees, and the Defendant was their employer, covered by and within the meaning of the Whistleblowers'

10

Protection Act, MCL §15.361 *et seq.*

58. Defendant violated the Whistleblowers' Protection Act when they discriminated against Plaintiffs as described regarding the terms, benefits, conditions, and privileges of their employment because Plaintiffs reported a violation or suspected violation of a law, regulation, or rule of the State of Michigan and opposed practices made illegal by the laws, regulations, or rules of the State of Michigan.

59. The actions of the Defendant were intentional.

60. As a direct and proximate result of Defendant's unlawful actions against Plaintiffs as described, Plaintiffs have sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice.

### COUNT III
### Violation of Fair Labor Standards Act, 29 USC 201 et seq.
### Plaintiffs Swope and Vanderplow

61. Plaintiffs incorporate by reference each and every allegation contained in this Complaint as if fully set forth herein.

62. The City is an "Employer" subject to the Fair Labor Standards Act. 29 USC §203.

63. Employees must be paid for all hours worked.

64. Under the FLSA regulations, a salaried employee must "regularly receive[] ... a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 CFR § 541.602.

65. The Resolution alleges to have reduced Vanderplow and Swope's compensation to zero, yet Vanderplow and Swope have continued to work and provide services to the City.

66. In fact, the Mayor ordered both to remain working and gave both of them additional duties. Vanderplow was assigned an additional role as internal affairs investigator for the entire City, and Swope is the Acting Chief of Police due to Hart's medical leave brought on by the physical and emotional damages suffered as a result of the City's illegal actions.

67. The City's actions have resulted in Swope and Vanderplow not accruing wages that they would otherwise be entitled to under the FLSA.

68. Since the City was warned in advance that their proposed action violated the FLSA, these are willful violations.

69. The City is liable for Swope and Vanderplow's wages, an additional amount in liquidated damages, and for Swope and Vanderplow's costs and attorney fees.

70. Moreover, the refusal to pay wages amounts to forced slave labor. Consequently, the Resolution presents an imminent threat of irreparable harm.

71. Under 29 USC §217, this Court has the authority to enjoin these illegal practices and to prevent further harm and retaliation to Swope and Vanderplow.

## COUNT IV
### Breach of Employment Contract

72. Plaintiffs incorporate by reference each and every allegation contained in this Complaint as if fully set forth herein.

73. Defendant entered into professional services employment contracts with the Plaintiffs (each, a "Contract").

74. Vanderplow's Contract is attached as Exhibit 9.

75. Hart's Contract is attached as Exhibit 10.

76. Swope's Contract is attached as Exhibit 11.

77. As it relates to Hart, per Hart's Contract, the City Mayor is "empowered to appoint and retain a full-time police chief and hereby appoints [Hart] for the effective and efficient operation of the City's Police Department".

78. As it relates to Swope, per Swope's Contract, the City Mayor is "empowered to appoint and retain a full-time director of support services and hereby appoints [Swope] for the effective and efficient operation of the City's Police Department".

79. As it relates to Vanderplow, per Vanderplow's Contract, the City

Mayor is "empowered to appoint and retain a full-time director of support services and hereby appoints [Vanderplow] for the effective and efficient operation of the City's Police Department".

80. The Contracts were entered into for valid consideration and lawful and proper purposes and are legally enforceable in all respects.

81. Plaintiffs have performed all their obligations and fulfilled all the conditions precedent under the terms of the Contract.

82. Defendant's acts, policies, practices, procedures, resolutions, and/or customs, created, adopted, and enforced under color of state law and other illegal actions in violation of federal and state law constituted a breach of contract.

83. Plaintiffs brought these unexcused breaches to the City's attention, and the City has failed and refused to cure.

84. As a direct and proximate result of Defendant's breaches, Plaintiffs have suffered damages.

## COUNT V
### Declaratory & Injunctive Relief

85. Plaintiffs incorporate by reference each and every allegation contained in this Complaint as if fully set forth herein.

86. The Defendant is a public employer, subject to Public Employment Relations Act ("PERA"), MCL 423.201 *et seq.*

87. Under PERA, it is illegal to "[r]efuse to bargain collectively" with the

Union. MCL §423.210(1)(e).

88. The City Council approved Swope and Vanderplow's employment on February 28, 2023 through Resolution 23-099, approving the CBA, which was bargained collectively under PERA.

89. Under the CBA, the City cannot unilaterally change wages, hours, terms and conditions of the Union CBA without collective bargaining. To do so constitutes a clear violation PERA.

90. Moreover, the City Council's authority to alter the budget is limited to "transfer of unused balances;" this does not amount to carte blanche authority to defund any position that the City Council sees fit.

91. Per Section 5.3 of the City's Charter, the mayor "shall prepare and administer the annual budget and keep the Council fully advised at all times as to the financial condition and needs of the City".

92. To the extent that the City Council has any authority related to the budget, the charter provides that "the Council may amend such budget [to] authorize the transfer of unused balances appropriated for one purpose to another purpose, or to appropriate available revenues of a class not included in the annual budget". City Charter Section 11.5.

93. Accordingly, the City Council does not have the authority or the power to "defund" Swope and Vanderplow's positions because the funds they seek

15

to transfer are not "unused balances" within the meaning of the City Charter.

94. The Mayor publicly released additional information via Press Release attached hereto as Exhibit 12, which further details City Council opposition to "rooting out corruption and institutional inefficiency."

95. Declaratory and Injunctive Relief are authorized by 28 U.S.C. §§ 2201 and 2202, 29 USC §217, Rules 57 and 65 of the Federal Rules of Civil Procedure, and MCL §15.363(1).

96. For the aforementioned reasons, the City should be enjoined from enforcing the Resolution during the pendency of the current proceedings otherwise the Plaintiffs will suffer immediate and irreparable injury, loss, or damage.

97. Action by this Court is needed to declare the rights of the parties and to enjoin imminent and future violations of law and infringements on constitutionally guaranteed rights.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment against Defendant as follows:

A. Declare Defendant violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

B. Declare Resolution 11-A and any successor or replacement resolution ultra vires, void, and of no force and affect;

C. Declare the practices and actions of Defendant unlawful;

D. Permanently enjoin the City from engaging in practices that violate Plaintiffs' constitutional rights and Plaintiffs' rights under the Fair Labor Standards Act;

E. Permanently enjoin the City from unlawful discrimination and retaliation;

F. Award Plaintiffs' compensatory damages in an amount to be determined as fair and just under the circumstances by the trier of fact, including but not limited to loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice.

G. Award Plaintiffs exemplary and/or punitive damages in an amount to be determined as reasonable or just by the trier of fact;

H. Award Plaintiffs their reasonable attorney fees, costs, and interest; and

I. Award such other relief as this Court deems just and proper.

                                               Respectfully submitted,

Dated:     January 29, 2024

                                               /s/Michael M. McNamara
                                               FAUSONE & GRYSKO, PLC
                                               41700 West Six Mile Road, Suite 101
                                               Northville, Michigan 48168-3460
                                               (248) 380-0000
                                               mmcnamara@thefgfirm.law
                                               P48055

## JURY DEMAND

Plaintiffs, by and through their attorneys, Fausone & Grysko, PLC, demand a trial by jury for all eligible counts in this Complaint.

Respectfully submitted,

Dated:     January 29, 2024

/s/Michael M. McNamara
FAUSONE & GRYSKO, PLC
41700 West Six Mile Road, Suite 101
Northville, Michigan 48168-3460
(248) 380-0000
mmcnamara@thefgfirm.law
P48055