UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SWOPE et al.,

        Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS,

        Defendant.
_____/

Case No. 24-cv-10240

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (Dkt. 20), (2) GRANTING CITY COUNCIL'S MOTION TO INTERVENE (Dkt. 15), (3) DENYING ROGER FARINHA'S CONTINGENT MOTION TO INTERVENE (Dkt. 34), AND (4) DENYING AS MOOT THE CITY'S MOTION FOR IMMEDIATE CONSIDERATION (Dkt. 40)**

Before the Court are (i) Plaintiffs Kevin Swope, Paul Vanderplow, and Jerrod Hart's motion for leave to file an amended complaint (Dkt. 20), (ii) proposed intervenor-defendant the City of Dearborn Heights City Council's motion to intervene (Dkt. 15), (iii) proposed intervenor-defendant Roger Farinha's contingent motion to intervene (Dkt. 34), and (iv) Defendant City of Dearborn Heights's motion for immediate consideration (Dkt. 40).[1]  For the reasons that follow, the Court (i) grants Plaintiffs' motion for leave to file an amended complaint, (ii) grants City

---

[1] The Court held a hearing on the motions on November 20, 2024.  In addition to the motions, the briefing includes the City's response to Plaintiffs' motion for leave to amend (Dkt. 36), Plaintiffs' reply in support of their motion for leave to amend (Dkt. 38), Plaintiffs' response to City Council's motion to intervene (Dkt. 18), City Council's reply in support of its motion to intervene (Dkt. 19), Plaintiffs' supplemental brief opposing City Council's intervention (Dkt. 29), and City Council's supplemental brief in support of its motion for intervention (Dkt. 31).

1

Council's motion to intervene, (iii) denies Roger Farinha's contingent motion to intervene, and (iv) denies as moot the City's motion for immediate consideration.

## I. BACKGROUND

This case stems from the alleged attempted removal of Plaintiffs from their positions as employees of the City's police department after Plaintiffs reported alleged "widespread corruption involving the mismanagement of federal and state forfeiture funds" and other "matters of significant public concern." See Compl. ¶¶ 7–11, 20–26.

According to the complaint, Hart was hired as the City's police chief in February 2022. Id. ¶ 14. In January 2023, the City hired Vanderplow as its director of support services and Swope as the director of police operations. Id. ¶¶ 16–18. Shortly after their appointment to their positions, Plaintiffs began reporting allegedly unlawful activity taking place in the City's government operations. Specifically, Plaintiffs allege that, in February 2023, they reported that "nearly 900 pistol sales records had not been processed" in accordance with state law. Id. ¶ 23. The next month, Plaintiffs reported that "police overtime work was subject to an illegal ticket quota system," that members of the police department engaged in a "ticket fixing scheme," and that the City mismanaged state and federal funds. Id. ¶¶ 24–25. Plaintiffs allege that members of City Council subjected them to threats and other adverse actions after reporting the alleged wrongdoing. Id. ¶ 28.

In addition, Plaintiffs maintain that, in July 2023, several officers were involved in an "excessive force incident." Id. ¶ 34. After Plaintiffs reported the incident to the City and Michigan State Police, Plaintiffs initiated an internal disciplinary investigation of the officers involved. Id. ¶¶ 34–35. According to Plaintiffs, City Councilmember Hassan Saab told Swope

and Vanderplow to drop the investigation or else Saab would "release skeletons." Id. ¶ 36.

The tension between City Council and Plaintiffs appears to have come to a head in January 2024. On January 9, City Council voted in favor of Resolution 24-017, which removed the budget allocations for Swope and Vanderplow's positions within the City's police department. Id. ¶ 44; Mot. to Intervene at PageID.142. The resolution operated to "enact an immediate amendment to the current budget, revisiting and adjusting allocations to address the financial implications of the unauthorized creation of two director positions[,] Director of Police Operations[] [and] Director of Support Services within the Police Department" and eliminated compensation for both positions. Resolution 24-017 at PageID.214–215 (Dkt. 15-2).

The City's Mayor, Bill Bazzi, opposed the resolution. Following the Council's vote on the resolution, the Mayor issued a memorandum challenging the legality of the resolution under the City Charter. 1/22/24 Mem. at PageID.40–42 (Dkt. 1-2). The memorandum further set forth the Mayor's position that the resolution violates the Fair Labor Standards Act (FLSA), 29 USC § 201 et seq. and the Public Employees Relations Act (PERA), Mich. Comp. L. § 423.201 et seq., and that the resolution would amount to retaliation under the First Amendment and Michigan's Whistleblower's Protection Act (WPA), Mich. Comp. L. § 15.361 et seq. Id.

A week after the issuance of the Mayor's memorandum, Plaintiffs filed this action against the City. Their complaint alleges violations of the First Amendment, the WPA, and the FLSA; it also alleges breach of Plaintiffs' employment contracts. Compl. ¶¶ 50–84. Three days later, Plaintiffs and the City stipulated to an order for a preliminary injunction. 2/1/24 Order (Dkt. 4). The order enjoined the City from (i) enforcing the resolution defunding Plaintiffs' positions, (ii) engaging in unlawful pay practices, and (iii) taking other adverse employment actions against

3

Plaintiffs.  Id. at 1.

Several motions are now before the Court.  Plaintiffs move for leave to amend their complaint to add allegations and claims of discrimination under state and federal law.  See Mot. for Leave to Amend.  City Council now moves to intervene in this action based on its asserted interest in protecting its legislative authority.  Mot. to Intervene at PageID.143.  Farinha, in his capacity as corporation counsel, requests to intervene in the event that the Court grants City Council's motion.  See Contingent Mot. to Intervene.  The Court discusses each motion in turn.

## II.  ANALYSIS

### A. Plaintiffs' Motion for Leave to Amend Complaint

Plaintiffs move to amend their complaint to add claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Michigan Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. L. § 37.2202; the Americans with Disabilities Act (ADA), 42 U.S.C § 12112; the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 623; and an additional retaliation claim under the First Amendment (collectively, Counts V–IX of the proposed amended complaint).  See Br. Supp. Mot. for Leave at 6; Proposed Am. Compl. (Dkt. 20-2).

Leave to amend is to be freely granted by the Court "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." Com. Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 346 (6th Cir. 2007).

Applying this standard here, the City objects to Plaintiffs' amending their complaint on futility grounds, arguing that Plaintiffs have failed to adequately plead facts to support Counts V–

IX. Having reviewed the proposed amended complaint, the Court finds that Plaintiffs' proposed amendment is not futile.

With respect to Plaintiffs' Title VII and ELCRA claims (Counts V and VI),[2] the City argues that Plaintiffs have not alleged the elements of discrimination or an adverse employment decision. Resp. to Mot. for Leave at 2–4. The Court disagrees. As to discrimination, Plaintiffs' proposed amended complaint includes allegations that "White employees were excluded" from meetings and that "Arab employees" were given "preferential treatment." Proposed Am. Compl. ¶ 97. Plaintiffs further allege suffering and adverse employment action by alleging that City Council defunded their positions with the City through the passage of Resolution 24-017. Id. These proposed amendments are sufficient to state a claim under Title VII and the ELCRA and, therefore, are not futile.

Regarding Hart's ADA claim (Count VII), the City argues that the proposed amended complaint fails to allege that the City knew of Hart's alleged disability stemming from his heart condition and diabetes.[3] Resp. to Mot. for Leave at 5. Again, the Court disagrees with the City.

---

[2] The Court's analysis of Plaintiffs' discrimination claims under Title VII and ELCRA is the same. Blick v. Ann Arbor Pub. Sch. Dist., 516 F. Supp. 3d 711, 721 (E.D. Mich. 2021). "To establish a prima facie case of discrimination under Title VII, a plaintiff must allege that: (1) she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action; and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of her protected class." Bender v. Gen. Dynamics Land Sys., Inc., No. 2:19-cv-13177, 2020 WL 4366049, at *4 (E.D. Mich. July 30, 2020). "Although a plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss, the elements of a prima facie case are nonetheless aspects to consider when determining the plausibility of a discrimination claim." Dasilva v. Esper, No. 20-cv-11358, 2022 WL 403272, at *6 n.10 (E.D. Mich. Feb. 9, 2022) (punctuation modified).

[3] To establish a prima facie case of disability discrimination, "a plaintiff must show that (1) he is disabled or his employer regarded him as disabled, (2) he is otherwise qualified to perform the

The proposed amended complaint alleges, in part, that the City was "aware of Plaintiff Hart's medical condition" and discriminated against him by "repeatedly harass[ing] and intimidat[ing] him . . . ." Proposed Am. Compl. ¶ 111. Hart's proposed amendment plausibly states a claim for discrimination under the ADA and, therefore, the amendment is not futile.

As to Plaintiffs' ADEA claim (Count VIII), the City argues that Plaintiffs fail to allege that they were treated differently than younger employees.[4] Resp. to Mot. for Leave at 6. The City's argument is without merit. Plaintiffs' proposed complaint alleges that a City councilmember "requested multiple times that an Arab Police Sergeant . . . who is under the age of 40, be promoted and provided preferential treatment." Proposed Am. Compl. ¶ 120. This allegation is sufficient to plausibly assert that Plaintiffs were treated differently based on their age. Plaintiffs' amendment regarding Count VIII is not futile.

Regarding the proposed First Amendment retaliation claim (Count IX), the City argues that Plaintiffs suffered no adverse action based on City Council's passage of Resolution 24-017 because the City's Mayor vetoed the resolution.[5] Resp. to Mot. for Leave at 7. But even setting

---

essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability." Wallace v. Edward W. Sparrow Hosp. Assoc., 782 F. App'x 395, 404 (6th Cir. 2019).

[4] "To establish a prima facie claim of age discrimination under the ADEA, a plaintiff must show that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker." Marshall v. SSC Nashville Operating Co., LLC, 686 F. App'x 348, 353 (6th Cir. 2017) (punctuation modified).

[5] "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

6

aside the resolution, Plaintiffs' proposed complaint alleges that they suffered the "denial of job benefits routinely afforded to other similarly situated City employees, the filing of false police reports, and the making of public and private threats." Proposed Am. Compl. ¶ 128. Such allegations are sufficient to survive at the pleading stage.

Because the City has not shown that Plaintiffs' proposed amended complaint would be futile, the Court grants Plaintiffs' motion for leave to amend.

### B. City Council's Motion to Intervene

Under Federal Rule of Civil Procedure 24(a)(2), "district courts must permit anyone to intervene who, (1) in a timely motion, shows that (2) they have a substantial legal interest in the case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties."[6] Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, 41 F.4th 767, 771 (6th Cir. 2022). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005) (punctuation modified). Rule 24 further provides that the motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

#### 1. Rule 24(c)'s Requirements

Plaintiffs argue that City Council's motion should be denied because it has not attached a pleading setting out the claim or defense for which it seeks to intervene. Pls. Resp. to Mot. to

---

[6] The parties do not dispute the timeliness of City Council's motion to intervene.

7

Intervene at 11–12. But, as City Council points out, see City Council Reply at 6, the Sixth Circuit takes a lenient approach to Rule 24(c) and has found a district court's denial of a motion to intervene "on the basis that [the intervenor] failed to attach a pleading" to be an abuse of discretion. Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 314 (6th Cir. 2005).

Here, as discussed further below, City Council's motion to intervene sufficiently places Plaintiffs on notice of the bases for which it seeks intervention. The Court finds no prejudice to Plaintiffs stemming from City Council's failure to attach a pleading to its motion. Given the Sixth Circuit's permissive approach to Rule 24(c), City Council's motion will not be denied on this ground.

### 2. Substantial Interest

To intervene as of right under Rule 24(a)(2), City Council must show that it has a "substantial interest in the subject matter of this litigation." Wineries of the Old Mission, 41 F.4th at 771 (punctuation modified). Although it is a fact-specific inquiry, the Sixth Circuit has "adopted a rather expansive notion of the interest sufficient to invoke intervention of right." Id. at 771–772. However, not "any articulated interest will do"—it must be "significantly protectable to rise to the level of substantial." Id. at 772 (punctuation modified).

City Council submits that its "substantial interest in upholding Resolution 24-017 will be impaired and impeded without intervention" because the City's "executive branch staunchly opposes [the resolution]." Council Suppl. Br. at 1. City Council further contends that the City's Mayor and corporation counsel "conspired with Plaintiffs to use this lawsuit and their pre-packaged [i]njunction to override the City Council's Resolution 24-017." Br. Supp. Mot. to Intervene at 15. City Council further submits that, if permitted to intervene, it will move to set

8

aside the preliminary injunction on the grounds that the City lacked authority to stipulate to the entry of the preliminary injunction. Id. at 19. The City maintains that City Council has no substantial interest. It points out that the corporation counsel is charged with defending the City against suits filed against it and that "City Council has no recognizable interest, as a non-party in 'double-denying' that which is already denied, as if that were a logical or legal possibility." Resp. to Mot. to Intervene at 7.

The United States Supreme Court's decision in Berger v. N. C. State Conf. of the NAACP, 597 U.S. 179, 198 (2022) provides some guidance regarding intervention as of right in the context of intra-governmental disputes. In that case, the NAACP brought suit challenging the state's voter-ID law against the governor and other members of the state's executive branch, who had previously opposed the voter-ID law. Id. Dissatisfied with the executive branch officials' defense of the law, members of North Carolina's legislature moved to intervene. Id. at 186.

The court held that the legislators were entitled to intervene as of right. Id. at 193. In finding that the legislators' asserted interest in defending the voter-ID law was sufficiently substantial, the Court emphasized the importance of federal courts respecting states' "plans for the distribution of governmental powers." Id. (punctuation modified). It further explained that "[p]ermitting the participation of lawfully authorized state agents promotes informed federal-court decision[-]making and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." Id.

Following Berger's emphasis on safeguarding a federal court's complete understanding of the relevant governmental interests, the Court agrees with City Council that it has raised a

9

protectable interest for purposes of intervening as of right under Rule 24(a)(2).[7] As set forth above, City Council maintains that the City's executive-branch officials have—by stipulating to a preliminary injunction for the pendency of this litigation—engaged in an end-run around Resolution 24-017. City Council has an interest in contesting a preliminary injunction that risks nullifying an enacted resolution. Given the Sixth Circuit's "expansive" concept of legal rights sufficient for intervention, Wineries of the Old Mission Peninsula, 41 F.4th at 771, City Council has shown that it has a substantial interest sufficient for it to intervene.

In connection with the parties' competing views on whether City Council asserts a substantial interest warranting intervention, the parties dispute whether City Council is authorized under the City's charter to hire counsel to assert its rights. The parties' dispute centers on § 5.13 of the City's charter, which sets out the "[f]unction and [d]uties" of the City's corporation counsel. As set out in that section, the corporation counsel is tasked with "prosecut[ing] and defend[ing], in the name of the City, all cases in all courts and before all legally constituted tribunals whenever the City is a party thereto." Dearborn Heights Charter § 5.13(c). Section 5.13(j) provides: "The Mayor or the City Council may retain special legal counsel to appear Of Counsel to the Corporation Counsel for the purpose of assisting the Corporation Counsel for a special matter and for such limited time and purpose as the Mayor or Council shall specify."

---

[7] Plaintiffs correctly point out that North Carolina law specifically granted the legislators in Berger the authority "to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution." Pls. Suppl. Br. at 1 (quoting Berger, 597 U.S. at 186). As discussed above, the City charter does not provide City Council with a similar express authorization for it to intervene. However, Berger does not go so far as to say that statutory authorization is a prerequisite to intervention. The absence of an express authorization under the City Charter does not foreclose City Council's ability to intervene here.

City Council reads § 5.13 as permitting it to retain "special legal counsel" for a matter like Plaintiffs' instant suit and argues that, therefore, it has an interest sufficiently substantial to intervene in this case. See Br. Supp. Mot. to Intervene at 11, 15. Plaintiffs disagree, arguing that only corporation counsel may defend the City from lawsuits. Resp. to Mot. to Intervene at 8.

The Court need not decide this issue to resolve City Council's motion. Whether City Council has the power to retain its own counsel under the City's charter is an issue of state law that has no bearing on the federal claims at issue here. Principles that guide federal courts' exercise of jurisdiction over issues of state law counsel against this Court deciding such state-based issues. Under the Burford abstention doctrine, "[w]hen the exercise of federal jurisdiction is so disruptive of state efforts to establish a coherent, unified regulatory policy over a subject of weighty enough importance to the state, the federal court should decline to decide the case." William Powell Co. v. Nat'l Indem. Co., 18 F.4th 856, 864 (6th Cir. 2021) (citing Burford v. Sun Oil Co., 319 U.S. 315 (1943)).

Here, a decision by this Court regarding the powers of the City's branches and offices of government—i.e., City Council and corporation counsel—risks needlessly creating "[c]onflicts in the interpretation of state law, dangerous to the success of state policies" of municipal governance. Burford, 319 U.S. at 334. A declaration by this Court that either authorizes or bars City Council from hiring special legal counsel under the City's Charter could undermine the City or City Council's abilities to assert their rights in legal matters unrelated to Plaintiffs' claims in this case. "[P]rinciples of federalism and comity" dictate that this Court avoid needlessly disrupting the City's municipal governance. William Powell Co., 18 F.4th at 864. Because a state court is the proper court to resolve the issue of whether City Council may hire its own counsel, that issue will

11

not be addressed by this Court, in connection with intervention or otherwise.

What is relevant here is the undeniable fact that Plaintiffs' claims in this case implicate City Council's legislative authority and have resulted in a federal court preliminary injunction that purports to act against City Council's interests. As such, City Council has raised sufficiently protectable interests that warrant intervention in this case.

### 3. Impairment

"To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." Wineries of the Old Mission Peninsula, 41 F.4th at 774 (punctuation modified). "The rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." Id. (punctuation modified).

Here, City Council's intervention permits it the opportunity to protect its legislative interest in enacting Resolution 24-017 from invalidation via the preliminary injunction. Without City Council's participation in this case, City Council is disadvantaged in that it cannot assert a defense of the validity of the resolution.

Plaintiffs argue that City Council is not impaired because "City Council's allegations against the Mayor and the executive branch of the city sound . . . in Michigan laws controlling municipal governance . . . ." Pls. Resp. to Mot. to Intervene at 9. That the dispute touches on Michigan and municipal law does not render City Council's interests in challenging the preliminary injunction or asserting the validity of the resolution any less impaired. As the Sixth Circuit has recognized, "potential stare decisis effects can be a sufficient basis for finding an impairment of interest." Wineries of the Old Mission Peninsula, 41 F.4th at 774. City Council

12

faces such potential consequences here. Should the Court reach a decision permanently enjoining or invalidating Resolution 24-017 without consideration of City Council's interests, City Council could be subject to a potentially adverse ruling limiting its ability to uphold the resolution in later proceedings. Moreover, because City Council aims to defend the validity of Resolution 24-017 in the face of Plaintiffs' federal claims, City Council's intervention allows the Court to hear all views that may touch on those federal claims. City Council has met the "minimal requirements" of the impairment element. Id.

### 4. Adequacy of Representation

"[T]he burden for establishing inadequate representation is minimal. Under Rule 24(a), the intervenor does not have to show that representation will be inadequate. The inadequate-representation requirement will be satisfied if the intervenor shows that representation of its interest may be inadequate." Oakland Cnty. v. Fed. Nat. Mortg. Ass'n, 276 F.R.D. 491, 499 (E.D. Mich. 2011) (punctuation modified).

Plaintiffs argue that City Council's interests are adequately represented because the "City's defense is suitably aggressive and competent." Pls. Resp. to Mot. to Intervene at 10. They point out that the City has "denied each material accusation" and has "alleged 25 affirmative defenses." Id.

Plaintiffs' argument lacks merit. While the City has an interest in defending itself from Plaintiffs' claims, that interest is not coterminous with the legislative interest asserted by City Council. Indeed, the divergent interests are made apparent by the preliminary injunction to which the Plaintiffs and City have stipulated. As stated in the injunction, the City agrees that "Plaintiffs are likely to succeed on the merits" in their challenge to Resolution 24-017 under the FLSA, First

13

Amendment, and WPA claims.  2/1/24 Order at 2.  To be sure, the City may have good reasons for stipulating to the preliminary injunction, such as guarding the City fisc against the accumulation of monetary damages.  However, the City's interest in limiting the City's scope of potential liability through the preliminary injunction is in direct conflict with City Council's interest in upholding its authority to enact Resolution 24-017.  Given those divergent interests, the Court finds that City Council has met its minimal burden of showing that the City's representation of its interests may be inadequate.  See Wineries of the Old Mission Peninsula, 41 F.4th at 774 (finding adequacy of representation requirement despite fact that proposed intervenor and defendant shared the "same ultimate objective").

City Council has satisfied Rule 24(a)'s requirements to intervene as of right.  However, as the Sixth Circuit has recognized, "courts are not faced with an all-or-nothing choice between grant or denial: Rule 24 also provides for limited-in-scope intervention."  United States v. City of Detroit, 712 F.3d 925, 931 (6th Cir. 2013) (citing Fed. R. Civ. P. 24, advisory committee's note, 1966 amendments) ("Intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

At this point in the litigation, it is not entirely clear what role City Council may need to play to protect its interests.  Presently, the Court concludes that City Council's intervention should include (i) moving to modify or vacate the preliminary injunction, (ii) filing briefs and attending hearings on all motions filed by other parties, and (iii) taking discovery and other actions necessary to defend the propriety of Resolution 24-017—including any defense to Plaintiffs' claims that implicate the resolution.  In addition, City Council will be subject to discovery issued by the other

parties. The Court may modify the scope of City Council's intervention described above for good cause shown.

### C. Farinha's Contingent Motion to Intervene

Because the Court grants City Council's motion to intervene, it takes up Farinha's contingent motion to intervene as of right under Rule 24(a) or for permissive intervention under Rule 24(b). The Court denies intervention on the basis of Burford abstention.

Farinha's chief complaint is that City Council has hired other attorneys to represent it in this litigation. He seeks intervention, claiming that he "has an interest in preventing the nullification or diminishment of his office's rights, dignity, and responsibility, and [that he] stands in the public's shoes in advancing the proper administration of City business" under the City Charter. Contingent Mot. to Intervene at 5. He cites a number of responsibilities assigned to the corporation counsel under the City Charter—such as the role of acting as legal advisor to City Council and the Mayor, see City Charter § 5.13(b), and the duty to prosecute and defend cases for the City, see id. § 5.13(c)—and asserts for each responsibility that the corporation counsel has the "right to act without undue interference." Br. Supp. of Contingent Mot. to Intervene at 4–5.

Farinha's position amounts to a request for this Court to rule on the scope of corporation counsel's role under the City's charter. But whether Farinha has sole authority to represent the City or City Council is the same issue, discussed earlier, regarding Council's power to hire outside counsel. This is a state-law issue with no bearing on Plaintiffs' employment-based claims in this case.

The Court's rationale for declining to decide whether City Council is empowered under the charter to hire special legal counsel applies equally to corporation counsel's authority to represent

15

the City or City Council in legal matters. Both issues sound in state law and a decision by this Court regarding either issue risks the creation of conflicts in the operation of the City's government and the respective roles of offices established under the charter. See Burford, 319 U.S. at 334 (cautioning that "[c]onflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts" and that "sound respect for the independence of state actions requires the federal equity court to stay its hand"). Farinha's asserted interest in protecting against the diminishment of corporation counsel's role under the City's charter—an issue that has no bearing on Plaintiffs' claims here—is an issue that a state court should resolve.

His motion to intervene is denied.

### III.  CONCLUSION

For the reasons set forth above, the Court (i) grants Plaintiffs' motion for leave to file an amended complaint (Dkt. 20), (ii) grants City Council's motion to intervene (Dkt. 15), (iii) denies Roger Farinha's Contingent motion to intervene (Dkt. 34), and (iv) denies as moot the City's motion for immediate consideration (Dkt. 40). Within ten days of this order, City Council must file a pleading in support of any interest it seeks to protect.

s/Mark A. Goldsmith
HON. MARK A. GOLDSMITH
United States District Judge

Dated: December 13, 2024

16