# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEVIN SWOPE, PAUL VANDERPLOW, JERROD HART,

    Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a Michigan municipal corporation

    Defendant

and

CITY OF DEARBORN HEIGHTS CITY COUNCIL

    Intervening Defendant

Case No.: 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

_____/

**INTERVENING DEFENDANT CITY OF DEARBORN HEIGHTS CITY COUNCIL'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL AND FOR SANCTIONS AGAINST BILL BAZZI (ECF No. 85)**

NOW COMES Intervening Defendant City of Dearborn Heights City Council ("City Council"), by and through its attorneys, and for its Reply in Support of its Motion to Compel and for Sanctions against Bill Bazzi (ECF No. 85), hereby states as follows:

At **ECF No. 85**, the City of Dearborn Heights City Council detailed the very concerning facts and occurrences set forth by Dearborn Heights Mayor, Bill Bazzi. Of importance, Plaintiff's similar Motion for Sanctions at **ECF No. 84** presented essentially the same facts. The Mayor's response? He (1) ignored several of the questions posed in these motions, and (2) when a substantive point is actually addressed, fails to answer the same. At issue with the former is the fact that the Mayor's actions show his belief that only his time is important. At issue with the latter is factual veracity.

I. **CONTINUED STATEMENT OF FACTS**

   A. **THE CITY'S SILENCE ON CRITICAL FACTS**

At **ECF No. 85, PageID.1603**, the City Council highlighted the Mayor's lack of interest with his current position as Mayor of Dearborn Heights. In its response, the City of Dearborn Heights did not even address the fact that its own Mayor has been absent from City Council meetings since late 2024. This fact remains uncontroverted.

At **ECF No. 85, PageID.1604**, the City Council stated that prior to July 31, 2025, no party to this case had ever made any objection to the presence of counsel Tarik D. Turfe, Gary T. Miotke, or Councilman Hassan Saab. The City's lack of a response on this point is critical to the Court's consideration of the "D7 Dad's Club" "incident" that will be discussed in greater detail below.

Next, the City Council discussed the Mayor's cancellation of the July 18, 2025 deposition and raised question of the necessity of the Mayor's "requirement" to be in Washington, D.C. during this time. See **ECF No. 85, PageID.1605-1606**. Again, the City failed to respond to this important point except to reiterate their previous regurgitation of the feigned "requirement".

Making matters worse, and further evidencing Mayor Bazzi's bad faith, the City Council emphasizes the Mayor's affidavit paragraph 6, **ECF No. 88, PageID.1682-1683**. Here, the Mayor stated that "On June 14, 2025, the Director of the Senate Liaison Office advised me that the Senate Foreign Relations Committee was arranging the meetings with Ambassadorship Nominees for the week of July 17, 2025." *Id.* If the Mayor knew of these meetings over a month before the scheduled July 18, 2025 deposition, then why were the parties only notified of this "requirement" on July 16, 2025, two days before the Mayor's deposition? Further, if Councilman Saab had "routinely posted derogatory messages on social media targeting [the Mayor and his wife]" **ECF No. 88, PageID.1684**, and was such a

2

threat to the Mayor, then why did the City (and the Mayor) fail to object to the presence of Saab at the Mayor's deposition until only the day of?

Finally, the City Council notes that the City's Motion and the Mayor's Affidavit are exclusively based on the Mayor's allegation of facts without any further support or evidentiary weight. In just one example, the Mayor provided no such verification of any "chaos" at the Dearborn Heights D7 Dads Club. Here the City merely, falsely, states that it exists. **ECF No. 88, PageID.1662** and **1683**. The actual realities of this situation are discussed below

### B. DEARBORN HEIGHTS D7 DADS CLUB "INCIDENT"

At **ECF No. 88, PageID.1662 and 1670-1671**, the City alleges that Mr. Miotke (a) interrupted and caused a disturbance at a meeting such that members of the public called the police, (b) was "removed" from the meeting by the police, and (c) by doing so caused Bazzi to refuse to attend his deposition if Miotke was present. These allegations and assertions are plainly false and misleading. Miotke did <u>not</u> interrupt the meeting, cause a disturbance, or allegedly cause members of the public to call the police. See **Exhibit A,** paras. 6 and 7(a) and (b).

The meeting was advertised as an *open meeting* at a *City-owned and operated, public park*. Specifically, the D7 Dads' Club Facebook post about the meeting stated in pertinent part: "Here at dad's club transparency is key, especially in situations like this. That being said tomorrow morning at 11 AM at Swapka Park, we ask that you

3

please arrive 10 minutes early so we can get right to business at 11. *Here we will have a update for any parent, guardian <u>or concerned individual</u> that is interested in attending*." **Exhibit A**, para. 7(a)(i) and **Exhibit B** (emphasis added).

As a "concerned individual", Miotke went to the meeting, saw City police vehicles already parked in the parking lot, walked past a police officer who was a short distance from the meeting, took a seat at a table, and said nothing. **Exhibit A**, para. 7(a)(ii).

Very shortly thereafter, Bazzi was speaking, noticed that Miotke was present, *and then interrupted the meeting* by noting his presence and saying that "I don't know if you guys want an attorney over here". **Exhibit A**, para. 7(a)(iii).

After this, several people blurted out brief comments or questions, Miotke responded, and a woman sitting close to Miotke said she would appreciate it if he would leave. **Exhibit A**, para. 7(a)(iv). Despite the meeting being advertised as a public meeting, Miotke agreed to leave based on her request, got up, started to walk out, responded briefly to a few more comments that were blurted out to him, and voluntarily left the meeting. **Exhibit A**, para. 7(a)(v).

Miotke's involvement in the meeting lasted for less than a minute, certainly did *not* cause a disturbance, and certainly did *not* cause members of the public to call the police since they were already outside of the meeting and did *not* need to come into the meeting due to his presence. **Exhibit A**, para. 7(a)(vi)

4

Additionally, Miotke was <u>not</u> "removed" from the meeting by the police or anyone else. Despite the event being advertised as a public event, and as stated above, Miotke agreed to leave based on a woman's request, got up, and voluntarily walked out of the meeting. He was <u>not</u> accompanied by or escorted out of the meeting by any police officer or anyone else. Indeed, his only interactions with the police officers who were present were extremely limited and totally benign. **Exhibit A**, para. 7(b)(i)-(iii).

Further, Miotke did <u>not</u> do anything at the meeting that could reasonably cause Bazzi to refuse to attend his deposition if Miotke was present. Other than to acknowledge and agree with Bazzi's comment that he did not represent him or the City, Miotke did not acknowledge or respond to anything that Bazzi said. Most importantly, Miotke did <u>*not*</u> do or say anything that was threatening or hostile to Bazzi or to anyone else at the meeting. Nor did he do or say anything that could be mistakenly taken to be a threat or hostile action against any of them. **Exhibit A**, para. 7(c)(i)-(ii). Any assertion by the City, or the Mayor, to the contrary is simply not true.

The City has also tried to bolster its false presentation of the D7 Dads' Club meeting by falsely portraying Miotke as some disgruntled, former employee who has been upset with Mayor Bazzi because he was "fired". **Exhibit A**, paras. 4 and 5. In reality, the appointment of Roger Farinha as Dearborn Heights Corporation

5

Counsel effective September 1, 2022 (i) took place in order to have a new, in-house Corporation Counsel who was employed by the City as a full-time, W-2 employee and (ii) did <u>not</u> end Miotke's representation of the City. Miotke continued to represent the City, handled the City's prosecution of ordinance violations, and was also responsible for other matters and special projects. **Exhibit A**, para. 5(b), (c) and (d) and **Exhibit C**.

Miotke *voluntarily* ended his representation of the City effective April 30, 2023 when he *voluntarily* resigned as an attorney representing the City at a City Council Meeting on April 11, 2023.  **Exhibit A**, para. 5(e). The end to Miotke's representation of City was <u>not</u> occasioned by hostility.  After his resignation was effective, Miotke dropped off the City property that he had in his possession including some of which he gave to Bazzi personally.  After he did so, they shook hands, and Miotke wished Bazzi good luck. **Exhibit A**, para. 5(f) and (g).

Indeed, the City's hostile, disgruntled former employee spin is undercut by an email that Farinha wrote to Miotke on April 30, 2023 wherein he said:

> "Thank you Gary. *I honestly was surprised and hurt when you quit*. I thought I had conveyed my respect for your talent and work at our last meeting. Your institutional knowledge is tremendous and I was looking forward to working with you to maximize your talents.

See **Exhibit D**.

WHEREFORE, Intervening Defendant City of Dearborn Heights City

6

Council respectfully requests that this Court GRANT its Motion for Contempt and for Sanctions, entering the relief requested at **ECF No. 85, PageID.1595-1596**.

                                                Respectfully submitted,

                                                Tarik D. Turfe (P83690)
                                                Hammoud, Dakhlallah,
                                                & Associates, PLLC
                                                Attorney for Intervening Defendant
                                                City of Dearborn Heights City Council
                                                6050 Greenfield Rd., Ste., 201
                                                Dearborn, MI 48126
                                                (313) 551-3038
Dated: August 24, 2025                        tt@hdalawgroup.com

**LOCAL RULE CERTIFICATION:** I, Tarik D. Turfe, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all texts that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that this document is the appropriate length. Local Rule 7.1(d)(3).

                                                Respectfully submitted,

                                                By: */s/ Tarik D. Turfe*
                                                Tarik D. Turfe (P83690)
                                                Counsel for Intervening
                                                Defendant City of Dearborn Heights
                                                City Council
                                                tt@hdalawgroup.com

Dated: August 24, 2025

## **CERTIFICATE OF SERVICE**

I certify that on August 24, 2025, I filed a copy of the foregoing with the Clerk of the Court using the electronic filing system which will send electronic notification of this filing to all parties.

                                              Respectfully submitted,

                                              By: */s/ Tarik D. Turfe*
                                              Tarik D. Turfe (P83690)
                                              Counsel for Intervening
                                              Defendant City of Dearborn Heights
                                              City Council
                                              tt@hdalawgroup.com

Dated: August 24, 2025