**EXHIBIT A**

Unsworn Declaration of Gary T. Miotke

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN SWOPE, et al,
               Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS,
               Defendant,

and

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,
               Intervening Defendant.

Case No.: 2:24-cv-10240
Hon. Mark A. Goldsmith

BRANDON M. GRYSKO (P82751)
STEPHEN JOSEPH BROWN (P82687)
FAUSONE & GRYSKO, PLC
Attorneys for Plaintiffs
41700 West Six Mile Road, Suite 101
Northville, MI 48168-3460
(248) 912-3218; FAX (248) 380-3434
bgrysko@thefgfirm.law
jbrown@thefgfirm.law

MONICA N. HUNT (P68838)
SEAN M. FARRELL (P86402)
THE ALLEN LAW GROUP
Attorneys for Defendant
3031 W. Grand Blvd., Suite 525
Detroit, MI 48202
(313) 871-5500; FAX (313) 871-0517
mhunt@alglawpc.com
sfarrell@alglawpc.com

GARY T. MIOTKE (P41813)
Attorney for Intervening Defendant
6828 Park Avenue
Allen Park, MI 48101
(313) 388-4809
gmiotke@miotkelawoffice.com

KASSEM M. DAKHLALLAH (P70842)
TARIK D. TURFE (P83690)
HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
Attorneys for Intervening Defendant
6050 Greenfield Rd., Ste. 201
Dearborn, MI 48126
(313) 551-3038
kd@hdlawgroup.com
tt@hdalawgroup.com

## UNSWORN DECLARATION OF GARY T. MIOTKE

I, GARY T. MIOTKE, make this declaration pursuant to 28 USC 1746 and state that:

1. I make this Unsworn Declaration based on personal knowledge; the information contained in this Unsworn Declaration is true to the best of my information, knowledge and belief; and I am competent to testify to the matters set forth herein.

2. I am Special Legal Counsel to Intervening Defendant CITY OF DEARBORN HEIGHTS CITY COUNCIL ("City Council"); and I am one of its attorneys of record in this case.

3. I am and have also been a resident of Defendant CITY OF DEARBORN HEIGHTS ("City").

4. The following quoted allegations and assertions in the City's Response and Brief in opposition to the City Council's Motion for Sanctions related to Mayor Bazzi's deposition are false and/or misleading: "When Mayor Bazzi began serving as Mayor, counsel for Intervening Defendant City of Dearborn Heights, Gary Miotke, served as the City Attorney for the City. Mayor Bazzi subsequently terminated Miotke, creating contention between the two." ECF No. 88, PageID.1669.

5. These allegations and assertions are false and/or misleading in the following ways and for the following reasons:

(a) They falsely portray me as some disgruntled, former employee who has been upset with Mayor Bazzi because I was "fired".

(b) In reality, I served as Dearborn Heights Corporation Counsel from June 1999 until August 31, 2022 as an independent contractor of the City with the City being one of my law practice's clients.

(c) The appointment of Roger Farinha as Dearborn Heights Corporation Counsel effective September 1, 2022 (i) took place in order to have a new, in-house Corporation Counsel who was employed by the City as a full-time, W-2 employee and (ii) did _not_ end my representation of the City.

(d) Instead, I continued to represent the City, handled the City's prosecution of ordinance violations, and was also responsible for other matters and special projects.

(e) I _voluntarily_ ended my representation of the City effective April 30, 2023 when I _voluntarily_ resigned as an attorney representing the City at a City Council Meeting on April 11, 2023.

(f) The end to my representation of City was _not_ occasioned by hostility.

(g) After my resignation was effective, I dropped off the City property that I had in my possession including some of which I gave to Bazzi personally.  After I did so, we shook hands, and I wished him good luck.

(h) Indeed, Farinha wrote an email to me on April 30, 2023 that said:

3

"Thank you Gary. I honestly was surprised and hurt when you quit. I thought I had conveyed my respect for your talent and work at our last meeting. Your institutional knowledge is tremendous and I was looking forward to working with you to maximize your talents.

Again thank you for all of your help transitioning and forgive any of my rudeness.

Roger"

6. The following quoted allegations and assertions in the City's Response and Brief in opposition to the City Council's Motion for Sanctions related to Mayor Bazzi's deposition are also false and/or misleading:

(a) "Unfortunately, five days prior to the deposition, while performing his mayoral duties, Mayor Bazzi was speaking at a community meeting where chaos arose due to interrupters, causing members of the public to call the police and have certain members of the public removed. One such member, according to Mayor Bazzi, was Gary Miotke ("Mr. Miotke"), counsel for Intervening Defendant." ECF No. 88, PageID.1662.

(b) "Unfortunately, on July 26, 2025, the Saturday prior to the deposition, Mayor Bazzi, while executing his duties as Mayor, attended a meeting with Dearborn Heights D7 Dads' Club, a non-profit dedicated to uniting the community and providing athletic opportunities to the local youth. See Ex. "A". The subject of

the meeting was particularly sensitive as it dealt with a potential data breach concerning the youth and their families. A member of the City Council appeared at the meeting and became hostile, causing the parents at the meeting to contact the Dearborn Heights Police. Miotke attended the meeting, causing a disturbance and, according to Mayor Bazzi, causing the event to turn toxic. *Id.* Miotke was also asked to leave the event. Mayor Bazzi considered the actions of Miotke to be provoking and anxiety-inducing." ECF No. 88, PageID.1670-1671.

7. These allegations and assertions are false and/or misleading in the following ways and for the following reasons:

(a) I was not an "interrupter" of the meeting who caused a disturbance and allegedly caused members of the public to call the police.

(i) The meeting was advertised as an *open meeting* at a *City-owned and operated, public park*. Specifically, the D7 Dads' Club Facebook post about the meeting stated in pertinent part: "Here at dad's club transparency is key, especially in situations like this. That being said tomorrow morning at 11 AM at Swapka Park, we ask that you please arrive 10 minutes early so we can get right to business at 11. *Here we will have a update for any parent, guardian or concerned individual that is interested in attending.*" (emphasis added).

(ii) As a "concerned individual", I went to the meeting, saw City police vehicles already parked in the parking lot, walked past a police officer who was a

short distance from the meeting, took a seat at a table, and said nothing.

(iii) Very shortly thereafter, Bazzi was speaking, noticed that I was present, *and then interrupted the meeting* by noting my presence and saying that "I don't know if you guys want an attorney over here".

(iv) After this, several people blurted out brief comments or questions, I agreed with Bazzi's comment that I did not represent him or the City and said I was attending because I was curious, and a woman sitting close to me said she would appreciate it if I would leave.

(v) Despite the meeting being advertised as a public meeting, I agreed to leave based on her request, got up, started to walk out, responded briefly to a few more comments that were blurted out to me, and voluntarily left the meeting.

(vi) My involvement in the meeting lasted for less than a minute, certainly did *not* cause a disturbance, and certainly did *not* cause members of the public to call the police since they were already outside of the meeting and did *not* need to come into the meeting due to my presence.

(b) I was <u>not</u> "removed" from the meeting by the police or anyone else.

(i) Despite the event being advertised as a public event, and as stated above, I agreed to leave based on a woman's request, got up, and voluntarily walked out of the meeting.

(ii) I was <u>not</u> accompanied by or escorted out of the meeting by any police

officer or anyone else.

(iii) My only interactions with the police officers who were present were extremely limited and totally benign. I walked past one police officer on my way up to the meeting. I also saw another police officer as I walked back to my car in the parking lot and we greeted each other.

(c) I did not do anything at the meeting that could reasonably cause Bazzi to refuse to attend his deposition if I was present.

(i) Other than to acknowledge and agree with Bazzi's comment that I did not represent him or the City, I did not acknowledge or respond to anything that Bazzi said. Even in doing this, I avoided directly interacting with Bazzi and said to those present as opposed to him, "No, I don't represent the Mayor or City."

(ii) I also did *not* do or say anything that was threatening or hostile to Bazzi or to anyone else at the meeting. Nor did I do or say anything that could be mistakenly taken to be a threat or hostile action against any of them.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 24, 2025

_____
GARY T. MIOTKE

# EXHIBIT B

July 25, 2025 D7 Dads' Club Facebook Post





Posts    About    Photos    Videos    More ▾

**D7 Dads' Club**
Jul 25 · 🌐
  ···

We understand parents frustrations about the ongoing situation with the city and our children's information.

Here at dad's club transparency is key, especially in situations like this. That being said tomorrow morning at 11 AM at Swapka Park, we ask that you please arrive 10 minutes early so we can get right to business at 11. Here we will have a update for any parent, guardian or concerned individual that is interested in attending. We will also phone in with someone who will have more realistic answers to our questions.

We respectfully decline any council member to attend due to the ongoing confrontations that have and are being observed on social media. The parents will respectfully address city council Tuesday at the council meeting at 6pm. Thank you for understanding as we work through this difficult situation.

Any questions or concerns please reach out via messenger at this time.

👍❤️ 19        3 comments  7 shares

👍 Like      💬 Comment      ↗ Share

**D7 Dads' Club**
Jul 25 · 🌐
  ···



**Sara Short** was live. · **Follow**
Jul 25 · 🌐



**EXHIBIT C**

August 26, 2022 Times-Herald Article

# Heights appoints new corporation counsel, receives Warren Valley Golf Course certificate occupancy estimate

AUGUST 26, 2022 BY TIMES-HERALD NEWSPAPERS 0 COMMENTS

By ZEINAB NAJM

Times-Herald Newspapers



HEIGHTS — The city will again have a new corporation counsel appointee, Roger Farinha, after he was confirmed by the City Council Aug. 23.

The vote was 5-2 with Councilmen Tom Wencel and Robert Constant voting against. The same vote also rescinded the motion by council that had previously appointed Nadia Hamade to the position.

Farinha begins his new role with the city Sept. 1. The new full-time corporation counsel position comes with a $115,000 salary.

A budget amendment was made at the July 12 council meeting to allowed for the hiring. The total cost of the position is $171,925, which includes $13,500 for medical insurance, $1,500 for life insurance and $41,925 for fringe benefits. The funding for the budget amendment will come from the general fund.

Current contractual services with Corporation Counsel Gary Miotke, attorneys O'Reilly Rancilio and Chris Mikula will be smaller as Farinha takes on more work.

During the Aug. 23 meeting, Councilman Hassan Ahmad said he didn't see any experience with municipalities on Farinha's resume.

Mayor Bill Bazzi said Farinha has a lot of experience with the state and Washington, D.C., on numerous occasions with different initiatives.

Bazzi also talked of Farinha's experience with school boards, Detroit Mayor Duggan, forfeitures, real estate, ligation, and prosecution.

Council Chair Dave Abdallah said he made calls and did his own research with people he trusts in the legal field, and was told good things. Farinha has 35 years of law experience.

Constant said this was a major change, and he didn't know if Farinha was a good fit, particularly given all the years of experience the city's current corporation counsel has.

Wencel also expressed similar concerns.

"We should have a corporation counsel coming from that particular that background instead of someone coming in with these multi-faceted backgrounds, and we need someone just to specialize in municipal law for a city our size," he said.

Farinha was not in attendance at the meeting.

The Warren Valley Golf Course repair estimate for the certificate of occupancy was also on the agenda for council to receive, note and file.

Miotke said that the purpose of the item was to make sure it is part of the record, not to approve it or do anything else.

"The contract was already executed previously upon (City Engineer) Ali Dib's estimate coming in," Miotke said. "That's all that was necessary order to active that."

Dib's $757,020 estimate came just under the capped amount of $800,000 for the certificate. He also included a 20 percent gap in the estimate.

The agreement between the city and concessioner Issa Brothers, LLC and Revive Golf Management, LLC has been signed and was conditional upon the certificate of occupancy repair not exceeding $800,000.

A breakdown of the areas where immediate work is needed was $147,000 for cart path pavement repairs; $22,850 for a remote bathroom facilities; $7,500 for electrical supply to the main irrigation water pump; $389,500 to address re-surfacing the west half of the public parking lot; and $55,000 for maintenance yard repairs.

Dib's letter said that some of the work may be completed this season, but that the paving should wait until the spring of 2023 to support the opening date of the facility.

At an Aug. 4 meeting, the council approved the 10-year lease agreement between the LLCs and the city with an annual cost of $60,000 in rent which will be paid in $5,000 monthly payments. Two five-year renewals also were included in the terms.

The agreement says that Issa Brothers will invest $3.4 million into the various upgrades needed while the city will pay for equipment, costing between $790,000 and $1.7 million.

A decision to spend up to $800,00 on repairs and certificate of occupancy was also made at the meeting.

To watch the meetings go to City of Dearborn Heights YouTube channel.

*(Zeinab Najm can be reached at zeinabnajm92@gmail.com.)*

**EXHIBIT D**

April 30, 2023 Farinha to Miotke Email

## Gary Miotke

| | |
|---|---|
| **From:** | Roger A. Farinha <RaFarinha@dearbornheightsmi.gov> |
| **Sent:** | Sunday, April 30, 2023 9:31 AM |
| **To:** | Gary Miotke; Bill Bazzi; Mariana Hernandez |
| **Subject:** | Re: Prosecution Calendar for May |

Thank you Gary. I honestly was surprised and hurt when you quit. I thought I had conveyed my respect for your talent and work at our last meeting. Your institutional knowledge is tremendous and I was looking forward to working with you to maximize your talents.
Again thank you for all of your help transitioning and forgive any of my rudeness.
Roger

Sent via the Samsung Galaxy A52 5G, an AT&T 5G smartphone
Get Outlook for Android

---

**From:** Gary Miotke <gmiotke@miotkelawoffice.com>
**Sent:** Sunday, April 30, 2023 8:45:44 AM
**To:** Roger A. Farinha <RaFarinha@dearbornheightsmi.gov>; Bill Bazzi <BBazzi@dearbornheightsmi.gov>; Mariana Hernandez <MHernandez@dearbornheightsmi.gov>
**Subject:** RE: Prosecution Calendar for May

> **Caution:** This is an external email. Please take care when clicking links or opening attachments.

Roger:



Very truly yours,

GARY T. MIOTKE
Attorney at Law
Phone: (313) 388-4809