## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW
JERROD HART,

Case No. 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

     Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation,

     Defendant,

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,

     Intervening Defendant.

_____

## PLAINTIFFS' (THIRD) OMNIBUS MOTION TO COMPEL AGAINST BOTH PRIMARY DEFENDANT AND INTERVENING DEFENDANT

NOW COME Plaintiffs, KEVIN SWOPE, PAUL VANDERPLOW, AND JERROD HART, by and through their undersigned counsel, to move the Court for entry of an order, for a third time, compelling the City of Dearborn Heights (the "City" or the "Primary Defendant") and the City of Dearborn Heights' City Council (the "City Council" or the "Intervening Defendant" and together with Primary Defendant, the "Defendants") to respond properly to discovery requests as required by law, and state the following:

1

## Case History of Discovery Proceedings to Date

In accordance With E.D. Mich. LR 7.1(a) and the Court's instructions found at ECF # 8, the Plaintiffs hereby certify as follows:

1.     This is the Plaintiffs' third motion to compel, not counting additional analogous documents submitted to Attorney Steven Schwartz (the "Special Discovery Master") on November 12, 2025.

2.     This Third Motion to Compel is brought pursuant to the Court's scheduling order found at Docket 101, which at Paragraph 3 orders all such motions to compel to be filed by January 12, 2026.   [ECF No. 101, Paragraph 3, PageID. 1814].

3.     These proceedings were initiated on January 29, 2024.  [ECF No. 1, PageID.1].    The Plaintiffs filed their first motion to compel 14 months later, on March 10, 2025 (the "**First MTC**" as found at Docket 60).  Plaintiffs voluntarily withdrew their First MTC at this Court's suggestion after it heard argument on the First MTC.  The Court suggested that, with more time, the Defendants might improve their productions.  Thus, the Court accepted Plaintiffs' withdrawal of the First MTC "without prejudice to refiling."   [ECF No. 63, PageID.1187].

4.     After nothing improved in Defendants' behavior or production, Plaintiffs filed their second or "renewed" motion to compel on June 13, 2025 (the "**Second MTC**" as found at Docket 67).  By that time Plaintiffs had been seeking

discovery for twelve months, since June of 2024.  The Court heard oral argument on the Second MTC[1] on or about August 28, 2025.  Immediately after oral argument concluded the Court stated that its already large workload and other pressing matters did not allow it to spend the time that would be necessary for a thorough adjudication of discovery disputes.  *See also*, Docket 95, Paragraph 1, PageID.1768 (discussing the Court's unavailability and the likely greater effectiveness of a special discovery master).

5.     Accordingly, the Court appointed the Special Discovery Master to oversee all discovery matters, and to be paid hourly, 50%-50%, by the parties.  That order was entered on October 1, 2025.  [ECF No. 95].

6.     Although the Court had admonished the parties to work harder on discovery as the Special Discovery Master ramped up, both Defendants took a discovery vacation thereafter.  Both Defendants ignored their existing discovery obligations, and both were also largely non-responsive to discovery related communications, for over a month.  Defendants intentionally wasted the entire month of October 2025.

---

[1]  The full briefing of the Second MTC would consist of two sets of responses and replies, one set per Defendant.  As such, it consists of Dockets 67, 78, 79 for the City Council, and Dockets 67, 80, and 82 for the City. All such briefing is incorporated by reference here.

7.     Discovery matters were not retaken up again in earnest until November 7, 2025, when the Special Discovery Master took control of discovery and began holding zoom meetings on discovery disputes.

8.     Eventually, the litigants proposed a new scheduling order to the Court to give time for the Special Discovery Master to complete his review of all open discovery issues, including both interrogatory and document production disagreements.   [ECF No. 100].   The Special Discovery Master supported the new schedule.

9.     On December 29, 2025, however, this Court entered a modified scheduling order found at Docket 101 which contained a revised and accelerated schedule.   The Court imposed a deadline of December 31, 2025 for the completion of all written discovery production.   [ECF No. 101, PageID.1813].

10.     However, as of December 31, 2025, the Special Discovery Master – through no lack of his own diligence – had only heard arguments and issued suggestions to the parties pertaining to Federal Rule of Civil Procedure (FRCP) Rule 33 *interrogatory disputes*.   *See* Exhibit 2.

11.     The Special Discovery Master has stressed, moreover, that he had no power or authority to compel either of the Defendants to abide by his suggestions concerning interrogatories and could only make recommendations to this Court if his suggestions were not followed.

4

12.     Although the Plaintiffs have urged that document production issues should also be analyzed, as of December 31, 2025, the Special Discovery Master has not yet had the time or opportunity to analyze or entertain arguments from the litigants *as to* FRCP Rule 34 *document productions*.   There is, moreover, little-to-no chance of either Defendant voluntarily improving its production at this late date and with the production deadline now in the past.

13.     On December 31, 2025 the City, but not the City Council, made an amended production.   The City's production contained satisfactory amended interrogatory answers, and an entirely unsatisfactory new document production.

14.     The upshot of all this history is this:  ***there has never once been any consequence or penalty whatsoever in the entire two-year history of these proceedings for the systematic and intentional violations of federal discovery law that both Defendants have committed.***   Again, the First MTC was withdrawn without prejudice, at the Court's suggestion, in the hopes that the situation would improve by itself.   The Second MTC ended with the appointment of a Special Discovery Master who has worked diligently with the limited time that he was given, but who has no legal power or authority to force the Defendants to produce anything. And the Special Discovery Master did not get the opportunity to address discovery disagreements *about document productions* before the production deadline passed.

15.    The City Council has ignored all of the Special Discovery Master's suggestions as to how to improve the Council's interrogatory answers.   The City Council has not produced one document in discovery.

16.    The Plaintiff has spent scores of hours attempting to resolve discovery disputes through meet-and-confers, letter writing, motion practice, and other methods for two years now.  All such efforts are relevant here.

17.    For the same reason, the briefing and case law that the Plaintiffs have provided in support of their First MTC and for their Second MTC also remain as relevant as they ever were, except that the Primary Defendant's amended interrogatory answers are no longer in dispute thanks to the pressure provided by the Discovery Special Master.   For that reason, Plaintiffs hereby incorporate by reference all case law, arguments, and exhibits found or attached to the First and Second MTC.

**The Plaintiffs' own discovery production is not at issue**

18.    The Defendants have paid so little attention to discovery matters that they did not even ask for their own discovery productions from the Plaintiffs until June of 2025, or around 18 months after these proceedings began.  As of November 7, 2025, Primary Defendant was not even aware that it had already received timely and robust interrogatory answers three months earlier on July 3, 2025.

19.     The City of Dearborn Heights has demanded that the Plaintiffs produce all City documentation in their possession, which means that the Plaintiffs have now produced about 400 times more pages *of the City's own documents* to the City than the City has ever been able to find or produce to the Plaintiffs.

20.     Plaintiffs have produced approximately 396,000 pages of the City's own documents to the City because that is what the City's attorney demanded that Plaintiffs do, even though such documentation is largely irrelevant. Plaintiffs also produced 300+ pages of their personal tax information after a protective order was negotiated and entered to protect such highly confidential documentation.

21.     The City, in return, has produced fewer than 1,000 pages of its own documentation to the Plaintiffs after two years of fighting over discovery, and an estimated 60% of those pages are meaningless filler that Plaintiffs cannot use, did not ask for, or are duplicate copies.

22.     Defendants have never brought any motion before this Court alleging that Plaintiffs have behaved improperly in discovery, and Defendants have made no efforts before the Special Discovery Master to improve Plaintiffs' production, which already complies with law. Any new issue that Defendants "discover" after the filing of this document will, accordingly, be an attempt at fabricating make-weight issues to give the Defendants a talking point when this motion is discussed.

23.     This Court's appointment of the Discovery Special Master requires the Plaintiffs to pay for ½ of the resulting legal bill in addressing discovery problems not of their making, even though their own discovery production is entirely proper and is not contested.   *See* Docket 95, at Paragraph 5.

**The Intervening Defendant has (1) not produced a single document in discovery, (2) made discovery responses that are in open violation of discovery law, and (3) ignored the recommendations of the Special Discovery Master**

24.     The Intervening Defendant (i.e. the City Council) has not produced a single document in discovery to date, and its written responses to discovery are textbook examples of how to answer discovery deceitfully and in complete violation of established discovery law, which requires plain and forthright responses and "despises" boilerplate objections.   The Intervening Defendant has layered on page after page of generalized boilerplate objections (six pages in total) and nonsensical privilege arguments, and then disclosed nothing. *See* **Exhibit 1.**[2]

25.     Intervening Defendant has also ignored the written recommendations of the Special Discovery Master.   *See* **Exhibit 2** for such (ignored) recommendations.

26.     This refusal of the City Council (i.e., the Intervening Defendant) to provide any discovery whatsoever is in clear defiance of this Court's own order letting the City Council Intervene in this case, which unconditionally provided that

---

[2]   All numbered Exhibits will be attached to the brief in support and not to this Motion.

"[i]n addition, City Council will be subject to discovery issued by the other parties." [ECF No. 47, PageId.728].

27.     The City Council now argues that the scope of the discovery that Plaintiffs can request is limited to whatever the City Council unilaterally decides that scope should be, judged by its own goals for this litigation rather than the Plaintiffs' goals.  *See* City Council answers at Exhibit 1.  That is not what this Court ordered at Docket 47, and that is not how discovery works.   Plaintiffs can use discovery in any proper manner that they see fit, and Defendant does not get to "adjudicate" what is in or outside the proper scope of discovery.

**The Primary Defendants' production is intentionally woeful**

28.     The Primary Defendant's first production in these proceedings was both improper and six months late.  *See* First MTC, Docket 60, and its exhibits. Matters have not improved much since, except with respect to late-arriving amended interrogatory answers provided on New Year's Eve, and there only thanks to the intervention of the Special Discovery Master.

29.     This is, or should be, a document-intensive case.  Documents in the possession of the City, if produced, would confirm and cover not only Plaintiffs' efforts to reform this municipal police department (all documented) as well as the Defendants' campaign of racial discrimination and First Amendment retaliation that followed (often documented).

9

30.     Plaintiffs – who are ex-City managerial personnel with intimate personal knowledge of the City's document base – are able to describe with detail where certain responsive documentation resides on the City's computer programs and information systems.  Plaintiffs know more about the City's document base than does the City's primary counsel, or likely even its current Mayor.  Yet the City refuses to produce extant and highly relevant documentation, and it is not clear if it even has tried to look for it.

31.     Primary Defendant appears to be producing only communications that it wants to produce or has easily on hand.  The City's production to date, as with its written answers to discovery, is often slipshod, plagued by gaps, and nonsensical.

32.     The Primary Defendant also appears to be taking the position that it is not bound to turn over materials such as communications sent to or received by City Council members concerning the events described in the Amended Complaint, despite the City Council constituting a component of the City's governmental apparatus.  As a result, and *given the refusal of the City Council to produce anything at all*, the Plaintiffs cannot prepare for trial or for FRCP 56 proceedings.

### Conclusion

33.     The ability to obtain discovery in litigation is not a due process right per se.   Discovery is, rather, a procedural privilege provided to litigants, by rule, and supervised under court discretion.  In this instance, however, the dysfunction

has reached the point that a basic lack of due process exists in these proceedings, even if no due process "right" is involved.  The FRCP are being flouted, specifically FRCP 26 and its progeny, and there has been no consequence whatsoever for Defendants' wrongful actions in the last 18 months.

34.    Plaintiffs have not been able to adequately prepare for trial and therefore stand prepared to evoke FRCP 56(d) in response to any motion for summary judgment that they may face in the future.   Thus, matters will drag on even further if the discovery situation described above is not corrected.

35.    The FRCP are just that, rules.   They are not loose suggestions that a litigant can ignore.   The Sixth Circuit demands that they be followed.   *See, e.g., Badalamenti v. Dunham's, Inc.*, 118 F.R.D. 437, 440 (E.D. Mich. 1987)("Such behavior is intolerable because it defies the Federal Rules of Civil Procedure and threatens the effectiveness of our discovery rules."); *see also Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013)(*partially quoting Harmon v CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997): "A defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is '*required to waste time, money and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide*.'")(emphasis added).

36.    Plaintiffs first propounded discovery requests on the Primary Plaintiff on June 26, 2024 and have been attempting – in complete futility, and at great

expense and prejudice – to obtain a proper discovery production from the Primary Plaintiff (the City of Dearborn Heights) ever since.

37.    Plaintiffs have spent scores of hours and thousands of dollars attempting to gain compliance with basic discovery law in these proceedings

## RELIEF REQUESTED

The Plaintiffs request that this Court assert its authority and exercise control over discovery.  Eighteen months' worth of discovery games are enough.  Plaintiffs' ability to fend off summary judgment attacks, and to prepare for trial, is already materially prejudiced by what has happened.  Primary Defendant should be compelled to conduct full document searches and provide evidence of same on pain of having a judgment entered against it if it does not.  Counsel to the Primary Defendant should be compelled to provide a detailed certificate of all searches made, across all departments and databases.  Consistent with FRCP 37, Primary Defendant should be compelled to pay 100% of all legal expenses and attorney's fees billed by the Special Discovery Master, not half.

The Intervening Defendant, whose behavior has been arrogant and egregious, should be sanctioned, costs should be assessed, and an order should be entered prohibiting the Intervening Defendant from introducing any evidence whatsoever, either testimonial or documentary, at any trial or evidentiary proceeding to take place in the future in these proceedings.

WHEREFORE, Plaintiffs respectfully request that the Court grant this Third

Motion to Compel.

Dated: January 12, 2026         Respectfully submitted,

                                /s/ Stephen J. Brown
                                FAUSONE & GRYSKO PLC
                                Brandon M. Grysko (P82751)
                                Stephen J. Brown (P82687)
                                (jbrown@thefgfirm.law)
                                Counsel to Plaintiffs, (248)-912-3213
                                41700 West Six Mile Road, Suite 101
                                Northville, Michigan 48168-3460

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW                Case No. 2:24-cv-10240
JERROD HART,                                Hon. Mark A. Goldsmith
                                            Magistrate David R. Grand
     Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation,

     Defendant,

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,

     Intervening Defendant.

_____

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

### STATEMENTS OF THE ISSUES PRESENTED

1.    Whether justice and the federal rules of discovery require the Intervening Defendant to respond to discovery requests, to be sanctioned as requested in the motion, and to pay FRCP Rule 37(b) fees and costs?

Plaintiffs' Answer:          Yes.
Intervening Defendant's Answer:   No.
Primary Defendant's Answer:    No.
The Court Should Answer:      Yes.

1

2.      Whether justice and the federal rules of discovery require the Primary

Defendant to improve the production thus far made by actually searching for and

producing all responsive documentation in its possession and to pay FRCP Rule

37(b) fees and costs?

| | |
|---|---|
| Plaintiffs' Answer: | Yes. |
| Intervening Defendant's Answer: | No. |
| Primary Defendant's Answer: | No. |
| The Court Should Answer: | Yes. |

3.      Whether, given the current record and the uncorrected behavior that the

Defendants have exhibited, Plaintiffs have been afforded a *minimal and acceptable*

*due process* in these proceedings to date?

| | |
|---|---|
| Plaintiffs' Answer: | No. |
| Intervening Defendant's Answer: | Yes. |
| Primary Defendant's Answer: | Yes. |
| The Court Should Answer: | No. |

## CONTROLLING LAW AND MOST APPROPRIATE AUTHORITY

The Plaintiffs primarily rely on Fed. R. Civ. P. ("FRCP") 26 and related case law controlling and providing for discovery productions in the Sixth Circuit and in other appellate circuits.

## ARGUMENT

Considering the discovery arguments found in the motion above and in the contents of two previous motions to compel (Docket 60, 67, plus all exhibits), both of which are incorporated here by reference, Plaintiffs believe there is little value left in delivering still more "argument" to this Court concerning discovery. The facts speak for themselves and the legal issues before the Court are simple.

Plaintiffs shall therefore confine themselves in this section to providing an index of past factual allegations, analysis and arguments already made but still relevant here, by subject matter and supporting case law, and where they are already found in the record:

- Factual allegations underpinning First MTC:   See First MTC at Docket 60, PageID. 1071-1074 and Exhibits 1-10, found at Docket 60-1 and 60-2;

- Factual allegations underpinning Second MTC:  See First MTC at Docket 67, PageID. 1229-1230 and Exhibits 1-5, found at Docket 67-1 through 67-5;

- Law of Discovery in the Sixth Circuit, including case law *discussing boilerplate objections*:  Docket 67, PageID. 1230-1231;

- Analysis of what types of communications and government texts, including on personal communication devices, are subject to mere Michigan state Freedom of Information (FOIA) requests, and accordingly cannot be argued

to be excluded from the scope of federal discovery:  Docket 79, PageID.1399-1400; and

- Analysis of City Council's claims of "legislative privilege"; Docket 67, PageID.1232-1240 (also attached hereto as **Exhibit 3,** for the Court's convenience).

## A PUNCH LIST OF INCOMPLETE DISCOVERY ITEMS
## BY FOUR CATEGORIES

A punch list of still-open discovery disputes is likely to be more useful to the Court than still more argument.   The punch list/analysis found below covers <u>four</u> <u>subjects</u>: (1) Intervening Defendant's interrogatory answers, (2) Intervening Defendant's document production, (3) Primary Defendant's interrogatory answers and (4) Primary Defendant' document production.

<u>Subject #1</u>:  the Intervening Defendant's interrogatory answers are found at **Exhibit 1**.  Plaintiffs asked the Intervening Defendant a total of 11 interrogatories. Intervening Defendant, after first making six pages of preliminary objections, started providing answers on page seven of Exhibit 1.  All told, Intervening Defendant has provided proper answers to interrogatories numbers 1 and 9.   That leaves open Interrogatories 2, 3, 4, 5, 6, 7, 8, 10 and 11.   After carefully reviewing all materials, the Special Discovery Master has provided specific recommendations on how to handle these disputes, which recommendations were often useful and pragmatic compromises that were acceptable to Plaintiffs.   *See* **Exhibit 2**.

On November 26, 2025 the Special Discovery Master made written recommendations for how to answer Interrogatories 2-5, 6-7, 8 and 11 at pages 2-3 of Exhibit 2.   The Intervening Defendant has not revised its answers, however, and is now disregarding and ignoring the Special Discovery Master's recommendations. As such, that still leaves open and disputed Interrogatories 2, 3, 4, 5, 6, 7, 8, 10 and 11.  All are found at Exhibit 1 and will not be repeated here

Subject #2:   the Intervening Defendant's document production written responses are also found at Exhibit 1.   All told, Plaintiffs made a total of 14 different productions.   Plaintiffs first served their production requests on the Intervening Defendant on January 24, 2025. In response, Intervening Defendant answered almost each such request with the same rote objection[3] that it cut and pasted in every answer.   See Exhibit 1 at pages 14-27.   *To date, Intervening Defendant has never produced a single page in response to these 14 production requests*, although its answer to production requests 8, 12, and 13 are acceptable as written.   As discussed above, the Special Discovery Master has not yet analyzed document production disputes by the time the production deadline passed.   As such, production requests 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, and 14 are still open and disputed and all are found at Exhibit 1, starting at page 14 thereof.

---

[3]   Intervening Defendant's objection is described and analyzed at great length in the Second MTC, found at Docket 67, PageID. 1233-1236.   To assist the Court, that entire rebuttal argument is reattached hereto as **Exhibit 3** to this motion.

Subject #3:   The Primary Defendant's interrogatory answers and all disputes pertaining to the substance of such answers are now resolved, thanks to the efforts of the Special Discovery Master.   The only thing still missing is the mandatory FRCP 33(b)(5) signature of the fact witness making the interrogatories, which Plaintiffs have requested at Exhibit 4, Paragraph 1.   FRCP 33(b)(5) provides in part: "[t]he person who makes the answers must sign them."   To date, no verification page has been received for  the original interrogatory answers 6 through 15, or for the amended answers to such interrogatories.   The lack of a verification page prevents Plaintiffs from calling the right witnesses at trial or conducting cross-examination of the fact witness who made the answers.

Subject #4:  The Primary Defendant has produced to date a total of 904 pages of documentation, Bates-stamped "CODH 0001" through "CODH 0904."     The Plaintiffs have, in turn, made a grand total of 48[4] document production requests.  The Plaintiffs note that the two Defendants have engaged in a shell game here, in which the City Council argues that it does not have its own records because the City has them, and the City argues that it cannot answer for, or does not have access to, City Council documents.   City documents clearly exist because City business cannot be

---

[4]   These requests were not all made at the same time, but rather came in batches.    After each deposition the Plaintiffs requested all relevant City documents specifically mentioned or described by the deponent that they had never seen before or did not have copies of.

conducted in a documentary vacuum, but supposedly nobody has them, neither the City Council, nor the City's executive branch.

After such a review, what follows is a list[5] of un-waived requests that are still missing despite this Court's production deadline of December 31, 2025.  Here is what has not been produced:

a) Written responses to document requests 21 through 39.   Without such written responses Plaintiff cannot tell if responsive documentation is being withheld due to an objection, or does not exist, or is to be provided. Plaintiffs requested such missing answers on January 6, 2026 (see **Exhibit 4**) but had not received any response by the filing deadline for this motion.

b) The City's answer to Request #3 (see **Exhibit 5**) refers only to two videos, but does not include documents.  The request is relevant to the alleged illegal ticket-fixing scheme conducted by certain City Council members, but the City claims not to have documents created by, sent to, or sent between City Council Members.

c) The City's answer to Request #4 (see Exhibit 5), both makes a boilerplate "unduly burdensome" claim but then also, illogically, claims that nonresponsive does not exist.    The request goes directly to City Council racism.   The City should be compelled to describe where and how it searched, including private texts and emails.

d) The City's answer to Request # 11 (see Exhibit 5) claims that no documents created by, sent to, or sent between City Council member exists:  concerning the Council's plans to retroactively defund the Swope and Vanderplow positions.  The City should be compelled to describe where and how it searched, including private texts and emails.

e) The City answer Request #12 (see Exhibit 5) by stating that it has no documents whatsoever in its possession, including any document written by a City Councilperson, pertaining to prevention of payments to Swope

---

[5]  If Primary Defendant claims that it has provided responsive documents, then let it please describe by Bates-stamped page where these documents are located in its production.

and Vanderplow.  The City should be compelled to describe where and how it searched, including private texts and emails.

f) Request # 17 requests the metadata for a particular answer to a request to admit made by the City, because the parties dispute when the document/answer was created and the metadata would indicate a document creation date.   If the document was not created by a particular date, then (because it was an answer to a request to admit) an admission would result under FRCP 36(a)(3).   Counsel to the City has such metadata on her firm's computer system but refuses to provide it.   Counsel claims that such request for *metadata* is overly burdensome, lacks relevance, and is attorney client privileged.  See **Exhibit 6.**  All three claims are facially absurd:  Metadata concerning a document is, under these facts, relevant factual information that is easily produced.

g) Requests ## 21-39 and the City's response to them are hard to gauge, because written answers have never been provided (see item (a) above), so it is impossible to tell if responsive documents exist but are being withheld due to an objection.   What is clear is that responsive documents, for whatever reason (either objection, failure to look, nonexistence), have clearly not been provided for requests #22, 24, 25, 27, 28 and 31.

h) Answers to requests 40-48 do exist (*See* **Exhibit 7 at page 9**), but contain statements that are not credible, gap-filled, or are objectively wrong.

    a. For example, # 40 seeks budgetary items for years 2022 through 2025 (the years relevant to this dispute).   In response, the City states that documents Bates-stamped 497 through 885 are responsive.   But the first 100 pages or so concern 2020, an irrelevant year.   This is a example of how the City claims it had produced "hundreds" of documents.   Then materials for other years are skipped.   Materials for the year 2025 and 2026 are included twice.   Compare, for example, pages CODH 755 and 819.   The documents produced are in different formats and contain different materials for each year covered.   This is another junk production that contains hundreds of pages but is not made in good faith;

    b. #41 asks for all the types of documents that the Intervening Defendant used to cross-examine Mayor Bill Bazzi at his deposition, despite also not producing one document to the Plaintiffs.   The City

Council can find documents for its own purposes, its vendetta against Bazzi, but not for discovery.   The City claims that such a request is "vague" and that such documents are only in the possession of the City Council.  *See* **Exhibit 7 at page 9.**

c.   Additional failures to response properly, or to actually include responsive documents, would include 42, 44, and 46 (the referenced documents are non-responsive).

## CONCLUSION

The City Council, a/k/a the Intervening Defendant, has used this Court as a plaything and a medium for broadcasting political propaganda.  The City Council's written discovery responses to date are cynical attempts to flout the law of discovery. The City Council thinks it can have it both ways by intervening in these proceedings, firing off irresponsible allegations and political insults (e.g., Dockets 50, 66), but then ignoring discovery.  Having first convinced this Court that the City Council had its own institutional interests to protect, now the City Council tells the Discovery Special Master that it really does not exist at all, except as a loose collection of individuals that are not party to these proceedings.   Having wasted a year of this Court's time and caused the Plaintiffs thousands of dollars of legal fees, and with the political winds changing, the City Council now says "never mind" and pleads legislative privilege when it comes to discovery.

The City Council should be sanctioned under FRCP 37, if nothing more as a demonstration to others who would otherwise treat federal litigation as if it were a game.

As for the City itself (as opposed to the City Council), its discovery production to date is a *bad faith* production.   The Plaintiffs know that documents exist that are responsive to their requests because they worked as administrators for the City and once saw (or actually drafted) the documents and emails in question.   Most of these documents have not been produced in discovery.   Plaintiffs seek the protection of this Court in discovery or they will continue to be materially prejudiced and unable to prepare for trial or for summary judgment proceedings.

Dated: January 12, 2026          Respectfully submitted,


/s/ Stephen J. Brown
FAUSONE & GRYSKO PLC
Brandon M. Grysko (P82751)
Stephen J. Brown (P82687)
Counsel to Plaintiffs
41700 West Six Mile Road, Suite 101
Northville, Michigan 48168-3460
(248) 380-0000
jbrown@thefgfirm.law

## LOCAL RULE CERTIFICATION

I, Attorney Stephen J. Brown, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnote); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

Respectfully submitted,

/s/ Stephen J. Brown

## CERTIFICATE OF SERVICE

I, Stephen J. Brown, hereby certify that on the January 12, 2026 I served a copy of **PLAINTIFFS' (THIRD) OMNIBUS MOTION TO COMPEL AGAINST BOTH PRIMARY DEFENDANT AND INTERVENING DEFENDANT** on all appearing attorneys and service recipients registered for receipt via electronic filing. I declare under penalties of perjury that this Proof of Service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

/s/ Stephen J. Brown

12