# EXHIBIT 2

**Brown, Joseph**

| | |
|---|---|
| **From:** | Steven Schwartz <shslawyers1@outlook.com> |
| **Sent:** | Wednesday, November 26, 2025 3:50 PM |
| **To:** | Brown, Joseph; Grysko, Brandon; Monica Hunt; Tarik Turfe; Sean Farrell; Gary Miotke; kd@hdalawgroup.com |
| **Subject:** | Swope v. City of Dearborn Heights; Case No. 2-24-cv-10240 |
| **Attachments:** | Suggested Revisions to Plaintiffs' Disputed Discovery Requests.pdf |

Counsel:  attached are my suggested revisions to resolve the nine disputed Interrogatories which we discussed this past Monday.  I strongly encourage you to use these suggested revisions and submit your responses by the close of discovery.

Steven H. Schwartz

33228 W. 12 Mile Road, Suite 187

Farmington Hills, MI  48334

(313) 590-3395

<u>SUGGESTED REVISIONS TO PLAINTIFFS' DISPUTED DISCOVERY REQUESTS</u>

The following are suggested revisions to the nine open disputed discovery requests. In responding to these suggested revisions, Defendants would not waive any previous objections that they made in prior written Responses.

The parties should use their best efforts to submit responses by the close of discovery.

1. **Interrogatory 2** (Exhibit A, page 4 of Plaintiffs' First Set of Discovery Requests to City of Dearborn Heights Under FRCP 33, 34, and 36)):

*Please describe and identify all instances in the last five years in which any member of the Council has contacted a witness to a Ticket-Fixing Scheme or a person with a Ticket-Five Scheme.*

[Note: See the definition of "Ticket-Fixing Scheme", p. 3 of Plaintiffs' First Set of Discovery Requests]

Suggested Revision: The period of time is limited to the date each Councilperson was sworn into office or February 28, 2023 [when the appointments of Plaintiffs Vanderplow and Swope were approved by the City Council], whichever is later, until either July 3, 2024 [the alleged date of constructive discharge of Plaintiff Hart or the date the Councilperson's last date in office, whichever is sooner]. The Interrogatory was drafted to inquire into instances where the "member of the Council has contacted a witness to a Ticket-Fixing Scheme or a person with a Ticket-Fixing Scheme"; the responses are limited to where the Councilperson took affirmative action to contact such a person, not where a person initiated the contact with the Councilperson. Individual Councilmembers may invoke the Fifth Amendment.

2. **Interrogatory 5** (Exhibit A, page 4 of Plaintiffs' First Set of Discovery Requests):

*Please describe all instances in the last five years in which the City has paid for one of its agents, managers, employees or members of the Council to travel and receive extra training or education, such as by attending professional conferences or seminars.*

Suggested Revision: The Response shall be limited to professional conferences or seminars in which the City paid the registration and related travel expenses for a Councilperson to attend. The period shall be limited to the period of time as described in the

1

Suggested Revision to Interrogatory 2.  Describe the date of the conference and the name of the sponsoring organization, such as "Michigan Municipal League; June 1 – 3, 2023".

**3.   Interrogatory 12** (Exhibit D, page 4 of Plaintiffs' (Second) Set of Discovery Requests to City of Dearborn Heights Under FRCP 33, 34, and 36):

*Please state the calendar date or date on which the document found at Exhibit A was drafted, completed, signed and mailed (consistent with its own certificate of service).*

Suggested Revision:  State the calendar date or date the document was mailed or emailed (these may be different dates).

**4.   Interrogatory 14** (Exhibit F, page 4 of Plaintiffs' (Second) Set of Interrogatories Under FRCP 33):

*Please state the total dollar amount budgeted for the Dearborn Heights Police Department in each of the years 2021, 2022, 2023, 2024 and 2025.*

Suggested Revision:  State the total dollar amount for years 2021 – 2025 or provide the appropriate page from the City's approved buddget.  It is noted that Defedants' counsel stated in the second virtual meeting that she would be sending a partial answer to this Interrogatory.

**5.   Interrogatory 15** (Exhibit F, page 4 of Plaintiffs' (Second) Set of Interrogatories Under FRCP 33):

*Please state the actual dollar expenditure of the Dearborn Heights police department in each of the years 2021, 2022, 2023, 2024 and 2025 (year to date).*

Suggested Revision:  State the total dollar amount for years 2021 – 2024 or provide the appropriate page from the City's CAFR audit report.  State the total dollar amount for the most recent quarterly or monthly report prepared by the City administration for the current fiscal year, 2025.  It is noted that Defendants' counsel stated in the second virtual meeting that she would be sending a partial answer to this Interrogatory.

**6.   Interrogatories 2-5** (Exhibit H, pages 7-9 of Intervening Defendant City of Dearborn Heights City Council's Responses and Objections to Plaintiffs' Omnibus Discovery Requests):

*Interrogatory 2. Please describe and identify any phone plan or benefit pursuant to which the City pays for, reimburses, or subsidizes cellular telephones or cellular telephone services used by members of the City Council.*

Suggested Revision:  A member of the City administration should advise Defendant City Council's attorney if a phone plan or benefit is offered to City Councilmembers and what that plan is, or provide a written document that describes the plan.

*Interrogatory 3.  If a particular cell phone communications service provider (e.g., AT&T, Verizon, T-mobile, etc.) provides service to members of the City Council as a whole, please identify such communications service provider.*

Suggested Revision: A member of the City administration should advise Defendant City Council's attorney the name of the service provider or state that no such service provider is offered by the City.

*Interrogatory 4.  If no cell phone communication provider provides service to all members of the City Council as a whole, please describe and provide the cell phone communications provider of each member of the City Council.*

Suggested Revision:  Each City Councilmember should disclose the cell phone provider they use, if they use their personal cell phone to conduct City-related business.  The time period is as described in the Suggested Revision to Interrogatory 2.

*Interrogatory 5.  Please provide the cell phone number of the cell phones used by each member of the City Council for purposes of conducting the business of the City Council.*

Suggested Revision:  Each City Councilmember should disclose the cell phone number they use to conduct City-related business.  This information should be considered subject to the confidentiality provisions of the Protective Order entered by the Court.  The time period is as described in the Suggested Revision to Interrogatory 2.

**7.    <u>Interrogatories 6-7</u>** (Exhibit H, pages 10-11 of Intervening Defendant City of Dearborn Heights City Council's Responses and Objections to Plaintiffs' Omnibus Discovery Requests):

*Interrogatory 6. Please describe all instances in which any person who had previously received a Fine or Ticket (defined above)*

3

*contacted a sitting member of the City Council for purposes of appealing, nullifying, or receiving relief from such Fine or Ticket.*

Suggested Revision:  Each City Councilmember (as described in the Suggested Revision to the Interrogatory 2 limitation period) should disclose the date or approximate date they were contacted by a person for the purpose described in Interrogatory 6 and the name of the person.  Individual City Councilmembers may invoke the Fifth Amendment.

**8.    Interrogatory 8.** (Exhibit H, page 8 of Intervening Defendant City of Dearborn Heights City Council's Responses):

*Please describe (including by describing the total expenses to the City) all instances in which a sitting City Council member has traveled to another state or country, gone to a conference, or received professional training at the expenses of the City in the last two years.*

Suggested Revision:  The information contained in the response to Interrogatory 5 is sufficient to respond to this Interrogatory 8.

**9.Interrogatory 11** (Exhibit H, page 14 of Intervening Defendant City of Dearborn Heights City Council's Responses and Objections to Plaintiffs' Omnibus Discovery Requests):

*Please describe all instances in which any sitting member of the Council has been accused of a crime or misdemeanor.*

SUGGESTED REVISION:  Please describe all instances in which any sitting member of the Council (as described in the Suggested Revision to the Interrogatory 2 limitation period) has been convicted of a crime (including any felonies) or misdemeanor.


Submitted by:

/s/ *Steven H. Schwartz*
Steven H. Schwartz
November 26, 2025

4

# EXHIBIT 3

## ARGUMENT

The City Council's written responses to discovery are found at **Exhibit 4** for this Court to inspect.

### 1) **The main problems with the City Council's discovery production to date**

#### A) <u>The City Council – an intervening defendant who chose to be part of these proceedings – refuses to produce a single document, text, or email</u>

On December 13, 2024, this Court ruled that, in allowing the City Council to intervene in these proceedings, "City Council will be subject to discovery issued by the other parties." [ECF No. 47, PageID. 727-728]. The Court placed no limitation on the "scope" of the discovery that could be sought from the Council.

Yet, as the Court can see at Exhibit 4, the City Council has refused to produce a single document or email in response to 14 separate document production requests seeking relevant communications pertaining to a number of relevant subjects or to specific incidents. If all extant documents were produced, they would show an intent (1) to discriminate racially against outsiders who the City Council refers to euphemistically as being "not from our community," meaning non-Arab, (2) to punish the Plaintiffs for fighting the City Council's own corruption, and (3) to conspire to engage in corrupt or illegal acts, or to cover up past corrupt or illegal acts. Extent documentation, if only produced, would show that the City Council's resolution 24-017 is just an instrument of retaliation.

7

The City Council's boilerplate answer to most of the Plaintiff's document

production request (request numbers 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, and 14) is as follows:

> ANSWER/RESPONSE: OBJECTION (S): The City Council objects as
> this request is irrelevant to any party's claims or defenses in this case.
> Here, Plaintiffs are seeking production of communications by and
> amongst City Council members but fail to reasonably tailor the request
> to only such communications in the Council members' official capacity.
> The individual City Council members, in their individual and non-
> official capacity, are not parties to this case and not subject to the
> jurisdiction of this Court. Furthermore, Courts are not concerned with
> the motives which actuate members of a legislative body in enacting a
> law, but in the results of their action. *Sheffield Development Co. vs City
> of Troy*, 99 Mich. App 527;298 N.W. 2d (1980). In reviewing a
> challenge to a legislative enactment, courts are thereby limited to
> consideration of the legislation itself and other documented legislative
> history. **Motive of the legislators may be examined, however, when
> fraud, personal interest or corruption is alleged in the complaint.
> *Id.* Further, the legislative privilege applies to actions that bear the
> hallmarks of traditional legislation, including discretionary policy
> making.** *Cratty v. City of Wyandotte*, 296 F. Supp.3d 854
> (E.D.Mich.,2017). This request further exceeds the scope of the City
> Council's intervention in this case as Ordered by the Court at ECF No.
> 47.
>
> [Emphasis added by Plaintiffs].

Where to start with such a disingenuous writing?   In the first place, the City

Council's quoted text above concedes that "motive of the legislators may be

examined . . .when fraud, personal interest, or corruption is alleged in the complaint."

And these things are in fact alleged in the complaint.   The Amended Complaint

(Docket 48) in these proceedings expressly alleges that the City Council has engaged

in corrupt actions, including a ticket-fixing scheme.   Plaintiffs were hired to combat

that corruption, which is also why Defendants have come after the Plaintiffs and retaliated against them.   (Docket 48, ¶¶ 20, 22, 23, 24, 25).

The Amended Complaint does in fact allege that the City Council is corrupt and that its members have cooperated and conspired to retaliate against and to coerce the Plaintiffs, in part because they have a personal interest in protecting their own corruptions from being exposed to public view.   (Docket 48, ¶¶ 26, 27, 36, 37, 39, 42, 45, 48, 53, etc.).   Thus, the City Council's own case law, quoted above, shows that such alleged actions cannot be shielded from discovery using legislative privilege.

Second, "legislation" is not even at issue in these proceedings and no discovery is sought concerning the enactment of any "law."  *See, e.g., Cratty v City of Wyandotte*, 296 F. Supp. 3d 854, 857 (E.D. Mich. 2017)("Not all government acts are legislative in nature . . ."). The closest that the City Council has come to enacting a "law" here was there blatantly illegal and "unconstitutional" attempt to pass a resolution, Resolution 11-A (aka resolution 24-017), "defunding" two of the Plaintiffs' positions – after Plaintiffs Swope and Vanderplow had been on the job for over a year, having been hired by the authority of the Mayor – in the face of signed employment contracts, the FLSA, and in contradiction of the council's previous ratification of such hirings a year before in resolution 23-099.

9

On January 22, 2024 Mayor Bill Bazzi sent the City Council a fully reasoned memo researched by Attorney Roger Farinha, the City's corporate counsel. That memo patiently explained how their resolution 11-A violated the City's charter and was "ultra vires," "void ab initio," violated the Dearborn Heights Charter and at least one federal employment law. See **Exhibit 5**.

In sum, there is no legitimate law-making in this fact pattern that could possibly implicate a legislative privilege. The United States Supreme Court has made clear that excluding relevant evidence can only be justified when exclusion is for such a high public good that it transcends "the normally predominant principle of utilizing all rational means for ascertaining the truth." *Trammel v. U.S.*, 445 U.S. 40, 50, 100 S.Ct. 906 (1980). Here, nothing good comes from allowing this particular City Council to hide its dirty laundry from the public.

As for what documents are sought, Plaintiffs seek discovery of emails and texts – hence the particular focus on the cell phones used by Council members for official city business, phones that are paid for with tax dollars – demonstrating corruption, racial preferences for Arabs, and the coordinated attempt to retaliate against Plaintiffs for having the temerity, in addition to being racial outsiders, to investigate the corruption within the government of Dearborn Heights. Plaintiffs have reason to believe that dispositive evidence resides in the internal nonprivileged communications of City Council members, as will likely reside on their phones and

10

electronic devices.   The City Council's attempts to shield what would obviously be both relevant and potentially game-changing communications must fail.   Electronic evidence of this nature – texts and emails found on electronic devices – are fair game in almost all modern litigation.

Finally, as for the relevance of what is sought, or how appropriate tailored or proportional[2] the requests for production are, the requests speak for themselves and are best analyzed one by one. *See* Exhibit 4.   As will be discussed in greater depth immediately below, the discovery sought is relevant under controlling discovery law.

B) <u>The City Council has dodged most of the interrogatories with improper relevance and scope objections</u>

As for the Council's answers to interrogatories, the City Council starts its response with six pages of improper boilerplate objections, before then making individual but largely identical form objections to each interrogatory that are based in large part on *relevance and scope*.   Relevance is also raised as a basis for the failure to provide requested documents.   The City Council just deems the Plaintiffs' interrogatories "irrelevant" or "outside the scope" of its own intervention – whatever

---

[2]   Intervening Defendant has, to date, not raised a proportionality argument in its refusal to produce documents.   If it does, however, Plaintiffs would counter that documents and emails are easily producible.   What is at stake are the professional careers and reputations of three law enforcement officers, millions of dollars of damages to three careers, and the reputation of the municipal government for the City of Dearborn Heights.   The proportionality test is satisfied.

that means – and then refuses to answer. *See* Exhibit 4. But "relevance" objections in discovery are notorious losers.

"Relevance" is defined by Federal Rule of Evidence as evidence that "has a tendency to make any fact more or less probable than it would be without the evidence." FRE 401. In discovery, this already wide concept of relevance is stretched still wider. Rule 26 of the Federal Rules of Civil Procedure (FRCP) states that "information within the scope of discovery need not be admissible in evidence to be discoverable." FRCP 26(b). While FRCP 26 has been revised in 2015 to emphasize "proportionality," the concept of relevance in discovery is still "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Lindke v Freed,* 2020 U.S. Dist. LEXIS 203940,* 3-4 (E.D. Mich)(*quoting Martin v Bimbo Foods Bakeries, Distribution, LLC,* 313 F.R.D. 1, 5 (E.D.N.C. 2016).

Even after the somewhat constricting 2015 changes to the FRCP, "the basic tent that Rule 26 is to be liberally construed to permit broad discovery" remains unaltered. *State Farm Auto. Ins. Co. v Warren Chiropractic & Rehab Clinic, P.C.,* 315 F.R.D. 220, 222 (E.D. Mich. 2016). As far as the concept of relevant goes in discovery, Rule 26 continues to set a "low bar." *In re Nat'l Prescription Opiate Litig.,* 2025 U.S. App. LEXIS 1879,* 5 (6th Cir., 2025).

In sum, the City Council's "relevance" or "scope" objections to Plaintiffs' interrogatories are inconsistent with the law of discovery in the Sixth Circuit. Additional discussion here is unnecessary; The Court can easily visit Exhibit 4, read the interrogatories one by one, and understand how they are relevant.

C) The City Council has waived its alleged legislative privilege by insisting on being in this case, and by making filings that it must now, in fairness, explain in discovery

The City Council is an actual litigant in this case, and it holds that status by its own choice. It fought its way into this case with a contested motion to intervene what was fully briefed. *See* ECF Nos. 15, 18, 19, 21, 29, 30. The City Council entered this case under the pretext that council members had something special and independent to add to these proceedings, which would be incomplete without their participation.[3] In fact, the City Council told this Court that "without the ability to intervene in this case, the City Council will have no opportunity to protect its legislative interest with respect to this Resolution [24-017]." [ECF No. 15, PageID.

---

[3]   The City Council has yet to file a cognizable claim as this Court instructed it to do after it allowed the City Council to intervene  *See* ECF No. 47; PageID. 729 ("*Within ten days of this order, City Council must file a pleading in support of any interest it seeks to protect.*").   In fact, the most the City Council has managed to do to date is file a highly political attack against the City's corporate counsel and Mayor Bazzi, irresponsibly accusing both men of fraud. *See* ECF No. 50, PageID. 873 ("*Finally, the City Council requests that this Court levy sanctions against Mayor Bill Bazzi and former Corp. Counsel Farinha for their purposeful and intentional fraud perpetrated on this Honorable court.*").   The motion at Docket 50 was contested by both the Plaintiff and the Primary Defendant. *See* ECF Nos. 55, 56.   The most recent "emergency" filing made by the Intervening Defendant continues this personal attack – *see* ECF No. 66 – but otherwise adds nothing new to this case.

160]. And yet now the City Council takes the position that it need not follow the rules concerning discovery that apply to all litigants.

As already discussed above, however, legislative privilege does not apply to these proceedings because they do not involved legislation and because fraud, corruption, and actions taken only for the personal interest of City Council members have been alleged.

Even if legislative privilege were theoretically applicable, it would still have been waived, however, by the City Council's own affirmative actions to intervene in these proceedings. The case of *Powell v. Ridge* is directly on point. There, certain Pennsylvania state legislators moved to intervene in litigation as defendants, stressing that they had to articulate to the court the "unique perspective" of the legislative branch. *Powell*, 247 F.3d 520, 522 (3rd Cir. 2001). Thereafter, these seem legislators refused to cooperate in discovery, arguing that their "legislative privilege" protected them from having to participate in discovery. *Id.* at 523. The court in *Powell* rejected the assertion of legislative privilege under such circumstances, holding that such "self-made defendants sought "what has heretofore been the shield of legislative immunity into a sword." *Id.* at 525.

A similar result obtained in *Ku v. State of Tennessee*, 322 F.3d 431 (6th Cir. 2003), where the court ruled that when a state appears without objection in a federal court proceeding and then litigates "the merits" of the case, it lost the defense of

sovereign immunity. *Id.* at 435.   In sum, the City Council cannot have it both ways here.   The City Council, now in this case by its own decision and defined as the "Intervening Defendant," must comply with discovery.

### 2) The main problems with the Primary Defendant's discovery production to date

#### *A)* An obviously incomplete document production and deficient search for responsive documentation

To date, Primary Defendant has produced 497 pages in discovery, of which approximately 2/3rds consist of redundant inclusions of the same documents, blank pages, computer printouts of indecipherable bulk data, copies of documents that the Plaintiffs already have such as their own employment contracts, inane documents that the Plaintiffs did not request, or the Plaintiffs own letters to City officials, *etc.*

The Primary Defendant has, in other words, followed the standard playbook used by those that want to appear to have produced a meaningful body of documents without producing anything meaningful.   To be clear, Plaintiffs were administrators working with in the city government of Dearborn Heights.  Plaintiffs know that the documents that they seek in discovery exist unless they have been improperly spoliated.

Here is a list of what should be in the City's production to date but is still missing:

# EXHIBIT 4

**Brown, Joseph**

| | |
|---|---|
| **From:** | Brown, Joseph |
| **Sent:** | Tuesday, January 6, 2026 1:43 PM |
| **To:** | Monica Hunt |
| **Cc:** | Steven Schwartz; Tarik Turfe; Grysko, Brandon |
| **Subject:** | Missing Written RFP Responses & Discovery Issues |

Ms. Hunt:

I am reviewing your most recent discovery production now.

1       As for your interrogatories, you appear to have provided good faith answers that closely follow the Special Master's instructions.   As such, these look good.   My only comment here is that you have failed to provide the necessary verification signatures under FRCP 33(b)(5), which is a significant issue because it deprives me of a trial fact witness to cross examine, if I need to do that.   33(b)(5) provides that the person "who makes the answers must sign them," and then goes on separately to talk about the Attorney's duties.    As you are not a fact witness, your signature cannot be a 33(b)(5) signature.   Please provide the signature by way of amendment, and <u>I will consider the interrogatory issues entirely resolved</u>.   It would appear that you intend to have DuJuan Dickerson as signer.   Please explain what his position is and why he is in a position to know what these answers are.

2       As for your document production responses, your first new written answers start at document production request #40.    Forgive me if I am mistaken or I missed an email, but I do not believe you have ever provided written answers to document production requests 21 through 39.    These were sent to you on or about August 4 and August 12th of last year.   (You will recall I sent you new rounds of document requests after each deposition in which witnesses discussed documents that had not been produced before).  I need to see these written responses to ascertain which production requests you are objecting to or refusing to answer.

3       Aside from written answers, I am about to review all new documents that you have produced for completeness.  Unfortunately, the new schedule imposed by the Court did not allow the Special Master to complete his review of our discovery to date as it pertains to document requests and productions.   We had collectively resolved all interrogatory matters late last year, thanks to Mr. Schwartz's help, but we had yet to cover the document production issues.   In our proposed new timeline, there was time to do that in January, but the Court's amended dates now deprive us of that time.   So we are left back where we were before on documents.

Thanks.

**Joseph Brown**
Attorney


**FAUSONE & GRYSKO, PLC**
ATTORNEYS AT LAW

# EXHIBIT 5

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN SWOPE, PAUL VANDERPLOW,
JERROD HART

       Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation

       Defendant.

Case No. 2:24-cv-10240-MAG-DRG
Hon. Mark A. Goldsmith

---

| | |
|---|---|
| MICHAEL M. McNAMARA (P48055)<br>FAUSONE & GRYSKO, PLC<br>Attorney for Plaintiff<br>41700 West Six Mile Road, Suite 101<br>Northville, MI 48168-3460<br>(P)(248) 912-3218; (F)(248) 380-3434<br>mmcnamara@thefgfirm.law | MONICA N. HUNT (P68838)<br>SEAN M. FARRELL (P86402)<br>THE ALLEN LAW GROUP<br>Attorney for Defendant<br>3031 West Grand Boulevard, Suite 525<br>Detroit, Michigan 48202<br>(P)(313) 871-5500; (F)(313) 871-0517<br>mhunt@alglawpc.com<br>sfarrell@alglawpc.com |

---

## DEFENDANT CITY OF DEARBORN HEIGHTS RESPONSE TO PLAINTIFFS' REQUEST FOR INTERROGATORIES AND DOCUMENTS

       Defendant City of Dearborn Heights ("Defendant" or "City"), through their counsel, submit the following answers to the first set of interrogatories by Plaintiffs Kevin Swope ("Swope"), Paul Vanderplow ("Vanderplow"), and Jarrod Hart ("Hart") (collectively referred to as "Plaintiffs"), subject to the General Objections set forth below.

## GENERAL OBJECTIONS

1.      Defendant's answers to Plaintiff's interrogatories were prepared in full compliance with the Federal Rules of Civil Procedure and pursuant to a reasonable and duly diligent search for the information properly requested.  The scope of the investigation conducted to locate responsive information was limited to making inquiries to those most likely to be knowledgeable about the specific matters at issue and to reviewing files in which information related to such matters is ordinarily expected to be found.  To the extent that this discovery set purports to require an investigation that exceeds this scope, Defendant objects on the grounds that such a requirement (1) exceeds the scope of permissible discovery and (2) improperly attempts to impose an unreasonable burden and expense.

2.      Defendant objects to interrogatories that seek confidential or private information, including, without limitation, information subject to attorney-client privilege, the work product doctrine, the deliberative process privilege or any other available privilege, doctrine, immunity or protection.  Insofar as the Federal Rules of Civil Procedure require the production of such information, Defendant objects to providing such documents before entry of a suitable protective order to maintain the confidentiality of such information.

3.      Defendant objects to Plaintiff's definitions and instructions as improper and unduly burdensome to the extent that they (1) purport to impose any obligations

broader than those set forth in the Federal Rules of Civil Procedure, (2) purport to define terms or phrases in a manner different from their ordinary common meaning, and (3) improperly seek information protected by the attorney-client privilege or attorney work-product doctrine.

4.    These answers are based only on such information and documentation that is presently available. Further investigation, research, and analysis may supply additional facts, add meaning to known facts, and perhaps establish entirely new factual conclusions, all of which may in turn lead to substantial additions or changes to these responses.

5.    Defendant objects to those interrogatories which are irrelevant to the subject matter of this litigation and seek facts which do not appear reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to interrogatories that seek information in the possession of the Plaintiff or third parties and requests that are duplicative (in whole or in part) of other requests.

7.    Defendant reserves the right to challenge the competency, relevancy, materiality and admissibility of, or object on any ground, to the use of, information set forth herein (or documents produced herewith) in any subsequent proceeding or the trial of this or any other action.

These General Objections are incorporated by reference into each answer below.  Though each answer may reference a specific objection, the Board does not waive any of its General Objections.  Subject to and without waiving these objections, Defendant answers Plaintiff's Request for First Set of Interrogatories and Documents as follows:

## <u>RESPONSES TO REQUESTS FOR INTERROGATORIES</u>

     1.    State the name of the person providing the answers to these interrogatories.

**ANSWER:** In response to Plaintiffs' Interrogatory Number One, Defendant states that in conjunction with the below signed counsel, Mayor Bill Bazzi assisted in the drafting of the instant responses.

     2.    Please describe and identify all instances in the last five years in which any member of the Council has contacted a witness to a Ticket-Fixing Scheme or a person involved with a Ticket-Fixing Scheme.

**ANSWER:** In response to Plaintiffs' Interrogatory Number Two, Defendant objects to the request objects to the definition of scheme in these interrogatories on the grounds that this definition is overly broad and would require responses that are neither relevant nor proportional to the needs of the case.

     3.    Please describe the computer system and other data storage facility or facilities where all official Documents pertaining to the business of the City - including all human resources files -- are kept and maintained.

**ANSWER:** In response to Plaintiffs' Interrogatory Number Three, Defendant states data pertaining to the business of the City is maintained on an electronic data system network and servers within City Hall. Defendant further states that certain documents of material importance are maintained in a secured location within the Human Resources Department in City Hall.

4.      Please identify the person or persons who serve as the custodian or maintenance providers for the information storage systems mentioned in the interrogatory immediately above.

**ANSWER:** In response to Plaintiffs' Interrogatory Number Four, Defendant objects as the request is vague and lacks clarity. Without waiving any objections, Defendant states that Cameron Eggly, Director of the Human Resources Department, acts as custodian of records for human resources records.

5.      Please describe all instances in the last five years in which the City has paid for one of its agents, managers, employees or members of the Council to travel and receive extra training or education, such as by attending professional conferences or seminars.

**ANSWER:**   In response to Plaintiffs' Interrogatory Number Five, Defendant objects as the request is overly broad and unduly burdensome. Without waiving any objections, Defendant states to see documents attached hereto as Bastes Numbers CODH 0001-0020.

_____
Bill Bazzi

Subscribed and sworn to before me
this _16_ day of January, 2025

_____
_____ , Notary
_____ County, Michigan
My Commission Expires: _____

KARI MCKINNON
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jan 9, 2030
ACTING IN COUNTY OF Wayne

As to Objections Only:

THE ALLEN LAW GROUP, P.C.

By: _____
Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

## RESPONSES TO REQUESTS FOR PRODUCTION

1.      If any answer to interrogatories refers to any Document, please provide such Document.

**ANSWER:**  In response to Plaintiffs' Request for Production Number One, Defendant states to see Bates Numbers CODH 0001-0226. Further, Defendant reserves the right to supplement this request with additional documents.

2.      Please provide all Documents that the City intends to introduce into evidence or otherwise use at any trial or evidentiary hearing to take place in these proceedings.

**ANSWER:**  In response to Plaintiffs' Request for Production Number Two, Defendant states to see Bates Numbers CODH 0001-0226. Further, Defendant reserves the right to supplement this request with additional documents.

3.      Please provide all Documents sent or received by the Council or by any of its members in which relief from a Fine or Ticket is discussed or mentioned.

**ANSWER:** In response to Plaintiffs' Request for Production Number Three, Defendant states to see Bates Numbers CODH 0021-0029 and videos attached and Video Number One and Video Number Two. Further, Defendant reserves the right to supplement this request with additional documents.

4.      Please provide all Documents sent or received by the Council or by any of its members since January 1, 2000 in which the racial, religious, or ethnic characteristics of any police officer or other law enforcement official working for the City is discussed.

**ANSWER:** In response to Plaintiffs' Request for Production Number Four, Defendant states that Plaintiffs' request is unduly burdensome. Without waiving any objections, Defendants state that it is not in position of any such documents.

5.      Please provide all Documents sent or received by the Council or by any of its members discussing or mentioning Item 33.

**ANSWER:** In response to Plaintiffs' Request for Production Number Five, Defendant objects as the request lacks clarity, definition, and relevance to the issues at hand. Without waiving any objections, Defendants state that if Plaintiffs are referring to Agenda Item 33 for the February 29, 2024 Dearborn Heights City Council meeting, Defendants state to see Bates Numbers CODH 0030-0040. Further, Defendant reserves the right to supplement this request with additional documents.

6.      Please provide all Documents sent or received by the Council or by any of its members mentioning Plaintiff Kevin Swope by name.

**ANSWER:** In response to Plaintiffs' Request for Production Number Six, Defendant objects to the request as it is overly broad and unduly burdensome. Without waiving any objections, Defendants state to see Bates Numbers CODH 0043-0045, 0065-0068. Further, Defendant reserves the right to supplement this request with additional documents.

7.      Please provide all Documents sent or received by the Council or by any of its members mentioning Plaintiff Jerrod Hart by name.

**ANSWER:** In response to Plaintiffs' Request for Production Number Seven, Defendant objects to the request as it is overly broad and unduly burdensome. Without waiving any objections, Defendants state to see Bates Numbers CODH 0060-0068. Further, Defendant reserves the right to supplement this request with additional documents.

8.      Please provide all Documents sent or received by the Council or by any of its members mentioning Plaintiff Paul Vanderplow by name.

**ANSWER:** In response to Plaintiffs' Request for Production Number Eight, Defendant objects to the request as it is overly broad and unduly burdensome. Without waiving any objections, Defendants state to see Bates Numbers CODH 0041-0045, 0222-0226. Further, Defendant reserves the right to supplement this request with additional documents.

9.      Please provide all Documents sent or received between the Council (or any of its members) and Khalil Rahal discussing any of the Plaintiffs by name.

**ANSWER:** In response to Plaintiffs' Request for Production Number Nine, Defendant states that no such document exists. Further, Defendant reserves the right to supplement this request with additional documents.

10.     Please provide all Documents sent or received by the Council or by any of its members discussing resolution 24-017.

**ANSWER:** In response to Plaintiffs' Request for Production Number Ten, Defendant Defendants state to see Bates Numbers CODH 0046-0059. Further, Defendant reserves the right to supplement this request with additional documents.

11.     Please provide all Documents sent or received by the Council or by any of its members discussing or mentioning the Council's intent or plan to defund the positions of Plaintiffs Swope and Vanderplow.

**ANSWER:** In response to Plaintiffs' Request for Production Number Eleven, Defendant states that no such document exists. Further, Defendant reserves the right to supplement this request with additional documents.

12.     Please provide all Documents sent or received by the Council or by any of its members discussing the prevention of payments to Plaintiff Swope or Vanderplow or any other employee or agent of the City.

**ANSWER:** In response to Plaintiffs' Request for Production Number Nine, Defendant states that no such document exists. Further, Defendant reserves the right to supplement this request with additional documents.

13.     Please provide all Documents sent or received by the Council or by any of its members mentioning or discussing Sargeant Mohammad Bazzy.

**ANSWER:** In response to Plaintiffs' Request for Production Number Thirteen, Defendant states that no such document exists. Further, Defendant reserves the right to supplement this request with additional documents.

14.     Please provide all of the City's employment, employee or human resources files or materials pertaining to any of the three Plaintiffs.

**ANSWER:** In response to Plaintiffs' Request for Production Number Fourteen, Please see the attached Bates Numbers CODH 0069-0206.


15.    Please provide all Documents created or sent by Councilman Saab mentioning or pertaining to any of the three Plaintiffs, including any and all allegations of harassment or stalking made by Councilman Saab.

**ANSWER:** In response to Plaintiffs' Request for Production Number Fifteen, Please see the attached Bates Numbers CODH 0041-045.

16.   Please provide all Documents sent or received by the Council pertaining to counter-terrorism training for the City's police department, or to any proposal for training the City's police department in counter-terrorism techniques.

**ANSWER:** In response to Plaintiffs' Request for Production Number Sixteen, Defendant states that no such document exists. Further, Defendant reserves the right to supplement this request with additional documents.

Respectfully Submitted,

**THE ALLEN LAW GROUP, P.C.**

By: _____
Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

Dated:  January 15, 2025