## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN SWOPE, et al,

      Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS,

      Defendant,

And

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,

      Intervening Defendant.

Case No.: 2:24-cv-10240

Hon. Mark A. Goldsmith

**MOTION FOR SUMMARY
JUDGMENT OF INTERVENING
DEFENDANT CITY OF
DEARBORN HEIGHTS CITY
COUNCIL**

_____

### INTERVENING DEFENDANT THE CITY OF DEARBORN HEIGHTS CITY COUNCIL'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES** INTERVENING DEFENDANT, THE CITY OF DEARBORN

HEIGHTS CITY COUNCIL (the "City Council"), by and through its attorneys, GARY

T. MIOTKE and HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, and for its

Motion for Summary Judgment pursuant to Fed. R. Civ. P. Rule 56, hereby states as

follows:

The undersigned counsel Mr. Turfe certifies that on January 22, 2025, counsel

for Plaintiffs, counsel for Defendant, and counsel for Intervening Defendant convened

at a discovery meet-and-confer event, in Chambers, with Mr. Steven Schwartz (court

appointed Discovery Master). At that event, counsel for Defendant and Intervening

Defendant discussed their intentions on filing a Motion for Summary Judgment and

i

counsel for Plaintiffs indicated that they did not intend on filing such a motion. Counsel

for Plaintiff did not concur with the relief sought by way of these motions. On February

5, 2026, counsel Mr. Turfe, and counsel for the City of Dearborn Heights, delivered

another email correspondence as an additional formal notice of the defendants'

intentions to proceed with their Rule 56 Motions. Counsel for Plaintiffs did not concur

in the relief sought.

For the reasons, points, and authorities set forth in the accompanying Brief in

Support, the City Council respectfully requests that this Honorable Court GRANT its

Motion for Summary Judgment pursuant to Fed. R. Civ. P. Rule 56, dismissing all of

Plaintiffs' claims pled in its First Amended Complaint **ECF No. 48** with prejudice.

Respectfully submitted,

HAMMOUD, DAKHLALLAH
& ASSOCIATES, PLLC

By: */s/ Tarik D. Turfe*
Kassem M. Dakhlallah (P70842)
Tarik D. Turfe (P83690)
Attorney for the City Council
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com
Dated: February 10, 2026        tt@hdalawgroup.com

By: */s/Gary T. Miotke*
GARY T. MIOTKE (P41813)
Attorney for the City Council
6828 Park Ave

ii

Allen Park, MI 48101
(313) 388-4809
Dated: February 10, 2026                  gmiotke@miotkelawoffice.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN SWOPE, et al,
          Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS,
          Defendant,

And

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,
          Intervening Defendant.

Case No.: 2:24-cv-10240
Hon. Mark A. Goldsmith

**BRIEF IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT OF INTERVENING
DEFENDANT CITY OF
DEARBORN HEIGHTS CITY
COUNCIL**

---

## BRIEF IN SUPPORT OF INTERVENING DEFENDANT THE CITY OF DEARBORN HEIGHTS CITY COUNCIL'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**STATEMENT OF ISSUES PRESENTED**.................................................................... vii

**CONTROLLING OR MOST APPROPRIATE AUTHORITY** ......................... vii

**INDEX OF AUTHORITIES**.......................................................................... viii

**STATEMENT OF FACTS**................................................................................ 1

  I.   **PLAINTIFF'S RELEVANT EMPLOYMENT HISTORY** ...................... 1

  II.  **THE LAWSUIT AND INJUNCTION** ..................................................... 4

  III. **PLAINTIFFS EACH VOLUNTARILY LEFT THE CITY** ..................... 5

  IV. **THE SAAB COMPLAINT** ....................................................................... 7

**STANDARD OF REVIEW**.............................................................................. 8

**LAW AND ARGUMENT**................................................................................. 8

  I.   **THE PLAINTIFFS' 42 USC 1983 CLAIMS FOR FIRST
      AMENDMENT RETALIATION UNDER COUNT I AND COUNT IX
      MUST BE DISMISSED** .................................................................... 8

A. The Plaintiffs Did *Not* Engage In Actionable Protected Speech Or Activity Under *Garcetti*.................................................................................. 8

B. The City Is *Not* Liable Under *Monell* For The Stalking Complaint Against Vanderplow By Hassan Saab Or For The Failure To Approve Payment For The Special Training Sought By Swope ..................................................... 10

II.   THE PLAINTIFFS' STATUTORY CLAIMS FOR DISCRIMINATION AND RETALIATION AS STATED UNDER COUNT II, COUNT V, COUNT VI, COUNT VIII, AND COUNT VIII MUST BE DISMISSED WHERE THE PLAINTIFFS HAVE FAILED TO SHOW THAT THE CITY SUBJECTED THEM TO ANY ADVERSE EMPLOYMENT ACTIONS ............................................................................................. 12

A. Legal Standards For Adverse Employment Actions And Constructive Discharge ........................................................................................ 12

B. Generally, The Plaintiffs Have *Not* Suffered Any Actionable Adverse Employment Action................................................................................ 16

C. None Of The Plaintiffs Have A Valid Claim For Constructive Discharge ........................................................................................ 17

D. The City Never Subjected Vanderplow To Any Adverse Employment Action Via The Saab Stalking Complaint Where Saab Was *Not* Acting As The City's Agent When He Made The Complaint ........................ 18

E. The City Never Subjected Swope To Any Adverse Employment Action Via The Failure To Pay For The Special Training For Swope 18

III.   PLAINTIFFS' COUNT III FLSA CLAIM FAILS WHERE THERE IS NO FACTUAL SUPPORT IN THE RECORD THAT THE PLAINTIFFS WERE EVER PAID WAGES OR SALARY THAT WAS LESS THAN THE FEDERAL MINIMUM WAGE ................................. 19

IV.   PLAINTIFFS FAILED TO ESTABLISH BREACH OF ANY VALID TERM IN THEIR EMPLOYMENT CONTRACTS AS ALLEGED IN THE FAC.............................................................................................. 20

A. The City Had No Contractual Obligation To Employ The Plaintiffs Where They Were "At-Will" Employees............................................. 20

B. No Other Contractual Claim Has Been Made By Any Of The Plaintiffs Against The City In The First Amended Complaint........................... 20

**V.    PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER COUNT X ARE UNFOUNDED**.................................. 22

**RELIEF REQUESTED**............................................................................. 25

## STATEMENT OF ISSUES PRESENTED

**1.** Should this Honorable Court grant Summary Judgment pursuant to Fed. R. Civ. P. Rule 56 dismissing each Plaintiffs' claims in their entirety?

Plaintiffs likely response:               No
Defendant's likely response:             Yes
Intervening Defendant's response:     Yes
This Court should respond:               Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Intervening Defendant relies on Fed. R. Civ. P. Rule 56 and the additional points and authorities presented in the Brief in Support of its Motion for Summary Judgment.

## INDEX OF AUTHORITIES

### Cases

*Agnew v. BASF Corp.*, 286 F.3d 307, 309-310 (6th Cir. 2002) ................................ 15

*AmSouth Bank v. Dale,* 386 F.3d 763, 784 (6th Cir. 2004)................................ 23, 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................ 8

*Benison v Ross*, 765 F3d 649, 660 n2 (6th Cir 2014)................................................ 16

*Boulton v. Swanson*, 795 F.3d 526, 533 (6th Cir. 2015) ........................................... 10

*Bracco v. Michigan Tech. Univ.*, 231 Mich. App. 578 **,** 598 (1998).......................... 20

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) .............................................. 11

*Burlington N & Santa Fe Ry Co v White*, 548 US 53, 68 (2006).............................. 14

*Cady v. Arenac Cty.*, 574 F.3d 334, 345 (6th Cir. 2009).............................................. 11

*Creggett v. Jefferson Cty. Bd. of Ed.*, 491 F. App'x 561 (6th Cir. 2012)(unpublished)
................................................................................................................................ 19

*Dye v. Off of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) ........................ 8

*EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) ....................... 12

*Fischhaber v GMC*, 174 Mich App 450, 455 (1988) ................................................. 15

*Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 971 (6th Cir.
2009)......................................................................................................................... 24

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) .......................................................... 9

*Hammond v United of Oakland, Inc*, 193 Mich App 146, 151 (1992)....................... 14

*Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012) .......................... 9

*Lane v. Franks*, 573 U.S. 228 (2014) ........................................................................ 10

*McNeal v City of Blue Ash*, 117 F4th 887, 900 (6th Cir 2024) ................................. 13

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) .......................................... 11

*Northampton Rest. Grp. Inc. v. FirstMerit Bank, N.A.*, 492 F.App'x 518 (6th Cir.
2012)......................................................................................................................... 21

*Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) ............................................... 15

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ........................................ 11

*Peña v Ingham Cty Rd Comm'n*, 255 Mich App 299, 312 (2003)............................ 14

*Porter v. Erie Foods, Int'l*, 576 F.3d 629, 639-40 (7th Cir. 2009) ............................ 15

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).......... 9

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292 (6th Cir. 2016) ............................. 8

*Terlecki v. Stewart*, 278 Mich. App. 644 (2008) ....................................................... 22

*White v Department of Transp*, 334 Mich App 98, 120-1 (2020).............................. 14

*White v. Baptist Memorial Health Care Corp*., 699 F.3d 869, 873 (6th Cir. 2012) .. 19

*Wiggins v. Argent Mortg. Co., LLC*, 945 F.Supp.2d 817 (E.D. Mich., May 14, 2013)
................................................................................................................................ 22

*Wilcoxon v 3M*, 235 Mich App 347, 364, 597 NW2d 250 (1999) ............................ 13

*Wilson v Firestone Tire & Rubber Co*, 932 F2d 510, 515 (6th Cir 1991) ................ 15

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).....................................................23

**Statutes**

28 U.S.C. § 2201.....................................................................................................23

29 U.S.C. § 206.......................................................................................................19

29 U.S.C. § 217.......................................................................................................22

MCL § 15.363(1).....................................................................................................22

MCL 37. 2201(a)......................................................................................................18

MCL 37.2202...........................................................................................................18

MCL 423.201...........................................................................................................24

Title VII of the Civil Rights Act of 1964 ................................................................12

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................8

ix

## <u>STATEMENT OF MATERIAL FACTS</u>

### I.   PLAINTIFFS' RELEVANT EMPLOYMENT HISTORY

The City of Dearborn Heights City Council submits the following Statement of Material Facts as to which it contends no genuine issue of material fact exists, in accordance with **ECF No. 17, PageID.278 § II.C.2**:

1.   On February 28, 2022, the City hired Plaintiff Jerrod Hart ("Hart") as its Police Chief. **ECF No. 48, PageID.733**.

2.   On January 9, 2023, Plaintiffs Kevin Swope ("Swope") and Paul Vanderplow ("Vanderplow") were appointed by former Mayor Bill Bazzi as Department Heads to Departments that did not previously exist within the City. **ECF No. 15, PageID.155-156**.

3.   Hart, Swope, and Vanderplow were not hired through the procedures of Act 78, rendering such appointments illegal under the City Charter and Michigan law. **ECF No. 15, PageID.155-156**.

4.   Hart, Swope, and Vanderplow entered into employment agreements with the City as **<u>at-will</u>** employees. **ECF No. 48-2, PageID.799-803** ("Hart Agreement"), *Id* at **PageID.793-797** ("Swope Agreement"), and *Id.* at **PageID.805-809** ("Vanderplow Agreement").

5.   All three Plaintiffs allege that beginning in January 2023, they "collectively reported violations and suspected violations of law concerning corruption in the City

government". **ECF No. 48, PageID.733 at ¶20.** The specific allegations are that Plaintiffs reported: issues with evidence chains of custody[1], unprocessed pistol sales records[2]; an illegal ticket quota system[3], mismanagement of forfeiture funds[4], and finally, the infamous "ticket fixing" scheme for "friends of law enforcement officers and elected officials"[5]. Then, Plaintiffs allege that after reporting these violations to the authorities, members of the City Council publicly and privately threatened and retaliated against Plaintiffs. **ECF No. 48, PageID.735-76 at ¶ 26**.

6.    Plaintiffs admitted that these "reports" were always and exclusively made within their employment duties with the City of Dearborn Heights.

| Issue | Responsible Party (according to Hart) | Part of Plaintiffs' Employment Duties? | Citation to Hart Deposition (Exhibit A) |
|---|---|---|---|
| Chain of Custody Issue | Hart | "**Absolutely**" | P. 242 ¶ 15-23 |
| Pistol Sales Issue | Hart | "**yes**" | P. 242 ¶ 24-25, P. 243 ¶1-6 |
| Overtime Ticket Quota Issue | Swope and Hart | "**Absolutely**" | P. 243 ¶ 7-17 |
| Forfeiture Funds Issue | Vanderplow and Hart | "**Yes**" | P. 243 ¶ 18-25, P. 244 ¶ 1-2 |
| Ticket Fixing Scheme | Swope | "**Director Swope, correct**" | P. 244 ¶ 21-25, P. 245 ¶ 1-2 |

---

[1] **ECF No. 48, PageID.734 at ¶22 ("Chain of Custody Issue")**

[2] *Id.* **at PageID.734 at ¶23 ("Pistol Sales Issue")**

[3] *Id.* **at PageID.734 at ¶24 ("Overtime Ticket Quota Issue")**

[4] *Id.* **at PageID,734 at ¶25 ("Forfeiture Funds Issue")**

[5] *Id.* **at PageID.734 at ¶25. ("Ticket Fixing Scheme"). Also, here, Plaintiffs mention the unspecified "other civil rights violations" which still have not been identified with any particularity, over two years into this case.**

7.     Hart was asked about the "other civil rights violations" and he testified that (1) he had <u>received</u> alleged Michigan Department of Civil Rights Violations[6], and (2) reported other instances to "as many people that would listen to me"[7], which included the mayor, outside agencies like the FBI and the Department of Justice, and former councilmembers Dave Abdallah and Ray Muscat[8]. Again, these are all matters well within the course and scope of Police Chief Hart's employment with the City of Dearborn Heights.

8.     Swope confirmed that these reports were made as part of his official duties with the City of Dearborn Heights. **Exhibit B** at **P. 303 ¶ 24-25, 304 ¶ 1-4**.

9.     Vanderplow also confirmed that these reports were made as part of his official duties with the City of Dearborn Heights. **Exhibit C** at **P. 309 ¶ 14-22.**

10.    The FAC alleges that the City Council refused to pay for the special training for Swope at the February 29, 2024 meeting. **ECF No. 48, PageID.739**, **¶ 52-53**.

11.    This allegation is inaccurate because the City Council did not actually vote on the special training for Swope until its May 28 2024 meeting.

12.     The February 29, 2024 meeting minutes reflect that the special training for Swope and other matters listed under claims were removed from the meeting's agenda. See Motion 24-086 at **Exhibit D**.

---

[6] **Exhibit A at P. 245 ¶ 16-25**
[7] *Id.* at **P. 246 ¶ 16**
[8] *Id.* at **¶ 14-23**

13.     The Swope special training was added to the agenda as Item 9-B for the May 28, 2024 City Council Meeting. See Motion 24-191 at **Exhibit E** and Motion 24-220 and Meeting Minutes at **Exhibit F**. Thereafter, the City Council voted on the matter, but it did not pass due to a 3-3 tied vote with one member being absent. *Id.* at Motion 24-228. This was the last action taken by the Council on this matter.

14.     Swope stated that the training was **<u>not</u>** a requirement for his duties as a police officer. **Exhibit B** at **P. 98 ¶ 7-13.** He admitted that he could have continued to serve in his "director" role without attending such training. *Id.* at **¶ 14-20.**

## II.     THE LAWSUIT AND INJUNCTION

15.     In response to the illegal hires, the City Council passed resolution 24-017 on January 9, 2024, amending the City's budget to remove the budget allocations for the positions of Swope and Vanderplow, Director of Police Operations and Director of Support Services, respectively. **ECF No. 15, PageID.156-157**.

16.     On January 22, 2024, former Mayor Bill Bazzi delivered two memoranda supplanting the legislature's authority with that of the executive, objecting to Resolution 24-017, and directing Plaintiffs to stay working for the City. *Id.* at **PageID.158**.

17.     A week later, Plaintiff filed their Complaint. **ECF No. 1**. Three days after that, Mayor Bazzi put his memoranda into action conspiring with Plaintiffs to enter **ECF No. 4**, the Stipulated Order of Injunction.

4

18.    In the Injunction, Plaintiffs were kept in the employ of the City and the City Council was enjoined from enforcing Resolution 24-017. **ECF No. 4, PageID.84**.

19.    Despite attempts to set aside the Injunction, the Injunction has remained in place throughout the entirety of this case. *Id.*

### III.    PLAINTIFFS EACH VOLUNTARILY LEFT THE CITY

20.    The pendency of the Injunction is important in consideration of Plaintiffs' First Amended Complaint ("FAC"), specifically in the context of the claims for wrongful termination, retaliation, and wage claims under the Fair Labor Standards Act. The reality of each Plaintiff is that they all continued to work with the City, they all were paid fully and completely for the work that they performed, and they all voluntarily left the City in order to pursue other job opportunities and this lawsuit.

21.    Hart served as the Police Chief until he resigned on July 3, 2024. **Exhibit A at P. 59 ¶ 2-5**.

22.    Specifically, Hart testified that he tendered his resignation (characterizing it as a "constructive termination letter") to the (former) Mayor of Dearborn Heights, Bill Bazzi. *Id.* at **¶6-15**.

23.    Hart posted on Facebook that he was retired. *Id.* at **P. 283 ¶23-25**.

24.    Kevin Swope worked for the City until his resignation on December 4, 2024, where he left the City to become the Police Chief of South Haven, Michigan.

25.    On that date, Swope wrote a memo resigning from the City effective January 10, 2025. **Exhibit G**.

26.    Ironically, Swope applied for the South Haven post while he was still employed with Dearborn Heights. **Exhibit H**.

27.    Regarding his wages, Swope stated that made a claim with the Michigan Wage and Hour division, but not for wages, rather, for want of a severance. **Exhibit B** at **P. 174, ¶10-22**.

28.    Otherwise, Swope always got paid his full wage, if not more. Swope's salary was $117,220.00 per **ECF No. 48-2, PageID.806**. However, he testified that he got paid "140 maybe, 130". **Exhibit B** at **P. 278, ¶ 24-25, P. 279, ¶ 1-2.**

29.    Indeed, Mayor Bill Bazzi told Swope to "Continue to come to – to work and do your job, and, you know, you're going to still get paid." *Id.* at **P. 282, ¶ 1-9**.

30.    Swope continued to come to work, continued to do his job, and always got paid. Swope lasted just one month as South Haven's police chief[9].

31.    Finally, Vanderplow served as Director of Support Services until May 9, 2025. **Exhibit C** at **P. 75 ¶11-19**. Thereafter, he became the City's interim comptroller. *Id.* But he continued to be paid his annual salary as previously stated in his contract. *Id.* at **P. 76 ¶ 1-5**.

32.    He quit working for the City as of May 9, 2025, again categorizing it conveniently as "constructive termination". *Id.*

---

[9] https://www.mlive.com/news/kalamazoo/2025/02/south-haven-police-chief-steps-down-after-1-month-on-job-city-names-interim.html

33. Vanderplow did not provide any services to the city as of that date. **Exhibit C**. at **P. 220 ¶ 11-17**.

34. Vanderplow also testified that he received the full value of his $117,220 salary as stated in his contract. *Id.* at **P. 62 ¶ 5-25**.

35. He even testified that he received "everything" respect to the various benefits that existed in the contract. *Id.* at **P. 63**. "So you indicated that you were paid pursuant to your contract, is that correct?" "Agreed". *Id.* at **P. 68 ¶ 21-23**.

### IV. THE SAAB COMPLAINT

36. Saab's complaint[10] against Vanderplow did *not* constitute an illegal policy or custom *of the City* because Saab made the complaint as a resident of the City. See **ECF No. 37-2, PageID.636-642**[11]. Thus, Saab complained about Vanderplow outside of Saab's role as a City Councilman.

37. The Dearborn Heights City Charter Section 7.1 states in pertinent part that official actions of the Council shall be made by ordinance or resolution unless otherwise required by law. **Exhibit I**.

---

[10] Importantly, Saab was <u>not</u> a member of the City's City Council until January 1, 2024. Yet, in their FAC, the Plaintiffs refer to Saab as "Councilman Saab" at various points in 2023 before he was even elected as a Councilman. See **ECF No. 48, PageID.736** at **¶ 36-37** (in September 2023).

[11] Here, Councilman Saab detailed how this complaint emanated from a time, at his private residence, performing lawn maintenance. It had no relation to his official capacity as a Councilman.

38.     Saab's complaint cannot be an official action of the Council as it was not taken or adopted by ordinance, resolution, or legal operation of the Council. **ECF No. 37-2, PageID.636-642.**

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all evidence in the light most favorable to the nonmoving party in making this determination. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292 (6th Cir. 2016).

## LAW AND ARGUMENT

I.     **THE PLAINTIFFS' 42 USC 1983 CLAIMS FOR FIRST AMENDMENT RETALIATION UNDER COUNT I AND COUNT IX MUST BE DISMISSED.**

A. The Plaintiffs Did *Not* Engage In Actionable Protected Speech Or Activity Under *Garcetti*.

To bring a successful First Amendment retaliation claim against a public employer, the Plaintiffs must first make a prima facie case of retaliation. *Dye v. Off of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). A prima facie case of retaliation consists of the following: (1) their speech or conduct was protected; (2)

their employer took an adverse action against them that would deter a person of ordinary firmness from continuing to engage in the protected speech or conduct; and (3) the adverse action was motivated at least in part by the protected speech or conduct. *Id*. (citing *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)).

To show that their speech was constitutionally protected, the Plaintiffs must show: (1) that their speech was made as private citizens, rather than pursuant to their official duties; (2) that their speech involved a matter of public concern; and (3) that their interest as citizens in speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012) (internal quotation marks and citation omitted).

In *Garcetti v. Ceballos*, the Supreme Court established some of the fundamental case law related to when a public employee's speech was made as a "private citizen" by establishing what is known as the "*Garcetti* exception". Specifically, the Supreme Court held that public employees who make statements pursuant to their official duties are *not* speaking as citizens for 1st Amendment purposes and thus are *not* protected from employer discipline for such speech. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Additional Supreme Court and 6th Circuit case law has explained whether

speech is unprotected under the "*Garcetti* exception".  See e.g. *Lane v. Franks*, 573 U.S. 228 (2014) and *Boulton v. Swanson*, 795 F.3d 526, 533 (6th Cir. 2015).  Based on these opinions, the key issue is whether the Plaintiffs engaged in their allegedly protected speech as part of their employment duties.  *Lane*, supra and *Boulton*, supra.

In this case, the Plaintiffs' allegedly protected speech and/or activity was entirely and exclusively part of the Plaintiffs' employment duties.  Indeed, all three of the Plaintiffs admitted in their depositions that this was true. Reference is made to the facts presented at Paragraphs 5-7 above, where Plaintiff Hart (1) detailed which Plaintiff was responsible for the reporting of each issue and (2) clarified whether each reporting event was a part of Plaintiff's respective employment duties within the City of Dearborn Heights. As stated at Paragraphs 8-9 above, Plaintiffs Swope and Vanderplow confirmed all such activity was completed as part of Plaintiff's employment duties.

Accordingly, the Plaintiffs cannot make a prima facie case of First Amendment retaliation because their speech was unprotected based on the "*Garcetti* exception".  Thus, Count I and Count IX of their FAC must be dismissed.

B. The City is *not* liable under *Monell* for the Saab Stalking Complaint or for the failure to approve the Swope Training.

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc.*

10

*Servs.*, 436 U.S. 658, 694 (1978)). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

A plaintiff can show an illegal policy or custom by proving one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478. A "policy or custom" may be established by a single act by a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered." *Cady v. Arenac Cty.*, 574 F.3d 334, 345 (6th Cir. 2009) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). The question of who possesses such final authority is one of State law. *Pembaur*, 475 U.S. at 483.

The City is *not* liable under *Monell* for the stalking complaint against Vanderplow by Hassan Saab for two reasons. First, Saab's complaint did *not* constitute an illegal policy or custom *of the City* because Saab made the complaint as a resident of the City and not in his official capacity as a Councilman. See Paragraph 38 above. Second, as a matter of law, Saab's actions did not constitute an official action of the City Council. See Paragraphs 36-37 above.

Similarly, the City is *not* liable under *Monell* for the failure to approve payment for the special training sought by Swope. After being adjourned, the City

11

Council did not pass the Swope training due to a 3-3 tied vote as indicated at Paragraphs 10-14 above.

Nevertheless, under *Monell*, the City Council's tie 3-3 vote did *not* establish the City's policies or customs related to the special training for Swope.  Under Charter Section 7.1, any such policy or custom could only be established as an "official" action of the Council "by ordinance or resolution adopted by not less than four (4) members of the Council". **Exhibit I**. Hence, the City cannot be held liable for the failure to pay for the special training for Swope.

## II.  PLAINTIFFS' STATUTORY CLAIMS FOR DISCRIMINATION AND RETALIATION AS STATED UNDER COUNT II, COUNT V, COUNT VI, COUNT VII, AND COUNT VIII MUST BE DISMISSED.

### A. Legal Standards For Adverse Employment Actions And Constructive Discharge.

To establish a successful prima facie claim under Title VII of the Civil Rights Act of 1964 or under any of the other statutes upon which the Plaintiffs have based their discrimination or retaliation claims, the Plaintiffs must show that the City took one or more adverse actions against them.  See e.g. *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (Title VII retaliation claims).

To establish an actionable adverse employment action under Federal discrimination law, a plaintiff must show some harm with respect to an identifiable term or condition of employment. *Muldrow v City of St Louis*, 601 US 346, 354–355

(2024). That is, the change must affect "the what, where, and when" of the plaintiff's work. Further, the change in the identifiable term or condition of employment must be a "disadvantageous" change in an employment term or condition that makes the term or condition "worse". *Id*.

In *McNeal v City of Blue Ash*, 117 F4th 887, 900 (6th Cir 2024), the Sixth Circuit held that *Muldrow* applies to adverse employment actions generally (not just transfers). Thus, in general, an employment action is adverse if it leaves the employee 'worse off respecting employment terms or conditions.'" *McNeal,* 117 F.4th at 900 (quoting *Muldrow,* 601 US at 355).

Similarly, under Michigan law, an employment action is sufficiently adverse to be an actionable adverse employment action if two conditions are met. First, it must be more than a "mere inconvenience or an alteration of job responsibilities". Second, there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of the change are not controlling. *Wilcoxon v 3M*, 235 Mich App 347, 364 (1999).

Moreover, in determining whether an action is an adverse employment action, courts must keep in mind that workplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action. *Peña v Ingham Cty Rd Comm'n*, 255 Mich App 299, 312 (2003).

13

In the retaliation context under federal law, the test for whether an action is actionably adverse is whether a "reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker'" from engaging in the protected activity. *Burlington N & Santa Fe Ry Co v White*, 548 US 53, 68 (2006). What constitutes a materially adverse employment action is to be measured from the perspective of a "reasonable employee" under the circumstances presented. *Id*. at 68–69. Mere trivial harms, "petty slights, minor annoyances, and simple lack of good manners" will not satisfy this standard. *Id*. at 68.

The *Burlington* standard also applies to retaliation claims under Michigan's Elliot-Larsen Civil Rights Act. *White v Department of Transp*, 334 Mich App 98, 120-1 (2020).

Because Hart has also claimed to have been constructively discharged, the following standards apply to a constructive discharge claim. A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151 (1992). Similarly, an employer is liable for constructive discharge when it coerces an employee to leave by creating "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

14

However, the test deliberately sets a high bar, as the law generally expects employees to remain on the job while seeking redress for his employer's actions. *Porter v. Erie Foods, Int'l*, 576 F.3d 629, 639-40 (7th Cir. 2009).

Thus, if the employee has legitimate options for continued employment with his employer, a claim of constructive discharge will be precluded. *Wilson v Firestone Tire & Rubber Co*, 932 F2d 510, 515 (6th Cir 1991) (employee who left his employment after he had been presented with legitimate opportunity for continued employment with that employer, even in less prestigious position, was precluded from claiming constructive discharge) and *Fischhaber v GMC*, 174 Mich App 450, 455 (1988) (employer not liable under constructive discharge theory where employee retired after being given choice of demotion from salaried position to hourly position or dismissal and had not inquired into what his hourly work assignment would be).

Nor can a constructive discharge claim be premised on possible future actions. *Agnew v. BASF Corp.*, 286 F.3d 307, 309-310 (6th Cir. 2002) ("An employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged. Instead, the employee is obliged not to assume the worst, and not to jump to conclusions too fast." (citation and internal quotation marks omitted)) and *Benison v Ross*, 765 F3d 649, 660 n2 (6th Cir 2014) (where supervisor threatened to

oppose plaintiff's future promotion, there was no constructive discharge even if she had "little hope of further advancement" with her employer).

B. Generally, The Plaintiffs Have *Not* Suffered Any Actionable Adverse Employment Action.

Nothing had objectively been made worse for the Plaintiffs related to the terms and conditions of their employment from the time that they were hired until each of them voluntarily resigned from their positions with the City. That is, the "what, where, and when" of each of the Plaintiff's employment had not in any way been made objectively disadvantageous to them where they (a) continued in their positions or were promoted, (b) were fully paid the salaries that they had agreed to with Mayor Bazzi (even where this pay exceeded what the City Council had authorized), (c) received unauthorized raises from the City based on the unauthorized actions of Mayor Bazzi, (d) performed their duties under the supervision of Mayor Bazzi as long as they were employed, and (e) disregarded the directives of the City Council related to their employment based on the actions and directives of Mayor Bazzi.

Indeed, this unchanged status quo with respect to the Plaintiffs' terms and conditions of employment was also continued and enforced by this Court via the Stipulated Order for Preliminary Injunction that was entered in this case on February 1, 2024. **ECF No. 4.** Accordingly, the Plaintiffs *have not* suffered any adverse

employment actions and *cannot* establish prima facie cases of discrimination or retaliation.

C. <u>None Of The Plaintiffs Have A Valid Claim For Constructive Discharge.</u>

Although there have been allusions to constructive discharge by the Plaintiffs, only Hart actually *attempted* to plead any claim for constructive discharge in the FAC.  See **ECF No. 48, PageID.732** at ¶ **8, 744** at ¶ **82, 749-750** at ¶ **111-112), 752** at **128, 753** at ¶ **133**. So, only Hart has any such claim before the Court.

However, Hart's constructive discharge claim is factually unsupportable and must be dismissed. In the FAC, Hart alleged that: "Hart is at imminent risk of constructive discharge if the Resolution were to go into effect."  See *Id.* at **PageID.750** at ¶ **112**.  Yet, based on the actions of Mayor Bazzi and the Preliminary Injunction, the Resolution never went into effect. Nevertheless, Hart still resigned. So, even under his theory of liability, Hart had no valid basis to resign.

Moreover, Hart's constructive discharge claim is also legally unsupportable and must be dismissed. As argued at ARGUMENT II.B. above, nothing had objectively been made worse for the Hart related to the terms and conditions of his employment from the time that he was hired until he voluntarily resigned from his position with the City. He continued to have the legitimate option of continuing to be employed by the City as its Police Chief up through the day of his resignation. At best, his claim is that he quit his job in apprehension that conditions might

17

deteriorate later if he did not quit. However, as explained above, none of this is a legally sufficient to meet the high bar that has been set for constructive discharge claims.

D. <u>The City Never Subjected Vanderplow To Any Adverse Employment Action Via The Saab Stalking Complaint Where Saab Was *Not* Acting As The City's Agent When He Made The Complaint.</u>

The statutory claims Vanderplow has made related to the stalking complaint are premised on the idea that Saab was acting as the City's "agent" when Saab made his complaint.  See e.g. MCL 37.2202 and MCL 37. 2201(a). Yet, as explained above, Saab complained about Vanderplow outside of Saab's role as a City Councilman where Saab made the complaint as a resident of the City based on Vanderplow driving by Saab's house and recording or taking pictures of Saab and/or his house. Thus, Vanderplow's claim based on Saab's complaint is unfounded under these statutes where Saab did not make his complaint as a City Councilman but instead made it as a private citizen.

E. <u>The City Never Subjected Swope To Any Adverse Employment Action Via The Failure To Pay For The Special Training For Swope.</u>

The 6th Circuit has held that the denial of supplemental training to an employee does *not* constitute an action that is adverse to the employee's terms, conditions, employment status, or benefits of employment. *Creggett v. Jefferson Cty. Bd. of Ed.*, 491 F. App'x 561 (6th Cir. 2012)(unpublished). The special training that Swope wanted the City to pay for was supplemental training not essential for his

employment. See Paragraph 10-14 above. Thus, it is *not* a valid basis for a claim and Swope's claim based on it must be dismissed.

### III.   PLAINTIFFS' COUNT III FLSA CLAIM FAILS.

In Count III[12], Plaintiffs allege that the Resolution alleges to have "reduced Vanderplow and Swope's compensation to zero, yet Vanderplow and Swope have continued to work and provide services to the City." **ECF No. 48, PageID.743**. Plaintiffs then allege that the City's actions "have or imminently will result in Swope and Vanderplow not accruing wages that they would have otherwise be entitled to under the FLSA.". *Id.* At this point in the case, neither Swope nor Vanderplow are owed any wages by the City of Dearborn Heights. Therefore, they have no claim for unpaid wages under the FLSA.

The FLSA requires employers to pay covered employees at least the federal minimum wage for all hours worked. *See* 29 U.S.C. § 206. It is well established that "an FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *White v. Baptist Memorial Health Care Corp*., 699 F.3d 869, 873 (6th Cir. 2012).

Despite being obligated and repeatedly asked to do so, Plaintiffs have never calculated the total amount of wages that they claim are unpaid. That is because to

---

[12] This Count III makes clear that the claims are only brought by Swope and Vanderplow and thus do not include Hart.

date, Plaintiffs Swope and Vanderplow have been paid their full wages, absolutely and completely. In the testimony cited at Paragraphs 27-30 (Swope) and 31-35 (Vanderplow), Swope admitted to being paid *more* than his contractually stated wage. Vanderplow also admitted to being paid his full wages during his time with the City. No claims exist here, either.

IV. **PLAINTIFFS FAILED TO ESTABLISH BREACH OF ANY VALID TERM IN THEIR EMPLOYMENT CONTRACTS AS ALLEGED IN THE FAC**

A. The City Had No Contractual Obligation To Employ The Plaintiffs Where They Were "At-Will" Employees.

An employee hired under a contract providing for "at-will" employment may be discharged at any time and for no reason; the employer can even do so arbitrarily and capriciously. *Bracco v. Michigan Tech. Univ.*, 231 Mich. App. 578 **,** 598 (1998). The Plaintiffs' employment contracts with the City provided that they were employed "at-will". **ECF No. 48-2, PageID.795-796**, **PageID.801-802**, and **PageID.807-808**. Hence, no breach of contract claims can be made by the Plaintiffs based on the termination of their City employment.

B. No Other Contractual Claim Has Been Made By Any Of The Plaintiffs

The FAC does not tell its reader exactly which part of the contracts were ever breached. Rather, the FAC gives the mere conclusion that a breach occurred. See FAC at paragraph 89. **ECF No. 48**, **PageID.745**.

20

The "basic tenant of contract law" is identifying the written contract and term within it that was allegedly breached. *Northampton Rest. Grp. Inc. v. FirstMerit Bank, N.A.*, 492 F.App'x 518 (6th Cir. 2012). Once a valid contract has been established, plaintiff then must prove (1) the terms of the contract, (2) breach of those terms by the defendant, and (3) injury resulting from the breach. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).

Plaintiffs cannot get past step one. At most, the FAC merely incorporates by reference certain actions taken by the City as alleged breaches of the Plaintiffs' employment contracts with the City. It does not ever tie any of the alleged actions taken by the City to any actual provision of the relevant contracts. Based on a fair reading of the FAC and ¶ 89, the only actions that could be alleged breaches of the employment contracts are Hart's discharge, the failure to pay for Swope's special training, and Saab making his stalking complaint against Vanderplow.

Hart's "discharge" was already nullified based on the reasoning above. To the extent that the Plaintiffs believe that either of (1) Swope's claim for training or (2) the Saab "stalking" issue constitute breaches of contract, Plaintiffs are nevertheless unable to point to any specific term or provision in either of their employment agreements providing for, or protecting against, these matters. These are not actionable contract claims.

## V.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER COUNT X ARE UNFOUNDED.

Plaintiffs moved for declaratory relief under 28 U.S.C. §§ 2201 and 2202, 29 U.S.C. § 217, Fed. R. Civ. P. Rules 57 and 65, and MCL 15.363(1).

On the state-law side of the analysis, MCL 15.363 does not apply to this case. This statute authorizes a plaintiff to bring a civil suit, in a Michigan circuit court, for appropriate injunctive relief for violations of the WPA. Setting aside the fact that an injunction was already entered by this Court, and it has already been set above that there are no WPA violations, this section only applies to Michigan state court actions leaving this Court without jurisdiction over the same. MCL 15.363(2).

Rule 65 and 29 U.S.C. § 217 cover injunctions and restraining orders, and injunctions related to the FLSA, respectively. However, neither of these citations apply to this case as injunctions and restraining orders do not exist as stand-alone causes of action. See *Wiggins v. Argent Mortg. Co., LLC*, 945 F.Supp.2d 817 (E.D. Mich., May 14, 2013) (Plaintiff cannot seek an injunction as a stand-alone cause of action; it is only available as an equitable remedy) and *Terlecki v. Stewart*, 278 Mich. App. 644 (2008) ("it is well settled that an injunction is an equitable remedy, not an independent cause of action"). To the extent that a claim for injunctive relief has been pled, it must be dismissed.

That leaves 28 U.S.C. §§ 2201, 2202 and the "declaratory relief" claim. District courts possess discretion in determining whether and when to entertain an

22

action under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The statute provides that in a "case of actual controversy"…"any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration…". 28 U.S.C. § 2201. Declaratory relief is not appropriate here because it mirrors the relief sought by Plaintiffs' other causes of action and does not actually ask the Court to declare anything at all.

"Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." *AmSouth Bank v. Dale,* 386 F.3d 763, 784 (6th Cir. 2004). Where, as here, any issues that could be the subject of declaratory relief are already subsumed by other counts, the claims for declaratory judgment should be dismissed.

In the FAC, Plaintiffs affirmatively state nine factual and legal positions, followed by a request for a restraining order, and a final request for the Court to "declare the rights of the parties…". **ECF No. 48, PageID.755-756**. These mere statements do not require any declaration at all.

At **ECF No. 48, PageID.754-755 ¶¶** 139-140, Plaintiffs merely paste MCL 423.201 *et seq.* At **¶ 141**, Plaintiffs restate the vote of the City Council at Resolution 23-099. There is nothing for the Court to declare in these first three assertions.

23

Next, Plaintiffs argue that the City "cannot unilaterally change wages, hours, terms and conditions of the Union CBA without collective bargaining" and question the City Council's authority to amend the City's budget. *Id.* at **¶¶142-146**. These paragraphs, too, are merely Plaintiffs' *opinions* on the applicable assertions. Importantly, Plaintiffs do not request that the Court actually consider these specific legal principles. Moreover, the assertions themselves are moot. As stated above, the City Council amended the budget per Resolution 24-017. Plaintiffs remained in the employ of the City per **ECF No. 4**, and still got paid their wages. Even if the Court were to entertain a legal decree on the matters of Resolution 24-017, from the perspective of Plaintiff, the same would only serve as a retroactive declaration that has no effect on the past. It further would have no effect on the present, or the future given that no Plaintiff currently remains in the employ of the City.

The remaining paragraphs state the former Mayor's public release and the statutes for which Plaintiffs seek declaratory relief.

*Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 971 (6th Cir. 2009) is persuasive here. In that case, the Sixth Circuit affirmed dismissal of a declaratory judgment claim where there were only allegations of past harm. See also *AmSouth Bank v. Dale,* 386 F.3d 763, 784 (6th Cir. 2004) (the useful purpose served by the declaratory judgment action is the clarification of legal duties for the future, rather than past harm a coercive tort action is aimed at redressing.).

Even if the Court can ascertain precisely what Plaintiffs seek to declare (which it cannot), the Court would only be called to declare legal matters concerning past and moot legal issues. Plaintiffs' claims for declaratory and injunctive relief must also be dismissed.

## RELIEF REQUESTED

For the reasons, points, and authorities set forth above, the City Council respectfully requests that this Honorable Court GRANT its Motion for Summary Judgment pursuant to Fed. R. Civ. P. Rule 56, dismissing all of Plaintiffs' claims pled in its First Amended Complaint **ECF No. 48** with prejudice.

Respectfully submitted,
By: */s/Gary T. Miotke*                    By: */s/ Tarik D. Turfe*
Gary T. Miotke (P41813)              Tarik D. Turfe (P83690)
Dated: February 10, 2026            Attorneys for the City Council

**LOCAL RULE CERTIFICATION:** I, Tarik D. Turfe, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all texts that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that this document is the appropriate length. Local Rule 7.1(d)(3).

DATED: February 10, 2026                    */s/ Tarik D. Turfe*
                                            Tarik D. Turfe (P83690)
                                            Attorney for Intervening Defendant


**CERTIFICATE OF SERVICE**

   I certify that on February 10, 2026, I filed a copy of the foregoing with the Clerk of the Court using the electronic filing system which will send electronic notification of this filing to all parties.

                                            */s/ Tarik D. Turfe*
                                            Tarik D. Turfe (P83690)