## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN SWOPE, PAUL VANDERPLOW, JERROD HART

       Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS, a Michigan Municipal Corporation

       Defendant.

CITY COUNCIL FOR THE CITY OF DEARBORN HEIGHTS

       Intervening Defendant.

Case No. 2:24-cv-10240-MAG-DRG
Hon. Mark A. Goldsmith

---

### DEFENDANT CITY OF DEARBORN HEIGHTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

NOW COME Defendants City of Dearborn Heights and Jerrod Hart, by and through their counsel, The Allen Law Group, and bring their Motion for Summary Judgment and Brief in Support pursuant to Fed. R. Civ. P. 56 and rely upon the attached Brief in Support and Defendant's Exhibits.

The undersigned counsel certifies that on January 22, 2025, counsel for Plaintiffs, counsel for Defendant, and counsel for Intervening Defendant City of Dearborn Heights City Council convened in the chambers of this Honorable Court for a meet and confer conference, with Court-appointed Discovery Master Steven Schwartz. During the Conference, counsel for Defendant City of Dearborn Heights

and Intervening Defendant City of Dearborn Heights City Council discussed their intentions on filing a Motion for Summary Judgment and

Counsel for Plaintiff did not concur with the relief sought by way of these motions. On February 5, 2026, Counsel for the City of Dearborn Heights submitted an additional correspondence as formal notice of the defendants' intentions to proceed with the Rule 56 Motions. Counsel for Defendant City of Dearborn Heights followed up with the message by declaring the same. Counsel for Plaintiffs did not concur in the relief sought.

For the reasons stated in the accompanying Brief, City of Dearborn Heights, respectfully requests that this Honorable Court grants its Motion for Summary Judgment pursuant to Fed. R. Civ. P. Rule 56, dismissing Plaintiffs Amended Complaint in its entirety and with prejudice.

Respectfully Submitted

**THE ALLEN LAW GROUP, P.C.**

Dated: February 10, 2026                By:    */s/ Monica N. Hunt*

Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

LOCAL RULE CERTIFICATION: I, Monica N. Hunt, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully Submitted

**THE ALLEN LAW GROUP, P.C.**

By:    */s/ Monica N. Hunt*

Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN SWOPE, PAUL VANDERPLOW,    Case No. 2:24-cv-10240-MAG-DRG
JERROD HART    Hon. Mark A. Goldsmith

     Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation

     Defendant.

CITY COUNCIL FOR THE CITY OF
DEARBORN HEIGHTS

     Intervening Defendant.

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................ ii

INDEX OF AUTHORITIES................................................. iv

STATEMENT OF ISSUES PRESENTED ................................................x

STATEMENT OF CONTROLLING AUTHORITY ........................................... xiii

I.   STATEMENTS OF MATERIAL FACT ........................................... 1

II.   LEGAL ARGUMENT ........................................................... 5

A. Standard of Review........................................................ 5

B. Plaintiffs' Claims of Violation of First Amendment Right of Free Speech of Public Employees Pursuant to 42 U.S.C § 1983 (Count I), and First Amendment Retaliation (Count IX) Fail as a Matter of Law and Must be Dismissed. ....................................................... 6

C. Plaintiffs' Claims Asserted under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, (Count II) Fail as a Matter of Law and Must be Dismissed...14

D. Plaintiff Swope and Vanderplow's Claims Asserted Under the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, (Count III) Fail as a Matter of Law and Must be Dismissed. ....................................................... 20

E. Plaintiffs' Race Discrimination Claims Under Title VII of the Civil Rights Act of 1964 (Count V) and Under the Michigan Elliot-Larsen Civil Rights Act (Count VI) Fail as a Matter of Both Law and Fact and Must Be Dismissed..23

i.   Plaintiffs cannot establish a prima facie case of race discrimination. ............25

ii.  Defendants had a legitimate business reason for their actions. ......................28

iii. Plaintiffs cannot establish that Defendant's legitimate business reasoning was pretext.............................................................. 28

F. Plaintiff Hart's Claims Asserted Pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112(a) (Count VII) Fail as a Matter of Law and Must Be Dismissed. ....................................................... 29

i.   Plaintiff Hart has failed to sufficiently plead or establish a failure to accommodate under the ADA as a matter of law............................................31

ii.   Plaintiff Hart has failed to sufficiently plead or establish any discrimination under the ADA based on a disclosed disability. .............................................33

G.   Plaintiffs' Claim of Breach of Contract (Count IV) Fails as a Matter of Law, as to each Plaintiff, respectively, and Must Be Dismissed. .................................35

i.   Plaintiff Hart cannot establish a claim of constructive discharge as a matter of law. .......................................................................................................35

ii.   Plaintiffs Vanderplow and Swope have failed to sufficiently plead and assert a claim for breach of contract for their own employment. ................................39

H.   Plaintiffs' Claims Asserted Pursuant to the Federal Age Discrimination in Employment Act, 29, U.S.C. § 621, *et seq.*, (Count VIII) Fail as a Matter of Law and Must be Dismissed. ........................................................................40

III.   CONCLUSION. ...........................................................................................43

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. CareSource*,
   576 F.3d 551 (6th Cir. 2009) ................................................................. 20

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 5

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680  (1946) ......................................................................... 20

*Berry v. United States Postal Serv.*,
   No. 22-3577, 2023 U.S. App. LEXIS 9623 ........................................... 20

*Blanchet v. Charter Communs., LLC*,
   27 F.4th 1221 (6th Cir. 2022) ...................................................... 30, 31

*Bloch v. Ribar*,
   156 F.3d 673  (6th Cir. 1998) ............................................................. 6

*Bloomer v. Word Network Operating Co.*,
   785 F. Supp. 3d 251 (E.D. Mich. 2025) ........................................ 35, 36

*Brandenburg v. Hous. Auth. of Irvine*,
   253 F.3d 891 (6th Cir. 2001) .............................................................. 6

*Brown v. Detroit Mayor*,
   271 Mich. App. 692 (2006), ............................................................... 15

*Brown v. Detroit Mayor*,
   478 Mich. 589 (2007) ........................................................................ 15

*Brumley v. UPS*,
   909 F.3d 834 (6th Cir. 2018) ............................................................. 31

*Bultemeyer v. Fort Wayne Cmty. Sch.*,
   100 F.3d 1281 (7th Cir. 1996) ........................................................... 30

*Chandler v. Dowell Schlumberger Inc.*,
   456 Mich. 395 (1998) ........................................................................ 15

*Chappell v. GTE Prods. Corp.*,
   803 F.2d 261 (6th Cir. 1986) ............................................................. 28

*Charvat v. E. Ohio Reg'l Wastewater Auth.*,
   246 F.3d 607 (6th Cir. 2001) .............................................................. 6

iv

*Connick v. Myers*,
   461 U.S. 138 (1983) ............................................................................7

*Copeland v. Machulis*,
   57 F.3d 476  (6th Cir. 1995)...............................................................5

*Cox v. Electronic Data Systems Co*,
   751 F. Supp. 680 (E.D. Mich. 1990) ................................................25

*Crady v. Liberty Nat'l Bank & Trust Co of Indiana*,
   993 F2d 132 (7th Cir., 1993) ............................................................16

*Creggett v. Jefferson Cty. Bd. of Ed.*,
   491 F. App'x 561 (6th Cir. 2012) .....................................................13

*Debano-Griffin v. Lake Co*,
493 Mich. 167 (2013)............................................................... 15, 16, 19

*DeBrow v. Century 21 Great Lakes, Inc.*
   463 Mich. 534, (2001) .....................................................................16

*Deister v. Auto Club Ins. Ass'n*,
   647 F. App'x 652 (6th Cir. 2016) .....................................................31

*Elliott v. Group Medical & Surgical Service*,
   714 F.2d 556 (5th Cir. 1983)............................................................27

*Ercegovich v. Goodyear Tire & Rubber Co.*,
   154 F.3d 344 (6th Cir. 1998).............................................................41

*Farhat v. Jopke*,
   370 F.3d 580 (6th Cir. 2004)..............................................................6

*Ferrari v. Ford Motor Co.*,
   826 F.3d 885 (6th Cir. 2016).............................................................29

*Fisher v. Nissan North Am., Inc.*,
   951 F.3d 409 (6th Cir. 2020).............................................................30

*Fuelling v. New Vision Med. Labs. LLC*,
   284 F. App'x 247 (6th Cir. 2008) .....................................................24

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ......................................................................7, 9

*Gilday v. Mecosta Cnty.*,
   124 F.3d 7602 (6th Cir. 1997)..........................................................32

*Goldmeier v. Allstate Ins. Co.*,
   337 F.3d 629 (6th Cir. 2003)............................................................34

v

*Grosjean v. First Energy Corp.*,
    349 F.3d 332 (6th Cir. 2003)..............................................................40

*Hazle v. Ford Motor Co*,
    464 Mich. 456 (2001) ........................................................ 15, 18

*Henschel v. Clare Cty. Rd. Comm'n*,
    737 F.3d 1017 (6th Cir. 2013).......................................................32

*Hostettler v. College of Wooster*,
    895 F.3d 844 (6th Cir. 2018)........................................................29

*International Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) ....................................................................27

*Jacobs v. N.C. Admin. Office of the Courts*,
    780 F.3d 5629 (4th Cir. 2015).......................................................30

*Jennings v. County of Washtenaw*,
    475 F. Supp.2d 692 (E.D. Mich., 2007) ..........................................7

*Johnson v. Cleveland City Sch. Dist.*,
    443 F. App'x 974 (6th Cir. 2011) .................................................30

*Kleiber v. Honda of Am. Mfg., Inc.*,
    485 F.3d 862 (6th Cir. 2007)........................................................29

*Lanear v. Safeway Grocery*,
    843 F.2d 298 (8th Cir. 1988)........................................................24

*Laster v. City of Kalamazoo*,
    746 F.3d 714 (6th Cir. 2014)........................................................23

*Le Galley v. Bronson Cmty. Sch.*,
    127 Mich. App. 482  (1983) ........................................................35

*Leadbetter v. Gilley*,
    385 F.3d 683 (6th Cir. 2004)........................................................24

*Leary v. Daeschner*,
    349 F.3d 888 (6th Cir. 2000).........................................................6

*Lindsey v. Whirlpool Corp.*,
    295 F. App'x 758 (6th Cir. 2008) .................................................12

*Logan v. Denny's, Inc.*,
    259 F.3d 558 (6th Cir. 2001)........................................................23

*Mack v. City of Guadalupe*,
    No. B342205, 2005 Cal. App. Unpub LEXIS 6486, 2025)..................37

*Mazzella v. RCA Global Communications, Inc.*,
    642 F. Supp. 1531 (S.D.N.Y. 1986), )....................................................24

*McDonnell Douglas Corp v. Green*,
    411 U.S. 792 (1973)............................................................... 23, 39

*McMurphy v. City of Flushing*,
    802 F.2d 191 (6th Cir. 1986)............................................................7

*Mickey v. Zeidler Tool & Die Co.*,
    516 F.3d 516 (6th Cir. 2008)..........................................................39

*Mitchell v. Toledo Hosp.*,
    964 F.2d 577 (6th Cir. 1992)..........................................................23

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977) ...................................................................6, 7

*Myers v. Copper Cellar Corp.*,
    192 F.3d 546 (6th Cir. 1999)..........................................................19

*Nieves v. Bartlett*,
    587 U.S. 391 (2019) ....................................................................10

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) ......................................................................6

*Redlin v. Grosse Pointe Pub. Sch. Sys.*,
    921 F.3d 599 (6th Cir. 2019)..........................................................23

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ....................................................................40

*Scarbrough v. Morgan Cty. Bd. of Educ.*,
    470 F.3d 250 (6th Cir. 2006)............................................................9

*Talley v. Bravo Pitino Rest.*, ........................................................................
    61 F.3d 1241 (6th Cir. 1995)..........................................................26

*Taylor v. Keith*,
    338 F.3d 639 (6th Cir. 2003)............................................................6

*Tchankpa v. Ascena Retail Grp., Inc.*,
    951 F.3d 805 (6th Cir. 2020)..........................................................30

*Thaddeus-X v. Blatter*,
    175 F.3d 378, 394 (6th Cir. 1999)......................................................9

*Tompos v. City of Taylor*,
    644 F. App'x 678 (6th Cir. 2016) ......................................................5

*Tuttle v. Metro. Gov't of Nashville*,
   474 F.3d 307 (6th Cir. 2007)..................................................................39

*U.S. Airways, Inc. v. Barnett*,
   535 U.S. 391, (2002) ...........................................................................31

*White v. Baxter Healthcare Corp.*,
   533 F.3d 381(6th Cir. 2008)..................................................................23

*Whitman v. City of Burton*,
   493 Mich. 303 (2013) ...........................................................................14

*Wilson v. Stroh Companies, Inc.*,
   952 F.2d 942,(6th Cir. 1992)................................................................27

*Wingo v. Mich. Bell Tel. Co.*,
   815 F. App'x 43 (6th Cir. 2020)............................................................22

*Wood v. Dow Chem. Co.*,
   72 F. Supp. 3d 777(E.D. Mich. 2014) ........................................... 35, 37

*Woythal v. Tex-Tenn Corp.*,
   112 F.3d. 243(6th Cir. 1997)................................................................27

*Wurtz v. Beecher Metro. Dist.*,
   495 Mich. 242, (2014) .................................................................. 14, 15

## Statutes

29 U.S.C. 201, *et seq.*.................................................................................19

29 U.S.C.S. § 623(a)(1) ...........................................................................39

29, U.S.C. § 621, *et seq.*..........................................................................38

42 U.S.C § 12112(b)(5)(A) .......................................................................31

42 U.S.C. § 12111(8) ................................................................................32

42 U.S.C. § 12112(a)...........................................................................28, 29

42 U.S.C. § 12112(b)(5)(A)......................................................................29

42 U.S.C. § 2000e-2(a)(1).........................................................................22

42 U.S.C. 12101 *et seq.*............................................................................28

MCL § 37.2101, *et seq.*............................................................................22

MCL 15.361, *et seq.*.................................................................................13

MCL 15.362 ..............................................................................................14

Title VII, 42 U.S.C.S § 2000e...................................................................22

**Rules**

Fed R. Civ. P. 56(a) ......................................................................................................4

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs did not engage in protected speech pursuant to the First Amendment and 42 USC 1983?

    Defendant City of Dearborn Heights: Yes

    Defendant City of Dearborn Heights City Council: Yes

    Plaintiff: No

    Court should say: Yes

2. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs suffered no adverse employment actions?

    Defendant City of Dearborn Heights: Yes

    Defendant City of Dearborn Heights City Council: Yes

    Plaintiff: No

    Court should say: Yes

3. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs suffered no discrimination pursuant to the Whistleblowers Protection Act?

    Defendant City of Dearborn Heights: Yes

    Defendant City of Dearborn Heights City Council: Yes

    Plaintiff: No

    Court should say: Yes

4. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs suffered no retaliation?

    Defendant City of Dearborn Heights: Yes

    Defendant City of Dearborn Heights City Council: Yes

x

Plaintiff: No

Court should say: Yes

5. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs have not established a claim for damages under the Fair Labor Standard Act?

Defendant City of Dearborn Heights: Yes

Defendant City of Dearborn Heights City Council: Yes

Plaintiff: No

Court should say: Yes

6. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs have not established that they were discriminated against, or suffered an adverse employment action because of their race?

Defendant City of Dearborn Heights: Yes

Defendant City of Dearborn Heights City Council: Yes

Plaintiff: No

Court should say: Yes

7. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs have not established that they were discriminated against, or suffered an adverse employment action because of their age?

Defendant City of Dearborn Heights: Yes

Defendant City of Dearborn Heights City Council: Yes

Plaintiff: No

Court should say: Yes

8. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiff Jerrod Hart never sought a reasonable accommodation for his medical issues.

Defendant City of Dearborn Heights: Yes

Defendant City of Dearborn Heights City Council: Yes

Plaintiff: No

Court should say: Yes

9. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiff Jerrod Hart was not discriminated against or retaliated against because of his medical issues?

Defendant City of Dearborn Heights: Yes

Defendant City of Dearborn Heights City Council: Yes

Plaintiff: No

Court should say: Yes

10. Whether Defendant City of Dearborn Heights is entitled to summary judgment because none of the Plaintiffs were constructively discharged?

Defendant City of Dearborn Heights: Yes

Defendant City of Dearborn Heights City Council: Yes

Plaintiff: No

Court should say: Yes

11. Whether Defendant City of Dearborn Heights is entitled to summary judgment because Plaintiffs employment contract was never breached?

Defendant City of Dearborn Heights: Yes

Defendant City of Dearborn Heights City Council: Yes

Plaintiff: No

Court should say: Yes

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

*Garcetti v. Ceballos*,

    547 U.S. 410 (2006) ............................................................................7, 9


*McDonnell Douglas Corp v. Green*,

    411 U.S. 792 (1973)......................................................................... 23, 39

## I.   STATEMENTS OF MATERIAL FACT

1.     Defendant City of Dearborn Heights is a municipality located in Wayne County. At all relevant times, the City was led by Mayor Bill Bazzi[1]. Deposition Transcript of Bill Bazzi is attached hereto as Exhibit "A", 14:18-21.

2.     The City operates under a strong mayor form of government and a 7-member City Council. *See* Dearborn Heights, Michigan Charter § 5.1.

3.     Hart began his employment with the City in February of 2022 as Chief of Police after having served in law enforcement for over thirty (30) years. Deposition Transcript of Jerrod Hart is attached hereto as Exhibit "B", 15:3-19.

4.     Hart's career consisted of service outside of Dearborn Heights. *Id.* at 14:25, 15:1-2, 22-25, 15:16-11.

5.     Mayor Bazzi engaged Dearborn Heights Police Commissioner Joseph Thomas to utilize his contacts to locate a potential police chief who could assist with improving professionalism in the police department and help to make the department more responsive to the needs of the residents and businesses.  Exhibit "A", 47:23-25.

---

[1] In October of 2025, Bazzi was appointed to the position of Ambassador to Tunisia by President Donald Trump, causing City Council President Mo Beydoun to become Interim Mayor. Subsequently, in the November 2025 election, Mo Beydoun was elected Mayor of the City of Dearborn Heights.

1

6.      Mayor Bazzi asserts that he chose Hart for the role of Police Chief because he was an "outsider". *Id.* at 47:13-17.

7.      Hart makes the claim that upon being hired with the City, he determined that the Police Department had not prepared a succession plan and that the culture needed significant change. Exhibit "B", 64:24-25, 65:1-3.

8.      Hart claims that because of the need for change, he sought an "outsider", asserting that no one within the Police Department offered any support[2]. *Id.* at 65:12-17.

9.      Instead of seeking assistance from members within the Police Department who have some familiarity with the Department, Hart proposed the creation of the position of Director of Police Operations, which was an entirely new position, and hired Swope away from Westland Police Department to fill that position. *Id.* at 68:7-13.

10.     Hart interviewed no one other than Swope for the position. *Id.* at 22-24.

11.     In similar fashion, Hart created the position of Director of Support Services. Instead of considering an existing member of the Dearborn Heights Police Department to support the Department in this function, Hart hired Bureau of

---

[2] Hart admitted that Ltd. Michael Guzowski had leadership potential but he failed to consider Ltd. Guzowski for any of the new positions that he created. Hart Dep. Tr 66: 14-15. Ltd. Guzowski currently serves as the Chief of Police with the City of Dearborn Heights.

Alcohol, Tobacco, Firearms and Explosives agent Vanderplow to be in charge of the investigative staff, records, vehicle maintenance, dispatch, and the budget. *Id.* at 74:7-9.

12.     Almost immediately, Plaintiffs began making a number of claims, many of which they reference in their Complaint. Pl. Am. Compl, ECF NO. 48, Page ID 734 ¶ 23.

13.     Plaintiffs assert that, as leaders in the Police Department, they began to investigate certain wrongdoing and report such to law enforcement agencies such as the Michigan State Police, the Federal Bureau of Investigation, the Michigan Attorney General, etc. Some of the widespread corruption that Plaintiffs assert are alleged unregistered firearm inventories, accusations of ticket-fixing, and mismanagement of federal funds. Pl. Am. Compl, ECF NO. 48, Page ID 733 ¶ 20.

14.     Plaintiffs assert that due to this reporting, they suffered retaliation from the City Council and employees within the City, and their employment was adversely affected. While their Amended Complaint makes the claims, deposition testimony suggests otherwise. Pl. Am. Compl. ECF No, 48, PageID. 739 ¶ 50.

15.     For instance, despite Plaintiffs' detailed assertion that a widespread scheme of ticket fixing existed, and Plaintiffs' enthusiastic investigation of such a claim during the course of this litigation, the facts did not pan out. For instance:

**Ticket Fixing**

Plaintiffs allege that they discovered a widespread scheme in which employees and elected officials sought to have traffic tickets for their friends and family members dismissed. While these claims were asserted, during the course of this case, Hart admitted that he saw no evidence of a scheme. He was only aware of two videos in which then-Councilman Beydoun asked for an individual close to him be let out of a traffic incident. *Ex. B, 145:9-11.* While Hart claims that the only other allegations of "ticket-fixing scheme" include "the mayor and others having tickets dismissed," he admits that he had no firsthand knowledge of it and only heard about them. *Id.  at 143:25, 144:1-12.* Swope added that while he *heard* thousands of tickets were dismissed, he admits he heard this information secondhand from Sgt Jordan Dottor and did not know the context of the dismissals, as they were civil infractions conference hearings. A copy of the Deposition Transcript of Kevin Swope is attached hereto as *Exhibit "C", 151:14-22.* Swope admits that he did not investigate all of the dismissed tickets to determine if they were dismissed illegally. *Id. at 152:2-8.* Vanderplow admitted that he heard of "multiple occasions of family or friends of officers getting tickets dismissed. A copy of the Deposition Transcript of Paul Vanderplow is attached hereto as Exhibit "D", 130:1-3. He admitted that this function was handled by Swope. *Id.* at *129:23-25, 130:1.* He did not know how tickets were being dismissed, as it was not his function. *Id. at 130:18-19.*

16.     Similarly, Hart asserts that he was constructively terminated, despite tendering his resignation on July 3, 2024. Ex. B at 59:2-5.

17.     Hart later posted on Facebook that he retired. *Id* at 283:23-25.

18.     Swope additionally claims that he was constructively discharged, however he applied for, interviewed for and accepted, the position of Chief of Police

with Grand Haven all while still employed with the City. Ex. C at 133:22-25, 134:1-14, 24-25, 135:2-7, 136:2-22.

19.    Finally, Vanderplow, alleged that he was constructively discharged on April 22, 2024, despite continuing to work in the City until May 9, 2025. Ex. D, 287:21-25, 288:1-5, 289:1-4.

## II.    LEGAL ARGUMENT

### A. Standard of Review

A motion for summary judgment, pursuant to Fed. R. Civ. P. 56, should be granted if the discovery record " … shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(a). Not every factual dispute between the parties prevents summary judgment. Instead, the disputed fact must be material and must be a fact which, under the substantive law governing the issue, may affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 – 48 (1986). A plaintiff cannot rest upon his pleadings, but is required to present significant probative evidence in support of his claims. *See Copeland v. Machulis*, 57 F.3d 476, 478 – 79 (6th Cir. 1995). A mere scintilla of evidence is insufficient. Rather, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.* at 479.

**B. Plaintiffs' Claims of Violation of First Amendment Right of Free Speech of Public Employees Pursuant to 42 U.S.C § 1983 (Count I), and First Amendment Retaliation (Count IX) Fail as a Matter of Law and Must be Dismissed.**

Plaintiffs' Amended Complaint states that beginning January 2023, they collectively reported suspected violations of law concerning corruption in the City government, corruption in the Dearborn Heights Police Department ("DHPD"), and civil rights violations to the City of Dearborn Heights through its Mayor and City Council, to the Michigan State Police, the United States Department of Justice, and the Federal Bureau of Investigation. Pl. Am. Complaint, ECF No. 48, PageID 733-734.

For a public employee's claim under 42 U.S.C.S § 1983 alleging a violation of First Amendment free speech rights, a court applies a specific framework to determine whether the employee's speech is constitutionally protected. The plaintiff must establish three elements to make a prima facie case: (1) the plaintiff engaged in constitutionally protected speech, (2) the plaintiff suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that speech, and (3) the adverse action was motivated, at least in part, by the plaintiff's protected speech. *See Tompos v. City of Taylor*, 644 F. App'x 678, 680 (6th Cir. 2016) (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977))); *see also Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004)

6

(citing *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2000) (citations omitted));

*see also Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir.

2001) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

The Sixth Circuit has developed a three-step test for analyzing a public

employee's claim of First Amendment retaliation. First, Plaintiffs must show that, as

a matter of law, the speech at issue was protected. *Taylor v. Keith*, 338 F.3d 639, 643

(6th Cir. 2003). To do so, they must demonstrate both that the speech "touches on a

matter of public concern" and that the interest in the speech outweighs the

government's countervailing interest in promoting the efficiency of the public

service it provides as an employer." *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 140,

147, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); *Pickering v. Bd. of Educ.*, 391 U.S.

563, 574, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968)). Plaintiffs must next show that

the adverse employment actions they allege "would chill an ordinary person in the

exercise of his First Amendment rights." *Id*. (citing *Cockrel v. Shelby County Sch.

Dist.*, 270 F.3d 1036, 1048 (6th. Cir. 2001)). Finally, they "must present sufficient

evidence to create a genuine issue as to whether h[er] speech was a substantial or

motivating factor in the employer's decision to discipline or dismiss." *Id*. (citing *Mt.

Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 50 L. Ed. 2d 471,

97 S. Ct. 568 (1977).

In order for a government employee's speech to warrant First Amendment protection, there is a threshold requirement that the employee (1) must have spoken "as a citizen," and (2) must have "address[ed] matters of public concern." *McMurphy v. City of Flushing*, 802 F.2d 191, 197 (6th Cir. 1986). The Supreme Court clarified the first of these elements in *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006), by holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from employer discipline." *See Jennings v. County of Washtenaw*, 475 F. Supp.2d 692, 706 (E.D. Mich., 2007).

Here, Plaintiffs testified that when making statements and complaints for what they deemed were issues pertaining to processes within the department, such reports were performed as part of their job duties. Hart admits that each complaint made was part as his duty as Chief of Police:

> **Miotke: Q**: When you made your reports to these various agencies, did you consider it to be part of your duties to make those reports to those agencies as the senior law enforcement official in Dearborn Heights?
> **Hart: A**: Which issues are you speaking of?
> **Q**. Well, let's, I guess, walk through them here, all right? You ended up indicating that there was a report regarding the chain of custody for evidence and evidence management system within Dearborn Heights?
> **A**. Reported to the Wayne County prosecutor and her number two?
> **Q**. Yes. Did you feel that that was something that you were supposed to do as part of your job duties?

8

**A**. Absolutely. They're the prosecuting authority.

**Q**. With respect to the nearly 900 pistol sales records that were not processed, you reported that to MSP; is that is correct?

**A**. That is correct

**Q**. All right. Did you feel that that was part of your duties to report that as well to MSP?

**A**. I believe there was an MCL number attached to that, and it was criminal activity, and yes.

**Q**. Okay. In terms of the police overtime that you say was subject to an illegal ticket quota system, you reported that to whom?

**A**. To Michigan State Police.

**Q**. Did you believe --

**A**. And that was actually Director Swope, if I remember correctly.

**Q**. Do you believe that that was something that you and Director Swope needed to make sure was reported to MSP per your duties?

**A**. Absolutely.

**Q**. It also says here reported widespread corruption involving mismanagement of federal and state forfeiture funds. Do you see that?

**A.** Yes.

**Q**. Okay. And who was that reported to, again?

**A**. That was Director Vanderplow was to report that to the FBI.

**Q**. And do you believe that that was part of his and your duties to make sure that that was reported to the FBI?

**A**. Yes.

Ex. B, 242:10-244:2.

Vanderplow further admitted that when making reports and complaints, they were done as a function of his employment with the City.

> **Miotke: Q**: All right. And by the way, we've talked about any number of different things today in terms of things that you recall reporting to various individuals and entities, for example, the evidence management system, the pistol sales, the ticket quotas, the forfeiture funds. Were all these things done as part of your duties as an employee of the City of Dearborn Heights?
> **Vanderplow: A**:  Yes.

9

A copy of Transcript of Paul Vanderplow is attached hereto as Exhibit "C", 309:14-22.

As stated in *Garcetti*, "[e]mployers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." *Garcetti*, 547 U.S. at 422-423. As admitted by Plaintiffs, the reports made were made in their official capacity and not protected speech for First Amendment purposes.

Even if Plaintiffs could establish that their speech was protected and they suffered an adverse action, which as set forth above they cannot do so, their retaliation claim would also fail because they cannot establish that the actions of the actions that they complaint of was as a result of the reports that they made. A prima facie case of First Amendment retaliation involves three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff likely to "deter a person of ordinary firmness" from continuing to engage in the protected conduct; and (3) "there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by [the plaintiff's] protected conduct." *Scarbrough v. Morgan Cty. Bd. of Educ.*,

10

470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

*Assuming arguendo* Plaintiffs' speech was protected by the First Amendment (however pursuant to *Garcetti* it was not), as set forth above, Plaintiffs cannot prevail on the second element because they did not suffer any adverse employment actions. In addition, Plaintiffs also fail to establish the third element of their First Amendment retaliation claim as they cannot establish that the complaints made about the alleged shortfalls and ticket-fixing issues. To establish the third element, Plaintiffs must not only show that they suffered an adverse action, but they also must be able to establish that his protected activity was the substantial and motivating factor behind the defendant's alleged retaliatory conduct: As stated by the United States Supreme Court:

> As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim. To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must cause the injury. Specifically, it must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. [*Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019)].

Here, Plaintiffs assert that the alleged attempted de-funding of Plaintiff Swope and Vanderplow's job positions, denial of routine job benefits, and wrongful constructive discharge of Hart were a result of the reports made about alleged wrongdoing. ECF No. 48, PageID 752.   Plaintiffs cannot establish that their Complaints were the impetus for any actions taken by the City. The City legitimate, non-retaliatory/non-discriminatory reason.

First, Plaintiffs suggest that the "defunding resolution", Resolution 11A was set forth due to Plaintiffs alleged reporting of "corruption". Resolution 11A was offered due to the City Council's legitimate beliefs that the newly created Director positions were created outside of the City's charter. Councilman Hassan Saab, the drafter of Resolution 11A, testified that under the City's charter, the mayor did not have the authority to create new positions or director positions without the proper budget amendments[3]. A copy of the Deposition Transcript of Hassan Saab is attached hereto as Exhibit "E", 40:21-25, 41:1. Saab further testified that he believed that the City had the duty to follow the City charter as well as Act 78[4], which is why the Resolution was set forth for the Council as a body to vote on.

---

[3] Section 8.7 of the City's Charter provides the Council with the authority to periodically evaluate the Budget and reduce appropriations in order to balance the budget.

[4] Michigan's Act 78 of 1935 establishes a civil services system for municipal police and fire departments that bases hiring and promotions on merit, efficiency, and fitness through examination. Of note for this matter, Act 78 asserts that new hires must be ranked based on exam performance, and promotion positions are filled by a

Councilman Tom Wencel testified that he believed that the creation of the Director positions was, in fact, a violation of Act 78. A copy of the Deposition Transcript of Thomas Wencel is attached hereto as Exhibit "F", 46:7-13. Wencel goes on to state that the vote to defund was to eliminate the director positions in the budget, not specifically to defund Swope and Vanderplow. *Id.* at 3-16.

Further, Plaintiffs assert that by denying Swopes' claim for Senior Management training in Boston, MA, for three weeks, he suffered an adverse employment action. Denying training to an employee does not constitute an action that is adverse to the terms, conditions, employment status or benefits of employment. *Creggett v. Jefferson Cty. Bd. of Ed.*, 491 F. App'x 561, 568 (6th Cir. 2012) (citing *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008)) ("Defendant's failure to provide plaintiff with extra training does not constitute an adverse employment action."). Further, Plaintiff has not established any protected activity that Plaintiff Swopes took part in that caused the alleged retaliation. As indicated earlier, the Council has the authority to review budgetary items and, as necessary, dispense with appropriations to keep the budget balanced.

Finally, as discussed in detail below, Hart was not constructively discharged. On July 3, 2024, Hart admits to providing Mayor Bazzi with his intent to resign.

---

competitive process *within* the department and must be based on experience and merit.

13

While he calls it a "constructive termination, Har admits that no one told him to resign, suggested that he resign, or threatened him into resigning.

Defendants maintain legitimate business reasons for the actions that Plaintiffs complain of. Defendants further assert that Hart's departure was voluntary and without motivation from the City. As a result, Plaintiff's retaliation claims must be dismissed with prejudice.

**C. Plaintiffs' Claims Asserted under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, (Count II) Fail as a Matter of Law and Must be Dismissed.**

Plaintiffs go on to claim that Defendants "discriminated" against Plaintiffs because "Plaintiffs reported a violation or suspected violation of a law, regulation, or rule of the State of Michigan." Pl. Am. Compl. ECF No. 48, PageID 742, ¶ 65. While vague as to the allegations of "discrimination," under the Whistleblowers' Protection Act, MCL 15.361, *et seq.* (the "WPA")*,* Plaintiffs appear to allege that after they reported "violations to the proper authorities," they were subject to "threats, retaliation, and other adverse action[.]" Pl. Am. Compl. ECF No. 48, PageID 734, ¶ 26. Plaintiffs, however, fail to sufficiently plead allegations of discrimination constituting a violation under the WPA as a matter of law.

To establish a prima facie case under the WPA, Plaintiffs must meet a specified threshold established pursuant to Michigan precedent and case law. To do so, Plaintiffs must demonstrate that: (1) they were engaged in a protected activity;

14

(2) they were "discharged, threatened, or otherwise discriminated against regarding their compensation, terms, conditions, location, or privileges of employment"; and (3) there is some causation between their engagement in protected activities and the claimed discrimination. *Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 250-52, 848 N.W.2d 121, 125-26 (2014).

Protected activities under the WPA include the reporting, or the imminent intent to report, a violation of a law, regulation, or rule, or being requested by a public body to participate in an investigation, hearing, inquiry, or court action. *See* MCL 15.362; *see also Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 399; 572 N.W.2d 210 (1998); *see also Brown v. Detroit Mayor*, 478 Mich. 589, 594; 734 N.W.2d 514 (2007).

Michigan courts have found that retaliatory acts an employer might take against or toward an employee, in the context of protections afforded under the WPA, fall within the broader category of "adverse employment actions." *Wurtz*, 495 Mich. at 251 n.14 (citing *Whitman v. City of Burton*, 493 Mich. 303, 313, 831 N.W.2d 223, 229 (2013); cf. *Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 400, 572 N.W.2d 210, 213 (1998) (drawing the second element of a prima facie WPA claim directly from the statutory language)); *see Debano-Griffin v. Lake Co*, 493 Mich. 167, 175-176; 828 N.W.2d 634 (2013); *see also Brown v. Detroit Mayor*, 271 Mich.

App. 692, 706; 723 N.W.2d 464 (2006), *aff'd in relevant part*, 478 Mich. 589; 734
N.W.2d 514 (2007).

"The term 'adverse employment action' was originally developed and defined
in the context of federal antidiscrimination statutes to encompass the various ways
that an employer might retaliate or discriminate against an employee on the basis of
age, sex, or race." *Wurtz*, 495 Mich. at 251 n.14 (citing *Crady v. Liberty Nat'l Bank
& Trust Co of Indiana*, 993 F2d 132, 136 (7th Cir., 1993)). "Absent direct evidence
of retaliation, a plaintiff must rely on indirect evidence of his or her employer's
unlawful motivations to show that a causal link exists between the whistleblowing
act and the employer's adverse employment action." *Debano-Griffin*, 493 Mich. at
176 (citing *Hazle v. Ford Motor Co,*, 464 Mich. 456, 462, 628 N.W.2d 515, 520
(2001)). This standard permits a plaintiff to "present a rebuttable prima facie case on
the basis of proofs from which a factfinder could infer that the plaintiff was the
victim of unlawful [retaliation]." *DeBrow v. Century 21 Great Lakes, Inc. (After
Remand)*, 463 Mich. 534, 537-538, 620 N.W.2d 836 (2001). "Once a plaintiff
establishes a prima facie case," there exists a presumption of retaliation where "an
employer's adverse action is 'more likely than not based on the consideration of
impermissible factors'—for example, here, plaintiff's protected activity under the
WPA—if the employer cannot otherwise justify the adverse employment action."

*Debano-Griffin*, 493 Mich. at 176 (quoting *Hazle v. Ford Motor Co.*, 464 Mich. 456, 463, 628 N.W.2d 515, 520 (2001)).

In this case, Plaintiffs have alleged that "[b]eginning in January 2023, [they] collectively reported violations and suspected violations of law concerning corruption in the City government, corruption in the DHPD, and civil rights violations to the City of Dearborn Heights[,]" to the Michigan State Police, the United States Department of Justice, and the Federal Bureau of Investigation. Pl. Am. Compl. ECF No. 48, PageID 733-734, ¶ 20. Plaintiffs also allege to have reported: concerns with the systems used by the DHPD to manage evidence; unreported sales records of "nearly 900 pistols;" prohibited use of "police overtime work . . . [related to] an illegal ticket quota system[;]" and a general "ticket fixing" scheme. Am. Compl. ECF No. 48, PageID 733-734, ¶¶ 20, 21, 22, 23, 24, 25. They assert that these concerns and claims were reported to "proper authorities," and that only after such reporting were Plaintiffs subject to adverse employment actions under the WPA, as a direct result of that reporting. Am. Compl. ECF No. 48, PageID 734-735, ¶¶ 26, 28.

Plaintiffs have failed to identify adverse employment actions against them. Plaintiffs were not demoted. Plaintiffs were not discharged. Plaintiffs were not suspended. Plaintiffs were not terminated. At the time of these events, Plaintiff Hart was the Chief of Police; Plaintiff Vanderplow was the Director of Support Services;

17

and Plaintiff Swope was the Director of Police Operations. Arguably, Plaintiffs were in the positions of authority concerning the management of police affairs and their own roles within the DHPD. Defendants contemplated and put forth various resolutions before City Council, related to Plaintiff Swope and Plaintiff Vanderplow, which would operate to defund or limit the roles of the Director of Support Services and the Director of Police Operations. However, ultimately, despite one resolution passing, Plaintiffs' roles were *not* defunded or eliminated. In fact, Swope admits that the defunding never occurred. He testified that his paychecks never ceased and that he was able to continue to operate the functions of his job after the vote to defund occurred. Ex, C, 104:14-19. He also admits to continuing to receive his benefits. *Id.* at 20-22. Vanderplow echoed Swope's sentiments and affirmed that after the vote to defund his position, his paychecks and benefits were timely and consistently provided to him without any breaks. Ex. D 207:18-25, 208:1.

Any decisions related to the proposal and vote of Resolution 11A were related to concerns about the City of Dearborn Heights' budget and monetary limitations, which are direct concerns and responsibility of the City Council. Councilman Hassan Saab testified that his concern with the positions were that they were created without a budget amendment. Ex E, 40: 21-25, 41:1. Councilman Tom Wencel testified that he voted to defund the positions, not the individuals, because the positions were created in violation of Act 78. Ex. F, 63: 13-20.

18

This authority is inherently vested in the City Council as the local body of government owing a fiduciary duty to the City of Dearborn Heights. As a result, because Defendants are able to offer a legitimate reason for the alleged "adverse employment actions," and Plaintiffs have failed to proffer evidence, outside their own testimony, to show a reasonable fact-finder that their "protected activity" of "reporting" alleged violations, "was a 'motivating factor' for the employer's [alleged] adverse action[,]" Defendants are entitled to summary disposition and judgment on Plaintiff's claims as asserted under the WPA. *Debano-Griffin*, 493 Mich. at 176 (quoting *Hazle v. Ford Motor Co,*, 464 Mich. 456, 464-465, 628 N.W.2d 515(2001)).

Even if Plaintiffs were able to establish a prima facie case, and the Court accepts and relies upon Plaintiffs' assertion of circumstantial evidence to support the claims, such claims fail under law, whereby Defendants have established a legitimate, nonretaliatory reason for the decision to defund certain roles and remove certain parties from the DHPD.

For these reasons, Plaintiffs have failed to establish a prima facie case under Michigan law for a WPA claim to survive summary judgment. Therefore, this Honorable Court should dismiss Count II of Plaintiffs' Complaint in its entirety and with prejudice.

19

**D. Plaintiff Swope and Vanderplow's Claims Asserted Under the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, (Count III) Fail as a Matter of Law and Must be Dismissed.**

Swope and Vanderplow each claim retaliation under the Fair Labor Standards Act, whereby the City Council moved forward with a resolution to defund and eliminate funding for their respective roles, claiming that failure to fund the roles and their efforts as members of the police department violated the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, ("FLSA"). Although unclear by the language asserted in the pleadings, it appears that Plaintiffs are arguing that their positions were defunded, and that they continued to work and were underpaid as a result, in violation of the FLSA. Plaintiffs claim that Resolution 11A has, or will, cause Plaintiffs to work and not receive compensation for that work. Plaintiffs' own words contradict this theory. Plaintiffs' thin and unsupported allegations fail to support a claim of a FLSA violation as a matter of law.

"To succeed on a claim under the FLSA, a plaintiff must prove by a preponderance of evidence that they performed work for which they were not properly compensated. *Berry v. United States Postal Serv.*, No. 22-3577, 2023 U.S. App. LEXIS 9623, at *6 (6th Cir. Apr. 21, 2023) (quoting *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *superseded by statute as stated in Integrity Staffing*, 574 U.S. at 31-32))). "Conclusory statements

unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In this case, Swope and Vanderplow assert that they were not paid for the time that they worked and that they were not paid due to their position being "defunded". This is patently untrue. As established above, both Swope and Vanderplow attest that they continued to receive their paychecks and benefits continuously and on a timely basis. Plaintiffs' roles were *not* defunded or eliminated. Swope stated that his paychecks never ceased and that he continued to receive his benefits such as insurance. Ex. C, 104:14-22. Vanderplow asserted that same and stated that his paychecks and benefits were timely and consistently provided to him without interruption. Ex. D 207:18-25, 208:1.

Not only were Plaintiffs Swope and Vanderplow paid throughout the entirety of their tenure in their respective positions, but during their careers with the City, they routinely received raises. When Swope began his employment with the City on January 9, 2023, as Director of Police Operations, he was given an annual salary of $90,000. A copy of Swope's January 2023 Contract is attached hereto as Exhibit "G". Less than one year later, on December 12, 2023 Swope signed a contract amendment, increasing his salary to $117,220. A copy of Swope's July 2023 Contract is attached hereto as  Exhibit "H". The contract contains a retroactive date

21

of July 1, 2023. *Id.* Swope testified that he did receive retroactive pay for the six months and that he continued to receive the proper wages pursuant to the pay increase. Ex. C, 46: 10-25, 47:1-2. Swope further testified that his 23% pay increase that came less than one year after he began working for the City did not come with the requirement that he perform additional duties and that his role remained the same as when he began his employment with the City. *Id.* 11-24.

Similar to Swope, when Vanderplow began his employment with the City on January 9, 2023 as Director of Support Services, he was given an annual salary of $90,000. A copy of Vanderplow's January 2023 Contract is attached hereto as Exhibit "I". Less than one year later, on December 12, 2023 Vanderplow signed a contract amendment, increasing his salary to $117,220. A copy of Vanderplow's January 2023 Contract is attached hereto as Exhibit "J". The contract contains a retroactive date of July 1, 2023. *Id.* Vanderplow testified that he did receive retroactive pay for the six months and that he continued to receive the proper wages pursuant to the pay increase. Ex. D 62:9-25.

Plaintiffs' own claims of non-payment have been countered by their own testimony. Plaintiffs' Amended Complaint asserts that Plaintiffs must be paid for the services that they provided to the City. Well, Plaintiffs' own works indicate that they were. Not only were they paid, they were given raises and paid pursuant to those

raises. Plaintiffs have failed to establish that they were not properly compensated for the work performed during their ongoing employment with DHPD.

For these reasons, Plaintiffs have failed to establish a cognizable claim of underpayment pursuant to FLSA to survive summary judgment. Therefore, this Honorable Court should dismiss Count III of Plaintiffs' Complaint, as it pertains to all allegations of underpayment or improper compensation for work performed, in its entirety and with prejudice.

**E.  Plaintiffs' Race Discrimination Claims Under Title VII of the Civil Rights Act of 1964 (Count V) and Under the Michigan Elliot-Larsen Civil Rights Act (Count VI) Fail as a Matter of Both Law and Fact and Must Be Dismissed.**

Plaintiffs, 3 white males, allege they were discriminated against based on their race. They allege that Defendants acted in a discriminatory which includes:

a.  Arab council members requesting, on multiple occasions, that Arab employees be given preferential treatment.

b.  Arab elected officials and police officers conducted one or more "all Arab" meetings during business hours where they discussed advancing Arabs within the police department.

c.  c. White employees were excluded and not allowed to participate in the all-Arab meetings.

d.  d. Council members Wasim Abdallah and Mo Baydoun called Plaintiffs and harassed and intimidated them accusing them of taking the in service course on terrorism for law enforcement with the intent to target the Arab community.

e.  e. Elected officials posted on their social media that Dearborn Heights needed Arab Leadership within the police department.

f.  Finally, on December 12, 2023, the City Council introduced a resolution to defund Plaintiffs' position. The Resolution was eventually passed in January 2024.

Courts analyze Michigan Elliot-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*, (ELCRA) discrimination claims (Count VI) under the same framework as Title VII, 42 U.S.C.S § 2000e, claims (Count V). *Wingo v. Mich. Bell Tel. Co*., 815 F. App'x 43, 47–48 (6th Cir. 2020). Title VII bars employers from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When plaintiffs lack direct evidence of racial discrimination, as is the case here, they may present indirect (i.e. circumstantial) evidence under the three-part framework established in McDonnell Douglas. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019) (first citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); then citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)). To establish race discrimination under the McDonnell Douglas framework, a plaintiff must demonstrate that: (1) they are a member of a protected class, (2) they were qualified for their job; (3) they suffered an adverse employment decision; and (4) they were treated differently than similarly situated non-protected employees. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (first citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001); then citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

### i.  Plaintiffs cannot establish a prima facie case of race discrimination.

Plaintiffs cannot establish a prima facie case of race discrimination because there is no evidence that they were treated differently than a similarly situated employee outside of their class. *Laster*, 746 F.3d at 727. To be properly comparable, the individuals "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987); *Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir. 1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); *Cox v. Electronic Data Systems Co*, 751 F. Supp. 680 (E.D. Mich. 1990)). Failure to provide evidence regarding the alleged comparator's "position, job responsibilities, years of experience, length of tenure [ ], or disciplinary history" is fatal to Plaintiffs' prima face case of discrimination. *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 255 (6th Cir. 2008) (citing *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004)). Here, there is no evidence that a properly comparable employee was treated differently because of their race, which is fatal to Plaintiff's claims. *Fuelling*, 284 F. App'x at 255.

Plaintiff has not established any comparators that were treated differently. Most importantly, Plaintiffs cannot establish that they suffered any adverse employment action, or that any racially specific action occurred.

Plaintiff's assertion that on multiple occasions, Arab Councilmembers asked for Arab employees to be given preferential treatment does not amount to different treatment that Plaintiffs face. Pl. Am. Compl. ECF No. 48, PageID 746. Hart testified that Councilman Mo Baydoun requested that he promote Sergeant Bazzy to a director-level position. Ex. B, 159: 25, 160:1-3. While Councilman Baydoun denies that this request was made and that he asked for the lead of an interfaith committee, Plaintiffs cannot establish that they were harmed by this request, or that the request was made because of their race or Sergeant Bazzy's race. A copy of the Deposition Transcript of Mo Baydoun is attached hereto as Exhibit "K", 63:16-25, 64:1-8.

Plaintiffs assertion that meetings were held that consisted entirely of Arab-Americans, and claim that "white" employees were not allowed to participate does not establish discriminatory intent. As a preliminary matter, Plaintiffs do not suggest that attempted to attend, and were denied entry. Further, Mayor Bazzi testified that while he did not organize the meeting, he attended and expected that only be a few people. He was not sure who was invited. Ex. A, 82:14-17. Sergeant Bazzy reiterated that a meeting was being held to discuss the mistreatment of Arab Americans in the community. A copy of the Deposition Transcript of Mohamad Bazzy is attached

26

hereto as Exhibit "L", 81:17-25, 1-7. It was not touted as an All-Arab meeting. *Id.* at 20-22. While Plaintiffs may have felt upset that Arab employees in the City wound up gathering and discussing issues that they felt that they were facing, Plaintiffs were not harmed by this meeting, nor did they suffer an adverse employment action because of the one meeting that was held, which happened to consist of only Arab-American employees.

Plaintiffs' alleged claims that elected officials made comments about in-service course on terrorism and need for Arab leadership does not establish a Title VII violation. Plaintiffs have failed to suggest that they were harmed by these alleged statements, or that they suffered an adverse employment action based on the statements, or by these specific election officials.

Plaintiffs' claim that the resolution to defund Swope and Vanderplow's positions were based on their race. Nothing in the record suggests this narrative. What's more, they have failed to suggest that any Arab American, or non-white director whose position was created without going through the proper Act 78 process faced a vote to have their positions defunded. Plaintiffs have failed to present any similarly situated employees who faced a different fate. As such, they have failed to establish a prima facie case of Title VII  and ELCRA violations.

ii.   **Defendants had a legitimate business reason for their actions.**

Even if Plaintiffs could establish a prima facie case of discrimination based on race, their claim must fail because the City had legitimate business reasons for seeking to defund the Director positions. *See Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir. 1995). As discussed above, Act 78 regulates the process of adding positions to the Police Department and how employees within the Department are elevated to those positions. When proposing Resolution 11A, Councilman Saab asserts that the Director positions were created outside of the City Charter and bypassed legal procedure, which resulted in a burden to the City.

iii.   **Plaintiffs cannot establish that Defendant's legitimate business reasoning was pretext.**

Plaintiff's claim also fails as a matter of law because he cannot establish pretext, as required under Tally. The motivation of the decision-maker is the ultimate question in a claim under the ELCRA or Title VII. "'Proof of discriminatory motive is critical' when disparate treatment is claimed." *Wilson v. Stroh Companies, Inc.*, 952 F.2d 942, 945 (6th Cir. 1992) (quoting *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977)). A plaintiff's own subjective belief or speculation is not enough to support a claim under Title VII as a matter of law. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (first quoting *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986); then citing *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir. 1983))

28

("mere personal belief, conjecture and speculation are insufficient to support an inference . . . of discrimination."). In one breath, Plaintiffs assert that the actions of the Council were in retaliation for allegedly reporting perceived wrongdoing but now claim that it is due to discriminatory reasons. Both assertions are unsupported and are based on nothing but conjecture.

Plaintiff is likewise unaware of any employees who replaced him. (Id. at 92). Given Plaintiff's inability to provide any evidence of a properly comparable employee, his race discrimination claims fail.

For these reasons, Plaintiffs have failed to establish a prima facie case race discrimination under ELCRA or Title VII as a matter of law. Therefore, this Honorable Court should dismiss Count V and Count VI of Plaintiffs' Complaint in their entirety and with prejudice.

### F. Plaintiff Hart's Claims Asserted Pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112(a) (Count VII) Fail as a Matter of Law and Must Be Dismissed.

Hart claims that he was "discriminate[ed] against," "harass[ed] and intimidate[ed]" based on disability, citing "a heart condition and diabetes[.]" Pl. Am. Compl. ECF No. 48, PageID 749-750, ¶¶108, 110, 111. In the Amended Complaint, Hart claims that he was at "risk of constructive discharge *if* the Resolution were to go into effect." Pl. Am. Compl. ECF No. 48, PageID 750, ¶¶ 112 (emphasis added). His claims fail as a matter of law where there exists insufficient support in the record

to establish that the Resolution was entered in a manner with the intent and effect of discriminating against Hart for his "heart condition and diabetes," which allegedly constitute a "physical impairment" under the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* (the "ADA").

In asserting this claim, Hart cites 42 U.S.C. § 12112(a). Under this provision, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

The ADA prohibits discrimination against a qualified individual based on disability. 42 U.S.C. § 12112(a). Disability discrimination includes a failure to make reasonable accommodations. *See* 42 U.S.C. § 12112(b)(5)(A). To establish this type of discrimination under the ADA, an employee may establish their claim "either directly or indirectly, and each has its own test." *See Blanchet v. Charter Communs., LLC*, 27 F.4th 1221, 1224 (6th Cir. 2022) (citing *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (citing *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016))). The distinction between when to apply the direct versus the indirect evidence test is "vital because the framework for analyzing the two kinds of cases differs." *Id.* at 1227.

30

i.   **Plaintiff Hart has failed to sufficiently plead or establish a failure to accommodate under the ADA as a matter of law.**

In this case, Plaintiff Hart claims that he was discriminated against for having "diabetes" and other heart conditions, and that Defendants failed to accommodate his disability, resulting in an alleged violation of the ADA. When evaluating a claim of "failure to accommodate," courts look for direct evidence from the employee to establish that the employer failed to offer a reasonable accommodation, such that the failure would constitute discrimination. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996)) ("claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence . . . of discrimination). When assessing whether the plaintiff has established their claim, courts apply the direct evidence test. *See, e.g., Fisher v. Nissan North Am., Inc.*, 951 F.3d 409, 416-417 (6th Cir. 2020) (finding that because the plaintiff's claim was based on a theory of failure to accommodate, it involved the consideration of direct evidence); *see also Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020).

To establish a prima facie failure-to-accommodate claim, Plaintiff Hart must show that (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for his position, with or without reasonable accommodation; (3) Defendants knew or had reason to know about his disability; (4) he requested an

accommodation; and (5) Defendants failed to provide the necessary accommodation. *Brumley v. UPS*, 909 F.3d 834, 839 (6th Cir. 2018) (citing *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015)); *see also Blanchet*, 27 F.4th at 1228.

However, on this record, there exists no evidence to suggest that Plaintiff Hart reported his alleged disabilities to Defendants for the purposes of consideration related to any claimed accommodation. There is no evidence on this record to suggest that an accommodation was sought by Plaintiff Hart. There is no record support to establish that Defendants were aware of Plaintiff Hart's conditions and used that awareness to effect adverse employment actions against Plaintiff Hart.

In this case, Plaintiff Hart alleges that "Defendant's failure to provide reasonable accommodation . . . caused or continues to cause Plaintiff to suffer substantial damages or pecuniary loss, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." Pl. Am. Compl. ECF No. 48, PageID 750, ¶ 116. However, Plaintiff does not identify what type of accommodation was appropriately sought or rejected to allegedly constitute a "failure to accommodation" under the ADA. To that point, Plaintiff has failed to sufficiently plead a "failure to

32

accommodate," with sufficient specificity of *facts* to apply the direct evidence test to consider the merits of the claim.

Courts consider a variety of other tests concerning reasonable accommodations. *See* 42 U.S.C § 12112(b)(5)(A); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002). These considerations are moot for the purposes of this motion, where Plaintiff Hart has failed to sufficiently plead that he sought an accommodation, that it was reasonable, and that it was unreasonably denied. If there is no accommodation request to consider, there can be no analysis as to the reasonableness of Defendants' actions related to effecting or denying that request.

For these reasons, Plaintiffs have failed to establish a prima facie case for failure to accommodate pursuant to ADA to survive summary judgment. Therefore, this Honorable Court should dismiss Count VII of Plaintiffs' Complaint in its entirety and with prejudice.

ii. **Plaintiff Hart has failed to sufficiently plead or establish any discrimination under the ADA based on a disclosed disability.**

To establish a discrimination claim under the ADA, outside the specific context of accommodations, a plaintiff must also show that he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and that he suffered an adverse employment decision because of his disability. *Henschel*

*v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013) (citing *Gilday v. Mecosta Cnty.*, 124 F.3d 760, 762 (6th Cir. 1997); 42 U.S.C. § 12111(8)).

In this case, this Court cannot reach any of these analyses or considerations, as Plaintiff has not met his prima facie burden of establishing their case of discrimination. Even if Plaintiff Hart's diabetes and heart condition constitute disabilities under the ADA, Plaintiff has failed to plead the manner in which he was discriminated against on the basis of those conditions. In his deposition, Hart asserts that, upon being hired by the City, he attended a lunch at Al Shallal, a Middle Eastern Restaurant, with members of the City Council. Ex. B 148:-15, 149:3-5. Hart states that he told the present members about his diabetes in effort to explain the reason he was unable to eat the food at the lunch. *Id.* at 6-8. Hart goes on to state that he is able to manage his diabetes without the use of insulin. *Id.* at 8-9. He asserts, without explanation, that the Council used this information to take advantage and cause his glucose to spike and cause his heart attack. *Id.* at 10-12. Hart does not suggest that the Council forced him to eat foods that would cause his insulin to increase but that by introducing Resolution 11A, the Council sought to harm his health by removing his two director. It is clear that this did not occur. Based on Swope and Vanderplow's testimony above, they neither left their jobs with the City while Hart was the Chief of Police, and they always received payment for the work that they performed. Hart does not allege that his position was discussed for elimination, nor does he claim

34

that his position was defunded.  There is no evidence to suggest this intent on the part of any Defendants or other participants.

For these reasons, Plaintiffs have failed to establish a prima facie case for failure to accommodate pursuant to the ADA to survive summary judgment. Therefore, this Honorable Court should dismiss Count VII of Plaintiffs' Complaint in its entirety and with prejudice.

### G. Plaintiffs' Claim of Breach of Contract (Count IV) Fails as a Matter of Law, as to each Plaintiff, respectively, and Must Be Dismissed.

Plaintiffs continue their unsupported claims that they were treated improperly by the City. Plaintiffs' allegations that their employment contracts were breached is simply baseless. Only Hart asserts a claim under breach of contract and he improperly asserts that he was constructively terminated, despite resigning from his position. When asked in his deposition how his contract was breached, Vanderplow cites that the "defunding" resolution as breach. Vanderplow Dep. Tr. 206:19-23. He further asserts "various comments made by Councilmembers."

### i.   Plaintiff Hart cannot establish a claim of constructive discharge as a matter of law.

"Constructive termination" or "constructive discharge" is defined as occurring when an employer deliberately creates working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign. This standard requires both an objective and subjective analysis, considering

whether a reasonable person would find the conditions intolerable and whether the employee actually perceived them as such. *See Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635-636 (6th Cir. 2003); *see also Bloomer v. Word Network Operating Co.*, 785 F. Supp. 3d 251, 271 (E.D. Mich. 2025). To establish constructive discharge, the following elements must generally be demonstrated: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer acted with the intention of forcing the employee to quit, or the resignation was a foreseeable consequence of the employer's actions; and (3) the employee actually resigned. *See Goldmeier*, 337 F.3d at 635-636; *see also Bloomer*, 785 F. Supp. 3d at 271. Courts also emphasize that the employee's resignation must be involuntary, meaning it was effectively coerced by the employer's conduct. *See Le Galley v. Bronson Cmty. Sch.*, 127 Mich. App. 482, 487, 339 N.W.2d 223, 225 (1983).

Michigan federal courts apply a non-exclusive list of factors to determine whether a reasonable person would have felt compelled to resign. These factors include: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage resignation; and (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *See Bloomer,*

36

*785* F. Supp. 3d at 271. The totality of the circumstances is considered in evaluating whether the working conditions meet the threshold of intolerability. *Wood v. Dow Chem. Co.*, 72 F. Supp. 3d 777, 792 (E.D. Mich. 2014).

Here, Hart makes the claim that he was constructively discharged. He admits that on January 3, 2024, he tendered his resignation to the Mayor.  Ex. B, 59:2-7. While Hart makes the claim that he provided a "constructive termination," he admits that he submitted his request to leave his position with the City. While Hart makes the unsubstantiated claim that the Council constitutionally terminated him, he admits that there was no memorandum or resolution from the Council seeking to terminate him. *Id.* at  165:19-25. Despite his voluntary departure from the City, Hart admits that he and his family continued to receive health insurance benefits from the City as well as funds amounting to his regular pay. *Id.* at 61:4:25.

Hart has not established that City made his working conditions intolerable. When questioned about the adverse actions he faced, Hart, the former Chief of Police and thirty-year law enforcement professional, stated that members of the public were critical of him. Specifically, a Dearborn Heights resident, Sue Kaminski, who is not an employee of the City, would intimidate, harass, and berate "someone that did not fall in line with Mo Baydoun, Hassan Saab, Hassan Ahmed…" *Id.* at 147:1-15. He also claims Rachel LaPointe, another member of the public were privy to the memorandum that he circulated and placed them on a website. *Id.* at 151:7-16.

Despite this apparent concern of his, the former Chief of Police never contacted Ms. LaPointe to determine how she obtained the memos. *Id.* at 17-19. He never monitored this situation and was unable to recall who notified him of the situation. He further felt an investigation into his belief that a resident was obtaining his memorandums was a "complete waste of time". *Id* at 152:6-18. Hart goes on to list another resident and non-employee, Pat Swirple, as an individual who was counter to Mo Baydoun, yet was being used as a tool to harass Hart and accuse chaos in the police department. *Id* at 154:2-13.

The allegations Hart references as adverse employment actions do not rise to the level of intolerable work conditions. First, the actions listed were not exhibited by the City, and any speculation of connection to the City is not established. Moreover, Hart admits that he continued to get paid, even after resigning, and while with the City, maintained his position and duties.

While six-months prior to his resignation, a vote of no confidence was passed against Hart, Mayor Bazzi and the Corporation Counsel, the vote did not affect Hart's ability to do his job as he admits that his duties never changed. Moreover, a vote of no confidence, is not a triable issue and not indicative of constructive discharge. *See Mack v. City of Guadalupe*, No. B342205, 2005 Cal. App. LEXIS 6486, at *9 (Cal. Ct. App. Oct. 13, 2025).

It is important to note that the burden of proof for constructive discharge is substantial, as the law generally expects employees to remain in their positions while seeking remedies for workplace grievances. *Wood,* 72 F. Supp. 3d 777. Here, Hart chose to resign from his position and his resignation was not at the initiation of the City, therefore Hart's claim of breach of contact must be denied.

ii. **Plaintiffs Vanderplow and Swope have failed to sufficiently plead and assert a claim for breach of contract for their own employment.**

Vanderplow and Swope fail to assert any claim for breach of contract. While they vaguely claim that the terms of the contract were breached. Vanderplow and Swope, as established above, admitted that not only did they never not receive their pay, they continued to receive benefit, received pay raises and were able to continue to operate in their positions. In fact, in June of 2024, Swope succeeded Hart as Chief of Police until he resigned from that position on December 4, 2024. On October 2, 2024, Swope submitted his interest in applying for the Chief of Police position with South Haven's Police Department. A copy of the Letter of Interest is attached hereto as "M". On November 5, 2024, at 3:30pm, Swope sat for an interview with South Haven leadership. A copy of the Interview Schedule is attached hereto as "N". On November 27, 2024, Swope was offered a conditional letter of employment, and on the same date, Swope signed and returned the letter of employment. A copy of the

Conditional Offer is attached hereto as Exhibit "O". On December 4, 2024, Swope submitted his letter of resignation.

None of the Plaintiffs have exhibited or established a breach of contract on this record as a matter of law to survive summary judgment. Therefore, this Honorable Court should dismiss Plaintiffs' claim for breach of contract with prejudice.

## H. Plaintiffs' Claims Asserted Pursuant to the Federal Age Discrimination in Employment Act, 29, U.S.C. § 621, *et seq.*, (Count VIII) Fail as a Matter of Law and Must be Dismissed.

In addition to invoking the various other federal protections afforded in the workplace, Plaintiffs also allege age discrimination pursuant to the Federal Age Discrimination in Employment Act, 29, U.S.C. § 621, *et seq.*, (the "ADEA"), claiming that "Plaintiff are all over the age of 40" and that Defendants sought to promote another employee, "who is under the age of 40," and provide that employee "preferential treatment." Am. Compl. ECF No. 48, PageID 751, ¶¶ 119, 120. Plaintiffs claim that "Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights." Am. Compl. ECF No. 48, PageID 751, ¶ 122. Of note, Plaintiffs do not plead that "Arab Police Sergeants, Mahamad [sic] Bazzy" was provided "preferential treatment" *because* of his age. Am. Compl. ECF No. 48, PageID 751, ¶ 120.

The ADEA "provides that it is unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 519 (6th Cir. 2008) (citing 29 U.S.C.S. § 623(a)(1)). "Absent direct evidence of discrimination, a plaintiff claiming that he was unlawfully terminated in violation of the ADEA must establish a prima facie case" of discrimination by demonstrating that: (1) he was at least 40 years old at the time; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker. *Id.* at 521 (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007)). Only if an employee meets this burden does the burden then shift to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *See McDonnell Douglas Corp*, 411 U.S. at 802 . If the employer articulates a legitimate reason for termination, the burden shifts back to the employee to show that the employer's reason is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

In *Grosjean v. First Energy Corp.*, the Sixth Circuit Court of Appeals has noted that in considering age discrimination, and the extent to which an age difference speaks to the issue of discrimination between the replacement of an employee, "[a]ge differences of ten or more years have generally been held to be

sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case." 349 F.3d 332, 336 (6th Cir. 2003).

At this juncture, there exists no evidence in the record to suggest that any of the Plaintiffs were removed from their positions and replaced with Sergeant Bazzy. In fact, despite Plaintiffs' unsubstantiated insistence, there has been no evidence put forth that demands were made for Sergeant Bazzy to be promoted beyond his current position of Sergeant. Sergeant Bazzy testified that he does not recall any councilmember attempting to get him promoted to a position that is higher than his current position of Sergeant.  Ex. L, 76:16-20. Councilman Sabb stated:

> **Plaintiff's Counsel**: And as I understand it, you've never taken any action whatsoever in order to get Sergeant Mohamad Bazzy to become chief of police or deputy chief or anything to that effect?
> **Saab**: Never. There's a chain of process to go through and  you've got to test everything. Things are not just handed to you.· I don't care if you're my best friend. If you're not qualified for the job, you're not qualified for the job.
> Ex. E 63:21-25, 64:1-4.

Baydoun clarifies that during an introductory meeting with members of the Council, Swope and Vanderplow, a discussion ensued regarding building an Arab American Diversity Committee that would teach the community about interfaith. Baydoun testified that he recommended Sergeant Mohamad Bazzy to lead the committee because he was the first Arab American police officer hired by the Police Department. *Id.* at 63:25; 64:1-2. According to Baydoun, Hart objected to the recommendation and despite being new, and not knowing Bazzy, Vanderplow

objected. *Id.* at 16-19. Baydoun confirmed that the position was volunteer and not affected by Act 78. *Id.* at 21-24. Baydoun goes on to state, "[t]hat was our conversation. And so telling them to promote somebody, no, that would violate Act 78. And I've been a huge proponent for support of Act 78. That's all I got." *Id.* 65:1-4.

In analyzing the treatment of similarly situated employees, courts focus on the question of whether the plaintiff has "demonstrate[d] that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998).

For these reasons, Plaintiffs have failed to establish a prima facie case of age discrimination pursuant to ADEA to survive summary judgment. Therefore, this Honorable Court should dismiss Count VIII of Plaintiffs' Complaint in its entirety and with prejudice.

## III.  CONCLUSION

Plaintiffs Amended Complaint should be dismissed as the allegations are nothing more than speculative theories and dissatisfaction on part of Plaintiffs. Plaintiffs have not set forth a genuine issue of fact, and therefore Defendant City of Dearborn Heights requests that this honorable court grant its Motion for Summary Judgment, dismiss Plaintiffs' Amended Complaint with prejudice, and award

attorney fees and costs to the Defendant for having to defend such a frivolous Complaint.

Respectfully Submitted

**THE ALLEN LAW GROUP, P.C.**

Dated: February 6, 2026                 By:    _/s/ Monica N. Hunt_

Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

LOCAL RULE CERTIFICATION: I, Monica N. Hunt, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14

point (for proportional fonts). I also certify that it is the appropriate length. Local

Rule 7.1(d)(3).

Respectfully Submitted

**THE ALLEN LAW GROUP, P.C.**

By:    */s/ Monica N. Hunt*

Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, I did serve the foregoing paper

with the Clerk of the Court using the ECF system which will send notification of

such filing to all attorneys of record registered for electronic filing.

*/s/ Monica N. Hunt*
Monica N. Hunt