**EXHIBIT "F"**

Tom Wencel
September 05, 2025

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW,

JERROD HART,

    Plaintiffs,

v                                           Case No. 2:24-cv-10240

                                          HON. MARK A. GOLDSMITH

                                          MAGISTRATE DAVID R. GRAND

CITY OF DEARBORN HEIGHTS,

a Michigan Municipal Corporation,

    Defendant,

CITY OF DEARBORN HEIGHTS CITY COUNCIL,

in its official capacity only,

    Intervening Defendant.

                                /

    The Deposition of TOM WENCEL,

    Taken at 41700 Six Mile Road,

    Suite 101,

    Northville, Michigan,

    Commencing at 10:05 a.m.,

    Friday, September 5, 2025,

    Before Melynda C. Jardine, CER-7536.

Tom Wencel
September 05, 2025

**Page 2**

1  APPEARANCES:
2
3  STEPHEN J. BROWN
4  Fausone & Grysko, PLC
5  41700 West Six Mile Road
6  Suite 101
7  Northville, Michigan 48168
8  248.912.2313
9  jbrown@thefgfirm.law
10     Appearing on behalf of the Plaintiffs.
11
12  MONICA N. HUNT
13  SEAN MACKENZIE FARRELL
14  The Allen Law Group, P.C.
15  3031 West Grand Boulevard
16  Suite 525
17  Detroit, Michigan 48202
18  313.871.5500
19  mhunt@alglawpc.com
20  sfarrell@alglawpc.com
21     Appearing on behalf of the Defendant
22     City of Dearborn Heights.
23
24
25

**Page 3**

1  GARY T. MIOTKE
2  Miotke Law Office
3  6828 Park Avenue
4  Allen Park, Michigan 48101
5  313.388.4809
6  gmiotke@miotkelawoffice.com
7     Appearing on behalf of Intervening Defendant
8     City of Dearborn Heights City Council.
9
10 Roger A. Farinha
11 Corporation Counsel Dearborn Heights
12 6045 Fenton Street
13 Dearborn Heights, Michigan 48127
14 313.689.8437
15 rafarinha@dearbornheightsmi.gov
16    Appearing on behalf of Intervening Defendant
17    City of Dearborn Heights City Council.
18
19
20
21
22
23
24
25

**Page 4**

1  TABLE OF CONTENTS
2
3  WITNESS                                PAGE
4  TOM WENCEL
5
6  EXAMINATION
7  BY MR. BROWN:                            6
8  BY MS. HUNT:                            78
9
10            EXHIBITS
11
12 EXHIBIT                                 PAGE
13 (Exhibits attached to transcript.)
14
15 DEPOSITION EXHIBIT 1                    24
16 DEPOSITION EXHIBIT 2                    70
17
18
19
20
21
22
23
24
25

**Page 5**

1  Northville, Michigan
2  Friday, September 5, 2025
3  10:05 a.m.
4
5          MR. BROWN: Good morning. It is September
6  the 5th. It is now 10:05 a.m., and we are here for
7  Case Number 24-cv-10240, commonly called the Swope
8  case, for the Eastern District of Michigan. We're here
9  in our capacity -- Plaintiff's capacity -- I'm
10 Plaintiff's counsel, and I'm here to depose our
11 deponent, Councilman Tom Wencel. And in the room with
12 me, going around to my left in clockwise position, if
13 people would, announce their presence.
14         MR. FARINHA: Roger Farinha, Corporation
15 Counsel, Dearborn Heights.
16         MR. FARRELL: Sean Farrell, P86402, on behalf
17 of the City of Dearborn Heights.
18         MR. MIOTKE: Gary Miotke, on behalf of
19 Intervening Defendant, Dearborn Heights City Council.
20         MR. WENCEL: Tom Wencel.
21              TOM WENCEL,
22 was thereupon called as a witness herein, and after
23 having first been duly sworn to testify to the truth,
24 the whole truth, and nothing but the truth, was
25 examined and testified as follows:

Tom Wencel
September 05, 2025

### Page 46

```
 1    speculation.
 2             MS. HUNT: And calls for a legal conclusion
 3    of a layperson.
 4             MR. MIOTKE: And I agree with that as well.
 5    BY MR. BROWN:
 6    Q.  You can answer.
 7    A.  In my opinion, I don't think they followed Act 78 in
 8        hiring some people in the police department.
 9    Q.  Okay. Who are those people?
10    A.  Vanderplow and Swope.
11    Q.  Anybody else prior to Vanderplow and Swope?
12             MR. MIOTKE: Same objections.
13             THE WITNESS: Not that I'm aware of.
14             MR. MIOTKE: Okay. Go ahead.
15    BY MR. BROWN:
16    Q.  Let me ask the question this way. You've been a City
17        Council member since 2018; correct?
18    A.  Yes.
19    Q.  Since 2018, are Vanderplow and Swope the only people
20        who were hired by the Dearborn Heights Police
21        Department where the hiring did not take place under
22        Act 78?
23             MS. HUNT: Objection as to foundation and
24        form.
25             MR. MIOTKE: And same, and it calls for a
```

### Page 47

```
 1    legal conclusion from a lay witness.
 2             THE WITNESS: To my knowledge, yes.
 3    BY MR. BROWN:
 4    Q.  Did you ever state either in writing or verbally that
 5        you would refuse to even consider any proposal put
 6        before the City Council with Paul Vanderplow's name on
 7        it?
 8    A.  Yes.
 9    Q.  Why did you do that?
10    A.  Because I feel he lacks credibility.
11    Q.  All right. Why do you feel that Paul Vanderplow lacks
12        credibility?
13    A.  Well, a few instances where he's disrespected City
14        Council, smart-aleck responses to City Council
15        questions. I feel if he treats people this way in
16        public, how the heck does he treat people in private?
17    Q.  All right. Could you --
18             MR. MIOTKE: If we may, one rule that you did
19        not say was about breaks. And I think we should
20        probably say that, not to delay anything, but just from
21        the standpoint that if --
22             MR. BROWN: Sure.
23    BY MR. BROWN:
24    Q.  I'll tell you the -- here's the rule on breaks. You
25        can have a break whenever you want. If you're getting
```

### Page 48

```
 1    tired, if I'm being obnoxious, you need to get -- just
 2    have a break from me, you need to go to the bathroom,
 3    whatever the deal is, you can ask for a break, and we
 4    will honor that. Now, that means that that time
 5    doesn't count towards the end result here, but you can
 6    have a break. The only rule is, is that you can't ask
 7    for a break while a question is still pending.
 8    A.  Oh, okay.
 9    Q.  So you just have to finish your last answer, and then
10        say I need a break.
11    A.  Okay.
12    Q.  Make sense?
13    A.  Yes.
14    Q.  Do you need a break?
15    A.  From you? Not yet.
16    Q.  Good. Thank you, sir.
17    A.  Yeah.
18    Q.  I'm honored. All right. We were talking about Paul
19        Vanderplow. I take it you don't like the guy?
20             MS. HUNT: Objection as to form and
21        foundation.
22             MR. MIOTKE: Same.
23             THE WITNESS: I don't dislike anybody. I
24        dislike their mannerisms, you know, their behavior,
25        things like that. As far as a person goes, I give --
```

### Page 49

```
 1    you know, I'm a religious person. Everyone's God's
 2    creations, so you gotta respect that, and -- but
 3    sometimes their actions, their stuff that I don't -- I
 4    dislike.
 5    BY MR. BROWN:
 6    Q.  Did you ever witness the City Council being rude to
 7        Paul Vanderplow?
 8             MS. HUNT: Objection as to form.
 9             MR. MIOTKE: And foundation as well. Same
10        objection.
11             THE WITNESS: I don't recall any specific
12        instance where the City Council was rude to him.
13    BY MR. BROWN:
14    Q.  But do you think courtesy runs both ways in City
15        Council meetings?
16             MS. HUNT: Objection as to form and
17        foundation and relevance.
18             MR. MIOTKE: And also calls for, yes, what I
19        would say would be a legal conclusion.
20             THE WITNESS: Yes. That's -- yeah, I'm a
21        fair person. I believe in being fair. Yeah, it should
22        go both ways.
23    BY MR. BROWN:
24    Q.  I see. Did you ever witness other Council members,
25        other than yourself, treat Paul Vanderplow rudely
```

Page 62

1  MR. MIOTKE: Objection; form,
2  mischaracterizes testimony.
3  THE WITNESS: I can't answer that honestly.
4  I'd have to go back and look at the -- at the budget
5  and amounts spent.
6  BY MR. BROWN:
7  Q. You don't remember at the present moment?
8  A. No.
9  Q. How common is it in your seven years of experience on
10  the City Council for the City Council to pass a
11  resolution that defunds positions held by command
12  officers of the police department?
13  MS. HUNT: Object as to form and foundation.
14  MR. MIOTKE: Yeah. Object as to form and
15  foundation, and actually a legal conclusion about what
16  is a command officer.
17  THE WITNESS: What was the question?
18  BY MR. BROWN:
19  Q. Do you know what a command officer is in the police
20  department?
21  A. Yes.
22  Q. What is it?
23  A. A command officer is someone that holds a position
24  other than patrol officer basically.
25  Q. Okay. So how common is it, how common has it been in

Page 63

1  the seven years you've on the City Council for the City
2  Council to pass a resolution that defunds the
3  particular position of a command officer that's been
4  working for the City?
5  MS. HUNT: Form, foundation.
6  MR. MIOTKE: Same.
7  THE WITNESS: It's been uncommon.
8  BY MR. BROWN:
9  Q. Uncommon, you say? How uncommon?
10  A. I would say it's never happened, to the best of my
11  recollection, because no one's ever been hired outside
12  of Act 78 that I can recall.
13  Q. I see. And that was the reason why the City Council
14  moved to defund Swope and Vanderplow, because they were
15  hired outside of Act 78?
16  MS. HUNT: Objection as to form and
17  foundation, and mischaracterizes testimony.
18  MR. MIOTKE: Same.
19  THE WITNESS: I think that's part of the
20  reason.
21  BY MR. BROWN:
22  Q. You say it's part of the reason?
23  A. Uh-huh.
24  Q. Well, what's the other part of the reason?
25  A. I didn't write the resolution. I don't know what their

Page 64

1  motivation was.
2  Q. Whose motivation?
3  A. The person that wrote it. I don't know. I can't
4  remember who wrote it, so you can find out. I just
5  agreed with the resolution to discontinue that part of
6  the budget.
7  Q. To defund those two positions?
8  A. To eliminate that part of the budget.
9  Q. Which would deprive two individuals of their jobs;
10  correct?
11  MS. HUNT: Objection as to form, foundation,
12  speculation.
13  THE WITNESS: It's just a position.
14  MR. MIOTKE: Same and argumentative.
15  THE WITNESS: It's not the -- I didn't vote
16  on it for persons. I voted on it for the position --
17  BY MR. BROWN:
18  Q. I see.
19  A. -- regardless of who held the position.
20  Q. Is it true that at one point, the City Council
21  attempted to stop the payroll for all employees of the
22  City --
23  MR. MIOTKE: Objection; form.
24  BY MR. BROWN:
25  Q. -- in an attempt to defund Swope and Vanderplow?

Page 65

1  MR. MIOTKE: Objection; form, foundation,
2  speculation.
3  MS. HUNT: Same.
4  THE WITNESS: Not that I recall.
5  BY MR. BROWN:
6  Q. You never recall the City Council attempting to shut
7  down payroll for the entire City of Dearborn Heights?
8  MS. HUNT: Same objection.
9  MR. MIOTKE: Same.
10  THE WITNESS: No.
11  BY MR. BROWN:
12  Q. As a City Council member, are you aware of the process
13  by which the City procures goods and services?
14  MR. MIOTKE: Objection; form, foundation.
15  THE WITNESS: To an extent.
16  BY MR. BROWN:
17  Q. When you say to an extent, can you describe what your
18  knowledge is?
19  A. I don't know who people call to get goods or services
20  and the whole process. All I know is it comes before
21  us for approval for payment.
22  Q. Does there have to be a transparent competition among
23  vendors to sell goods and services to the City?
24  MR. MIOTKE: Objection; form, foundation,
25  calls for a legal conclusion.

Tom Wencel
September 05, 2025

Page 78

1 comptroller with that of the credentials of Paul
2 Vanderplow?
3     MS. HUNT: Objection as to form and
4 foundation.
5     MR. MIOTKE: Same; speculation.
6     THE WITNESS: I can't make -- compare the two
7 because I don't know of any of Paul Vanderplow's
8 credentials.
9 Q. All right.
10     MR. BROWN: That's it. No further questions.
11 It's 11:20.
12     MS. HUNT: You know what? I have no
13 questions.
14     MR. MIOTKE: You know what? I'm gonna
15 take -- we'll take a short break for me to confer with
16 him, and I might have no questions.
17     (Off the record at 11:21 a.m.)
18     (Back on the record at 11:26 a.m.)
19     MR. MIOTKE: I just need to state on the
20 record I have no questions.
21     MS. HUNT: Well, I do have -- and I
22 apologize -- one or two questions that popped up.
23     EXAMINATION
24 BY MS. HUNT:
25 Q. Morning, Mr. Wencel. I just have a couple questions as

Page 79

1 it relates to the resolution that was made to, quote,
2 unquote, "defund" the positions of Mr. Swope and Mr.
3 Vanderplow. When did you first become aware of that,
4 those motions?
5 A. When it became on -- came on the agenda, in the agenda
6 packet.
7 Q. Okay. Do you recall the timing?
8 A. Well, I was -- I was called by someone -- I don't know
9 if it was a resident or somebody else -- but they said,
10 hey, there's an agenda item about, you know,
11 eliminating those positions out of the budget.
12 Q. Okay. And I don't want to go into anything that was,
13 you know, spoken about in closed session, but did you
14 have communications with anyone off of the dais with
15 regard to those motions?
16 A. No.
17 Q. All right. Did you ever receive any advice with --
18 from anyone --
19 A. No.
20 Q. -- with regard to those motions? Okay.
21     MS. HUNT: I have no further questions.
22     MR. MIOTKE: I have nothing.
23     MR. BROWN: All right. We'll go off the
24 record.
25

Page 80

1 (The deposition was concluded at 11:27 a.m.
2 Signature of the witness was not requested by
3 counsel for the respective parties hereto.)

Page 81

CERTIFICATE OF NOTARY

STATE OF MICHIGAN )
    ) SS
COUNTY OF OAKLAND )

    I, MELYNDA JARDINE, certify that this deposition was taken before me on the date hereinbefore set forth; that the foregoing questions and answers were recorded electronically and transcribed by me; that this is a true, full, and correct transcript of my recording so taken; and that I am not related to, nor of counsel to, either party nor interested in the event of this cause.

*Melynda Jardine*
MELYNDA JARDINE, CER-7536
Notary Public,
Oakland County, Michigan.
My Commission expires: March 23, 2027