# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW  
JERROD HART,

    Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a  
Michigan Municipal Corporation,

    Defendant,

CITY OF DEARBORN HEIGHTS CITY  
COUNCIL, in its official capacity only,

    Intervening Defendant.

Case No. 2:24-cv-10240  
Hon. Mark A. Goldsmith  
Magistrate David R. Grand

___

## PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT

## EXHIBIT 5

**PROFESSIONAL SERVICES EMPLOYMENT AGREEMENT**
**BETWEEN THE CITY OF DEARBORN HEIGHTS AND JERROD S. HART**

This Professional Services Employment Agreement (hereinafter "Agreement") is to set forth the terms and conditions of employment of a **FULL TIME EXEMPT** employee, and is entered into between the City of Dearborn Heights, a municipal corporation (hereinafter "City") and **JERROD S. HART** (hereinafter "Employee"); collectively referred to as the "Parties".

WHEREAS, the MAYOR is empowered, to appoint and retain a full time **POLICE CHIEF**, and hereby appoints Employee for the effective and efficient operation of the City's Police Department; and

WHEREAS Employee has agreed to accept employment as a full time employee, subject to the terms, conditions and provisions of this Agreement.

THEREFORE, in consideration of the mutual covenants contained herein, the consideration of which is hereby stipulated to, the Parties agree as follows:

**Recitals.** The introductory, "whereas," and "therefore" paragraphs set forth above (hereafter, "Recitals") are an integral part of this Agreement and are incorporated into it by reference.

## I. TERM

1.1 The full time employee appointment shall be for the term commencing on July 1, 2023 (the "Commencement Date") and shall continue up to and including June 30, 2026.

## II. EMPLOYMENT

2.1 **DUTIES.** The Employee shall serve the City as the Police Chief of its Police Department as set forth by applicable laws under City of Dearborn Heights Charter and Ordinances.

The Employee shall specifically serve the City as follows:

1. Serve as the POLICE CHIEF and as such to lead the operations of the police department, and to recommend and implement processes and procedures aligned with current best practices, applicable laws, and policies to achieve the efficient and ethical management of the police department;
2. Serve the residents of Dearborn Heights in a fair and respectful manner, and where feasible within the confines of the law, and legal practices, provide transparency into the policies and procedures of the Dearborn Heights police department;
3. To lead the employees of the police department in all matters germane to the above mentioned scope of responsibilities.
4. The Chief's immediate supervisor shall be the Mayor. Chief acknowledges, understands and agrees that the Mayor shall have the final authority and the power to direct, control or supervise

Page 1 of 5


Bill Bazzi
Exhibit D
8/29/25
Rptr: Cheri Poplin

the manner of Chief's duties, consistent with the laws of the State of Michigan, the City Charter, City Ordinances, and this Agreement.

The Employee shall perform these specific duties with reasonable care, diligence, skill and expertise and perform all duties necessary to meet the goals and expectations of the City.

2.2 **CITY COUNCIL MEETINGS.** Except to the extent prohibited by or in material conflict with applicable laws and authorities, the Employee shall attend meetings of the City Council, both public and closed, to the extent permitted by Michigan Open Meetings Act.

2.3 **INDEMNIFICATION.** To the extent it may be permitted to do by applicable law, the City does hereby agree to defend, hold harmless, and indemnify the Employee from any and all demands, claims, suits, actions, judgments, expenses and attorneys' fees included in any legal proceedings brought against the Employee in the employee's individual or official capacity as an employee, provided that the incident(s), which is (are) the basis of any demand, claim, suits, actions, judgments, expenses and attorneys' fees, arises in the future, from an act or omission of the Employee, as an employee of the City; excluding, however, any demand, claim, suits, actions, judgments, expenses and attorneys' fees for those claims or any causes of action where the Employee committed an intentional, willful and wrongful act or omission, or acted in bad faith; and excluding any costs, fees, expenses or damages that would be recoverable or payable under an insurance contract, held either by the City or by the Employee. The provisions of this Paragraph 2.3 shall survive the termination, expiration or other end of this Agreement and/or the Employee's employment with the City.

2.4 **HOURS OF WORK.** Employee and City understand and agree that Employee is being employed in a salaried exempt full-time position, with a 260 workday calendar. The Employee acknowledges the proper performance of the duties require the Employee to generally observe normal business hours and will also require the performance of necessary services outside of normal business hours. In general, the Employee's business hours shall be flexible in nature and be eight (8) hours per day Monday through Friday. The Employee shall not regularly work weekends or holidays set forth by the City, however, it is understood that there may be circumstances, including but not limited to emergency or safety concerns and community relations requirements, which require Employee to work additional hours, weekends, or holidays. Should additional work be required, it is with the understanding that no further compensation shall be earned. The Employee's Monday through Friday work schedule is permitted by mutual consent between the City and the Employee.

### III. COMPENSATION

3.1 **SALARY.** The City shall compensate the Employee at the gross rate of One Hundred Twenty-Six Thousand, Six Hundred dollars and 00/100 ($126,600.00) per year effective July 1, 2023. Base salary adjustments will be made to ensure a eight percent (8%) differential between the salary for the position of Police Chief and the base salary for Director of Operations position.

Annually, on or before June 1, 2023, and each year thereafter, the Mayor shall meet with Chief to conduct an evaluation of Chief's job performance, including an evaluation of Chief's performance and/or

completion of the goals and expectations previously established. The format and the content of said performance evaluation shall be established by the Mayor, and shall be provided to the Chief prior to the performance review. The Mayor, may in his or her discretion, initiate performance evaluations at other times in addition to those set forth herein. Based on the evaluation, the Mayor may recommend a pay increase consistent with City wage scales, studies, or policy. The salary shall be paid bi-weekly via the City's payroll system and shall be subject to any applicable withholding or deductions required by the law. The City shall forward a W-2 to the Employee in accordance with federal law.

3.2    **BENEFITS.** The City shall make Social Security and Medicare match on behalf of the Employee and place the employee on the City's General Liability Policy, UIA, and Workers' Compensation Policy. The Employee is allowed to participate in the City's benefit plan to include medical, dental, vision, and life insurance as outlined in a separate document which will be provided to the employee in accordance with Public Act 152 (hard cap) for medical, and will adhere to the 90 days waiting period for benefit eligibility. Employee will be subject to the City's published rates, fees, and eligibility rules for any health insurance programs and coverage levels that Employee chooses to enroll in. Employee's regular work schedule must conform to the required minimum hours per week necessary to qualify for coverage. Employee may request a current version of the employee benefits guide from the City's human resources department to ensure Employee is informed of the benefits offerings and any applicable enrollment rules and deadlines. All holidays observed by the City shall also be paid, non-work days for the Employee, barring emergency situation which may require the Employee's attendance. Commensurate with the holiday pay schedule as outlined in the police supervisor's collective bargaining agreement, the Employee shall be entitled to holiday pay at six and three/tenths percent (6.3%) of base pay to be issued by December 1 each year. Commensurate to other City employees holding a leader level position, the City shall provide a designated work area, staff support, equipment, necessary training and access to a vehicle insured and maintained by the City. The Employee is eligible for additional fringe benefits commensurate to those as outlined in the police supervisor's collective bargaining agreement for longevity and seniority pay. As a condition of employment, the City agrees to provide, at no cost to the Chief, a semi or unmarked police vehicle which will afford the Chief the opportunity to lawfully respond to emergency situations and to drive to and from his place of residence in accordance with City policy.

3.3.    **UNIFORM ALLOWANCE.** Employee will be paid two percent (2%) of base salary as an annual stipend for the purpose of maintaining a set of uniforms, in serviceable condition, neat and clean. The stipend will be issued on or about the 30th of September.

3.4    **MCOLES CERTIFICATION BONUS.** Employee will be paid $3,000 annual stipend for meeting and maintaining licensure through Michigan Commission on Law Enforcement Standards and such payment shall be issued around or about March 1 annually.

## IV. TERMINATION

4.1    Employee understands that employment with the City is "at-will" and both the City and Employee may terminate the employment relationship at any time, for any reason, with or without notice and with or without cause, and wages earned shall be paid at the next payroll session. Unless terminated, or mutually extended as set forth in Paragraph 5.5 below, this Agreement will

automatically terminate at the end of the day on June 30, 2026. In the event the Employee chooses to terminate this Agreement before June 30, 2026, Employee will endeavor to provide the City with two (2) business weeks' notice of termination. Employee understands that no representative of the City has the authority to modify, orally or in writing, the at-will nature of Employee's employment relationship except through a written modification to this Agreement signed by the Mayor and Employee, which expressly refers to and modifies the Employee's at-will employment.

In the event the City chooses to terminate this Agreement before June 30, 2026, the City shall pay Employee a sum equal to the Employee's annual base salary together with payment for unused vacation time and accumulated vacation time; and unused sick days; and all other accumulated benefits as set forth in the policies of the City of Dearborn Heights. In addition, the City shall pay the Consolidated Omnibus Budget Reconciliation Act (C.O.B.R.A.) premiums for the medical, dental and vision insurances for up to one (1) year unless Employee otherwise secures medical insurance benefits, dental and vision insurances benefits from another source.

## V. GENERAL PROVISIONS

5.1 **COMPLETE AGREEMENT.** This Agreement sets forth and establishes the entire understanding between the City and the Employee relating to the employment of the Employee by the City. Any prior discussions or representations by or between the Parties are merged into and rendered null and void by this Agreement. The Parties by mutual written agreement may amend any provision of this Agreement during the term of this Agreement; such amendments shall be incorporated and made a part of this Agreement.

5.2 **BINDING EFFECT/ASSIGNMENT.** This Agreement shall be binding on the City and the Employee as well as their heirs, assigns, executors, personal representatives and successors in interest. This Agreement is personal to each of the parties and neither party may assign or delegate any of its rights or obligations under this Agreement without first obtaining the other's written consent.

5.3 **SAVINGS CLAUSE.** If any term or provision of this Agreement, as applied to any party or to any circumstance, is declared by a court of competent jurisdiction hereof to be illegal, unenforceable or void in any situation and in any jurisdiction, such determination shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending provision in any other situation or in any other jurisdiction. The Parties agree that the court or arbitrator making such determination shall have the power to reduce the scope, duration, area or applicability of the term or provision, to delete specific words or phrases or to replace any illegal, unenforceable or void term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision.

5.4 **CONTROLLING LAW.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Michigan and jurisdiction shall rest in a court of competent jurisdiction within Wayne County, Michigan.

5.5 **EXTENSION.** This Agreement may be extended by mutual written agreement only.

5.6 **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which shall constitute one instrument. A signature made on a facsimile copy of this Agreement or a signature to this Agreement transmitted by facsimile shall have the same effect as an original signature.

**WHEREFORE,** the Parties have executed this Agreement freely and voluntarily by affixing their signatures below:

| **JERROD S. HART** | **CITY OF DEARBORN HEIGHTS: BILL BAZZI, MAYOR** |
|---|---|
| *[signature]* | *[signature]* |
| Date: 12/12, 2023. | Date: 12/12, 2023. |