# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KEVIN SWOPE, PAUL VANDERPLOW JERROD HART, | Case No. 2:24-cv-10240 Hon. Mark A. Goldsmith Magistrate David R. Grand |

    Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a Michigan Municipal Corporation,

    Defendant,

CITY OF DEARBORN HEIGHTS CITY COUNCIL, in its official capacity only,

    Intervening Defendant.

_____

**PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT**

**EXHIBIT 6**

## PROFESSIONAL SERVICES EMPLOYMENT AGREEMENT
## BETWEEN THE CITY OF DEARBORN HEIGHTS AND PAUL D. VANDERPLOW

This Professional Services Employment Agreement (hereinafter "Agreement") is to set forth the terms and conditions of employment of a **FULL TIME EXEMPT** employee, and is entered into between the City of Dearborn Heights, a municipal corporation (hereinafter "City") and **PAUL D. VANDERPLOW** (hereinafter "Employee"); collectively referred to as the "Parties".

WHEREAS, the MAYOR is empowered, to appoint and retain a full time **POLICE DIRECTOR – SUPPORT SERVICES**, and hereby appoints Employee for the effective and efficient operation of the City's Police Department; and

WHEREAS Employee has agreed to accept employment as a full time employee, subject to the terms, conditions and provisions of this Agreement.

THEREFORE, in consideration of the mutual covenants contained herein, the consideration of which is hereby stipulated to, the Parties agree as follows:

**Recitals.** The introductory, "whereas" and "therefore" paragraphs set forth above (hereafter, "Recitals") are an integral part of this Agreement and are incorporated into it by reference.

### I. TERM

1.1   The full time employee appointment shall be for the term commencing on **January 1st, 2025** (the "Commencement Date") and shall continue up to and including **JANUARY 1ST, 2027**.

### II. EMPLOYMENT

2.1   **DUTIES.** The Employee shall serve the City as the **Director – Support Operations** of its Police Department as set forth by applicable laws under City of Dearborn Heights Charter and Ordinances.

The Employee shall specifically serve the City as follows:

1. Serve as the Director of Support Services and as such to manage and lead the records division and civilian dispatch division of the police department. To recommend and implement processes and procedures aligned with current best practices, applicable laws, and policies to achieve the efficient and ethical management of the aforementioned divisions;
2. Serve the residents of Dearborn Heights in a fair and respectful manner, and where feasible within the confines of the law, and legal practices, provide transparency into the policies and procedures of the Dearborn Heights police department;
3. To lead the employees of the police department in all matters germane to the above mentioned scope of responsibilities.



Bill Bazzi
Exhibit B
8/29/25
Rptr: Cheri Poplin

Page 1 of 6



DEFENDANT'S EXHIBIT 3

## PROFESSIONAL SERVICES EMPLOYMENT AGREEMENT
## BETWEEN THE CITY OF DEARBORN HEIGHTS AND PAUL D. VANDERPLOW

4. Serve as the primary Internal Affairs investigator for matters affecting City and will enable the assigned individual the ability to identify potential issues and reports of corruption, fraud waste and abuse affecting the City of Dearborn Heights.
5. The Director's immediate supervisor shall be the Police Chief. Director acknowledges, understands and agrees that the Police Chief shall have the final authority and the power to direct, control or supervise the manner of Director's duties, consistent with the laws of the State of Michigan, the City Charter, City Ordinances, and this Agreement.

The Employee shall perform these specific duties with reasonable care, diligence, skill and expertise and perform all duties necessary to meet the goals and expectations of the City.

2.2     **CITY COUNCIL MEETINGS.** Except to the extent prohibited by or in material conflict with applicable laws and authorities, the Employee shall attend meetings of the City Council, both public and closed, to the extent permitted by Michigan Open Meetings Act. The employee may elect a designee to appear on their behalf, when needed.

2.3     **INDEMNIFICATION.** To the extent it may be permitted to do by applicable law, the City does hereby agree to defend, hold harmless, and indemnify the Employee from any and all demands, claims, suits, actions, judgments, expenses and attorneys' fees included in any legal proceedings brought against the Employee in the employee's individual or official capacity as an employee, provided that the incident(s), which is (are) the basis of any demand, claim, suits, actions, judgments, expenses and attorneys' fees, arises in the future, from an act or omission of the Employee, as an employee of the City; excluding, however, any demand, claim, suits, actions, judgments, expenses and attorneys' fees for those claims or any causes of action where the Employee committed an intentional, willful and wrongful act or omission, or acted in bad faith; and excluding any costs, fees, expenses or damages that would be recoverable or payable under an insurance contract, held either by the City or by the Employee. The provisions of this Paragraph 2.3 shall survive the termination, expiration or other end of this Agreement and/or the Employee's employment with the City.

2.4     **HOURS OF WORK.** Employee and City understand and agree that Employee is being employed in a salaried exempt full-time position, with a 2080 hour work year. The Employee acknowledges the proper performance of the duties require the Employee to generally observe normal business hours and will also require the performance of necessary services outside of normal business hours. In general, the Employee's business hours shall be flexible in nature and be forty (40) hours per week. The Employee shall not regularly work weekends or holidays set forth by the City, however, it is understood that there may be circumstances, including but not limited to emergency or safety concerns and community relations requirements, which require Employee to work additional hours, weekends, or holidays. Should additional work be required, it is with the understanding that no further compensation shall be earned. All hours worked, to include but not limited to tasks such as telephone calls, emailing, telework and remote work shall be included in the (40) hour work week. The Employee's Monday through Friday work schedule is permitted by mutual consent between the City and the Employee.

PROFESSIONAL SERVICES EMPLOYMENT AGREEMENT
BETWEEN THE CITY OF DEARBORN HEIGHTS AND PAUL D. VANDERPLOW

### III. COMPENSATION

3.1   SALARY. The City shall compensate the Employee at the gross rate of <u>One Hundred Seventeen Thousand, Two Hundred Twenty Dollars and 00/100 ($117,220.00) dollars per year effective July 1, 2023. Base salary adjustments will be made to ensure an eight percent (8%) differential between the base salary of captain in the police supervisor's collective bargaining agreement and the Director of Support Services position is maintained.</u>   Base salary adjustments will be made to ensure that there is no less than an eight percent (8%) differential between the salary for the position of Director – Support Services and any subordinate employee.

Annually, on or before June 1st, and each year thereafter, the Chief shall meet with the Director to conduct an evaluation of the Director's job performance, including an evaluation of Director's performance and/or completion of the goals and expectations previously established. The format and the content of said performance evaluation shall be established by the Chief and shall be provided to the Director prior to the performance review. The Chief, may in his or her discretion, initiate performance evaluations at other times in addition to those set forth herein. Based on the evaluation, the Chief may recommend a pay increase consistent with City wage scales, studies, or policy. The salary shall be paid bi-weekly via the City's payroll system and shall be subject to any applicable withholding or deductions required by the law. The City shall forward a W-2 to the Employee in accordance with federal law.

### III. BENEFITS

3.1   BENEFITS. The City shall make Social Security and Medicare match on behalf of the Employee and place the employee on the City's General Liability Policy, UIA, and Workers' Compensation Policy. The Employee is allowed to participate in the City's benefit plan to include medical, dental, vision, and life insurance as outlined in a separate document which will be provided to the employee in accordance with Public Act 152 (hard cap) for medical and will adhere to the 90 days waiting period for benefit eligibility. Employee will be subject to the City's published rates, fees, and eligibility rules for any health insurance programs and coverage levels that Employee chooses to enroll in. Employee's regular work schedule must conform to the required minimum hours per week necessary to qualify for coverage. Employee may request a current version of the employee benefits guide from the City's human resources department to ensure Employee is informed of the benefits offerings and any applicable enrollment rules and deadlines. All holidays observed by the City, listed in the Fringe Benefit Policy for Department Heads, and those holidays listed in the DHPSA CBA shall also be paid, non-workdays for the Employee, barring emergency situation which may require the Employee's attendance. <u>Commensurate with the holiday pay schedule as outlined in the police supervisor's collective bargaining agreement, the Employee shall be entitled to holiday pay at a pre-determined percentage of their base pay. The percentage of base pay shall be equal to the calculation used for the most senior DHPSA member, to be issued by December 1 each year.</u> Commensurate to other City employees holding a leader level position, the City shall provide a designated work area, staff support, equipment, necessary training and access to a vehicle insured and maintained by the City. The Employee is eligible for additional fringe benefits commensurate

## PROFESSIONAL SERVICES EMPLOYMENT AGREEMENT
## BETWEEN THE CITY OF DEARBORN HEIGHTS AND PAUL D. VANDERPLOW

to those as outlined in the police supervisor's collective bargaining agreement for longevity and seniority pay. As a condition of employment, the City agrees to provide, at no cost to the Director, a semi or unmarked police vehicle which will afford the Director the opportunity to lawfully respond to emergency situations, use for City business, attend training and to drive to and from his place of residence in accordance with City policy.

3.2   **PAID TIME OFF.** Employee will accrue sick day hours and vacation day hours at rate which is enumerated in the DHPSA CBA for the most senior DHPSA member. The sick day hours and vacation day hours may be banked without limitations and shall be paid out at 100% upon Employee's separation from the City. Employee shall earn 6 personal days at the beginning of each year. Personal days must be used in the year they are earned. Employee shall receive funeral leave consistent with the DHPSA CBA.

3.3   **UNIFORM ALLOWANCE.** Employee will be paid an annual stipend commensurate to the benefit received by the most senior police captain, or deputy chief, if applicable. The purpose of this annual stipend is to maintain police uniforms and equipment. This stipend will be issued on or about the 30th of September.

3.4   **MCOLES CERTIFICATION BONUS.** Employee will be paid $3,000 annual stipend for attaining and/or meeting and maintaining licensure through Michigan Commission on Law Enforcement Standards and such payment shall be issued around or about March 1 annually.

3.5   **ATTENDANCE AT PROFESSIONAL MEETINGS AND SEMINARS.** The City recognizes its commitment to the professional development of the Employee for the benefit of the City. The City agrees to pay for the professional dues for the Employee's membership in national, state and regional professional associations. The Employee will be entitled to attend conferences such as the annual conferences of the International Association of Chiefs of Police, the Police Executive Research Forum, the Major Cities Chiefs Association and the Michigan Association of Chief's of Police. The Employee shall be reimbursed by the City for all travel and subsistence expenses incurred while attending conferences and meetings. The City also agrees to allow the Employee to attend seminars, courses, institutes and symposiums that contribute to the Employee's professional development.

3.5   **Fringe Benefit Policies for Department Heads.** Employee shall receive benefits which are listed in this professional services employment agreement and those which are listed in the Dearborn Heights Fringe Benefit Policies for Elected Officials, Department Heads & Deputy Department Heads. In instances where there is a conflict amongst this professional service agreement and the Dearborn Heights Fringe Benefit Policies document, this professional services agreement shall prevail. The Dearborn Heights Fringe Benefit Policies for Elected Officials, Department Heads & Deputy Department Heads document will accompany and be a part of this agreement.

## PROFESSIONAL SERVICES EMPLOYMENT AGREEMENT
## BETWEEN THE CITY OF DEARBORN HEIGHTS AND PAUL D. VANDERPLOW

### IV. TERMINATION

4.1     Employee understands that employment with the City is "at-will", and both the City and Employee may terminate the employment relationship at any time, for any reason, with or without notice and with or without cause, and wages earned shall be paid at the next payroll session. **<u>Unless terminated, or mutually extended as set forth in Paragraph 5.5 below, this Agreement will automatically terminate at the end of the day on JANUARY 1ST, 2027.</u>** In the event the Employee chooses to terminate this Agreement before JANUARY 1ST, 2027, Employee will endeavor to provide the City with two (2) business weeks' notice of termination. Employee understands that no representative of the City has the authority to modify, orally or in writing, the at-will nature of Employee's employment relationship except through a written modification to this Agreement signed by the Mayor and Employee, which expressly refers to and modifies the Employee's at-will employment.

In the event the City chooses to terminate this Agreement before JANUARY 1ST, 2027, the City shall pay Employee a sum equal to the Employee's annual base salary together with payment for unused vacation time and accumulated vacation time; and unused sick days; and all other accumulated benefits as set forth in the policies of the City of Dearborn Heights. In addition, the City shall pay the Consolidated Omnibus Budget Reconciliation Act (C.O.B.R.A.) premiums for the medical, dental and vision insurances for up to one (1) year unless Employee otherwise secures medical insurance benefits, dental and vision insurances benefits from another source. The severance agreement terms listed in this paragraph also apply should the City ask the Employee to resign, and the Employee resigns pursuant to such request.

### V. GENERAL PROVISIONS

5.1     **COMPLETE AGREEMENT.** This Agreement sets forth and establishes the entire understanding between the City and the Employee relating to the employment of the Employee by the City. Any prior discussions or representations by or between the Parties are merged into and rendered null and void by this Agreement. The Parties by mutual written agreement may amend any provision of this Agreement during the term of this Agreement; such amendments shall be incorporated and made a part of this Agreement.

5.2     **BINDING EFFECT/ASSIGNMENT.** This Agreement shall be binding on the City and the Employee as well as their heirs, assigns, executors, personal representatives and successors in interest. This Agreement is personal to each of the parties and neither party may assign or delegate any of its rights or obligations under this Agreement without first obtaining the other's written consent.

5.3     **SAVINGS CLAUSE.** If any term or provision of this Agreement, as applied to any party or to any circumstance, is declared by a court of competent jurisdiction hereof to be illegal, unenforceable or void in any situation and in any jurisdiction, such determination shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending provision in any other situation or in any other jurisdiction. The Parties agree that the court or arbitrator making such determination shall have the power to reduce the scope, duration, area or applicability of the term or provision, to delete specific words or

**PROFESSIONAL SERVICES EMPLOYMENT AGREEMENT
BETWEEN THE CITY OF DEARBORN HEIGHTS AND PAUL D. VANDERPLOW**

phrases or to replace any illegal, unenforceable or void term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision.

5.4   **CONTROLLING LAW.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Michigan and jurisdiction shall rest in a court of competent jurisdiction within Wayne County, Michigan.

5.5   **EXTENSION.** This Agreement may be extended by mutual written agreement only.

5.6   **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which shall constitute one instrument. A signature made on a facsimile copy of this Agreement or a signature to this Agreement transmitted by facsimile shall have the same effect as an original signature.

**WHEREFORE,** the Parties have executed this Agreement freely and voluntarily by affixing their signatures below:

**Paul D. Vanderplow**

Date: January 2, 2025.

**CITY OF DEARBORN HEIGHTS: BILL BAZZI, MAYOR**

Date: January 2nd, 2025.