**EXHIBIT J**

_West v. Wayne Cnty._, 672 Fed. Appx. 535, 541 (6th Cir. 2016)
(unpublished)

 Positive
As of: March 14, 2026 8:55 PM Z

## *West v. Wayne Cnty.*

United States Court of Appeals for the Sixth Circuit

November 30, 2016, Filed

File Name: 16a0632n.06

Case No. 16-1419

**Reporter**

672 Fed. Appx. 535 *; 2016 U.S. App. LEXIS 21522 **; 2016 FED App. 0632N (6th Cir.); 2016 WL 6994226

CAVEN WEST, Plaintiff-Appellant, v. WAYNE COUNTY; CATHY M. GARRETT, Individually and in her capacity as Wayne County Clerk, Defendants-Appellees.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** [**1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

*West v. Wayne Cnty.*, 2016 U.S. Dist. LEXIS 29702 ( E.D. Mich., Mar. 8, 2016)

## LexisNexis® Headnotes

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > ... > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

*HN1* **Summary Judgment, Entitlement as Matter of Law**

An appellate court reviews de novo a district court's grant of summary judgment under *Fed. R. Civ. P. 56*. Summary judgment is appropriate if, after examining the record and drawing all inferences in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The non-moving party must set forth more than a mere scintilla of evidence to rebut a summary judgment motion.

Governments > Local Governments > Employees & Officials

Labor & Employment Law > ... > Family & Medical Leaves > Scope & Definitions > Covered Employees

Gary Miotke

672 Fed. Appx. 535, *535; 2016 U.S. App. LEXIS 21522, **1

Labor & Employment Law > Leaves of Absence > Family & Medical Leaves > Remedies

Labor & Employment Law > Wage & Hour Laws > Scope & Definitions > Definition of Employees

Governments > State & Territorial Governments > Employees & Officials

## *HN2* Local Governments, Employees & Officials

The *Family and Medical Leave Act (FMLA)* forbids an employer from firing or otherwise discriminating against any individual for opposing any practice made unlawful by the subchapter. *29 U.S.C.S. § 2615(a)(2)*. For a person to recover damages or equitable relief under the *FMLA* , however, he or she must be an eligible employee. *29 U.S.C.S. § 2617(a)(1), (2)*. The *FMLA* draws its definition of employee from the *Fair Labor Standards Act (FLSA)*. *29 U.S.C.S. § 2611(3)* refers to *29 U.S.C.S. § 203(e)* for the definition of employee. The *FLSA* generally defines employee as any individual employed by an employer, but then outlines several exceptions. *29 U.S.C.S. § 203(e)(1)*. Employee excludes any individual selected by the holder of an elective office to be a member of his or her personal staff. *§ 203(e)(2)(C)(ii)(II)*.

Governments > Legislation > Interpretation

Labor & Employment Law > ... > Family & Medical Leaves > Scope & Definitions > Covered Employees

## *HN3* Legislation, Interpretation

*29 U.S.C.S. § 2617* expressly reserves a private right of action under the *Family and Medical Leave Act* only for eligible employees. When a statute's language is plain, the sole function of the courts is to enforce it according to its terms.

Labor & Employment Law > ... > Retaliation > Statutory Application > Family & Medical Leave Act

Labor & Employment Law > Leaves of Absence > Family & Medical Leaves > Scope & Definitions

## *HN4* Statutory Application, Family & Medical Leave Act

*29 C.F.R. § 825.220(e)* declares that individuals, and not merely employees, are protected from retaliation for opposing any practice which is unlawful under the *Family and Medical Leave Act*.

Administrative Law > Judicial Review > Standards of Review > Deference to Agency Statutory Interpretation

## *HN5* Standards of Review, Deference to Agency Statutory Interpretation

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.'s doctrine of deference to reasonable agency interpretation applies only where s statute is silent or ambiguous with respect to a specific issue.

Governments > Courts > Judicial Precedent

Labor & Employment Law > ... > Family & Medical Leaves > Scope & Definitions > Covered Employees

Gary Miotke
Page 2 of 10

672 Fed. Appx. 535, *535; 2016 U.S. App. LEXIS 21522, **1

Labor & Employment Law > Discrimination > Title VII Discrimination > Scope & Definitions

*HN6*  **Courts, Judicial Precedent**

*Title VII of the Civil Rights Act of 1964* decisions do not automatically control the construction of other employment discrimination statutes. The statutory language of Title VII gives a right of action to persons aggrieved, *42 U.S.C.S. § 2000e-5(b)*, *(f)*—a term broad enough to encompass third parties—while the *Family and Medical Leave Act* limits recovery to employees, a term it defines specifically. *29 U.S.C.S. §§ 2611(3)*; 2617(a); 203(e).

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Governments > Local Governments > Employees & Officials

Labor & Employment Law > ... > Family & Medical Leaves > Scope & Definitions > Covered Employees

Governments > State & Territorial Governments > Employees & Officials

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Materiality of Facts

*HN7*  **Entitlement as Matter of Law, Genuine Disputes**

To determine whether a person is a part of an elected official's personal staff under *29 U.S.C.S. § 203(e)(1)*, *(2)(C)(ii)(II)*, for purposes of exclusion from the *Family and Medical Leave Act*, *29 U.S.C.S. § 2617(a)(1)*, a court analyzes a non-exhaustive list of six factors: (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filing the position. Although the court must construe the personal staff exception narrowly and conduct a fact-intensive inquiry, summary judgment under *Fed. R. Civ. P. 56* nevertheless may be appropriate when there is no genuine issue of material fact as to the applicability of the relevant factors.

Civil Procedure > Pleading & Practice > Pleadings > Amendment of Pleadings

Governments > Courts > Judicial Precedent

Civil Procedure > Judgments > Summary Judgment > Motions for Summary Judgment

Civil Procedure > Pleading & Practice > Pleadings > Complaints

Civil Procedure > Discovery & Disclosure > Discovery

*HN8*  **Pleadings, Amendment of Pleadings**

Sixth Circuit precedent bars a party from raising a new legal claim for the first time in response to the opposing party's summary judgment motion under *Fed. R. Civ. P. 56* because it denies a defendant sufficient notice of what claims to investigate. Such a restriction is even more relevant at the summary judgment stage of proceedings, after a plaintiff has conducted discovery and has had the opportunity to amend the complaint under *Fed. R. Civ. P. 15(a)* and raise additional theories.

Gary Miotke
Page 3 of 10

Case 2:24-cv-10240-MAG-DRG   ECF No. 125-2, PageID.5400   Filed 03/16/26   Page 5 of 11

672 Fed. Appx. 535, *535; 2016 U.S. App. LEXIS 21522, **1

Labor & Employment Law
Business & Corporate Compliance > Labor & Employment

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Political Speech

### *HN9* Business & Corporate Compliance, Labor & Employment

The *First Amendment* prohibits government officials from making employment decisions based on an employee's political beliefs, affiliation, or support.

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Materiality of Facts

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > Judgments > Summary Judgment > Motions for Summary Judgment

### *HN10* Summary Judgment, Evidentiary Considerations

When a defendant moves for summary judgment under *Fed. R. Civ. P. 56* on the ground that a plaintiff lacks evidence of an essential element of the plaintiff's claim, *Rule 56* requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. Merely highlighting that one occurrence followed another occurrence cannot defeat a summary judgment motion.

Evidence > Types of Evidence > Circumstantial Evidence

Labor & Employment Law > Discrimination > Retaliation > Elements

Labor & Employment Law > ... > Retaliation > Statutory Application > Whistleblower Protection Act

Evidence > Inferences & Presumptions > Inferences

### *HN11* Types of Evidence, Circumstantial Evidence

To establish a prima facie case under Michigan's Whistleblowers Act, *Mich. Comp. Laws § 15.362*, a worker must show that (1) he or she was engaged in protected activity as defined by the act, (2) he or she was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action. To establish causation, the worker must show something more than merely a coincidence in time between protected activity and the adverse employment action. He or she can do this through circumstantial evidence, but the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. An explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference furnishes a court with nothing more than speculation.

**Counsel:** For CAVEN WEST, Plaintiff - Appellant: Matthew E. Krichbaum, Soble & Rowe, Ann Arbor, MI.

For WAYNE COUNTY, CATHY M. GARRETT, Individually and in her capacity as Wayne County Clerk, Defendants - Appellees: John M. Allen, Allen Brothers, Detroit, MI.

Gary Miotke
Page 4 of 10

672 Fed. Appx. 535, \*535; 2016 U.S. App. LEXIS 21522, \*\*1

**Judges:** BEFORE: DAUGHTREY, CLAY, and COOK, Circuit Judges.

**Opinion by:** COOK

# Opinion

[**\*536**] COOK, Circuit Judge. Caven West sued Wayne County ("County") and its County Clerk, Cathy Garrett, alleging that their termination of [**\*537**] his employment violated the *Family and Medical Leave Act ("FMLA" or "Act")*, his *First Amendment* free speech and political association rights, and Michigan's Whistleblowers Protection Act. The district court granted summary judgment in favor of Garrett and the County on all three counts. West appeals. For the reasons set forth below, we AFFIRM.

I.

Before his termination, West served as Chief of Staff and Chief Deputy Clerk to Wayne County's elected Clerk, Cathy M. Garrett. His work consisted of managing projects and running the day-to-day operations for the Clerk's office.

In October 2013, Garrett demanded that West fire Lynn Wade, another County employee, when Wade returned from [**\*\*2**] FMLA leave. West refused because he believed firing her would violate Wade's FMLA rights. When Garrett renewed her command weeks later, West again rebuffed her. Garrett then learned that Wade was negotiating with the County to settle a potential employment suit. The day before the County Commissioners' vote on the settlement, Garrett ordered West to attend the Commissioners' meeting and oppose the resolution. West rejected her directive, and the Commissioners approved the settlement on December 5, 2013. Shortly after, West left for a pre-approved vacation.

Upon West's return in January 2014, Garrett fired him. West sued the Country and Garrett, alleging that his termination for opposing Wade's firing violated the FMLA, *29 U.S.C. §§ 2601-2654*; infringed upon his *First Amendment* free speech and political association rights pursuant to *42 U.S.C. § 1983*; and contravened *Michigan's Whistleblowers Protection Act, Mich. Comp. Laws § 15.361*. Garrett and the County moved for summary judgment, and the district court granted their motion. West timely appealed.

II.

*HN1* "We review de novo the district court's grant of summary judgment." *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP, 759 F.3d 522, 526 (6th Cir. 2014)* (citing *Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009))*. "Summary judgment is appropriate if, after examining the record and drawing all inferences in the light most favorable to the non-moving [**\*\*3**] party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Renfro v. Ind. Mich. Power Co., 497 F.3d 573, 575 (6th Cir. 2007)* (citing *Martin v. Ind. Mich. Power Co., 381 F.3d 574, 578 (6th Cir. 2004))*. The non-moving party must set forth more than a mere "scintilla of evidence" to rebut a summary judgment motion. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

A. The FMLA Claim

West alleges that Garrett fired him because he defended Wade's FMLA rights, thereby violating the FMLA's prohibition against retaliation. Garrett and the County assert that his claim fails because the FMLA plainly excludes the personal staff of elected officials from the category of employees eligible to sue. West offers two counterarguments. First, he urges this court to go beyond the plain language of the statute and expand the class of plaintiffs entitled to sue. Second, he disputes whether he falls under the FMLA's "personal staff" exclusion. We

Gary Miotke
Page 5 of 10

672 Fed. Appx. 535, *537; 2016 U.S. App. LEXIS 21522, **3

reject West's reasoning on both points and agree with the district court that he is not entitled to sue under the FMLA.

[*538]  i. Cause of action under the FMLA

**HN2** The FMLA forbids an employer from firing or otherwise "discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." *29 U.S.C. § 2615(a)(2)*. For a person to recover damages or equitable relief under the Act, however, he or she [**4] must be an "eligible employee." See *29 U.S.C. § 2617(a)(1)*; see also id. *§ 2617(a)(2)*; *Horen v. Cook, 546 F. App'x 531, 533-4, 537 (6th Cir. 2013)* (affirming summary judgment against plaintiff because she did not qualify as "an eligible employee" under the FMLA).

The FMLA draws its definition of "employee" from the *Fair Labor Standards Act ("FLSA")*. See *29 U.S.C. § 2611(3)* (referring to *§ 203(e) of the FLSA* for definition of "employee"). The FLSA generally defines "employee" as "any individual employed by an employer," but then outlines several exceptions. *29 U.S.C. § 203(e)(1)*. Of relevance to West, "employee" excludes any individual "selected by the holder of . . . an [elective] office to be a member of his personal staff." *Id. § 203(e)(2)(C)(ii)(II)*.

Garrett and the County argue that the statute disallows a suit by West because, as a member of Garrett's personal staff, West is not an "employee" eligible to sue under the FMLA. Perhaps recognizing that the plain language of the FMLA precludes his suit, West makes several attempts to evade *§ 2617*.

First, West proposes to "harmoniz[e]" a supposed incongruity between "the broad, remedial goals of the FMLA anti-retaliation provision [in *§ 2615*]" and *§ 2617*'s restriction on who can bring suit. Noting that *§ 2615* prohibits unlawful discrimination against "any individual," he posits that Congress would not protect an individual from retaliation without [**5] giving that same individual a right of action with which to protect himself. He then proposes that the court read a right of action into *§ 2615* by ignoring the exceptions (including the "personal staff" exception) built into the definition of "employee." Under West's rendering, "*any individual* employed by an employer" could bring suit under *§ 2615*. *§ 203(e)(1)* (emphasis added).

West's interpretation falls flat because it relies on a false conflict for its opening premise. Congress could reasonably intend to broaden who would be protected against retaliation while simultaneously restricting which parties may seek damages or equitable relief for that retaliation. *Cf. Roberts v. Hamer, 655 F.3d 578, 582-84 (6th Cir. 2011)* (denying children of lessee statutory standing to sue where statutory language explicitly gives standing only to a "purchaser or lessee"). Following West's reading of the statute would mean disregarding the plain and unambiguous language of **HN3** *§ 2617*, which expressly reserves a private right of action only for "eligible employees." See *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000)* ("[W]hen "the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms" (citation and internal quotation marks omitted)). We accord the statutory language its plain meaning.

Second, [**6] West argues that the Department of Labor's regulation in *29 C.F.R. § 825.220* supports a broad interpretation of *§ 2615* that encompasses a right of action for "individuals" like West. **HN4** *Section 825.220(e)* declares that "[i]ndividuals, and not merely employees, are protected from retaliation for opposing . . . any practice which is unlawful under the Act." West asserts that we must give *Chevron* deference to this interpretation. His argument [*539] fails here for reasons similar to the ones articulated above. **HN5** *Chevron*'s doctrine of deference to reasonable agency interpretation applies only where "the statute is silent or ambiguous with respect to the specific issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)* (emphasis added). Although *§ 2615*—and the Labor Department's interpretation—speaks to broad protection against retaliation, it says nothing about the specific issue of whether *§ 2617* gives West a right to sue. Additionally, West has identified no silence or ambiguity in the term "individual" or "employee" that warrants turning to an agency interpretation.

Gary Miotke
Page 6 of 10

672 Fed. Appx. 535, *539; 2016 U.S. App. LEXIS 21522, **6

Finally, West attempts to graft Title VII's allowance of "third-party claims" onto the FMLA. He points to *Thompson v. North American Stainless, LP, 562 U.S. 170, 131 S. Ct. 863, 178 L. Ed. 2d 694 (2011)*, where the Supreme Court held that Title VII allows a third-party to sue when that party falls within the "zone of interests sought to be protected [**7] by Title VII." *Id. at 178*. Although we often apply Title VII frameworks to FMLA cases, the difference in statutory language here bars us from treading that worn path. See *Hunter v. Valley View Local Sch., 579 F.3d 688, 691* (**HN6** "Title VII decisions do not automatically control the construction of other employment discrimination statutes." (citing *Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 173, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)))*. The statutory language of Title VII gives a right of action to "persons aggrieved," *42 U.S.C. § 2000e-5(b), (f)*—a term broad enough to encompass third parties—while the FMLA limits recovery to "employee[s]," a term it defines specifically. *29 U.S.C. §§ 2611(3); 2617(a); 203(e)*. Thus, based on the plain language and facts before us, we find Title VII's third-party analysis inapplicable to the right-of-action question under *§ 2617*.

ii. The FMLA's "personal staff" exception

Faced with the unambiguous language of the statute, West contends that he does not fall under the personal-staff exclusion. Garrett and the County argue that West functioned as a member of Garrett's personal staff and therefore has no cause of action. West disagrees. We find the appellees' arguments more persuasive.

**HN7** To determine whether West was a part of Garrett's personal staff, we analyze a non-exhaustive list of six factors:

> (1) whether the elected official has plenary powers of appointment and [**8] removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filing the position.

*Birch v. Cuyahoga Cty. Prob. Ct., 392 F.3d 151, 158 (6th Cir. 2004)*. Although we must construe the personal staff exception narrowly and conduct a fact-intensive inquiry, "summary judgment nevertheless may be appropriate when there is no genuine issue of material fact as to the applicability of the relevant factors." *Id*. West challenges only factors (1), (2), and (6). We analyze each in turn.

a. Plenary powers of appointment and removal

Garrett and the County identify several facts proving that Garrett had plenary [*540] power over West's appointment and removal. First, West admits that Garrett appointed him to serve "at the pleasure of the Clerk," and Garrett believed that she could fire West at any time for any reason or no reason at all. In fact, Garrett [**9] confirmed that she alone made the decision to fire West and did so without consulting anyone.

In response, West flags two letters from Garrett: one requesting approval from the County to appoint West as Chief Deputy County Clerk, and another seeking a raise for him. Unfortunately for West, neither persuades us that Garrett lacked plenary authority over his employment. The pay-raise letter does not touch on the power to appoint or remove. And the appointment letter—consisting of three sentences to the County Clerk's personnel director—reflects a procedural formality rather than meaningful control over West by another County official.

b. Personally accountable to only the elected official

West contends that because he performed work for the Third Circuit Court—a government entity separate from the County Clerk's Office—he was not personally accountable to Garrett alone. He draws this inference from Garrett's deposition, where she avers that West "was instrumental in accomplishing" a project for the Third Circuit. Even accepting that West did such work, a one-off project for another entity hardly proves accountability to someone else. *Hemminghaus v. Missouri, 756 F.3d 1100, 1108 (6th Cir. 2014)* (holding that a court reporter's sporadic transcription [**10] for other judges or attorneys did not disprove accountability to her judge). His argument also contradicts his own deposition, in which he admits that Garrett was his only supervisor, and that he was solely

Gary Miotke
Page 7 of 10·

672 Fed. Appx. 535, *540; 2016 U.S. App. LEXIS 21522, **10

accountable to her; the Wayne County Clerk Organizational Chart, which shows West subordinate only to Garrett; and his sworn statement explaining his position in the organizational chart as being "second in command" and "report[ing] directly to the Clerk."

c. Actual intimacy of the working relationship

West asserts that he did not share an intimate working relationship with Garrett because they lacked regular contact on "day-to-day" matters. Garrett's testimony reinforces that she hardly involved herself with "day-to-day" matters "because that's [West's] charge." West also points out that Garrett worked on a different floor.

The intermittent communication on "day-to-day" matters, however, does not disprove intimacy because Garrett delegated such duties to West precisely so she could avoid handling them herself. See *Birch, 392 F.3d at 159* (holding that a "necessary degree of autonomy . . . such that [plaintiff] and [her supervisor] need not interact on a daily basis" did not undermine finding an intimate working relationship). **[**11]** Moreover, West admits that they texted and emailed almost every day about work issues. Given this frequency of communication, the physical distance between their offices does not alter the intimacy of their working relationship.

Because he has set forth no more than a scintilla of evidence to support his arguments on these three factors—and has conceded the other factors—West has failed to demonstrate a genuine dispute of material fact about his role as a member of Garrett's personal staff. We therefore conclude that West cannot raise an FMLA claim.[1]

**[*541]  B. *First Amendment* Claim**

West asserts in his complaint that Garrett violated **[**12]** his "*First Amendment* rights to Free Speech and Freedom of Political Association." Although the complaint alleges facts to substantiate a free-speech violation, he offers no facts to support his political association claim. In his response brief to the appellee's summary judgment motion below, he abandoned the free speech theory and advanced the political association theory. On appeal, West pursues only his allegation of a violation based on political association.

*HN8* Our precedent bars West from "rais[ing] a new legal claim for the first time in response to the opposing party's summary judgment motion" because it denies a defendant sufficient notice of what claims to investigate. *Tucker v. Union of Needletrades, Indus. & Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005)* (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2723 (3d ed. Supp. 2005)). Such a restriction is even more relevant at the summary judgment stage of proceedings, after a plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories. See *Desparois v. Perrysburg Exempted Vill. Sch. Dist., 455 F. App'x 659, 665 (6th Cir. 2012)* (citing *Tucker, 407 F.3d at 787-88*).

West contends that he gave proper notice to the appellees when he informed them in his complaint that they violated his "Freedom of Political Association." Even if this wisp of a mention constituted **[**13]** acceptable notice at the outset of the case (which is debatable), it no longer sufficed as the case proceeded through discovery and edged closer to summary judgment. See *Tucker, 407 F.3d at 788*. For West to give proper notice to Garrett and the County at such a late stage of the litigation, he should have amended his complaint to elaborate on the political retaliation theory. See *Fed. R. Civ. P. 15(a)*. By neglecting to do so, he did not properly notify Garrett and the County of the nature of his claim. We therefore cannot consider it on appeal.

---

[1] West argues that the *Price Waterhouse* burden-shifting framework applies to his FMLA claim. Under *Price Waterhouse*, West would need to produce sufficient evidence that Garett and the County discriminated against him because he defended Wade's FMLA rights. The burden of proof would then shift to Garrett and the County "to prove by a preponderance of the evidence that [they] would have [terminated West] absent the impermissible motive." *Hunter, 579 F.3d at 692* (quoting *Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 707 (6th Cir. 2008)*). Because § 2617 bars West from raising an FMLA claim, we do not address his application of the *Price Waterhouse* framework.

Gary Miotke
Page 8 of 10

672 Fed. Appx. 535, *541; 2016 U.S. App. LEXIS 21522, **13

Even if we could, West lays out no evidence that would create a genuine dispute of material fact. *HN9* "The *First Amendment* prohibits government officials from making employment decisions . . . based on the employee's political beliefs, affiliation, or support." *Lucas v. Monroe Cty., 203 F.3d 964, 975 (6th Cir. 2000)* (citations omitted). According to West, Garrett requested a pay raise to reward a coworker for attending a press conference in support of Garrett's favored mayoral candidate; at the same time, she terminated him for refusing to go. West props up this political retaliation theory with an email chain in which he asks Garrett to justify her pay-raise requests for two employees (one of whom was the coworker). She supplied no explanation other than "we **[**14]** have discussed [this] before." Based on the vagueness and timing of Garrett's response, West surmises that Garrett intended to reward the coworker for the coworker's political support.

West stakes his entire claim on this timing theory. But *HN10* "[w]hen a defendant **[*542]** moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of the plaintiff's claim . . . *Rule 56* requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact." *Bailey v. Floyd Cty. Bd. of Educ. By & Through Towler, 106 F.3d 135, 145 (6th Cir. 1997)* (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).* Merely highlighting that one occurrence (a pay-raise request) followed another occurrence (the political event) cannot defeat a summary judgment motion. *See id.*

Perhaps sensing the flimsiness of his proof, West refers to our pronouncement that "circumstantial evidence . . . would allow [a] jury to infer . . . [the defendant] sought to reward political supporters at the expense of those who did not contribute to his campaign." *Lucas, 203 F.3d at 976* (citing *Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 103 (1st Cir. 1997)).* However, as the district court explained, the plaintiff in *Lucas* amassed a substantial amount of circumstantial proof, *id. at 968-71*; the sum of West's evidence is Garrett's avowed support of the mayoral candidate and her requests to raise an **[**15]** employee's pay. Together, they amount to nothing more than speculation. *Moore v. Chesapeake & Ohio Ry. Co., 340 U.S. 573, 577, 71 S. Ct. 428, 95 L. Ed. 547 (1951).*

C. Michigan Whistleblowers Claim

*HN11* To establish a prima facie case under Michigan's Whistleblowers Act, *Mich. Comp. Laws § 15.362*, West "must show that (1) [he] was engaged in protected activity as defined by the act, (2) [he] was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *West v. Gen. Motors Corp., 469 Mich. 177, 665 N.W.2d 468, 471-72 (Mich. 2003)* (citing *Chandler v. Dowell Schlumberger, Inc., 456 Mich. 395, 572 N.W.2d 210, 212 (Mich. 1998); Shallal v. Catholic Soc. Servs. of Wayne Cty., 455 Mich. 604, 566 N.W.2d 571, 574-75 (Mich. 1997)).* For the first prong, West showed he engaged in protected activity when he opposed Wade's firing, fearing that it would violate the FMLA. In addition, West's termination constitutes an adverse employment action that satisfies the second prong.

But for the causal element, West's circumstantial evidence leads nowhere. To establish causation, West "must show [s]omething more than merely a coincidence in time between protected activity and an adverse employment action." *West, 665 N.W.2d at 473.* He can do this through circumstantial evidence, but "the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Shaw v. City of Ecorse, 283 Mich. App. 1, 770 N.W.2d 31, 40-41 (Mich. Ct. App. 2009)* (quoting *Skinner v. Square D Co., 445 Mich. 153, 516 N.W.2d 475, 480 (Mich. 1994)).* An "explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference" furnishes us with nothing **[**16]** more than speculation. *Id.* (quoting *Skinner, 516 N.W.2d at 480).*

West tenders circumstantial evidence to show a causal connection between his protected activity and his termination: an end-of-the-year email from Garrett to West discussing five work issues, with the Wade firing "t[aking] up the most space"; Garrett's statement in her deposition that she considered "a combination of things" when deciding to fire West; and a change in "Garrett's attitude and demeanor to [West]" after he defended Wade. Additionally, West alleges that Garrett lied in her testimony about attending a meeting where she discussed firing Wade.

Gary Miotke
Page 9 of 10

672 Fed. Appx. 535, *542; 2016 U.S. App. LEXIS 21522, **16

Even accepting all the above as true, West's evidence remains speculative. The **[*543]** attention Garrett gave to Wade's settlement with the County—only a few lines out of a nearly 20-line email—does not link West's defense of Wade to his ultimate termination. As Garrett herself explained, the "combination of things" reasonably refers to the reasons she offered for firing West—his poor performance, his inappropriate intimate relationship with a subordinate, his failure to notify her about his acceptance into an executive MBA program that would take substantial time away from his work, and his demand for a higher **[**17]** salary. And West's perception that Garrett changed her attitude and behavior toward him after he spoke out is not enough for us to infer causation. *See Cooney v. Bob Evans Farms, Inc., 645 F. Supp. 2d 620, 632 (E.D. Mich. 2009)*, aff'd, *395 F. App'x 176 (6th Cir. 2010)* ("Plaintiff's testimony that [his supervisor] appeared 'mad' when Plaintiff threatened to file a complaint is insufficient to support a causal connection." (citing *Goodman v. Genesee County, No. 266955, 2006 Mich. App. LEXIS 2490, 2006 WL 2270411, at *8 (Mich. Ct. App. Aug. 8, 2006)))*. Finally, as to West's contention that Garrett lied in her deposition testimony, a court does not weigh evidence or make credibility judgments when assessing a summary judgment motion.

Left with nothing but the coincidental timing of his opposition to Wade's firing and his own termination, West has failed to make a prima facie whistleblower protection claim.

III.

For the reasons discussed above, we AFFIRM the district court's ruling.

---

**End of Document**

Gary Miotke
Page 10 of 10