# EXHIBIT K

<u>Kurtz v. McHugh</u>, 423 Fed. Appx. 572, 579 (6th Cir. 2016) (unpublished)

▲ Caution
As of: March 14, 2026 9:17 PM Z

# *Kurtz v. McHugh*

United States Court of Appeals for the Sixth Circuit

May 18, 2011, Filed

File Name: 11a0337n.06

No. 10-5042

**Reporter**
423 Fed. Appx. 572 *; 2011 U.S. App. LEXIS 10195 **; 2011 FED App. 0337N (6th Cir.)

SANDRA KURTZ, Plaintiff-Appellant, v. JOHN McHUGH, Secretary of the Army; DEPARTMENT OF THE ARMY, Defendants-Appellees.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** [**1] On Appeal from the United States District Court for the Middle District of Tennessee at Nashville.

*Kurtz v. Sec'y of the Army, 2009 U.S. Dist. LEXIS 119683 (M.D. Tenn., Dec. 21, 2009)*

**Disposition:** AFFIRMED.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

Civil Procedure > ... > Summary Judgment > Appellate Review > Standards of Review

*HN1* **Summary Judgment, Entitlement as Matter of Law**

Summary judgment is proper when, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. An appellate court reviews a district court's grant of summary judgment de novo.

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Federal Employees

Labor & Employment Law > Discrimination > Federal Employees

Labor & Employment Law > Discrimination > Retaliation > General Overview

*HN2* **Exhaustion of Remedies, Federal Employees**

Gary Miotke

423 Fed. Appx. 572, *572; 2011 U.S. App. LEXIS 10195, **1

A federal employee who wishes to assert employment discrimination claims must exhaust her administrative remedies. Although retaliation claims are often excepted from this requirement because they arise after an EEO charge is filed, retaliation claims based on conduct that occurred before the charge is filed must be included in that charge.

Labor & Employment Law > ... > Civil Actions > Time Limitations > Estoppel, Tolling & Waiver

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Federal Employees

### HN3 Time Limitations, Estoppel, Tolling & Waiver

Although timely exhaustion is a prerequisite to filing suit, exhaustion is not jurisdictional and is subject to equitable tolling, waiver, and estoppel. Equitable tolling is to be applied only sparingly. The United States Court of Appeals for the Sixth Circuit has consistently considered the following factors in determining whether equitable tolling is appropriate: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the legal requirement for filing her claim.

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > General Overview

### HN4 Statute of Limitations, Tolling of Statute of Limitations

Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Federal Employees

Labor & Employment Law > Discrimination > Federal Employees

### HN5 Exhaustion of Remedies, Federal Employees

Agencies do not waive the defense of untimely exhaustion merely by accepting and investigating a complaint of discrimination. Rather, waiver occurs when the agency decides the complaint on the merits without addressing the untimeliness defense.

Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof

Labor & Employment Law > ... > Retaliation > Elements > General Overview

### HN6 Retaliation, Burdens of Proof

Title VII makes it unlawful to retaliate against an employee either because she opposed any practice made unlawful by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *42 U.S.C.S. § 2000e-3(a)*. A plaintiff may establish a prima facie case of retaliation by showing: (1) that she engaged in protected activity; (2) that the exercise of protected rights was known to the defendant; (3) that the defendant took adverse action, or subjected plaintiff to severe or

Gary Miotke
Page 2 of 9

423 Fed. Appx. 572, *572; 2011 U.S. App. LEXIS 10195, **1

pervasive retaliatory harassment; and (4) that there was a causal connection between the protected activity and the adverse action.

Labor & Employment Law > ... > Retaliation > Elements > Causation

**HN7** **Elements, Causation**

Causation is shown where the evidence is sufficient to raise the inference that protected activity was the likely reason for the adverse action.

Labor & Employment Law > ... > Retaliation > Elements > Adverse Employment Actions

**HN8** **Elements, Adverse Employment Actions**

A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Title VII does not create a general civility code for workplaces; the purpose is to prohibit employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers, and, normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

**Counsel:** For SANDRA KURTZ, Plaintiff - Appellant: Robert Joseph Martin, Law Office, Clarksville, TN.

For DEPARTMENT OF THE ARMY, Defendant - Appellee: Mercedes C. Maynor-Faulcon, Assistant U.S. Attorney, Michael L. Roden, Assistant U.S. Attorney, United States Attorney's Office, Nashville, TN.

For SECRETARY OF THE ARMY, John McHugh, Defendant - Appellee: Michael L. Roden, Assistant U.S. Attorney, United States Attorney's Office, Nashville, TN.

**Judges:** Before: GUY, CLAY, and McKEAGUE, Circuit Judges.

**Opinion by:** RALPH B. GUY, JR.

## Opinion

[*573] **RALPH B. GUY, JR., Circuit Judge.** Plaintiff Sandra Kurtz appeals from the entry of judgment in favor of the defendants with respect to her Title VII retaliation claims. See _42 U.S.C. § 2000e-3(a)_.[1] Plaintiff argues that the district court erred in finding that many of her retaliation claims were time barred; that the defendants had not waived the issue of timeliness; and that equitable tolling was not warranted. Plaintiff also contends that the district court erred: (1) in finding that plaintiff had not made out a _prima facie_ case of retaliation with respect to two claims that were either [**2] timely, or assumed to be timely; and (2) in determining that two additional claims asserted in response to the motion for summary judgment had not been properly pleaded. For the reasons that follow, we affirm.

I.

_____

[1] Plaintiff has expressly abandoned all of her other claims for relief.

Gary Miotke
Page 3 of 9

423 Fed. Appx. 572, *573; 2011 U.S. App. LEXIS 10195, **2

Plaintiff was hired and has continued to work as a health technician in the Ophthalmology Clinic of Blanchfield Army Community Hospital, which is located at Fort Campbell, Kentucky. A confrontation in the Clinic more than a year after plaintiff began working there set in motion the circumstances that led to the alleged retaliation. Specifically, on Friday, March 26, 2004, the husband of a coworker came to the Clinic and angrily accused his wife of having a workplace affair. The following Monday, March 29, 2004, Clinic Chief Dr. Glenn Sandford called a meeting of the technicians and chastised them for spreading rumors about the alleged affair. Dr. Sandford told them to keep their "damn mouths shut," and said a letter would be placed in their personnel files reflecting his directive not to gossip at work or take issues that could be resolved by a supervisor outside the chain of command. A letter of counseling [**3] was apparently drafted, although defendants maintain that the letter was never actually placed in any of their personnel files.

Denying involvement in the gossip, plaintiff and fellow technician Jennifer Smith objected to the threatened action and asked their direct supervisor, Ricarda Johnson, for an opportunity to speak with Dr. Sanford. Rebuffed by Johnson, they requested a meeting with Dr. Sandford's supervisor and a meeting was held with Colonel Stanley Bloustine, Chief of Surgery, on April 2, 2004. Smith, with the support of plaintiff, complained that it was unfair to reprimand everyone without regard to culpability and expressed concern about how management had responded to the altercation. Both Johnson and Dr. Sandford were present during that meeting. Plaintiff maintained that her decision to take the issue outside the chain of command motivated the acts of alleged retaliation that followed.

Specifically, the next day, having heard about the meeting, Dr. Karen Nixon banned plaintiff and Smith from assisting her during LASIK surgeries. Dr. Nixon said she had "lost trust" in them, and later testified that it was because she heard that they had criticized her during the meeting [**4] with Colonel Bloustine. Johnson advised plaintiff and Smith about the ban, telling them that their supervisors were "mad" because they had made them "look bad" by going outside the chain of command. Johnson also warned plaintiff that she had [*574] better "dot all of [her] 'i's and cross all of [her] 't's" because they were watching her. The ban did not apply to other doctors or procedures, and was lifted by Dr. Nixon later that year.

Plaintiff complained to Dr. Sandford, but he believed there was nothing to investigate and reminded plaintiff that no one in the hospital had listened to Smith's complaints. On May 5, 2004, Smith made her initial contact with an EEO counselor. Plaintiff accompanied Smith and gave a statement to the EEO counselor, but decided not to initiate her own EEO complaint at that time. Three more incidents of alleged retaliation followed over the next year—the "emergency door incident," the "purse incident," and the "recycle bin incident"—each of which involved actions taken by Johnson.

Specifically, in the wake of 9-11, one of the Clinic doors was designated and posted for use only in an emergency. Staff knew that this door was not to be used except in emergencies, but [**5] did not always comply. Sometime in the spring or summer of 2004, plaintiff and another coworker were observed by Johnson attempting to enter the Clinic through the emergency door. Having been seen, plaintiff walked around to another door and was met by Johnson. Yelling, Johnson grabbed plaintiff by the arm, took her to the emergency door, and insisted that she read the sign on the door aloud. Plaintiff claimed that she was singled out and humiliated in front of patients and staff, while nothing was said to the coworker who had been with her. No disciplinary action was taken.

Once in either May 2004 or April 2005, plaintiff left her purse unattended at the technician station while answering someone's question. Johnson saw this and hid plaintiff's purse from her. When confronted, Johnson denied that she had the purse, loudly warned plaintiff that personal items were supposed to be locked up, and finally returned plaintiff's purse to her. Although hospital policy required employees to secure personal items, there was evidence that other technicians had not been chastised for similar conduct.

Finally, one day in March or April 2005, plaintiff and another employee were asked to take a recycle [**6] bin from the Clinic and empty it into a dumpster. Instead of returning directly to the Clinic, however, they detoured to another area so that plaintiff's coworker could confirm a surgical appointment for her child for the next day. Johnson discovered the recycle bin unattended in the hallway, and decided to take it to "make a point" about the need to return directly from such a task. Plaintiff searched for the recycle bin, had an announcement made over the public

Gary Miotke
Page 4 of 9

423 Fed. Appx. 572, *574; 2011 U.S. App. LEXIS 10195, **6

address system asking for its return, and offered to pay for a replacement if it was not found. Plaintiff did not report the loss to Johnson, and Johnson did not tell plaintiff that she had taken it until several days later. Johnson accused plaintiff of being untrustworthy and required plaintiff to inform her before leaving the Clinic for a break.

On April 29, 2005, Dr. Nixon confronted plaintiff about the notice Dr. Nixon received listing her and plaintiff among the witnesses to be called at Smith's EEO hearing on May 3, 2005. According to plaintiff, Dr. Nixon said it would not hurt her or Johnson and could only hurt plaintiff or Dr. Sandford. She added that Dr. Sandford did not deserve that because he was "fighting a war." [**7] Plaintiff reported this exchange to Johnson, who was unsympathetic and said she had warned that they should "dot all of their 'i's and cross all of their 't's."

Plaintiff proceeded to testify at Smith's EEO hearing on May 3, 2005, and then finally initiated contact with an EEO counselor on her own behalf on May 9, 2005. Plaintiff maintains that two additional instances [*575] of retaliation followed this protected activity: being placed on "probation" on May 20, 2005; and having her name removed from a commendation form on March 9, 2006. The district court found, however, that these additional claims had not been pleaded in the Complaint or Amended Complaint.

Specifically, plaintiff complained that she was placed on "probation" for an error she admittedly made on May 17, 2005, when she placed the photographs of one patient's eyes into the file of a different patient with the same surname who was having refraction surgery. The surgeon, Dr. Adam Buchanan, noticed differences in the centration photographs and caught the error. Plaintiff did not attribute any retaliatory motive to Dr. Buchanan, but alleged that she was disciplined more severely than others had been for similar conduct. In fact, [**8] plaintiff received only formal counseling and was placed on a performance standards review for 90 days, during which plaintiff's work was reviewed on a daily basis and plaintiff was expected to have no more than a specified number of errors. There were no further incidents, the period of close supervision ended, and plaintiff received no further discipline.

Finally, on March 9, 2006, the same day as the administrative hearing on plaintiff's EEO complaint, Johnson allegedly altered a form that had been filled out by a patient intending to recognize plaintiff for outstanding service. According to plaintiff, Johnson removed plaintiff's name from the form and substituted the names of other technicians instead. Plaintiff does not claim that this had any particular consequences, and the significance of such a patient commendation does not appear in the record. Defendants emphasized that plaintiff received the "top block," or the highest rating possible, on her performance evaluations for the period of May 2005 through June 2006, as well as for July 2006 through April 2007, and May 2007 through April 2008.

The final agency decision denying plaintiff's claims was issued on September 29, 2006, [**9] and this action was filed timely on December 21, 2006. An Amended Complaint was later filed, and defendants' first motion to dismiss was withdrawn to allow discovery to proceed. Defendants filed a new motion to dismiss or for summary judgment after the close of discovery, which the magistrate judge recommended be granted. Over plaintiff's objections, the district court adopted the magistrate judge's report, granted defendants' motion for summary judgment, and dismissed the case with prejudice. This appeal followed.

II.

Since the defendants' motion to dismiss or for summary judgment involved consideration of matters outside the pleadings, the district court treated the motion as one for summary judgment. _Fed. R. Civ. P. 12(d)_. HN1 Summary judgment is proper when, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)_; _Fed. R. Civ. P. 56(c)(2)_. We review a district court's grant of summary judgment de novo. _Mazur v. Young, 507 F.3d 1013, 1016 (6th Cir. 2007)_.

Gary Miotke
Page 5 of 9

423 Fed. Appx. 572, *575; 2011 U.S. App. LEXIS 10195, **9

### A. [**10] Timeliness

*HN2* A federal employee who wishes to assert employment discrimination claims must exhaust her administrative remedies. *Brown v. Gen. Servs. Admin., 425 U.S. 820, 832, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976)*; *McFarland v. Henderson, 307 F.3d 402, 406 (6th Cir. 2002)* (Title VII). [*576] Although retaliation claims are often excepted from this requirement because they arise after an EEO charge is filed, retaliation claims based on conduct that occurred before the charge is filed must be included in that charge. *Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998)*. In this case, plaintiff was required to bring her complaints to the attention of an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *29 C.F.R. § 1614.105(a)(1)*.

Plaintiff's Amended Complaint alleged that "upon learning of her protected activities," defendants retaliated against her in the following ways:

> (i) not allowing her to assist in surgeries;
>
> (ii) singling her out as to her use of an emergency door;
>
> (iii) her supervisor physically grabbing her [to take her to the emergency door];
>
> (iv) the supervisor hiding her personal [**11] possessions; and,
>
> (v) the supervisor hiding a [recycle bin] over which the Plaintiff had responsibility.

The magistrate judge found that each of these acts of alleged retaliation were untimely because they occurred more than 45 days before plaintiff first contacted an EEO counselor about her claims on May 9, 2005. The district court agreed except as to the "recycling bin incident," noting that there was evidence in a statement taken by an EEO counselor indicating that it had occurred on April 9, 2005. Drawing the inferences in plaintiff's favor, the district court assumed that this last claim was timely. Defendants do not appeal from that determination. Nor does plaintiff dispute that both the exclusion from LASIK surgeries in April 2004, and the "emergency door incident" in the spring or summer of 2004, arose well outside the 45-day period.

That leaves only the "purse incident," which plaintiff contends was brought timely. The magistrate judge relied on plaintiff's response to the motion for summary judgment, which stated that the incident occurred in May 2004. Plaintiff argued in her objections, as she does here, that the court should have accepted as true her "forecasts of the evidence" [**12] outlined in the agency's letter identifying the issues accepted for investigation. That letter did not represent any fact finding, but simply repeated the allegations in plaintiff's formal EEO complaint—including the allegation that Johnson took plaintiff's purse on April 25, 2005. However, the investigator's subsequent report noted that plaintiff testified that the incident occurred in May 2004. Moreover, the affidavit that plaintiff submitted with her response to the motion for summary judgment placed this event "sometime after May 2004." We find no error in the district court's conclusions with respect to the timeliness of these claims.

### B. Tolling and Waiver

*HN3* Although timely exhaustion is a prerequisite to filing suit, exhaustion is not jurisdictional and is subject to equitable tolling, waiver, and estoppel. *Mitchell v. Chapman, 343 F.3d 811, 820 (6th Cir. 2003)*. Equitable tolling is to be applied only sparingly. *Dunlap v. United States, 250 F.3d 1001, 1008-09 (6th Cir. 2001)*. This court has consistently considered the following factors in determining whether equitable tolling is appropriate: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing [**13] requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the legal requirement for filing her claim. *Id. at 1009*.

Gary Miotke
Page 6 of 9

423 Fed. Appx. 572, *577; 2011 U.S. App. LEXIS 10195, **13

[*577] Here, there was evidence that notices regarding the EEO filing requirement were posted in plaintiff's workplace. In addition, plaintiff accompanied Smith to the EEO office in May 2004, but decided not to initiate a claim on her own behalf until May 2005. The district court found that plaintiff had constructive notice of the filing requirement, such that it would be unreasonable for plaintiff to have remained ignorant of it. Without contesting that determination, plaintiff argues that the district court erred by failing to consider the lack of prejudice to defendants if they had been required to defend these claims. As the Supreme Court has explained: HN4 "Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984).

Alternatively, [**14] plaintiff argues that waiver should bar defendants from raising untimeliness as a defense because the agency investigated her claims and conducted an administrative hearing on the merits. This court has held, however, that HN5 agencies do not waive the defense of untimely exhaustion merely by accepting and investigating a complaint of discrimination. Horton v. Potter, 369 F.3d 906, 911 (6th Cir. 2004). "Rather, waiver occurs when the agency decides the complaint on the merits without addressing the untimeliness defense." Id. (citing Ester v. Principi, 250 F.3d 1068, 1071-72 (7th Cir. 2001), and Bowden v. United States, 106 F.3d 433, 438, 323 U.S. App. D.C. 164 (D.C. Cir. 1997)). As plaintiff herself concedes, the final agency decision in this case addressed the untimeliness defense and found that, with the exception of the claim that she was placed on "probation" on May 20, 2005, none of plaintiff's claims were raised with an EEO counselor within the required 45 days. Accordingly, defendants did not waive the untimeliness of the plaintiff's claims arising from the "surgery ban," the "emergency door incident," or the "purse incident."

## C. Retaliation

The district court restricted its consideration of the merits to [**15] plaintiff's claims of retaliation arising from the "recycle bin incident" and the "purse incident," which were the only two claims in the Amended Complaint that plaintiff had even argued occurred within the 45-day window. Plaintiff appeals from the district court's finding that she failed to make a prima facie showing of retaliation under Title VII.

HN6 Title VII makes it unlawful to retaliate against an employee either because she "opposed any practice made unlawful [by Title VII]," or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII.]" 42 U.S.C. § 2000e-3(a). A plaintiff may establish a prima facie case of retaliation by showing: (1) that she engaged in protected activity; (2) that the exercise of protected rights was known to the defendant; (3) that the defendant took adverse action, or subjected plaintiff to severe or pervasive retaliatory harassment; and (4) that there was a causal connection between the protected activity and the adverse action. Garner v. Cuyahoga Cnty. Juvenile Court, 554 F.3d 624, 639 (6th Cir. 2009).[2]

[*578] With respect to the first and fourth prongs, defendants continue to argue that plaintiff's claims must fail because she herself testified that all of the acts of alleged retaliation were motivated by her involvement in the meeting with Col. Bloustine. Plaintiff argued that this was protected activity under the "opposition clause," see Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 129 S. Ct. 846, 851-52, 172 L. Ed. 2d 650 (2009), but made no attempt to show that the opposition voiced during that meeting was opposition to a practice made unlawful by Title VII. In fact, the evidence showed that the complaints expressed had to do with the imposition of discipline without regard for culpability and management's [**17] response to the confrontation.

---

[2] Plaintiff asserts in passing that the district court erred by failing [**16] to evaluate her claims as establishing retaliatory harassment, but this was not a claim plaintiff made in the district court. Nor has plaintiff alleged facts from which the court may infer that "the workplace [was] permeated with 'discriminatory intimidation, ridicule and insult,' that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (citations omitted).

Gary Miotke
Page 7 of 9

423 Fed. Appx. 572, *578; 2011 U.S. App. LEXIS 10195, **16

What defendants seem to ignore, however, is that plaintiff testified that the fallout from that meeting led her to engage in other protected activity, which she believed had also motivated some of the acts of alleged retaliation. Specifically, as the district court found, plaintiff engaged in protected activity under the "participation clause" by making a statement to the EEO counselor at the time of Smith's initial contact on May 5, 2004; by testifying at Smith's EEO hearing on May 4, 2005; and by initiating her own EEO proceedings on May 9, 2005. _Abbott v. Crown Motor Co., 348 F.3d 537, 543 (6th Cir. 2003)._[3]

**HN7** Causation is shown where the evidence is "sufficient to raise the inference that protected activity was the likely reason for the adverse action." _Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir. 2007)._ Accepting plaintiff's chronology, [**18] we assume that the "recycle bin incident" and the "purse incident" occurred on April 9, and April 25, 2005, respectively. These incidents preceded not only Smith's EEO hearing on May 3, 2005, but also plaintiff's initial EEO contact on May 9, 2005. Likewise, although plaintiff asserted that Johnson acted in anticipation that plaintiff would participate in Smith's EEO hearing, the district court found that there was nothing more than supposition to support that contention. Even Dr. Nixon's alleged reaction to the EEO hearing notice identifying plaintiff as a witness post-dated these incidents. Still, there was evidence that Johnson knew that plaintiff had gone to the EEO office with Smith the year before and that Johnson had treated plaintiff differently from other similarly situated employees on several occasions. See _Barrett v. Whirlpool Corp., 556 F.3d 502, 516-17 (6th Cir. 2009)._ We need not decide whether this would be sufficient to establish causation, however, because neither represents a materially adverse action.

In _Burlington Northern & Santa Fe Railway Co., 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006),_ the Court considered the level of seriousness to which the harm must rise in order to constitute [**19] actionable retaliation. Specifically, the Court held that**HN8** "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" _Id. at 68_ (citation omitted). Reiterating [*579] that Title VII does not create a general civility code for workplaces, the Court explained that the purpose is to prohibit "employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers," and, "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." _Id._ (citations omitted). While petty, juvenile, and annoying, we agree with the district court that a reasonable employee would not find it materially adverse for a supervisor to hide her purse because it was unsecured, or hijack an abandoned recycle bin "to make a point" about the need to return directly to work. Neither incident resulted in discipline, negative evaluation, or loss of an opportunity that might contribute to advancement.

### D. Additional Claims

Next, plaintiff contends [**20] that the district court erred by refusing to consider two additional claims of retaliation: the formal counseling imposed on May 20, 2005; and the alteration of the patient commendation form on March 9, 2006. Although timely exhaustion was not an issue, both incidents predated the filing of the complaint in this case but were not included in either the Complaint filed in December 2006, or the Amended Complaint filed in December 2007. The district court found that plaintiff's failure to plead these claims or to seek to add them through amendment under _Fed. R. Civ. P. 15(a),_ precluded plaintiff from asserting them in response to defendants' motion for summary judgment. _Accord Tucker v. Union of Needletrades, Indus. & Textile Emps., 407 F.3d 784, 787-88 (6th Cir. 2005); Carter v. Ford Motor Co., 561 F.3d 562, 567-68 (6th Cir. 2009)_ (stating that the issue is "fair notice").

In _Tucker,_ this court explained that the modest notice pleading standard applicable in the context of a motion to dismiss under _Rule 12(b)(6)_ does not apply when the sufficiency of a complaint arises at the summary judgment stage. _Id. at 788._ Plaintiff argues that the defendants were not unfairly surprised by these [**21] claims because

---

[3] Of course, defendants' point is well-taken with respect to the otherwise time-barred claim arising from the ban on assisting Dr. Nixon during LASIK surgeries because the ban could not have been motivated by plaintiff's subsequent assistance with, participation in, or initiation of EEO proceedings.

Gary Miotke
Page 8 of 9

423 Fed. Appx. 572, *579; 2011 U.S. App. LEXIS 10195, **21

they were raised during discovery. Specifically, plaintiff points to a reference to these incidents in a narrative response to one of defendants' written interrogatories. Having omitted these incidents from the specific acts of alleged retaliation alleged in the Complaint and the Amended Complaint, that interrogatory answer cannot be said to have given defendants notice that plaintiff was asserting these additional claims. In addition, plaintiff argues that there would be no unfair surprise to defendants with respect to the formal counseling claim, at least, because it was among the claims accepted for investigation by the agency. Although that claim was fully investigated in the administrative proceedings, plaintiff's Complaint narrowed the retaliation claims being asserted in the federal action. The district court did not err in finding that plaintiff could not assert or revive these additional claims in response to the defendants' motion for summary judgment. *Id.*

Moreover, even if we were to find error in the refusal to consider these claims, we would affirm the judgment on other grounds. First, as noted earlier, the record did not suggest any consequences of the alteration **[**22]** of the patient commendation form or provide evidence concerning the circumstances surrounding that allegation. We have no difficulty concluding that plaintiff did not show that a reasonable employee would consider this act to be materially adverse. Second, even assuming that plaintiff would be able to make a *prima facie* showing of retaliation with respect to the formal counseling, defendants have articulated a legitimate nonretaliatory reason for the action and plaintiff did not come forward with evidence sufficient **[*580]** to create a jury question on the issue of pretext. *Wrenn v. Gould, 808 F.2d 493, 500-01 (6th Cir. 1987)*. Plaintiff admitted her error and that it involved patient safety, conceded that there was no retaliatory motive on the part of the surgeon who caught the error, and acknowledged that she successfully completed the 90-day performance standards review. Plaintiff asserted that she was disciplined for this error when another employee was not disciplined for similar conduct, but the employee in question testified that her work was likewise reviewed for a period of time and that she was expected to have no more than a certain number of errors.

**AFFIRMED.**

---

End of Document

Gary Miotke
Page 9 of 9