# EXHIBIT L

CBA Between City and DHPSA 7/1/21 – 6/30/24 Excerpts

Dearborn Heights Police Supervisors/COAM
Effective July 1, 2021 through June 30, 2024
Signature Copy

COLLECTIVE BARGAINING AGREEMENT

Between

THE CITY OF DEARBORN HEIGHTS

and

THE DEARBORN HEIGHTS POLICE
SUPERVISORS ASSOCIATION
Effective July 1, 2021 to June 30, 2024

1

on matters of concern.

## ARTICLE 11

### PROMOTIONS, LAYOFFS, RECALLS AND LEAVE OF ABSENCE

11.1: Promotions shall be in accordance with the provisions of Act 78, P.A. of 1935, as amended, except as follows:

A.   Each applicant's unexpurgated personnel file shall be submitted to the oral examiners.

B.   The Oral Board Examiners shall be department neutral, that is to say, not members of the Dearborn Heights Police Department or border communities. Oral Board Examiners shall hold the rank of Lieutenant or above. Eligible examiners shall be deemed neutral when agreed upon by both the City and Union.

C.   The position of Chief of Police will be filled by the Mayor consistent with his/her rights under Section 5.11B of the City Charter and will be excluded from the Act 78 process. When a vacancy occurs in the Police Chief's position and the Mayor decides to fill said position, he/she may consider both internal and external candidates for that position.

The parties recognize that under this Agreement reached under PERA, the following individuals will retain their positions:

*   Jerrod S. Hart, Chief of Police

*   Paul D. Vanderplow, Director of Support Services

19

\*     Kevin M. Swope, Director of Police Operations.

It is further agreed that should the City fill the Director's positions in the future, those positions will be filled in accordance with Act 78 provisions.

It is further agreed that all challenges to the appointment of these three individuals, whether in grievance, litigation, or elsewhere, will be withdrawn based upon this Agreement under PERA.

D.     Eligibility for purpose of promotion shall be two years in rank/grade. At the close of the application date and time.

E.     The Promotional examination process for eligible members shall be as follows:

1.     The promotional examination process for eligible members shall consist of a written exam portion and an oral exam portion which shall be weighted at 50% written and 50% oral.

2.     Eligible members must score 70% or higher on the written portion and 70% or higher on the oral portion. Members failing to score a minimum of 70% on the written portion shall be disqualified from the promotional process and shall not be allowed to participate in the oral portion. Members failing to score a minimum of 70% on the oral portion will not be eligible for promotion.

3.     Eligible members must have a combined score (written & oral) of 70% or higher to be eligible for promotion.

4.     After the written portion and oral portion have been scored and appropriately weighted each eligible member shall have 1/12 (one-twelfth) point for each month of service as a police officers with the city of Dearborn Heights, including probationary time, added to their overall score. There shall be no maximum cap for

20

wherever possible and an agenda of the matters to be taken up at the meeting shall be presented at the time the conference is requested. Matters taken up in the special conference shall be confined to those on the agenda.

## ARTICLE 14
## CITY'S RIGHTS

14.1: The City reserves the right to assign tasks to police officers and to set up rules and regulations necessary to operate the Police Department as efficiently as possible, subject to the provisions of this Agreement.

14.2: Before new bureaus are established, the City will consult with the Association to solicit its views concerning organization of such bureaus.

14.3: It is understood and agreed that the Chief and Deputy Chief can perform bargaining unit work.

14.4: The Union recognizes the right of the city to operate and manage its affairs in all respects in accordance with its responsibilities. The powers or authority which the City has not officially abridged, delegated, or modified by this agreement are retained by the City.

14.5: The Union recognizes the exclusive rights of the City to establish reasonable work rules, determine reasonable schedules of work, determine and establish methods, processes, and procedures by which such work is to be performed, as well as set work standards. The City also reserves the right to make work assignments in emergency situations.

14.6: The City has the right to schedule overtime work as required and consistent with the provisions set forth in Article XIX.

14.7: It is understood by the parties that every incidental duty connected with assignments enumerated in job descriptions is not always specifically described.

24

Nevertheless, it is intended that all such duties shall be performed by such employees.

14.8: The City reserves the right to classify positions based on assigned duties or responsibilities or make changes in assigned duties and responsibilities. The City has the responsibility in such classifications and duty assignments to provide equal compensation for equal work and to reflect duties and responsibilities by appropriate classifications and compensation. In cases where an employee considers that these principles are not being observed, that employee may seek redress through the grievance procedure set forth in Article VII.

14.9: The City reserves the right to discipline or discharge for cause.

14.10: The City reserves the right in accordance with Article 11, Section 2, to lay off for lack of work or funds, or the occurrence of conditions beyond the control of the City, or where such continuation of work would be wasteful and unproductive.

14.11: No policies or procedures covered in this Agreement shall be construed as delegating to others or as reducing or abridging any of the following authority conferred on City officials:

A.    The Charter responsibility of the Mayor as executive officer for enforcing the laws of the State, City Charter or Ordinances, recommending an annual budget of appropriation, and the efficient performance of all executive departments, among other executive responsibilities defined by the Charter.

B.    The Charter responsibility of the City Council as the legislative body for the enactment of ordinances, the appropriation of money and the determination of the City's budget, among other legislative responsibilities defined by the Charter.

25

C.   The responsibility of the City for establishing, amending, and administering an Act 78 Civil Service merit system of employment, a classification plan, adopting rules and regulations regarding employment and exercising personnel administration responsibilities.

D.   The responsibility of the City for establishing, amending, and administering a compensation plan, and a fringe benefit program including an insurance program, a disability program, and other similar programs.

E.   The Charter responsibilities of the City in determining the functions and organization of the respective departments or divisions.

F.   The responsibilities of Department Heads governed by Charter provisions, ordinances, and Civil Service rules:

(1)   To hire, assign, transfer, and promote employees to positions within the agency;

(2)   To suspend, demote, discharge, or take other disciplinary action against employees;

(3)   To relieve employees from duties because of lack of funds;

(4)   To determine the methods, means and personnel necessary for departmental or agency operations;

(5)   To control departmental or agency budget;

(6)   To take whatever actions are necessary in situations of emergency to perform the functions of the department.

G.   The responsibilities to administer pay and fringe benefit plans, to provide the necessary surveys, research, rules, regulations, resolutions, and ordinances for this purpose subject to the authority of the departments and the City Council.

H.   The responsibility of the City for establishing, amending, and administering the Act 345 Retirement Plan of the City.

14.12: The Police Chief may convene a disciplinary review board consisting of three (3) superior officers to review the circumstances in any contemplated disciplinary action against an employee and based upon this review to make an advisory recommendation to the Police Chief that the charges are founded or unfounded. The Union shall have the right to challenge the selection of the disciplinary review board and have one (1) of its members replaced without cause.

## ARTICLE 15
## COPIES OF CONTRACT

15.1: The City agrees to deliver a copy of this Agreement to the Association for its distribution to each police officer within thirty (30) days of the formal execution of this Agreement.

## ARTICLE 16

## WAGES

16.1: Annual Base Salary

A. Commencing upon ratification of this Agreement by the Union and the City Council, the City shall adjust the base wage rate of the bargaining unit members as follows:

- 7/1/2021-6/30/2022:   4% increase (retroactive)

- 7/1/2022-6/30/2023:   4% increase (retroactive)

- 7/1/2023-6/30/2024:   5% increase

(Percentage of Patrol Officer's Annual Base Wage)

27