# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW
JERROD HART,

       Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation,

       Defendant,

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,

       Intervening Defendant.

_____

Case No. 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

## <u>PLAINTIFFS' MOTION FOR RULE TO SHOW CAUSE</u>

NOW COME Plaintiffs, KEVIN SWOPE, PAUL VANDERPLOW, AND JERROD HART, by and through their undersigned counsel, to move the Court to order the City of Dearborn Heights (the "City" or the "Primary Defendant") and the City of Dearborn Heights' City Council (the "City Council" or the "Intervening Defendant" and together with Primary Defendant, the "Defendants") to show cause for why they should not be sanctioned for violation of this Court's orders found at Docket 108 and 109.  In support hereof, Plaintiffs state as follows:

1

**Case History of Discovery Proceedings to Date**

In accordance With E.D. Mich. LR 7.1(a) and the Court's instructions found at ECF # 8, the Plaintiffs hereby certify as follows:

1.     Plaintiffs have been attempting to gain minimally acceptable discovery in these proceedings for nearly two years now, using cooperative means.   Plaintiffs have now had at least three Zoom meetings with the Defendants that were supervised by the Discovery Special Master (defined below).    Plaintiffs pay half of the Discovery Special Master's bills even though their own discovery is not at issue. Plaintiffs have spent considerable time in both written and oral conversations vainly attempting to get the Defendants to comply with discovery law using cooperative means.   Dozens if not hundreds of emails have been sent attempting to obtain Defendants' cooperation in discovery.

2.     The Court order found at Docket 109 is itself the product of two hours of face-to-face negotiation with Defendants that occurred in this very Court's chambers on January 22, 2026, and Defendants are in violation of that order too. With respect to this motion in particular, any additional attempt at obtaining agreement or cooperation would be futile.

3.     This filing is preceded by three separate motions to compel, filed over a period of 14 months.  The first motion to compel is found at Docket 60 and was filed on March 10, 2025.   The second motion to compel is found at Docket 67 and

2

was filed on June 13, 2025.  The second motion resulted in the appointment of Mr. Steven Schwartz as the special master for discovery on October 1, 2025 ("Mr. Schwartz" or, the "Discovery Special Master").   [ECF No. 95].

4.       Plaintiffs filed their third motion to compel on January 12, 2026, which is found at Docket 103.   The third motion to compel resulted in the Court ordering the parties to meet with the Discovery Special Master in chambers on January 22, 2026 with a hearing to take place immediately thereafter.   The Court heard oral argument and on that same date and then later entered two orders on January 27, 2026.

5.     The first order from January 27, 2026 is found at Docket 108 and consists of the Court's rulings concerning matters on which the Discovery Special Master could not get the Parties to agree while in chambers.   Thus, Docket 108 contains the Court's unilateral rulings on specific discovery matters.   See **Exhibit 1** for Docket 108.  The second order from January 27, 2026 is found at Docket 109 and consists of the Court's order endorsing and enforcing certain stipulations made by the Parties while in chambers, and for this reason is sometimes referred to as the "Stipulated Order."   See **Exhibit 2** for Docket 109.

6.     Unfortunately, and as the Discovery Special Master can attest, Defendants have not fully complied with either order.  Defendants are in fact in open

3

violation of both orders, and both Defendants have failed to abide by the Discovery Special Master's written instructions on how to resolve the situation.

7.      Docket 108, for example, had a Court-imposed deadline of February 16, 2026 (Exhibit 1, ¶ D) that the Defendants ignored.  The Defendant City Council, for example, first produced documents in these proceedings on March 12, 2026, well-past the Court's deadline and over a year late[1] under the deadlines set by the Federal Rules of Civil Procedure (FRCP).      As discussed further below, such production is clearly inadequate and does not contain documents that are known to exist or have been used or referenced by the City Council in these very proceedings.

8.      The City Council supposedly cannot now find the types of documents that it once could easily find when it attempted to impeach Mayor Bazzi with at his deposition, including budgetary materials, emails, etc.

9.      Docket 108, Paragraph C, required the Discovery Special Master to propose certain search terms for document searches on the City's computer systems. The parties then had an opportunity to object to such terms.   The result was micro-negotiation by counsel to the City, who repeatedly objected to search terms proposed.   On February 18, 2026 Plaintiffs counsel stated that "he was prepared to abide by any search terms Mr. Schwartz devises, without changes."   **Exhibit 3.**

---

[1]  Plaintiffs first served the City Council with discovery on January 24, 202<u>5.</u>

4

10. Eventually, on February 20, 2026 Mr. Schwartz imposed his own search terms after noting that he had not received comments from legal counsel working for the Primary Defendant on his previous draft. **Exhibit 4.**

11. The searches were to have been conducted by the City's main information technologies officer, Director Cooper, by direct order of this Court. The Court's order mentioned Cooper by name. *See* Docket 109, ¶¶ 9-10. Instead, Counsel to the City announced the day before such searches were to be done that she "had been advised that David Cooper is unable to be in City Hall tomorrow but an IT Technician from BAE Networks, . . . will be present." **Exhibit 5.**

12. Thereafter, on February 27, 2026 the parties met at Dearborn Heights City Hall where searches were conducted by a City contractor working for "BAE Technologies."

13. On March 5 and March 11, 2026, the Primary Defendant then made new productions of a few hundred additional pages, many of which were blank pages or which contain entirely irrelevant or repetitive text. Under their own terms, these orders provided that searches under Dkt. 108 were to have been completed by February 16, and searches under Docket 109 were to have been completed. by February 28.

14.    Thus, the Primary Defendant produced documents both after this Court's own deadlines and also after the deadline for the filing of Plaintiffs' response to summary judgment had passed on March 9, 2026 (per Dkt.  122).

15.    In the course of making its productions the Primary Defendant also produced, perhaps inadvertently, the actual searches that its I.T. contractor had run. *See* **Exhibit 6**. These search terms contained, without any authorization from the Discovery Special Master or the Court, the Boolean connector "and."   The use of such a Boolean connector between search terms has the extreme narrowing effect of excluding from production any document containing key search terms if the Plaintiffs' names were not also expressly mentioned in that same document.   As set forth in the attached materials found at **Exhibit 7,** which were created by the Massachusetts Institute of Technology, the use of "and" in Boolean searches severely limits the documents found to an artificially constrained subset of the total number of otherwise responsive documentation.

16.    On March 12, 2026, Plaintiffs' counsel sent the Discovery Special Master a letter setting forth four key "issues" or problems with the Primary Defendant's discovery production.   That letter is reattached here, without its exhibits, at **Exhibit 8.**

17.     On March 24, 2026, Mr. Schwartz responded with his personal recommendations to the parties on how to resolve the four issues found in the March 12, 2026 letter.  *See* **Exhibit 9**.

18.     The next day, March 25, 2026, Plaintiffs' counsel responded that they would completely "abide by these instructions and temporarily refrain from making another rule to show cause filing in order to give these solutions time to be implemented."   Plaintiffs stated that they would make no new filing prior to April 15, 2026 to give the Defendants time to conduct revised searches.  *See* **Exhibit 10.**

19.     In his March 24th correspondence the Discovery Special Master also requested an additional writing from the Plaintiffs setting forth three examples of documents that the City Council should have found and produced in its own discovery production.   Plaintiffs then responded on March 26th, 2026 with the writing that the Discovery Special Master had requested.  *See* **Exhibit 11**.

20.     On April 14, 2026, the Discovery Special Master asked both Defendants to respond substantively to both his own March 24th letter (i.e., to Exhibit 9) and Plaintiff's March 26th writing (i.e., to Exhibit 11).   Mr. Schwartz's email of that date is attached at **Exhibit 12**.   Ms. Hunt responded on April 15th,  claiming that, once again, Mr. Cooper was "out of the office" and not able to perform the searches recommended by Mr. Schwartz, which she labelled "repetitive."  *See* **Exhibit 13**.

21.    The search terms that the Discovery Special Master actually ordered the City to look for are attached at **Exhibit 14.**   As the Court can see for itself, nowhere in the Discovery Special Master's instructions does he authorize or allow for the Boolean connector "and" to be superimposed between search terms.

**The Plaintiffs' own discovery production to Defendants is not at issue**

22.    This Court has already entered rulings acknowledging that Plaintiff's own production to the Defendants is complete and adequate.   [ECF No. 109, ¶¶ 3-6].   Plaintiffs have in fact produced *hundreds of thousands* of pages of documents to the Defendants, at the Defendants' own insistence.   This is a document-intensive case, and yet to date the Primary Defendant has produced less than 1400 pages of documents, most of which are useless junk, repetitive productions, documents that the Plaintiffs would already have, or just blank pages.

23.    Even when Plaintiffs describe with specificity what documents exist and where they are stored (Plaintiffs are ex-officials of the City and know where documents are kept), for example budgetary materials or memos stored on the POWER DMS system, Defendants fail to produce such documents.    This is one reason why the Discovery Special Master specifically asked the Primary Defendant for an explanation for why such materials have not been produced.  (See "Issue 4," Exhibit 9).   Primary Defendant has ignored the request.

**The Discovery Special Master has acknowledged the need for renewed discovery motion practice by Plaintiffs**

24.     In his April 14th email, Mr. Schwartz stated that "[i]f we can't reach a resolution quickly, then I suggest Plaintiffs file a Motion to Compel Discovery on these remaining issues."   *See* **Exhibit 12**.   On April 21, 2026, Plaintiffs again warned Defendants of their intent to engage in further motion practice if Defendants did not follow the Discovery Special Master's recommendations found at Exhibit 9. (*See* **Exhibit 15**).

25.     On April 30, 2026 counsel to Primary Defendant sent the parties an email stating that the City's contractor, BAE Technologies, rejected the Discovery Special Master's recommendations because, in its view, searches conducted for single search terms (as the Discovery Special Master recommends at Exhibit 9) would not yield different results than searches using the Boolean connector "and." *See* **Exhibit 16.**   For the reasons set forth above, this claim is mathematically absurd.

26.     Defendants' actions have procedurally tainted these proceedings and directly implicate FRCP 56(d).   In fair proceedings, a party facing summary judgment is supposed to have already had the full benefit of discovery.

27.     The FRCP are just that, rules.   They are not loose suggestions that a litigant can ignore.   The Sixth Circuit demands that they be followed.   *See, e.g., Badalamenti v. Dunham's, Inc.*, 118 F.R.D. 437, 440 (E.D. Mich. 1987)("Such behavior is intolerable because it defies the Federal Rules of Civil Procedure and

9

threatens the effectiveness of our discovery rules."); *see also Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013)(*partially quoting Harmon v CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997): "A defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is '*required to waste time, money and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide*.'")(emphasis added).

### RELIEF REQUESTED

Consistent with FRCP 37(b), which applies to the failure to comply[2] with this court's discovery orders found at Docket 108 and 109, Plaintiffs now seek sanctions and costs. It should be apparent to the Court by now that it confronts an intentional decision made by each of the Defendants to ignore discovery obligations. The Court's own agent, the Discovery Special Master, has recognized the necessity of this motion. *See* Exhibit 12.

Federal Rule 37(b) offers this Court a range of options for "failure to comply with a Court Order." Defendants should be prohibited from introducing evidence supporting their claims and defenses at any future trial or evidentiary proceeding

---

[2] To be more specific, the Primary Defendant is in violation of Dkt. 108, ¶ C and Dkt. 109, ¶¶ 9-10. More generally, the Primary Defendant has simply failed to conduct proper or responsive searches for responsive documents. In a case in which Plaintiffs have produced hundreds of thousands of the City's own documents back to the City, the City cannot find documents to send to the Plaintiffs. The Discovery Special Master's instructions to the City to explain why extent documents have not been produced have been ignored. *See* Exhibit 9, "Issue 4." The City Council, by not conducting proper searches for documents (see Exhibit 11) is in violation of Dkt. 108(A)(2).

(FRCP 37(b)(2)(A)), should be held in contempt, and should be forced to pay the reasonable expenses and attorney's fees incurred by the Plaintiffs in seeking to enforce discovery in these proceedings. *See* FRCP 37(b)(2)(C). Going forward, Plaintiffs should be excused from paying fees incurred by the Discovery Special Master, which should be entirely paid by the Defendants.

WHEREFORE, Plaintiffs respectfully request that the Court grant this Motion for Rule to Show Cause. A supporting brief is attached.

Dated: April 30, 2026          Respectfully submitted,

/s/ Stephen J. Brown
FAUSONE & GRYSKO PLC
Brandon M. Grysko (P82751)
Stephen J. Brown (P82687)
(jbrown@thefgfirm.law)
Counsel to Plaintiffs, (248)-912-3213
41700 West Six Mile Road, Suite 101
Northville, Michigan 48168-3460

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW
JERROD HART,

        Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation,

        Defendant,

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,

        Intervening Defendant.

_____

Case No. 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

### STATEMENTS OF THE ISSUES PRESENTED

1.     Whether the federal rules of discovery and the FRCP require both

Defendants to be sanctioned as requested in the antecedent motion?

Plaintiffs' Answer:          Yes.
Intervening Defendant's Answer:    No.
Primary Defendant's Answer:      No.
The Court Should Answer:        Yes.

1

2.      Whether any good or valid "cause" exists to excuse Defendants'

failures to comply with their discovery obligations or with this Court's existing

discovery orders found at Docket 108 and 109?

Plaintiffs' Answer:                        No.
Intervening Defendant's Answer:            Yes.
Primary Defendant's Answer:                Yes.
The Court Should Answer:                    No.

**CONTROLLING LAW AND MOST APPROPRIATE AUTHORITY**

The Plaintiffs primarily rely on Fed. R. Civ. P. ("FRCP") 26 and 37 and related case law controlling and providing for discovery productions in the Sixth Circuit and in other appellate circuits.

**FRCP 37(b) AND RELATED LAW**

FRCP 37 contains one section applicable to initial discovery violations that necessitate discovery motions, which is 37(a).   After a motion is filed and a Court must spend time ordering a non-compliant party to obey the discovery rules, then any further breach of a direct discovery *order* leads to escalating penalties under FRCP 37(b).  *Watts v. Fed Express Corp.*, 2001 U.S. Dist. LEXIS 4839, *17 (W.D. of Mich., 2001)(*citing to Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994). Rule 37(b) sanctions are discretionary in nature and are reviewed by appellate courts under an "abuse of discretion standard."  *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997).

In determining an appropriate sanction, trial courts are directed to consider the following four factors, hereinafter called the "Freeland Factors": (1) whether the party's failure  to cooperate is discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate would lead to a sanction; and (4) whether less drastic sanctions were first imposed.  *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (*accord, Regional Refuse Sys., Inc. v. Inland Reclamation,* 842 F.2d 150, 154 (6th Cir. 1988).

4

**ARGUMENT**

No good or valid cause excuses the Defendants' intentional failures to satisfy their discovery obligations.  This is the Plaintiffs' fourth discovery motion of this type, and the Defendants are not flouting direct orders of this Court found at Docket 108 and 109.   Plaintiffs are not in a legal position to modify this Court's orders or to "*seek compromise*" on what this Court has already ordered the Defendants to do (which is itself already partially a product of compromise in the case of the Stipulated Order found at Docket 109).   It is unfair and improper to ask the Plaintiffs to do so.   If court orders could be re-negotiated by parties flouting those very orders, then they would mean nothing.

Federal Rule of Civil Procedure 37(b) – the case law is above – allows for sanctions to flow under these circumstances.  Defendants have had ample warning that their behavior would lead to a motion such as this one, could have easily complied, but chose to continue their wrongful behavior anyway.   Plaintiffs have satisfied their own discovery obligations, and Plaintiffs have been and will continue to be seriously prejudiced by Defendants' actions.  "Less drastic" methods have already been tried, including the appointment of a Discovery Special Master.  These facts allow for serious sanctions under the above case law.  Defendants have ignored the Court's own Discovery Special Master, who was supposedly appointed to resolve these issues.   All four of the *Freeland* Factors are satisfied.

5

Considering the discovery arguments found in the motion above and in the contents of three previous motions to compel (Docket 60, 67, 103 plus all exhibits), all three of which are incorporated here by reference, Plaintiffs believe there is little value left in delivering additional "argument" to this Court concerning discovery. A discussion of the facts and the attached exhibits is likely more useful than still more argument, the legal issues and arguments before the Court being simple.

### The Discovery Special Master's Four Recommendations of March 24, 2026 (Exhibit 9)

Plaintiff's counsel and outlined four specific ongoing violations that he has with the discovery production to date, which is at Exhibit 8.  This was in a writing to the Discovery Special Master.  The Discovery Special Master then made four corresponding recommendations to the parties on March 24, 2026 (*see* Exhibit 9), and Defendants have ignored those recommendations.  Trial is supposedly supposed to happen in August of this year and trial exhibits are due in just two months, in late June, and yet proper discovery is not complete.  *See* Dkt. 102.  The Court can read these short writings found at Exhibits 8 and 9 for itself.  Plaintiffs have already been forced to respond to a summary judgment motion having never had the full prior benefit of discovery.  Defendants' actions have already tainted these proceedings, and the damage will only get worse if the situation is allowed to continue.

6

## CONCLUSION

Discovery in these proceeds has become a charade. After nearly two years of cynical games and delay, the Defendants would seem to believe that they are immune to the law of discovery in the Sixth Circuit. Rather than comply with this Court's orders, they ignore them. *The Court's chosen Discovery Special Master has also been ignored and has acknowledged the need for this filing.* Exhibit 12. When told, for example, that Director Cooper needs to conduct specific searches, the City declares, twice now, that he is unavailable to do so. *See* Exhibits 5 and 13. When told to re-run their faulty searches that slyly featured the Boolean connector "and," Plaintiff's counsel refuses and then labels the Discovery Special Master's instructions "repetitive." *See* Exhibits 13 and 16. No attempt whatsoever has been made to comply with this Court's deadlines, all of which have been widely missed. This Court should grant the relief sought in the antecedent motion because no good cause exists for the Defendants' intentional failures.

Dated: April 30, 2026        Respectfully submitted,

/s/ Stephen J. Brown
FAUSONE & GRYSKO PLC
Brandon M. Grysko (P82751)
Stephen J. Brown (P82687)
Counsel to Plaintiffs
41700 West Six Mile Road, Suite 101
Northville, Michigan 48168-3460
(248) 380-0000
jbrown@thefgfirm.law

7

## LOCAL RULE CERTIFICATION

I, Attorney Stephen J. Brown, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnote); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

Respectfully submitted,

/s/ Stephen J. Brown

## CERTIFICATE OF SERVICE

I, Stephen J. Brown, hereby certify that on the April 30, 2026 I served a copy of **PLAINTIFFS' MOTION FOR RULE TO SHOW CAUSE** on all appearing attorneys and service recipients registered for receipt via electronic filing.  I declare under penalties of perjury that this Proof of Service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

/s/ Stephen J. Brown

8

M:\Legacy Clients\BMG\Swope-Vanderplow-Hart\Pleadings\Motion Seeking Rule to Show Cause.docx