**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEVIN SWOPE, PAUL VANDERPLOW, JERROD HART

        Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS, a Michigan Municipal Corporation

        Defendant.

CITY COUNCIL FOR THE CITY OF DEARBORN HEIGHTS

        Intervening Defendant.

Case No. 2:24-cv-10240-MAG-DRG
Hon. Mark A. Goldsmith

---

**DEFENDANT CITY OF DEARBORN HEIGHTS' RESPONSE TO PLAINTIFFS' MOTION FOR RULE TO SHOW CAUSE**

NOW COMES Plaintiff, City of Dearborn Heights ("Defendant"), by and through Counsel, the Allen Law Group, in response to Plaintiffs' Motion for Rule to Show Cause and states as follows:

1.    Defendant denies the allegations contained herein in their entirety. Defendant has repeatedly and fully complied with its discovery obligations, having provided multiple document productions in response to Plaintiffs' requests. Plaintiffs' characterization of Defendant's discovery responses as deficient is without merit and is belied by the extensive documentary record. To the extent Plaintiffs assert that their

i

allegations remain unaddressed, such assertions are the direct result of the fact that the documents produced affirmatively demonstrate that the underlying claims are factually unsupported and without evidentiary basis. Defendant further denies that Plaintiffs have been required to engage in extraordinary or disproportionate efforts to obtain discovery compliance. Defendant has fully participated in all conferences overseen by the Discovery Special Master, as well as extensive written and oral communications throughout the pendency of these proceedings. Defendant dispute Plaintiffs' characterization of those interactions as unproductive or as evidence of noncompliance. Defendant additionally denies that Plaintiffs have been prejudiced by any conduct attributable to Defendants in connection with the Discovery Special Master process. Any costs incurred by Plaintiffs in that process reflect the agreed-upon structure of these proceedings and do not evidence any discovery deficiency on Defendant's part.

2. Defendant denies that it is in violation of the Court's Order. To the contrary, Defendant has have fully and faithfully complied with each and every obligation imposed upon them pursuant to the resolution reached during the January 22, 2026 conference. The Order at Docket 109 was the product of good-faith negotiations, and Defendant has honored the terms of that resolution in its entirety. Plaintiffs' assertion that Defendants are in violation of Docket 109 is conclusory and unsupported by the record. Defendants affirmatively state that all deadlines, productions, and obligations

arising from that Order have been met in a timely and complete manner consistent with the agreed-upon terms.

3.      Defendant acknowledges that Plaintiffs have filed several Motions to Compel Discovery, however Defendant denies that the filing of these motions is indicative of any failure to comply with their discovery obligations or any violation of applicable discovery rules. To the contrary, Defendants have at all times conducted themselves in accordance with the Federal Rules of Civil Procedure and the Orders of this Court. The motions to compel filed by Plaintiffs do not, in and of themselves, constitute evidence of noncompliance; rather, they reflect Plaintiffs' persistent pursuit of discovery requests that are irrelevant to the claims and defenses at issue, inadequately defined, and so disproportionately burdensome as to exceed the permissible scope of discovery under Fed. R. Civ. P. 26(b)(1). Defendant has been compelled to object to Plaintiffs' discovery demands not out of obstruction, but out of a legitimate and good-faith obligation to protect against requests that are overbroad, unduly burdensome, and untethered to any cognizable claim in this litigation.

4.      Defendant does not deny the procedural history as set forth in this allegation.

5.      Defendant does not deny the procedural history as set forth in this allegation.

6.      Defendant denies the allegations contained herein in their entirety. Plaintiffs'' assertion that Defendants are in "open violation" of both orders and have failed to abide by the Discovery Special Master's written instructions is factually erroneous,

iii

legally unsupported, and without merit. Defendant affirmatively denies that they are in violation of either order issued on January 27, 2026, or that they have failed to comply with any written instructions provided by the Discovery Special Master. Defendant has reviewed and responded to all directives and has taken all steps necessary to satisfy its obligations. Plaintiffs' characterization of Defendants' conduct as noncompliant is a misrepresentation of the record and appears to be an attempt to manufacture a basis for sanctions or further motion practice where none legitimately exists.

7.      Defendant denies that it ignored or disregarded the Court-imposed deadline. Defendant asserts that it complied, at significant time and expense, in good-faith with the Court's discovery orders, and Plaintiffs' attempt to reframe diligent compliance as willful disregard is without factual or legal foundation.

8.      Defendant does not purport to speak to the discovery compilation efforts of co-Defendant City Council, as each Defendant's production obligations and processes are independently maintained. Defendant does, however, affirmatively assert that Plaintiffs have knowingly and deliberately mischaracterized the nature, scope, and sufficiency of the production at issue. Such mischaracterization is not merely inaccurate; it is a calculated distortion of the record.

9.      Defendant acknowledges the requirement of the Discovery Special Master to propose search terms fand further acknowledge that the parties were afforded an

iv

opportunity to object to such proposed terms. Defendant states, however, that the characterization of its participation in the search term process as "micro-negotiation" is both reductive and misleading. Defendant's engagement with the proposed search terms was a legitimate and good-faith exercise of the objection rights expressly preserved by the Court's Order. Raising objections to search terms that are overbroad, or unduly burdensome is not obstruction, but the proper exercise of counsel's obligations to their client and to the discovery process. However, in the interest of bringing this prolonged and contentious discovery process to a meaningful and efficient resolution, Defendant ultimately elected to forgo further objection and agreed to proceed under the search terms as proposed and recommended by the Discovery Special Master, without modification. This was meant to be Defendant's genuine commitment to concluding the discovery phase of this litigation in good faith and without unnecessary delay. Defendant's willingness to defer entirely to the Discovery Special Master's judgment in this regard stands in stark contrast to Plaintiffs' characterization of Defendant as uncooperative, and demonstrates that Defendant has consistently sought to advance the resolution .

10.    Defendant does not deny the procedural history as set forth in this allegation.

11.    Defendant acknowledges that the Court's Order referenced Director David Cooper by name in connection with the performance of the Court-ordered electronic search. Defendant further acknowledge that counsel advised opposing counsel the

v

day prior to the scheduled search that Director Cooper would be unable to be physically present at City Hall on that date. However, Director Cooper's absence was not a matter of convenience or indifference to the Court's Order, but rather the result of a leave of absence during the period in which the search was scheduled to be performed, and continues to this day. *See Exhibit "A".* Director Cooper's leave rendered him physically unable to be present at City Hall and personally conduct the search on the designated date, a circumstance entirely beyond Defendant's control. In response to this unforeseen circumstance, and consistent with the City's long-established practice for the performance of electronic and technological functions, Defendant arranged for technicians from BAE Networks, the City's information technology partner of many years, to appear at the City's technology department and execute the search in Director Cooper's stead. The utilization of BAE Systems technicians was therefore not only a reasonable and practical solution under the circumstances, but a necessary one to ensure full and compliant execution of the Court's Order within the constraints presented.

12. Defendant asserts that on February 27, 2026, Plaintiff Hart, accompanied by his counsel, together with counsel for Defendant, convened with technicians from BAE Networks at the technology department located within the Justice Center in Dearborn Heights, Michigan.

13.     Defendant denies that the document productions made on March 5 and March 11, 2026 consisted predominantly of blank, irrelevant, or repetitive pages, and further deny that said productions were deficient in any respect. To the contrary, Defendants' productions comprised hundreds of pages of responsive documents gathered as a direct result of the electronic searches conducted utilizing the precise search terms offered by Plaintiffs and by the Discovery Special Master. The materials provided are the output of a thorough, three-day search process conducted in good faith and in substantial compliance with the Court's Orders. To the extent that certain pages within the production appear blank, Defendant asserts that the production contained privileged information, which required redactions, and such redactions were evidenced with a privileged log.

14.     Defendant denies that the timing of their document productions reflects willful noncompliance with this Court's deadlines or any bad faith. Plaintiff Hart specifically offered for the parties convene on February 27, 2026, a Friday, to oversee the search process. In anticipation of and in preparation for that meeting, BAE Networks technicians commenced the electronic search on February 26, 2026, upon receipt of Plaintiffs' search terms. *See Exhibit "B" and "C"*. The search continued through and following the February 27th meeting and was not completed until March 3, 2026, a timeline consistent with the three-day scope of the search process previously described. The length of the search was not a product of delay or

vii

inattention, but rather a reflection of the breadth and volume of the electronic search that was required to respond to Plaintiffs' own discovery demands. Following the completion of the search on March 3, 2026, counsel for Defendant was obligated, as a matter of professional responsibility and ethical duty, to conduct a thorough review of the documents yielded by the search prior to production. The attorney review process is not optional.

15.    Defendant denies that the inclusion of search term entries within the production was inadvertent, unauthorized, or indicative of any effort to improperly narrow the scope of the Court-ordered document search. The circumstances surrounding the inclusion of those entries are due to the demands of Plaintiffs' own counsel. Specifically, during the February 27, 2026 meeting attended by Plaintiff Hart, his counsel Jack Walsh, and counsel for Defendant, Mr. Walsh was advised in detail as to the manner in which the electronic searches were conducted. Given the scope and volume of the search, which, as previously noted, required three (3) continuous days to complete and could not reasonably be performed in a single afternoon, therefore Mr. Walsh was provided with a sample printout of the search term entries so that he could understand the process undertaken. Mr. Walsh expressed satisfaction with the explanation and the sample provided, and thereafter demanded that the final production include the search term entries. The inclusion of those entries in Defendant's production was therefore made at the express direction of Plaintiffs'

counsel, not through inadvertence or any unilateral decision by Defendant or its IT firm. Defendant further denies that the use of the Boolean connector "and" in the search terms had the effect of improperly narrowed the production in a manner that excluded otherwise responsive documents. The term entries, including any Boolean connectors utilized, were not intended to, and did not, restrict the scope of the search beyond what was appropriate and authorized. To the extent Plaintiffs now contend that the use of connectors improperly excluded documents from the production. Any such concern should have been raised during the February 27, 2026 meeting, at which time counsel was present, was fully briefed on how the searches were being conducted, and voiced no objection to the methodology employed. *See Exhibit "D".*

16.     Defendant does not deny the procedural history as set forth in this allegation.

17.     Defendant does not deny the procedural history as set forth in this allegation.

18.     Defendant does not deny the procedural history as set forth in this allegation.

19.     Defendant does not deny the procedural history as set forth in this allegation.

20.     Defendant states that following receipt of the Discovery Special Master's request, Counsel undertook a diligent and good-faith inquiry into whether the searches recommended by Mr. Schwartz could be performed as directed. Specifically, Mr. Schwartz's request contemplated that Director Cooper personally recreate the exhaustive electronic search previously conducted by BAE Networks, a well-established technology firm with specialized expertise in large-scale electronic

ix

document searches of the kind performed in these proceedings. Counsel promptly investigated whether Director Cooper could undertake such a search, which would require not only significant time and resources, but also the technical replication of a multi-day, institution-wide electronic search previously performed by a specialized IT contractor. Upon inquiry, Counsel learned that Director Cooper remained on leave and was unable to perform the requested search. Counsel further investigated whether any other personnel within the City's technology department could perform the search in Director Cooper's absence. However, it was determined that BAE Systems is presently performing ongoing electronic search functions for the City in Director Cooper's absence, and no other City personnel were equipped to replicate the scope of the search requested. *See Exhibit "A".* Counsel promptly advised the Discovery Special Master and the parties of these circumstances. Counsel's characterization of the requested search as "repetitive" was not intended as a refusal to comply, but rather as an accurate description of the nature of the request, namely, that it called for the re-performance of an exhaustive, resource-intensive search that had already been conducted by qualified IT professionals.

21.    Defendant denies that the use of the Boolean connector "and" in the execution of the Court-ordered electronic search was unauthorized, improper, or violative of the Discovery Special Master's instructions. A fair and complete reading of the Discovery Special Master's search term directives compels the conclusion that Plaintiffs'

x

argument is without merit. The Discovery Special Master's instructions consist of a list of search terms. Defendant reiterates that the search terms proposed by the Discovery Special Master and utilized in the search were applied in a manner designed to capture the broadest possible range of responsive documentation. Any suggestion that the methodology employed excluded documents that should have been captured is speculative and unsupported by any evidence in the record. Plaintiffs have not identified a single specific document that was excluded as a result of the search methodology, nor have they offered any technical or evidentiary basis for their assertion beyond the generalized proposition that connectors limit search results.

22.    Defendant City of Dearborn Heights denies that the volume of Plaintiffs' document production is in any way indicative of superior discovery compliance, and further deny that Defendant's production is deficient by virtue of its comparatively smaller page count. Plaintiffs' attempt to frame this discovery dispute as a competition in which the party producing the greater number of pages prevails fundamentally misapprehends the purpose and standards of discovery under the Federal Rules of Civil Procedure. The sheer volume of a production is not the measure of its adequacy, and producing more documents does not equate to producing the right ones. Plaintiffs' production of hundreds of thousands of pages warrants scrutiny, not commendation. Upon review, it appears that a substantial portion of the documents produced by Plaintiffs consist of materials that Plaintiffs

copied from the City's own computer systems during the course of their employment, and which may have been removed by Plaintiffs prior to their departure. Moreover, the manner in which Plaintiffs assembled their production gives rise to additional concerns regarding its integrity and propriety. The indiscriminate dumping of documents, including potentially privileged, confidential, or protected materials, is not a model of discovery compliance; it is a litigation tactic.

23. Defendant asserts that Plaintiffs' characterization of Defendant's document production, including that related to budgetary materials and documents stored on the Power DMS system is blatantly inaccurate and wholly unsupported by the record. Defendant produced all responsive budgetary documents within its possession, custody, or control. Plaintiffs' allegation that budget-related materials were withheld or remain unproduced is incorrect. To the extent Plaintiffs sought a specific budget document produced by co-Defendant during the course of deposition proceedings, Defendants cannot be held responsible for the production of documents that are not within their possession, custody, or control. Moreover, and of particular significance, counsel for Plaintiffs acknowledged during the course of discussions between the parties that Plaintiffs were already in possession of the budget document at issue. With respect to the allegation that Defendants failed to produce documents stored on the Power DMS system, Defendants deny that any responsive Power DMS materials were withheld. Plaintiffs' assertion that they, as former City officials, possess

independent knowledge of where specific documents are stored does not, without more, establish that those documents are responsive, non-privileged, and subject to production. In fact, February 27, 2026, current Chief Michael Guzowski, in the presence of Plaintiffs' counsel and counsel for Defendant, allowed Plaintiff Hart to access Power DMS to obtain the documents that Plaintiffs were seeking, and Plaintiff Hart located and retained one document. Plaintiff Hart and his counsel determined that they obtain the information that they needed from the system. *See Exhibit "D"*

24.     Defendant deny the allegations contained herein and deny that the communications referenced in this allegation are indicative of any failure on Defendant's part to comply with the Discovery Special Master's recommendations or the Orders of this Court. With respect to Mr. Schwartz's April 14, 2026 email, the suggestion that Plaintiffs file a motion to compel if a resolution could not be reached quickly is precisely that, a suggestion made in the context of ongoing discovery negotiations, not a finding of noncompliance or a ruling adverse to Defendant. The mere fact that the Discovery Special Master acknowledged the possibility of further motion practice does not constitute a determination that Defendants violated any order, failed to comply with any directive, or acted in bad faith.

25.     Defendant expressly denies that BAE Network's professional assessment of the search methodology constitutes a rejection of the Discovery Special Master's authority or recommendations, or that such assessment is mathematically absurd,

unfounded, or made in bad faith. On April 30, 2026, asserted that conducting searches for individual, standalone search terms would not yield materially different results than the searches already performed utilizing the Boolean connector "and." This assessment was not a repudiation of the Discovery Special Master's recommendations. Plaintiffs' characterization of the assessment as "mathematically absurd" is itself unsupported and without evidentiary foundation.

26.     Defendant denies that their conduct has in any manner procedurally tainted these proceedings or implicated the protections afforded under Federal Rule of Civil Procedure 56(d). Plaintiffs' invocation of Rule 56(d) is conclusory and unsupported. The rule is not a generalized remedy for perceived discovery dissatisfaction. Defendant further denies that Plaintiffs have been deprived of the full benefit of discovery in these proceedings. Plaintiffs' characterization of these proceedings as procedurally tainted is a litigation tactic designed to deflect attention from the substantive merits of Defendants' motion for summary judgment and to manufacture a basis for delay. The pendency of discovery disputes does not, without more, constitute procedural taint sufficient to invoke Rule 56(d) or to deny a moving party the right to have its motion adjudicated on the merits.

27.     Defendant does not dispute that the Federal Rules of Civil Procedure are binding rules that govern the conduct of all litigants in federal court, and that courts demand strict adherence to those rules. The authorities cited by Plaintiffs are entirely

consistent with Defendants' position in this matter. The principle articulated in *Carpenter v. City of Flint*, that a party is prejudiced when it is required to "waste time, money and effort in pursuit of cooperation which [the opposing party] was legally obligated to provide", applies here, as it is Defendants who have been compelled to expend considerable time, resources, and expense responding to overbroad, unduly burdensome, and poorly defined discovery demands that exceed the permissible scope of discovery under Rule 26(b)(1).

## CONCLUSION

Plaintiffs Motion should be denied as the allegations are nothing more than speculative theories and dissatisfaction with the document production. Plaintiffs have not set forth a rationale for show cause, or sanctions, and therefore Defendant City of Dearborn Heights requests that this honorable court deny Plaintiffs' Motion, and award attorney fees and costs to the Defendant for having to defend such a frivolous Motion.

Respectfully Submitted

**THE ALLEN LAW GROUP, P.C.**

By:     */s/ Monica N. Hunt*

Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

# **TABLE OF CONTENTS**

INDEX OF AUTHORITY ……………………………………………....…ii

COUNTER STATEMENT OF ISSUES PRESENTED …………….………...iii

   I.      INTRODUCTION …………………………………………….…1

   II.     FACTUAL BACKGROUND …………………………………….…1

   III.    ARGUMENT …………………………………………………4

     A. Defendant is not Entitled To Sanctions …………………………….4

        i.   Defendant Did Not Fail To Cooperate With Discovery Or This Court's Orders ………………………………………..5

        ii.  Plaintiffs Have Not Been Prejudiced ……………………7

        iv. Warnings of Future Sanctions Did Not Occur ……………..7

        iii. Sanctions, On Any Level, Are Not Warranted ……………..8

     B. The Production Is Consistent With A Complete and Inclusive Search ….8

     C. Plaintiffs' Reliance on Fed R. Civ. P. 56(d) Is Meritless ………………..9

   IV.   CONCLUSION ……………………………………………10

# INDEX OF AUTHORITIES

## Cases

*Bank One of Cleveland, N.A. v. Abbe*,

     916 F.2d 1067 (6th Cir. 1990) …………………………………………4

*CLT Logistics v. River W. Brands*,

     777 F. Supp. 2d 1052,  (E.D. Mich. 2011) …………………………………..9

*Freeland v. Amigo*,

     103 F.3d 1271 (6th Cir. 1997) …………………………………………4

*Harmon v. CSX Transportation, Inc.*,

     110 F.3e 364, (6th Cir.1997) …………………………………………..7

*Kucinskas v. Fleetwood Motor Homes of Indiana, Inc.*

     2008 U.S. Dist. LEXIS 72749,  (2008) …………………………………..4

*McCarthy v. Ameritech Publ., Inc.*,

     763 F.3d 488, 491 (6th Cir. 2014) …………………………………..5

*Stooksbury v. Ross*,

528 F. App'x 547, (6th Cir. 2013) …………………………………………4

T*etro v. Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks*,

     173 F.3d 988 (6th Cir.1999) …………………………………………...7

*United Coin Meter Co. v. Seaboard Coastline R.R.*,

     705 F.2d 839, (6th Cir.1983) …………………………………………..4

## Federal Rules

FRCP 37(b) …………………………………………………..1, 4, 9

FRCP 56(d) …………………………………………………..4

## <u>COUNTER STATEMENT OF ISSUES PRESENTEND</u>

1.      Whether the federal rules of discovery and the FRCP require both Defendants to be sanctioned as requested in the antecedent motion?

Plaintiffs' state: Yes.

Defendant City of Dearborn Heights states: No.

Intervening Defendant City of Dearborn Heights City Council states: No.

The Court should state: No.


2.      Whether Defendants failed to comply with their discovery obligations or with this Court's existing discovery orders found at Docket 108 and 109?

Plaintiffs' state: Yes.

Defendant City of Dearborn Heights states: No.

Intervening Defendant City of Dearborn Heights City Council states: No.

The Court should state: No.

## DEFENDANT CITY OF DEARBORN HEIGHTS' BRIEF IN SUPPORT OF ITS RESPONSE TO PLAINTIFF'S MOTION TO SHOW CAUSE

### I. INTRODUCTION

Defendant City of Dearborn Heights ("Defendant"), by and through its undersigned counsel, respectfully submits this Response to Plaintiff's Motion to Show Cause. It must be noted, that while Plaintiff filed a Motion for Rule to Show Cause and a Brief in Support of Motion to Compel, the brief solely argues for sanctions under FRCP 37(b). Defendant denies that Plaintiffs are entitled to any relief as discovery production at issue were conducted in a thorough, good-faith manner as set forth further herein.

### II. FACTUAL BACKGROUND

This case has a long and arduous history. Much of which is clouded by Plaintiffs unsubstantiated and accusatory discovery demands. Plaintiffs now, after nearly a year and half of ongoing written discovery, over a dozen depositions and numerous meetings with a Discovery Master as appointed by this Court, accuses Defendant and Co-Defendant Dearborn Heights City Council, of failing to abide by discovery orders issued by this Court on January 27, 2026. [ECF No. 127, 128]. Of significant issue, as noted in Plaintiffs' Motion, Plaintiff asserts that Defendant failed to have City of Dearborn Heights IT Director David Cooper perform a search of the

1

City of Dearborn Heights' computer network to search specific terms, and that although a search was performed, they claim the search was limited and narrowed.

After the entry of the Orders, the parties agreed to meet on February 27, 2026 with Director Cooper to initiate the electronic search for terms identified by Discovery Master Steven Schwartz and Plaintiffs. Unfortunately, on February 16, 2026, Director Cooper was placed on a leave of absence for personal reasons. See Ex. A. Director Cooper remains on leave to this day. In his absence, BAE Networks, the City of Dearborn Heights' information technology partner, broadened its already robust duties with the City, and began performing electronic searches on a regular basis. Given Director Cooper's absence, two technicians from BAE Networks agreed to attend the February 27, 2026 meeting. Due to the expansive search, it was concluded that the search could not possibly be performed in one afternoon, therefore BAE began its search in advance of the meeting.

On February 26, 2026, one day before the meeting, counsel for Plaintiffs provided counsel for Defendant a list of nineteen terms it sought to include in the electronic search. *See Exhibit "B"*. This magnified the already exhaustive search, nonetheless, the terms were added to the list. On February 27, 2026, Plaintiff Jarred Hart, his counsel, counsel for Defendants, the BAE technicians and current City of Dearborn Heights' Chief of Police Michal Guzowski appeared at the Information Technology Department in the City's Justice Center. During that time, Plaintiff Hart

2

was given the opportunity to access Power DMS himself and obtain the documents that Plaintiffs were seeking from that platform. *See Exhibit "D"*. Further, given the expansiveness of the search and the time it took to perform the search, counsel for Plaintiffs was advised by the BAE technicians how the search was being performed, and showed him extraction reports of terms that had been completed. *Id.* Satisfied with the search performance, counsel for Plaintiff requested extraction reports to determine that the requested terms were searched. *Id.*

As the searches were completed, BAE Networks provided counsel for Defendant the production, at which time, the documents were reviewed for privileged and protected information, and subsequently produced. Over the course of the production at issue, Defendants produced as additional three hundred forty-nine documents that contained the terms requested by Discovery Master Schwartz of Plaintiffs.

BAE's involvement was not ad hoc or improvised. BAE regularly performs electronic discovery services for the City and is well-acquainted with the City's systems, data repositories, and discovery protocols. Given Mr. Cooper's absence, BAE was the only qualified and available entity capable of conducting the search within the required timeframe.

BAE conducted the email search using all agreed-upon and court-ordered search terms without limitation or exception. The resulting production reflects a

3

comprehensive search of the applicable email accounts and data sources, inclusive of all specified search terms.

### III. ARGUMENT

Generally, pursuant to Fed R. Civ. P. 37(b) , if a party violates or fails to comply with discovery orders, district courts are authorized to sanction the party…" *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (citing Fed. R. Civ. P. 37(b)(2)(C)); *see also Kucinskas v. Fleetwood Motor Homes of Indiana, Inc.* No. 06-12195, 2008 U.S. Dist. LEXIS 72749, 2008 WL 4378105, at 1 (E.D. Mich. Sept. 23, 2008).

#### A. Plaintiff Is Not Entitled To Sanctions

Here, Plaintiffs argue that this Court must review and consider the factors under *Freeland*, presumably as they seek a Default. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). Default judgment, however, is a "drastic" remedy "which should be [awarded] only in the most extreme cases[.]" *Stooksbury v. Ross*, 528 F. App'x 547, 552 (6th Cir. 2013) (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983)). Rule 37 sanctions, including a default judgment, are discretionary and reviewed for abuse of this discretion on appeal, *McCarthy v. Ameritech Publ., Inc.*, 763 F.3d 488, 491 (6th Cir. 2014), by applying the following *Freeland* factors:

(1) whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault;

4

(2) whether the adversary was prejudiced by the party's failure to cooperate in discovery;

(3) whether the party was warned that failure to cooperate could lead to the sanction; and

(4) whether less drastic sanctions were first imposed or considered.

### i. Defendant Did Not Fail To Cooperate With Discovery Or This Court's Orders

Throughout the course of this litigation, Defendant has responded to four sets is discovery requests from Plaintiffs, in addition to numerous requests for supplement and offered voluntary supplements. Defendants have produced one thousand three hundred eighty (1380) documents to Plaintiffs consisting of terms, whether relevant or not, demanded by Plaintiffs.

When, on January 27, 2026, this Court ordered that Defendant perform a search of ordered and agreed upon search terms, the City has fully complied. The email search was conducted by BAE Networks, a competent and experienced technology partner of the Defendant, with institutional knowledge of the Defendant's systems. There is no basis to conclude that the search was deficient. Plaintiff may suggest that Mr. Cooper's absence undermined the integrity of the search. This argument lacks merit. Defendant took affirmative steps to ensure continuity of its discovery obligations by engaging BAE to perform the search in Director Coopers absence. The identity of the individual or entity conducting the search is not dispositive; what matters is whether the search was thorough and conducted in good faith.

5

Moreover, BAE's routine engagement by the City for electronic searches means it was uniquely positioned to conduct the search similar manner  as Director Cooper would have. Any suggestion that BAE's involvement produced an inferior or incomplete result is speculative and unsupported.

As Defendant has complied with discovery and the Orders of this Court, specifically those issued on January 27, 2026, and that there has been an exercise of due diligence in searching for responsive documents and producing what was discovered, there is not willfulness, bad faith or fault to be found. This is not a situation where Defendant has chosen not to produce any document or information. Defendant has searched and supplemented documents when necessary.

While Discovery Master Schwartz may have recommended that Defendant seek to have Director Cooper recreate the discovery search, such action could not occur as Director Cooper remains out of work on a leave of absence. Moreover, BAE Networks, the company that is working in place of Director Cooper, have already executed the search. The recommendation of Discovery Master Schwartz was impossible to conduct.

### ii.      Plaintiffs Have Not Been Prejudiced

Plaintiffs have not been harmed here, and that is because Plaintiffs have received all of the documents that they seek. While Plaintiffs may argue that because

they produced hundreds of thousands of documents as virtually a production dump without any rhyme, reason, or relevance, they only received approximately fourteen hundred pages of documents that they specifically requested, they are at a disadvantage. This is not the case. The documents requested by Plaintiffs, whether relevant to the case at hand, or not, were produced. A quick search of the search terms requested reflects that Plaintiff sought documents with terms that clearly exceeded the scope of this litigation.

Here, Plaintiffs simply do not like the fact that documents that they want simply do not exist. It is clear from the search terms that they are seeking communications referencing Plaintiffs and their race or the want for leaders of another race. Plaintiffs did not receive such documents because they simply do not exist. This does not equate to prejudice; it is just the facts of the case.

### iii. Warnings of Future Sanctions Did Not Occur

"Generally, the absence of prior warnings that dismissal could result from the party's continued misconduct weighs against dismissal." *Harmon v. CSX Transportation, Inc.*, 110 F.3e 364, 368-9 (6th Cir.1997). See, e.g., T*etro v. Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks*, 173 F.3d 988 (6th Cir.1999)(lack of notice sufficient, in part, to reverse district court's involuntary Here, there is zero record of any continued conduct or prior sanctions in this case. This factor weighs against sanctioning Defendants.

7

**iv.     Sanctions, On Any Level, Are Not Warranted**

The final factor views whether less drastic sanctions were imposed or considered prior to dismissal. In determining whether to dismiss a case due to a discovery violation, a district court should consider lesser sanctions. Here, sanctions are not appropriate at all. While Plaintiffs shout about how discovery was not complied with, they do not reference a single document that they have not received. Plaintiffs now, as it has become clear that facts do not match the allegation made by Plaintiffs, want to seek extraordinary sanctions, despite there being no cause for sanctions in any capacity. Weighing all four factors, the Plaintiffs fail to carry their burden of establishing that default is an appropriate sanction or that any sanction is appropriate at all.

B. **The Production Is Consistent With a Complete and Inclusive Search.**

The scope and content of the City's production is itself evidence of the comprehensiveness of the search. BAE Networks searched all applicable electronic mailboxes and accounts, and data sources using all specified search terms without limitation. See Ex. The volume and nature of the documents produced reflect this inclusive methodology. Specifically, while Plaintiffs suggest that the "and" connector limits that data production, this is inaccurate. Plaintiff suggests, by using the screenshot of a web page, that the production was limited because of certain connectors. Again, this is inaccurate. For instance, the term "community" was a

8

requested search term by Plaintiff. Bates Number CODH1208-1209, as produced by Plaintiff is an example of a stand alone term, with no connectors to other terms. *See Exhibit "E"*. Plaintiff has not identified any specific document, custodian, or search term that was omitted from the search. Absent a concrete showing that identifiable, responsive materials were not produced, Plaintiff's Motion amounts to speculation that something was missed, which is insufficient to justify a show cause order. *Fed. R. Civ. P. 3*7.

### C. Plaintiffs Reliance on 56(d) Is Meritless

Plaintiffs accuse Defendants of *tainting* the discovery process and invokes Fed. R. C.iv. P. 56(d) which applies when a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Id*. Here, no such declaration has been provided, which is required. *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1076 (E.D. Mich. 2011). Moreover, additional discovery would not be of assistance to Plaintiffs because the documents that they repeatedly demand, do not exist. As mentioned above, an exhaustive search, utilizing terms provided by Plaintiffs, was conducted and the results have been produced. Plaintiffs attempt to use the discovery process to justify their inability to substantiate their claims.

### IV. CONCLUSION

9

Plaintiffs Motion should be denied as the allegations are nothing more than speculative theories and dissatisfaction with the document production. Plaintiffs have not set forth a rationale for show cause, or sanctions, and therefore Defendant City of Dearborn Heights requests that this honorable court deny Plaintiffs' Motion, and award attorney fees and costs to the Defendant for having to defend such a frivolous Motion.

Respectfully Submitted

**THE ALLEN LAW GROUP, P.C.**

By: _/s/ Monica N. Hunt_

Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

LOCAL RULE CERTIFICATION: I, Monica N. Hunt, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that

is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully Submitted

**THE ALLEN LAW GROUP, P.C.**

By:    */s/ Monica N. Hunt*

Monica Hunt (P68838)
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
(313) 871-5500
mhunt@alglawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I did serve the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record registered for electronic filing.

*/s/ Monica N. Hunt*
Monica N. Hunt

11