# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN SWOPE, PAUL VANDERPLOW
JERROD HART,

        Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation,

        Defendant,

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,

        Intervening Defendant.

Case No. 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

---

## PARTIES' JOINT STATEMENT CONCERNING BAZZI DEPOSITION[1]

NOW COME Plaintiffs, KEVIN SWOPE, PAUL VANDERPLOW, AND

JERROD HART ("Plaintiffs"), the CITY OF DEARBORN HEIGHTS ("Primary

Defendant") and the CITY COUNCIL OF DEARBORN HEIGHTS ("Intervening

Defendant" and together with Primary Defendant, the "Defendants"), by and through

their undersigned counsels, and for their Joint Statement to the Court with respect to

---

[1] Filed consistent with the Court's text-only order of July 6, 2026.

1

the affirmative use as evidence at trial of the August 29, 2025 deposition transcript of former Dearborn Heights City Mayor Bill Bazzi ("Bazzi Transcript") state as follows:

(a)  **July 8th Conference**.  On July 8, 2026 the parties, accompanied by Special Master Schwartz, met via zoom for three hours to review and discuss all of the proposed excerpts of the Bazzi Transcript that Plaintiff proposed using at trial consistent with FRCP 32(a)(3) and 32(a)(4) as well as FRE 801(d)(2) and 804(b).

(b)  **Attachments.**

Attached as **Exhibit 1** is a jointly prepared spreadsheet setting forth and describing all of the Bazzi Transcript excerpts discussed by the parties.  There are 114 such excerpts (the "Excerpts").  Separate columns describe the Excerpt, the proponent of the Excerpt, and the objections of the opposing parties, if any.  For those instances in which use of the Excerpt is not opposed by any party, the words "None (Agreed)" are entered in the objections column.  A separate column is reserved for the Court to enter its ruling on the Excerpt.  If the Court wishes, an electronic copy of the spreadsheet can be sent to the Court via the utility function of CM/ECF.

Attached at **Exhibit 2 (or potentially Exhibits 2(a) and 2(b)** depending on file size) is the entire Bazzi Trancript with each of the excerpts that are subject to objection marked and highlighted in green pen.  (Plaintiffs' counsel apologies to the

2

Court but attempting to electronically highlight the document caused the document to freeze/crash, making a mark-up by hand necessary).   Per the Court's instructions, only Excerpts that are the subject of an objection are marked.   Agreed Excerpts are not marked.

### (c)    The Plaintiffs' Position with Respect to Disputed Excerpts.

### *Overview*

Plaintiffs have a right to use the Bazzi Transcript "for any purpose," consistent with FRCP 32(a)(3), because Bazzi was deposed while the sitting Mayor of the Defendant, the City of Dearborn Heights.   *See also, U.S. v. McDaniel,* 398 F. 3d 540, 545 (6th Cir. 2005)(holding that the adversarial process prevents the statements *of a party* from being misused at trial, because a party – having the right to participate in a trial – is always free to defend itself or correct any misuse using its own evidence and testimony).

Plaintiffs further believe they have additionally satisfied tests B, D, and E of FRCP 32(a)(4), given that Bill Bazzi is now indisputably the U.S. Ambassador to Tunisia.   Plaintiff set forth these arguments at ECF No. 135.  In its responsive brief found at ECF No. 141, the Primary Defendant offered no arguments whatsoever with respect to FRCP 32(a)(3), and further appeared not to appreciate that the tests supplied by FRCP 32(a)(4) are disjunctive in nature, such that Plaintffs need only

satisfy any one of them to prevail. At oral argument on July 1, 2026, the Court appeared to agree with Plaintiffs' arguments.

Having apparently lost the larger battle in which they attempted to bar use of the entire Bazzi Transcript, the Defendants now resort to a more pointillistic approach in which they throw up ill-fitting boiler-plate objections *for all but a few* of the 107 Excerpts that Plaintiffs have proposed using at trial. The Defendants' new strategy apparently being to deny use of the entire Bazzi Transcript using a piecemeal approach.

The majority of the Primary Defendant's objections are nothing more than the recitation of the same inapt list: "*Objection, form, foundation, speculation, and hearsay.*" At times *relevance* and an objection claiming that the question *called for a legal conclusion* were also used.

Plaintiffs cannot possibly brief all 90+ instances in which the Excerpts that they propose to use – from a deposition transcript that the Federal Rules of Civil Procedure say that Plaintiffs can use for "any purpose" – are now opposed and objected to. While they reserve the right to oral argument concerning particular Excerpts, Plaintiffs will largely confine their analysis to a generalized critique of how the Defendants have misused and misapplied the following rote objections:

### *Defendants' hearsay objections are invalid*

FRE 801(c) and statements not made to prove the truth of the matter.   To begin with, any out-of-court statement that is not used to prove the "truth of the matter" being asserted is not hearsay under FRE 801(c).   Without knowing *why* the proponent wants to offer the statement, a hearsay objection becomes nothing more than a presumption.   Many of the statements or Excerpts that Defendants claim are hearsay have their own stand-alone legal effect.   Other statements show the state of mind of the declarant, or the notice that Bazzi had of certain facts.   Plaintiff offers such Excerpts, in other words, *just to show that such words were said*, not to show the truth of the matter asserted by the declarant.   At times, the out-of-court declarant is outright lying or plying misinformation; in those instances, Plaintiff could not possibly be offering such statements with the purpose of proving the truth of the matter asserted because the matter asserted is a lie.

FRE 805 and the double-hearsay-double-cure rule.  Defendants' rote hearsay objection to double-hearsay situation (in which Bazzi quotes or paraphrases a third party) fails to take into account that any other statement made by an out-of-court declarant other than Bill Bazzi, such as an officer, police officer, city councilman, or other acting agent working for the City or the City Council is just as excluded from the definition of hearsay (by FRE 801(d)(2)) as the Bazzi Transcript is itself. *See* FRE 805.  These third-party statements would arguably include even statements

5

made by the Plaintiffs while they were officers of the City, since this Court has already ruled that attorney-client privilege between the City's trial lawyer and the Plaintiffs extends to statements made or by the Plaintiffs while they were officers of the City but after they had filed this lawsuit.[2]

FRE 803 and the reputation exception to hearsay.  Defendants also make hearsay objections for entirely semantic or superficial reasons.  Bill Bazzi had been the Mayor of Dearborn Heights for four and a half years by the time he sat for his deposition and had likely had thousands of conversations about the City by August 29, 2025, the date of his deposition.   His personal knowledge of the city's affairs was deep by the date of his deposition, and yet much of that knowledge would have come from conversations with others, including constituents, the Defendants, city employees, police officers, etc.   The cumulative effect of these conversations with thousands of persons creates a direct personal knowledge of the City, held by Bazzi. Much of what any human being personally knows about the world comes from conversations.   And yet every time Bazzi phrased his answers in terms of "I have

---

[2] *See ECF No. 129, PageID.5568-5569* ("*Plaintiffs offer no authority holding that privilege is lost if the recipient is adverse. If the document was received by the recipient in the course of his duties – and that appears to be the case – there is no waiver of privilege.*").   It would therefor appear to be a contradictory result if the Plaintiffs would not be considered officers and agents for purposes of FRE 801(d)(2) and FRE 805 when Plaintiffs were considered to be officers of the City, even after their lawsuit was filed, for purposes of attorney-client privilege.

heard" or "I have been told" – when it would have been entirely possible for him to have alternatively said "I have learned" or "I now know" – Defendants make a knee-jerk objection based on hearsay. This is not a proper use of the hearsay objection, which is a substantive objection, not a superficial one based on mere triggering phrases such as "I heard" or "there was a lot of chatter."

In fact, FRE 803 contains at least three exceptions to the hearsay rules for precisely these types of situations were a deeply personal knowledge of a particular subject would nonetheless come from many out-of-court conversations with persons in a given community, where the witness's knowledge comes from a synthesis of all such conversations and is not beholden to any particular chat with a particular declarant. Federal rules of evidence 803-19 (reputation concerning family history), 803-20 (reputation concerning boundaries), and 803-21 (reputation concerning character) are all premised on this idea that talking to the community, and learning from the community, is not hearsay. A witness on the stand is allowed to testify by summarizing "what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself." *Michelson v. U.S.*, 335 U.S. 469, 477; 69 S. Ct. 213; 93 L.Ed, 168 (1948).

These FRE 803 exceptions are directly applicable here because many of Bill Bazzi's "I've heard" answers directly concern the reputation of Dearborn Heights, or the reputation of its officers and agents for corruption.

### *A foundation for Bazzi's knowledge of City affairs is well established*

A witness is required to have personal knowledge of the matters about which he testifies, except in the case of expert opinions, but the threshold for admitting testimony under Rule 602 is low. *United States v. Kelsor, 665 F.3d 684, 697 (2011).* "Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990).

Again, by the time he was deposed, Bazzi had been Mayor of Dearborn Heights for four years, starting with his appointment in January of 2021 (Bazzi Transcript, 18:15-24). He had testified, rather unsurprisingly, that he was personally familiar with the municipal government of Dearborn Heights. (Bazzi Transcript, 17:4-9). Tellingly, that answer was itself the subject of a "form and foundation" objection, which likely tells the Court what is going on here.

Thus, it was unreasonable for the Defendants to raise scores of objections, as they did, that a foundation has not been laid for Mayor Bill Bazzi to testify about Dearborn Heights governmental and political affairs, about his own direct experiences, and about his interactions with the Plaintiffs and with the Intervening Defendants.

***The Defendants' "speculation" objections are not legitimate or even definable***

Defendants raise so many inapt "speculation" objections that it is hard to understand what definition of "speculation" they are using.   Plaintiffs' counsel asked Mayor Bazzi few questions where he was asked to outright guess about future events that did not occur, a pure form of speculation.  It could be that Defendants believe that any question asking for Mayor Bazzi's informed opinion on a subject was improper "speculation."  However, FRE Rule 701 provides that lay witnesses can offer "testimony in the form of an opinion" when that testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

"The function of lay opinion testimony is to 'describe something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as first-hand witness to a particular event." *United States v. Kilpatrick*, 798 F.3d 365, 379 (6th Cir. 2015) (citing *United States v. Freeman*, 730 F.3d 590, 595-96 (6th Cir. 2013)).  Thus, if Bazzi gave his opinion on certain matters, it was because he had direct personal experience of a subject and his opinion was personal to him and to his knowledge and not scientific or technical in nature.   There can be little doubt that the opinion

9

of a Mayor of a city as to how well the city's officers and council were performing should be helpful to a jury as they consider matters pertaining to that city and to city governance.

### *The Defendants see "legal conclusions" where none exists*

In a repeat of the arguments found in the Defendant's Motion in Limine found at Docket 137, Defendants appear to believe that questions about "corruption" or "ticket-fixing" or "retaliation" or "collusion" were inherently questions requiring legal conclusions.    See ECF No. 137, PageID.5775-5777.  This defies common sense.    Corruption is not a legal term, and neither is "ticket-fixing.    While "retaliation" and "collusion" do have legal meanings, they are also common words found in the English language that Bill Bazzi was fully capable of understanding and did not claim to misunderstand.   Thus, Defendants multiple objections that questions require "legal conclusions" are invalid.

### *The Defendants' "Relevance" objections are without merit*

Federal Rule of Evidence 401 defines relevance broadly to state that evidence is relevant if it has any tendency to make a fact more or less probable than without the evidence.   Defendants' relevance objections therefore contradict the rule, because Defendants use relevance objections improperly, to highlight facts that they do not like, or that do not fit into their theory of the case.   The most glaring example is ITEM 58, where Plaintiffs' counsel inquires into Mayor Bazzi's own race and

heritage.    (Bazzi Dep Transcript, Page 164: 8-24).   In a case about race and racial discrimination, in a case which contains Title VII allegations, there can be little doubt that Bazzi's race and heritage as an Arab-American with ancestry traceable to Lebanon is relevant because he is so entirely critical of other persons, including City Council members who are themselves Arab-Americans with ancestry traceable to Lebanon.   Bazzi's testimony about the wrongful acts of the City Council become more credible when his own race is revealed, because Bazzi's membership in the same racial group as those he is criticizing logically suggests that he is not speaking out of racial animus.   Thus, Bazzi's race is "relevant" because it tends to make his testimony more credible and less vulnerable to dismissal as the product of bigotry towards Arab-Americans.   If Bazzi's credibility is enhanced in this fashion, then every factual averment found in the Bazzi Transcript becomes more probable "than it would be without the evidence."   FRE 401(a).

**(d)    The Primary Defendant (City of Dearborn Heights's) Position with Respect to Disputed Excerpts.**

Defendant City of Dearborn Heights, and by extension, its City Council objects to the form in which questions were asked to Mayor Bazzi, which elicited testimony that was subject to hearsay and speculation objections. Most overwhelmingly, the evidence, based on the deposition transcript of Mayor Bazzi is void of any establishment that he had personal or firsthand knowledge of certain matters.

Rule 602 requires that, before a witness may testify to a matter, evidence must be introduced sufficient to support a finding that the witness has personal knowledge of that matter. That foundation must appear in the deposition itself, it cannot be supplied after the fact, and it cannot be presumed from the witness's title or office. When deposition testimony is offered at trial in lieu of live testimony under Fed. R. Civ. P.32, it is subject to the same admissibility requirements as if the witness were testifying from the stand. Fed. R. Civ. P. 32(a)(1)(B); Fed. R. Evid. 602, 701.

Here, the transcript contains no testimony establishing that the witness has personal, firsthand knowledge of the historical matters within the City about which he was examined. Nowhere in the deposition did counsel elicit, and nowhere did the witness provide: the basic foundational facts: what the witness personally observed, when he observed it, how he came to know it, or whether his knowledge derives from his own perception as opposed to what others told him, what he assumed from his position, or what he learned secondhand. A mayor's general familiarity with city government is not a substitute for personal knowledge of specific events. Occupying an office does not confer omniscience over the historical affairs of a municipality, and Fed. R. Civ. P. 602 does not permit a witness to testify to institutional history by virtue of title alone.

The same defect applies to the testimony concerning specific employees, their roles, duties, performance, and the issues pertaining to them, as well as budgetary matters. The transcript contains no foundation that the witness supervised these employees, participated in the personnel decisions at issue, reviewed the relevant records, or had any firsthand involvement in the events described. Testimony about an employee's role or conduct that rests on organizational assumption, hearsay within the administration, or after-the-fact briefing is not testimony from personal knowledge, it is speculation dressed as recollection, and to the extent it characterizes events the witness did not perceive, it is also improper lay opinion under Fed. R. Civ. P. 701, which requires that opinion testimony be rationally based on the witness's own perception.

Because the deposition is a closed record, the foundational gap cannot be cured. Unlike a live witness, this testimony cannot be rehabilitated through additional questioning; the transcript either contains the foundation or it does not,

and it does not. Plaintiff, as the proponent of the testimony, bears the burden of establishing admissibility, and the designated excerpts fail on their face.

The City's objections are as follow:

**Line Item 4 – 18:25-19:11** The record is void of evidence to suggest that Mayor Bazzi possesses historical knowledge regarding "corruption". When asked if there was "corruption" in the City, Mayor Bazzi testified that he "used to hear chatter" He testifies on what was told to him rather than his firsthand knowledge.

**Line Item 5 - 21:5-22:5** Similar to the above, there has been no foundation laid to suggest that Mayor Bazzi possesses historical knowledge regarding ticket fixing. When asked if there was ticket fixing in the City, Mayor Bazzi testified that "…there was few people's names that was brought up, but I didn't get involved with…in micromanagement when I was the mayor obviously." He goes on to testify to two names *mentioned* to him. He testifies on what was told to him rather than his firsthand knowledge.

**Line Item 6 - 22:24-23:12** The record is void as to Mayor Bazzi's firsthand and personal knowledge as to how and where tow trucks tow vehicles causing foundational issue. Moreover, the response is based on what was told to him, and is speculative in nature.

**Line Item 7 – 24:5-13** The nature of the question references assumed facts that are not in evidence. Moreover, the question mischaracterized Mayor Bazzi's testimony as stated in 23:20-24:3, where he states that he was told "through the chief, that they were actually -- there's some -- some people directing towing companies, other companies other than the ones that we -- were dealing with". Moreover, the question seeks information that is based on what the Mayor was told by the chief, seeking a response that is wrapped in hearsay.

**Line Item 8 – 25:9-27:6** The questions, and testimony, at issue is based off of hearsay testimony. On 24:15, counsel for Plaintiff begins to ask Mayor Bazzi about the City's Police Department purchasing military grade firearms. In response, Mayor Bazzi testifies that "Chief Hart brought that to [his] attention…" 24:21-25:7. Counsel goes on to ask Mayor Bazzi about this issue that he has no personal knowledge of and that he admits that he was not aware of. Moreover, no foundation

has been laid to establish that Mayor Bazzi has the first-hand knowledge to testify to the purchase or selling of guns, or the presence of sexual misconduct; particularly since Mayor Bazzi testified that he "was told that there was sexual misconduct…". 26:8-9. This exemplifies that the testimony was pure heresy, yet, counsel for Plaintiff continued to ask questions that Mayor Bazzi could only speculate about based on the hearsay testimony.

**Line Item 9 – 28:1-7**     Similar to the above, Plaintiffs failed to lay a foundation establishing that Mayor Bazzi had knowledge to speak about camera's being in the placed in the women's locker room. The question elicited hearsay testimony as Mayor Bazzi testified that he *thinks* Chief Hart called him, or Chief Swope brought to his attention, that they found a camera in the locker room.

**Line Item 10 – 28:9-23** Plaintiffs' deposition question assumes facts not in evidence as it presupposes the "pull-overs" and "interference" with traffic stops occurred, and asks only whether the mayor "knows" about them. Moreover, the question is vague and ambiguous give the inquiries about "certain councilmen" names no one, "any knowledge" does not distinguish personal knowledge from rumor. This also leads to a response that is speculative in nature, and a response that discusses what Mayor Bazzi *heard*, which is not direct knowledge.

**Line Item 11 – 29:3-23**  Plaintiff's inquiry regarding the "ticketing certain streets or roads used by African-Americans", fails to establish a foundation that Mayor Bazzi is aware of which streets were being ticketing, and that Mayor Bazzi had some independent knowledge that African Americans used a certain road more often than others. Such a question begs for an answer that is speculative in nature given the lack of actual and direct knowledge regarding the subject of the question.

**Line Item 12 – 30:3-16**  Similar to the above, Plaintiffs seek to elicit a response without determining how Mayor Bazzi would be aware of "pay-to-play" or "bribery" issues in the City of Dearborn Heights prior to his becoming Mayor. Any response would be speculation at best. In his response, Mayor Bazzi states that the previous chief told him of these activities and that he was not aware of any himself which reflects hearsay.

**Line Item 13 – 32:19-33:18**     Plaintiffs' question fails to establish a foundation of how Mayor Bazzi is aware of the City's "history of corruption". Moreover Mayor Bazzi testifies that his response is based on "people saying certain things", "people bringing certain things to my attention" and "some of the stuff that was brought forward to me". The response is purely on what was told to him, and not what he has knowledge of.

**Line Item 14 – 33:22-35:9**     Plaintiffs' question demands a hearsay statement by seeking an out of court statement. By asking what Commissioner Thomas told him, Plaintiff clearly sought a hearsay statement. Moreover, Mayor Bazzi's response was based on what was told to him, and no clear and independent knowledge of his own.

Plaintiff further seeks testimony regarding a "golden circle" without determining Mayor Bazzi's first hand knowledge of the "golden circle" and tends to rely on what was told to him. In fact, states that was "made aware" of officers carrying coins, he does not establish having first-hand knowledge. Moreover, while he as seen the coin, he admits that it would be speculation as to who, if any, officers were part of a "golden-circle".

**Line Item 16 – 36:23-38:18** Plaintiffs' question as to the Plaintiffs' status as "outsiders" is vague and lacks definition. Moreover, the testimony is based on what was told to him by the Commissioner rather than his personal knowledge.

**Line Item 17 – 40:4-41:19**     Plaintiffs seek a speculative response on how Mayor Bazzi's "efforts to reform the Dearborn Heights Police Department" was received. Plaintiff sought no foundation as to how Mayor knew of how others received his efforts. Moreover, Plaintiff's request as to why the response was as it was exemplified a question seeking a speculative response, which resulted in a response by Mayor Bazzi that he "didn't know".

**Line Item 18 – 42:2-43:19**     The testimony elicited is based on information told to Mayor Bazzi by a third party, Commissioner Thomas, rather than information based on his own personal knowledge.

**Line Item 20 – 46:14-48:20**     Plaintiffs seek testimony based on statements contained in a document that amounted to hearsay as the statements were made from information provided to the author and deponent instead of firsthand knowledge.

Moreover, Counsel's inquiry regarding "illegal attacks", "institutional inefficiencies" and "constant bullying" seeks a legal conclusion from a lay person to which the deponent could not testify to.

**Line Item 21 – 49:3-49:24**      Plaintiffs seek a response regarding Mayor Bazzi's ability to hire without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's abilities to hire the Director's, which is an issue, despite Mayor Bazzi being a lay person.

**Line Item 22 – 50:8-11** Plaintiffs' question as to the Plaintiffs' status as "outsiders" is vague and lacks definition.

**Line Item 23 – 52:2-54:21**      Plaintiff's inquiry seeks testimony based on a document (Collective Bargaining Agreement) from Mayor Bazzi without a foundation of his knowledge or understanding of the Agreement. The question further seeks a legal conclusion based on the contents of the Agreement.

**Line Item 24 – 56:7-12**  Plaintiffs seek testimony on a document that the deponent did not draft, and a meeting he was not present for. There is no evidence that the deponent possesses personal knowledge to speak on the document, therefore the responses are hearsay and speculative.

**Line Item 25 – 56:14-58:21**      Plaintiffs seek a response regarding Mayor Bazzi's contractual abilities without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's abilities to sign contracts, which is an issue, despite Mayor Bazzi being a lay person.

**Line Item 26 – 59:19-62:8**      Plaintiffs' inquiry seeks testimony based on a document (Collective Bargaining Agreement) from Mayor Bazzi without a foundation of his knowledge or understanding of the Agreement. The question further seeks a legal conclusion based on the contents of the Agreement and his ability to bind the City to specific contracts.

**Line Item 27 – 64:2-65:18**      Plaintiffs' inquiry seeks testimony based on a document (Collective Bargaining Agreement) from Mayor Bazzi without a

foundation of his knowledge or understanding of the Agreement. The question further seeks a legal conclusion based on the contents of the Agreement and his ability to bind the City to specific contracts.

**Line Item 29 – 67:21-68:17**     Plaintiffs seek testimony from Mayor regarding his opinion of a Police Sargeant Bazzy as an officer without a foundation being laid as to his firsthand and independent knowledge of Sgt. Bazzy's abilities as an officer which leads to a response that is speculative in nature. Moreover, Plaintiff's efforts to utilize Mayor Bazzi's history as a military officer does not translate to the ability to review a City police officer, further failing to establish a foundation and continues to elicit a speculative response.

**Line Item 30 – 69:5-21**     Similar to the above, Plaintiffs seek a performance review of Police Sargeant Bazzy's conduct as an officer without a foundation being laid as to his firsthand and independent knowledge of Sgt. Bazzy's abilities as an officer which leads to a response that is speculative in nature.

**Line Item 31 – 70:9-73:20**     As referenced above, Plaintiffs seek Mayor Bazzi's determination of Sgt Bazzy's veracity without establishing a foundation of Mayor Bazzi's firsthand and personal knowledge of Sgt Bazzy. Mayor Bazzi's testimony is speculative and is based on what he has heard and read about Sgt. Bazzy.

Moreover, the record does not establish Mayor Bazzi's firsthand knowledge of matters pertaining to Sgt. Bazzy, specifically his promotion testing history, therefore Plaintiffs' question regarding Sgt. Bazzy's testing seeks a speculative response, and one based on hearsay.

The record is void of any testimony from Mayor Bazzi that any pressure he may have felt to promote Sgt. Bazzy was due to his race. Any response would be based purely on speculation.

**Line Item 32 – 74:3-9**     The record is void of any testimony from Mayor Bazzi that any pressure he may have felt to promote officers was due to their race. Any response would be based purely on speculation.

**Line Item 33 – 76:16-77:5**     Plaintiffs seek an opinion from Mayor Bazzi on an undefined and vague term of "from the community" without any basis of when the

statements were made, by whom and the context of the conversation. The question, without foundation, calls for a speculative response.

**Line Item 34 – 79:13-85:11**     Plaintiffs seek an opinion from Mayor Bazzi on an undefined and vague term of "Arab only meeting" without any basis or explanation of the term. The question, without foundation, calls for a speculative response.

Moreover, Plaintiffs seek testimony regarding the basis for a meeting that Mayor Bazzi testified the he did not play or present. No foundation has been established to suggest that Mayor Bazzi had information relative to reason for and planning of the meeting. Further, testimony related to social media video of Sgt Bazzy and his brother, seeks a response based on hearsay and speculation, as the authenticity of the video has not been verified.

Plaintiff seeks an opinion from Mayor Bazzi on an undefined and vague term of "from the community" without any basis of when the statements were made, by whom and the context of the conversation. The question, without foundation, calls for a speculative response.

Similarly, any testimony related to the "use of force incident" involving Sgt. Bazzy is based on hearsay and speculation, as there is not foundation established that Mayor Bazzi has firsthand knowledge of the incident, or any knowledge other than that of what was told to him.

**Line Item 35 – 86:7-98:14**     Plaintiffs seek a response from Mayor Bazzi regarding the responsibility of Sgt Bazzy at a particular police scene without establishing that Mayor has knowledge of police procedure and requirements with the City, or personal knowledge of the police officers present at the scene in question to determine the role of any specific officer, causing any response to be based on speculation and hearsay.

Further, the record is void of a foundation to allow Mayor Bazzi to testify regarding by Sgt Bazzy handled the police scene, why he was disciplined, who disciplined him and any discussions surrounding his discipline.

Moreover, Plaintiffs seek testimony based on hearsay by asking Mayor Bazzi to speak on statements made by Khalil Rahal, and to speculation as to the relationship between Rahal and Sgt. Bazzy.

**Line Item 36 – 99:25-100:06** Plaintiffs seek testimony without foundation being established on the record that Mayor has to knowledge to form such a response, which leads to speculative testimony.

**Line Item 37 – 102:4-104:11** Plaintiffs seek testimony without foundation being established on the record that Mayor has to knowledge to form such a response, which leads to speculative testimony.

Further, the record does not establish that Mayor Bazzi has firsthand knowledge of Vanderplow's interaction with the Council and any investigation related to the Treasurer, therefore any testimony is presumed to be speculation and based on hearsay.

**Line Item 38 – 104:13-105:12** Plaintiffs seek testimony without foundation being established on the record that Mayor has to knowledge to form such a response, which leads to speculative testimony.

**Line Item 39 – 106:15-107:9** Plaintiffs seek a response without establishing that Mayor Bazzi possesses the knowledge to provide a response, thereby eliciting a speculative response. Moreover, Mayor Bazzy testifies that any response is speculation.

**Line Item 40 – 107:18-109:17** The record is void of if and how Mayor Bazzi became personally aware of the Hart's communication and reporting to law enforcement agencies. Mayor Bazzi testified that this information came from the chief, and appears to be based on the information given to him by Hart.

**Line Item 41 – 110:10-111:15** The record is void of if and how Mayor Bazzi became personally aware of the Council's interaction with the Plaintiffs causing the testimony to be based on potential hearsay, and speculation.

**Line Item 42 – 111:17-115:17** Without establishing Mayor Bazzi's personal knowledge of investigations conducted by the police department, or any specific investigations involving the Council, Plaintiff seeks testimony that would elicit a

speculative response, or on based on hearsay, which is how Mayor Bazzi testified as he stated that he was only aware of what Hart advised him.

Moreover, Plaintiff seeks a response to question involving facts not in evidence when it asks about the Council "criticizing or personally attacking Jerrod Hart" when no such actions have been testifies to. Such an inquiry leads to speculative response. Further, the record does not establish a foundation related to Council interactions with Plaintiffs, causing any testimony provided by Mayor Bazzi to be based on hearsay or speculation.

**Line Item 43: 115:18-116:15**   Plaintiffs seek testimony on a document that the deponent did not draft, and a meeting he was not present for. There is no evidence that the deponent possesses personal knowledge to speak on the document, therefore the responses are hearsay and speculative.

**Line Item 45 – 120:19-24**      Plaintiffs seek testimony related to an interpretation of the severance provision in a contract which amounts to them seeking a legal conclusion, which Mayor Bazzi, as a lay person, cannot provide.

**Line Item 46 –121:1-123:23**    Plaintiff seeks hearsay and speculative responses by seeking testimony from Mayor Bazzi based on a document drafted by Hart, and attempting to determine the accuracy of the statement. The record is void of evidence that Mayor Bazzi had personal knowledge of the statements in the document. Further, Plaintiffs sought testimony from Mayor Bazzi that amounted to a legal conclusion when asked if a vote of "no confidence" amounted to retaliatory action", when Mayor Bazzi, as a lay person, had no ability to provide such a response.

**Line Item 47 – 125:21-126:2**   Plaintiffs seek a response without establishing that Mayor Bazzi possesses the knowledge to provide a response, thereby eliciting a speculative response. Moreover, Mayor Bazzy testifies that any response is speculation.

**Line Item 48 – 126:4-132:14**   Plaintiff sought testimony based on statements contained in a document that amounted to hearsay as the statements were made from information provided to the author and deponent instead of firsthand knowledge.

Moreover, by seeking an interpretation of a vendor contract and determination of an act of collusion, Plaintiffs seek a legal conclusion from a lay person.

**Line Item 49 – 133:6-134:4**     Plaintiffs seek a response without establishing that Mayor Bazzi possesses the knowledge to provide a response, thereby eliciting a speculative response and based on hearsay.

**Line Item 50 – 134:6-136:17**   Plaintiffs seek a response without establishing that Mayor Bazzi possesses the knowledge to provide a response, thereby eliciting a speculative response, and a response based on information told to Mayor Bazzi by Vanderplow.

**Line Item 51 – 138:11-139:11**  Plaintiffs seek a response without establishing that Mayor Bazzi possesses the knowledge to provide a response, thereby eliciting a speculative response and based on hearsay. Further, Plaintiffs seek testimony related to an interpretation of the severance provision in a contract which amounts to them seeking a legal conclusion, which Mayor Bazzi, as a lay person, cannot provide.

**Line Item 53 – 142:14-143:24**  and **Line Item 54 – 144:14-145:3**

Plaintiff seeks testimony based on a newspaper article, which itself is hearsay based on there being no authentication of the article, leading to a lack of foundation. Moreover, the article provided, at the time of the deposition, was not a copy of the complete article. Testimony based on the article amounts to hearsay, and speculation.

**Line Item 55 – 145:22-147:15** Plaintiffs seek testimony without foundation being established on the record that Mayor has to knowledge to form such a response, which leads to speculative testimony.

Further, the record does not establish that Mayor Bazzi has firsthand knowledge of Swope's interaction with the Council, therefore any testimony is presumed to be speculation and based on hearsay.

**Line Item 56 – 147:23-150:2**   Plaintiffs seek testimony on a document that the deponent did not prepare and there has no foundation laid for him to testify to this document leading to any testimony being speculative and based on hearsay.

**Line Item 57 – 161:1-163:23**   Plaintiffs seek testimony without establishing the deponents firsthand and personal knowledge regarding the budget, status of the

21

budget and contents of the budget. The same holds for the level of staffing at in police department. Moreover, Plaintiffs mischaracterized the deponent's earlier testimony by asserting that the City "had extra funds" when no such information was in evidence leading to a response based on speculation and hearsay.

**Line Item 58 – 164:18-24**        The nationality and ethnicity of the deponent have no relevance to this matter.

**Line Item 59– 169:1-18** and **Line Item 60:171:19-174:11**

No evidence is contained in the record that the deponent can speak to Hussein Farhat's prior work history, or that he has reviewed his resume and interviewed Farhat. Moreover, seeking testimony on Romulus police department's ranking structure seeks a speculative response.

Seeking information related to Vanderplow's discipline from Farhat requires a response based on hearsay and speculation given Mayor Bazzi's lack of firsthand knowledge. Further, the reason as to why Farhat disciplined Vanderplow is speculative.

**Line Item 61 – 183:24-185:6**   Plaintiff seeks testimony without foundation being established on the record that Mayor has to knowledge to form such a response, which leads to speculative testimony.

**Line Item 62 – 202:14-20**        Counsel fail to establish the deponent's personal knowledge of or ability to speak on the document being question on.

**Line Item 63 – 204:4-22**        Counsel seeks testimony on a document that the deponent did not draft, and a meeting he was not present for. There is no evidence that the deponent possesses personal knowledge to speak on the document, therefore the responses are hearsay and speculative. The document further speaks for itself.

**Line Item 64 –  211:4-22**        Plaintiff seeks a response regarding Mayor Bazzi's ability to hire without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's abilities to hire the Chief and Directors, which is an issue, despite Mayor Bazzi being a lay person.

**Line Item 65 – 212:21-213:8**   Plaintiff seeks a response regarding Mayor Bazzi's ability to hire without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's abilities to hire the Chief and Directors, which is an issue, despite Mayor Bazzi being a lay person.

**Line Item 66 – 214:14-215:4**   Plaintiff seeks a response regarding Mayor Bazzi's powers without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's administrative powers.

**Line Item 67 – 219:5-16**      Counsel fail to establish the deponent's personal knowledge of or ability to speak on the document being question on.

**Line Item 68 – 222:18-223:8**   Plaintiffs seek testimony without establishing the deponents firsthand and personal knowledge regarding the budget, status of the budget and contents of the budget.

**Line Item 69 – 225:4-10**      Plaintiff seeks a response regarding Mayor Bazzi's powers regarding the budget without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's budgetary powers.

**Line Item 70 – 236:13-237:23** Testimony regarding the nature of the meeting, and conduct of the participants is speculative, and prejudicial.

**Line Item 71 – 243:1-244:22**   Counsel seek a response based on a vague and ambiguous time frame of "a time period before it was passed, so before January 9, 2024". The request seeks a speculative response.

**Line Item 73 – 248:10-23**      Counsel seeks a response without establishing that the deponent has the knowledge to speak on the document which leads to a speculative response.

**Line Item 74 – 249:16-24**      Counsel seeks a response without establishing that the deponent has the knowledge to speak on the document which leads to a speculative response.

**Line Item 75 – 250:20-252:13** Counsel seeks a response without establishing that the deponent has the knowledge to speak on the document which leads to a speculative response.

**Line Item 76 – 274:7-275:4** Plaintiff seeks a response regarding Mayor Bazzi's powers regarding the City Charter and cooperations with the City Council without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's powers.

**Line Item 78 – 279:12-280:6** Plaintiff seeks a response regarding Mayor Bazzi's powers regarding the charter and cooperations with the City Council without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's powers.

**Line Item 79 – 280:24-281:18** Plaintiff seeks a response regarding Mayor Bazzi's powers regarding contractual abilities without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's abilities are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's contractual abilities.

**Line Item 80 – 281:20-282:5** Defendant objects as the document being questioned about is the best evidence. Moreover, Counsel seeks a legal conclusion based on the document which the deponent is not able to give.

**Line Item 81 – 283:14-284:3** Counsel seeks a response regarding Mayor Bazzi's powers regarding contractual abilities without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's abilities are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's contractual abilities.

**Line Item 82 – 288:24-289:12** Counsel seeks to elicit a legal conclusion from a lay person based on questions regarding the preliminary injunction, to which no evidence is in the record that the deponent had the personal knowledge to testify to.

**Line Item 83 – 296:22-297:11**  Counsel's unpaid invoices has no relevance to this matter.

**Line Item 85 – 305:6-19** The deponents testimony consists of statements based on speculation and matters that he failed to establish he had firsthand knowledge of, resulting in hearsay statements.

**Line Item 86 – 309:11-310:8**   The record does not contain evidence to reflect that the deponent had personal knowledge or the capacity to know what programs and devices Vanderplow was privy to.

**Line Item 87 – 315:15-316:2**   Counsel's deposition question assumes facts not in evidence as it presupposes the "interference" with traffic stops occurred. This also leads to a response that is speculative in nature, and a response that discusses what Mayor Bazzi *heard*, which is not direct knowledge.

**Line Item 88: 317:16-320:11**  Counsel seeks to elicit a response without determining how Mayor Bazzi would be aware of "pay-to-play" issues in the City of Dearborn Heights prior to his becoming Mayor. Any response would be speculation at best. In his response, Mayor Bazzi states that the previous chief told him of these activities and that he was not aware of any himself which reflects hearsay.

**Line Item 89 – 322:18-323:14** Counsel seeks a speculative response on how Mayor Bazzi's "efforts to reform the Dearborn Heights Police Department" was received. Plaintiff sought no foundation as to how Mayor knew of how others received his efforts. Moreover, the request as to why the response was as it was exemplified a question seeking a speculative response, which resulted in a response by Mayor Bazzi that he "didn't know".

**Line Item 91 – 332:17-333:10**  The record is void of evidence that Mayor Bazzi had personal knowledge of the initiation and origination of the no confidence vote.

**Line Item 92 – 334:22-335:23**  and **Line Item 93 – 336:1-13**

The deponent's testimony of why the referenced meeting was held is speculative. Moreover, the question regarding the deponent being "demanded" to promote Sgt. Bazzy, seeks a response based on information not in evidence.

25

**Line Item 94 – 339:21-340:15** Counsel seeks testimony regarding the basis for a meeting that Mayor Bazzi testified the he did not play or present. No foundation has been established to suggest that Mayor Bazzi had information relative to reason for and planning of the meeting. Further, testimony related to social media video of Sgt Bazzy and his brother, seeks a response based on hearsay and speculation, as the authenticity of the video has not been verified.

**Line Item 95 – 340:25-342:5** No evidence is contained in the record that the deponent can speak to Ahmed Haidar's prior work history, or that he has reviewed his resume and interviewed Farhat. Moreover, seeking testimony on Detroit police department's ranking structure seeks a speculative response.

**Line Item 98 – 346:22-348:17** The deponent's testimony of why the referenced meeting was held is speculative. Moreover, the question regarding the "demand" to promote Sgt. Bazzy, seeks a response based on information not in evidence.

**Line Item 99 – 348:23-25** The translation of the term "haram" is not relevant to the matter at hand.

**Line Item 100 – 350:7-351:20** Counsel seeks a response regarding Mayor Bazzi's powers regarding the City Charter and cooperations with the City Council without there being a foundation of the Mayor's powers, and Bazzi's knowledge of those powers. Moreover, given that the Mayor's powers are provided by law, Plaintiff is seeking a legal conclusion on the Mayor's powers.

**Line Item 101 – 353:6-355** Counsel seek testimony without establishing the deponents firsthand and personal knowledge regarding the budget, status of the budget and contents of the budget.

**Line Item 102 – 356:14-357:9** Counsel seek testimony without establishing the deponents firsthand and personal knowledge regarding the budget, status of the budget and contents of the budget, as well as the status of the staffing levels in the police department.

**Line Item 103 – 363:5-365:20** Counsel's inquiries into where and what computer were used to draft the document at issue is vague and may elicit a speculative response.

**Line Item 104 – 367:2-368:3**  Counsel sought testimony based on statements contained in a document that amounted to hearsay as the statements were made from information provided to the author and deponent instead of firsthand knowledge.

**Line Item 105 – 369:4-370:11**  Counsel seeks a response without establishing that Mayor Bazzi possesses the knowledge to provide a response, thereby eliciting a speculative response, and a response based on information told to Mayor Bazzi by Vanderplow.

**Line Item 106 – 371:17-375:5**  Counsel seeks a response without establishing that Mayor Bazzi possesses the knowledge to provide a response, thereby eliciting a speculative response, and a response based on information told to Mayor Bazzi by Vanderplow. Moreover, Counsel's inquiry regarding "corruption" seeks a legal conclusion from a lay person to which the deponent could not testify to.

**Line Item 107 – 378:16-379:20**  Counsel sought testimony based on statements contained in a document that amounted to hearsay as the statements were made from information provided to the author and deponent instead of firsthand knowledge. Moreover, Counsel's inquiry regarding "constructively relieved" seeks a legal conclusion from a lay person to which the deponent could not testify to.

**(e)  The Intervening Defendant's Position with Respect to Disputed Excerpts.**

Intervening Defendant City of Dearborn Heights City Council concurs with each of the positions set forth by the City of Dearborn Heights in Section (d) above. However, the City Council reserves the right to propose additional sections of former mayor Bill Bazzi's testimony for admission, contingent on the Court's decision to admit other proposed excerpts of the testimony. The City Council's contingent proposals are found in Exhibit 1. The City Council believes that these contingent proposals are required to prevent the admission of excerpts without the full and complete context of the applicable questions and testimony.

Respectfully submitted,

Dated: July 13, 2026                    /s/ Stephen J. Brown

FAUSONE & GRYSKO PLC
Attorney for Plaintiffs
41700 Six Mile Road, Suite 101
Northville, MI 48168
(248) 380-0000; FAX (248) 380-343
jbrown@thefgfirm.law

/s/ Monica Hunt (with permission)

THE ALLEN LAW GROUP
Attorney Monica Hunt (P68838)
Attorneys for the City of Dearborn Heights
3031 W. Grand Blvd.
Detroit, MI. 48202-3046
(313) 961-0200
mhunt@alglawpc.com

/s/ Tarik Turfe (with permission)

HAMMOUD, DAKLALLAH & ASSOCIATES, PLLC
Kassem Dakhlallah (P70842)
Tarik D. Turfe (P83690)
Attorneys for Intervening Defendant Dearborn Heights City Council
6050 Greenfield Rd, Ste 201
Dearborn, Michigan 48126
(313) 551-3038
tt@hdalawgroup.com