**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

KEVIN SWOPE, PAUL VANDERPLOW
JERROD HART,
Plaintiffs,

Case No. 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

v.

CITY OF DEARBORN HEIGHTS, a
Michigan Municipal Corporation,
Defendant,

CITY OF DEARBORN HEIGHTS CITY
COUNCIL, in its official capacity only,
Intervening Defendant.

---

**JOINT STATEMENT OF DISPUTED JURY INSTRUCTIONS NOS. 10 AND 14**

*[This submission addresses only the disputed jury instructions. The parties' remaining proposed jury instructions were previously filed as Joint Stipulated Jury Instructions (ECF No. 161), subject to the reservations and qualifications identified therein.]*

**WPA AND TITLE VII — HOSTILE WORK ENVIRONMENT**

Pursuant to the Court's October 9, 2026 Order Amending the Case Management and Scheduling Order (ECF No. 157), the parties jointly submit this statement concerning proposed Jury Instruction No. 10, regarding the Michigan Whistleblowers' Protection Act and proposed Jury Instruction No. 14, regarding a hostile work environment under Title VII. The disputes concerning Instructions Nos. 10 and 14 are set forth below.

## CERTIFICATION OF GOOD-FAITH CONFERENCE

The undersigned counsel for each party certify that they conferred and undertook a concerted, good-faith effort to narrow the areas of dispute and reach agreement on the proposed jury instructions. Despite those efforts, the parties have not reached agreement on the identified portions of proposed Jury Instructions Nos. 10 and 14.

## SCOPE AND ORGANIZATION OF THE DISPUTE

The parties' respective proposed language and their arguments and authorities in support of, or opposition to, the disputed instructions appear in separate sections below.

With respect to Jury Instruction No. 10 (Michigan Whistleblowers' Protection Act), the parties dispute substantially the entire instruction. Accordingly, each party's complete proposed Instruction No. 10 is reproduced below under its respective "Proposed Language" section.

With respect to Jury Instruction No. 14 (Title VII – Hostile Work Environment), the parties' disagreements are confined to particular portions of the instruction. Accordingly, only the disputed language is reproduced below under each party's respective "Proposed Language" section.

Each party's statement of argument is limited to two pages, as directed by the Court.

**CERTIFICATION BY COUNSEL**

Dated: October 30, 2026

Respectfully submitted,

/s/ Stephen J. Brown
FAUSONE & GRYSKO PLC
Brandon M. Grysko (P82751)
Stephen J. Brown (P82687)
John J. Walsh (P88914)
Counsel to Plaintiffs,
41700 West Six Mile Road, Suite 101
Northville, Michigan 48168-3460
(248)-912-3213
jbrown@thefgfirm.law

/s/ Monica Hunt (with permission)
THE ALLEN LAW GROUP
Attorney Monica Hunt (P68838)
Attorneys for the City of Dearborn Heights
3031 W. Grand Blvd.
Detroit, MI. 48202-3046
(313) 961-0200
mhunt@alglawpc.com

*[Mr. Turfe's signature withheld by agreement pending adjudication or stipulation as to ECF. No. 158]*

HAMMOUD, DAKLALLAH & ASSOCIATES, PLLC
Kassem Dakhlallah (P70842)
Tarik D. Turfe (P83690)
Attorneys for Intervening Defendant Dearborn Heights City Council
6050 Greenfield Rd, Ste 201
Dearborn, Michigan 48126
(313) 551-3038
tt@hdalawgroup.com

# I. PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10
# MICHIGAN WHISTLEBLOWERS' PROTECTION ACT

## A. Proposed Language

*Plaintiffs' complete proposed Jury Instruction No. 10 is set forth below. Because the parties dispute substantially the entire instruction, Plaintiffs submit their proposed instruction in its entirety for the Court's consideration.*

**Jury Instruction #10**
**Michigan Whistleblower Protection Act ("WPA")**

Michigan has a law known as the Whistleblowers' Protection Act which provides that an employer shall not discharge, threaten, or otherwise discriminate against an employee regarding employment, compensation, or a term, condition, location or privilege of employment because of protected activity.

Each Plaintiff alleges that he engaged in protected activity as defined by the WPA. Each Plaintiff alleges Defendant violated the Whistleblowers' Protection Act by threatening or discriminating against each Plaintiff regarding employment, compensation, or a term, condition, location or privilege of employment because of protected activity.

**PROTECTED ACTIVITY**

"Protected Activity" means:

a. An employee or a person acting on behalf of an employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation (or rule promulgated pursuant to the law of the state, a political subdivision of the state, or the United States) by his employer, a third party, or a co-employee, to a public body, unless the employee knows that the report is false; or

b. An employee is requested by a public body to participate in an investigation or inquiry held by that public body.

A Plaintiff's motive for making a report does not determine whether the report was protected activity. A Plaintiff need not prove that an actual violation of law occurred. It is enough that he reasonably believed a violation or suspected violation had occurred, unless he knew that his report was false.

If the plaintiff claims that he reported a violation or suspected violation of law or regulation to a public body, the plaintiff must prove by a preponderance of the evidence that he made such a report.

If the plaintiff claims that he was about to report a violation or suspected violation of law or regulation to a public body, the plaintiff must prove by clear and convincing evidence that he or she was about to report such a violation.

**CAUSATION**

When I use the term "because of" I mean that protected activity must be one of the motives or reasons Defendant threatened or discriminated against the Plaintiff. Protected activity does not have to be the only reason, or even the main reason, but it must have been one of the reasons that made a difference in Defendant's decision.

To prove causation, a Plaintiff must prove that a decision-maker, or a person who influenced the decision, knew of his protected activity. Knowledge may be proved by direct evidence or by circumstantial evidence.

**CONSTRUCTIVE DISCHARGE**

A constructive discharge is treated as a discharge. Plaintiff has the burden of proving that he was constructively discharged.

Constructive discharge means that an employer deliberately makes an employee's working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign. The Plaintiff must prove that he resigned because of those conditions. It is not necessary to prove that defendant specifically intended plaintiff to resign, so long as you find that a reasonable person in the same circumstances as Plaintiff would have felt compelled to resign.

**ELEMENTS**

Each Plaintiff has the burden of proving:

(a) that he was engaged in a protected activity as defined in these instructions; and

(b) the Defendant discharged, threatened, or discriminated against the Plaintiff; and

(c) the discharge, threat, or discrimination was because of protected activity; and

(d) the Plaintiff suffered damages as a result of the discharge, threat, or discrimination.

Your verdict will be for the Plaintiff if the Plaintiff has proved all of those elements.

Your verdict will be for the Defendant if you find that the Plaintiff has failed to prove any one of these elements.

**WPA DAMAGES:**

If you find Defendant liable to a Plaintiff under the Whistleblowers' Protection Act, award the actual damages, if any, that the Plaintiff proves were caused by that violation. Recoverable losses may include any lost pay and employment benefits, reasonable expenses caused by the violation, and mental anguish, emotional distress, humiliation, or embarrassment.

If plaintiff did not engage in protected activity, plaintiff may not recover even if defendant mistakenly believed that plaintiff engaged in such activity.

**BACK PAY AND LOST EMPLOYMENT BENEFITS**

In determining lost compensation, calculate the wages, salary, overtime, bonuses, reasonably anticipated increases in pay, and employment benefits the Plaintiff would have received from the unlawful action through the date of trial, to the extent established by the evidence. Employment benefits may include the value of employer-provided health insurance, retirement or pension contributions, accrued leave, and other fringe benefits actually lost. Subtract earnings from replacement employment during the same period that offset the claimed loss, and make any further mitigation adjustment as instructed below.

**MITIGATION OF LOST COMPENSATION**

Defendant has the burden of proving that a Plaintiff failed to make reasonable efforts to limit lost compensation, and the amount he could have earned through such efforts. If Defendant proves an avoidable loss, reduce the amount of compensation damages

accordingly. In evaluating reasonable efforts to obtain other work, consider whether the available work was reasonably comparable in duties, hours, compensation, and conditions of employment.

For noneconomic injuries, award only an amount that fairly compensates the proven injury. There is no exact formula for valuing mental anguish, emotional distress, embarrassment, or humiliation. The law leaves that amount to your sound judgment, based upon the evidence and not upon speculation, guess, or conjecture.

**FRONT PAY**

If the verdict form asks you to determine future lost compensation, you must determine the amount of wages and employment benefits, if any, that the Plaintiff is reasonably certain to lose after the date of trial as a result of Defendant's violation of the Whistleblowers' Protection Act.

Front pay means compensation for future lost earnings and employment benefits attributable to Defendant's unlawful conduct. It may include lost salary, wages, reasonably anticipated increases in compensation, retirement or pension contributions, health-insurance benefits, and other employment benefits established by the evidence.

In determining the amount of future lost compensation, consider the Plaintiff's age, employment history, anticipated remaining work life, prospects for comparable employment, the compensation and benefits he would have received absent Defendant's

unlawful conduct, and the compensation and benefits he has earned or could reasonably be expected to earn through other employment.

You must determine the period of future loss based upon the evidence. You must not assume that the Plaintiff would necessarily have remained employed until retirement, nor may you base an award on speculation or conjecture.

The Court will determine whether front pay is an appropriate remedy in lieu of reinstatement. You must determine only the amount of future economic loss, if any, submitted to you on the verdict form.

**B. Plaintiffs' Argument and Authorities**

**In support of Plaintiffs' proposed instruction and in opposition to Defendants' proposed instruction:**

Plaintiffs oppose Defendants' proposed Instruction No. 10 because it substantially rewrites the governing WPA standards, adds unnecessary restrictions on liability, and incorporates disputed factual propositions into what should be a neutral statement of the law. Plaintiffs' proposed instruction more faithfully reflects the WPA and the Michigan Model Civil Jury Instructions.

Most significantly, Plaintiffs' causation language follows M Civ JI 107.03, which expressly provides that protected activity need not be the sole or primary reason for an adverse employment action, but must be one of the reasons that made a difference in the employer's decision. Defendants instead propose their own formulation of causation, despite the existence of an established model instruction directly addressing WPA claims. Indeed, the Michigan Court of Appeals has upheld the use of M Civ JI 107.03 over a defendant's proposed but-for formulation. *Davis v Jackson Pub Schs, u*npublished per curiam opinion of the Court of Appeals, issued July 2, 2020 (Docket No. 344203), 2020 Mich App LEXIS 4168, at *18-26. Defendants further inject their purported legitimate reasons for the challenged actions into the instruction. Plaintiffs' proposed language provides a more neutral and established statement of the governing standard.

Defendants also propose additional restrictions concerning adverse employment actions and the attribution of conduct to the City. The WPA expressly prohibits discharges, threats, and other discrimination because of protected activity. MCL 15.362. As the

Michigan Supreme Court has emphasized, the statutory language, not generalized concepts of adverse employment action, governs the conduct prohibited by the WPA. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251 n 14 (2014). Defendants' proposed instruction nevertheless adds case-specific qualifications concerning Council resolutions, individual officials' conduct, and the City's responsibility for that conduct. Plaintiffs' proposed instruction more appropriately leaves the jury to determine whether the challenged conduct constitutes retaliation under the WPA, without incorporating Defendants' characterization of disputed facts.

Defendants further narrow the constructive-discharge instruction to Hart alone, despite the Court's recognition of constructive discharge as a theory supporting the adverse-action element. ECF No. 148 at 14–15 n.10. Their proposed instruction also substantially eliminates Plaintiffs' detailed damages provisions, including guidance concerning back pay, mitigation, and front pay. Plaintiffs' instruction provides a more complete framework for evaluating the surviving claims and any resulting damages.

For these reasons, Plaintiffs respectfully request that the Court adopt their proposed Instruction No. 10.

## II. DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 10
## MICHIGAN WHISTLEBLOWERS' PROTECTION ACT

### A. Proposed Language

*Defendants' complete proposed Jury Instruction No. 10 is set forth below. Because the parties dispute substantially the entire instruction, Defendants submit their proposed instruction in its entirety for the Court's consideration.*

**Jury Instruction #10**
**Michigan Whistleblower Protection Act ("WPA")**

### THE CLAIM

Each Plaintiff, Kevin Swope, Paul Vanderplow, and Jerrod Hart, claims that the City of Dearborn Heights violated the Michigan Whistleblowers' Protection Act by taking adverse action against him because he engaged in protected activity. The City denies that it violated the WPA. The City contends that its actions were taken for legitimate reasons unrelated to any report, that it is not responsible for the conduct of persons who were not acting for it, and that many of the events Plaintiffs describe cannot support a claim because they occurred outside the time period permitted by law. You must consider each Plaintiff's claim separately.

### ELEMENTS

To prevail on his claim, each Plaintiff must prove each of the following by a preponderance of the evidence:

1. that he engaged in protected activity, as defined below;

2. that the City, through the person or body that took the challenged action, knew of that protected activity before it acted;

3. that, on or after October 31, 2023, the City discharged, threatened, or otherwise discriminated against him regarding his compensation, terms, conditions, location, or privileges of employment;

4. that his protected activity was the reason for that action, meaning that the City would not have taken the action if he had not engaged in the protected activity; and

5. that he suffered damages as a result of that action.

If you find that a Plaintiff has failed to prove any one of these elements, your verdict on this claim must be for the City as to that Plaintiff.

**PROTECTED ACTIVITY**

"Protected Activity" means:

a. An employee or a person acting on behalf of an employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation by his employer, a third party, or a co-employee, to a public body, unless the employee knows that the report is false; or

b. An employee is requested by a public body to participate in an investigation or inquiry held by that public body.

A Plaintiff's motive for making a report does not determine whether the report was protected activity. A Plaintiff need not prove that an actual violation of law occurred. It is enough that he reasonably believed a violation or suspected violation had occurred, unless he knew that his report was false.

If the plaintiff claims that he reported a violation or suspected violation of law or regulation to a public body, the plaintiff must prove by a preponderance of the evidence that he made such a report.

If the plaintiff claims that he was about to report a violation or suspected violation of law or regulation to a public body, the plaintiff must prove by clear and convincing evidence that he or she was about to report such a violation.

**PROTECTED ACTIVITY: 90-DAY TIME LIMITATION**

Under Michigan law, a claim under the Whistleblowers' Protection Act must be brought within 90 days after the occurrence of the alleged violation. Plaintiffs filed this lawsuit on January 29, 2024. Protected activity may therefore support a Plaintiff's claim only if the Plaintiff proves that, on or after October 31, 2023, the City discharged, threatened, or otherwise discriminated against him because of that activity. A report that the Plaintiff made after the challenged action could not have caused that action.

A discharge, threat, or other act of discrimination that occurred before October 31, 2023 is outside the 90-day period. It cannot be the basis for a verdict in a Plaintiff's favor or for any award of damages, even if you find that it was related to protected activity.

Each discharge, threat, or other act of discrimination is a separate event that occurs on the date it takes place. You may not combine events that occurred before October 31, 2023 with later events and treat them as a single continuing violation. You may consider evidence of events that occurred before October 31, 2023 only for the limited purpose of

deciding whether an action taken on or after that date was taken because of protected activity, and for no other purpose.

**ADVERSE EMPLOYMENT ACTION**

To be a discharge, threat, or other discrimination regarding a Plaintiff's compensation, terms, conditions, location, or privileges of employment, the action must be materially adverse, meaning more than a mere inconvenience or an alteration of job responsibilities. Criticism, public debate, unfavorable comments, or political disagreement by elected officials are not, by themselves, adverse employment actions. A proposal or resolution that was not carried out, including one that was vetoed, enjoined, or never implemented, and that did not change the Plaintiff's compensation, terms, conditions, location, or privileges of employment, is not discrimination regarding those matters.

**ACTIONS OF THE CITY**

The City acts only through officials and bodies authorized to act for it in employment matters. The City Council acts only as a body, by a vote of its members at a meeting. The statements, threats, votes, complaints, or other conduct of an individual Council member, acting alone, are not actions of the City unless the City authorized or adopted that conduct. The conduct of private citizens and other persons who were not employed by or acting for the City is not the conduct of the City unless you find that the City directed or authorized it. If the challenged action is an official vote of the City Council, the Plaintiff must prove that the votes necessary to adopt it would not have been cast had he not engaged in protected activity.

**CAUSATION**

The fact that an adverse action followed protected activity in time is not, by itself, enough to establish that the protected activity caused the action. A person or body that did not know of a Plaintiff's protected activity could not have acted because of it. The City contends that it acted for legitimate reasons, including its view of the City's budget and Charter, the civil service requirements of Act 78, and the manner in which the director positions were created and funded. If you find that the City took the challenged action for those or other reasons, and not because of the Plaintiff's protected activity, your verdict must be for the City. You may not find for a Plaintiff merely because you disagree with the City's decision or believe it was unwise.

**CONSTRUCTIVE DISCHARGE**

Plaintiff Hart contends that he was constructively discharged. A resignation is treated as a discharge only if the City deliberately made his working conditions so intolerable that a reasonable person in his position would have felt compelled to resign, and he resigned because of those conditions. A resignation for other reasons is voluntary and is not a discharge.

**DAMAGES**

If you find for a Plaintiff on this claim, you may award damages only for losses proved to have been caused by an action taken on or after October 31, 2023 that you find

the City took because of his protected activity. You may not award damages for events before that date, for conduct that is not the City's, or to punish the City

**B. Defendants' Argument and Authorities**

In support of Defendants' proposed instruction and in opposition to Plaintiffs' proposed instruction:

Defendants do not contest Plaintiffs' definition of protected activity. However, the definition must include that Jury understand the WPA reaches only violations that occurred within 90 days before suit.

**The limitation is statutory and controls here.** A WPA action must be brought "within 90 days after the occurrence of the alleged violation." MCL 15.363(1). The limitation is part of the state-law claim and applies in this Court. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109–10 (1945). Each discharge, threat, or discriminatory act occurs on its own date, and Michigan has rejected the continuing-violations doctrine. *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 282–284 (2005). Plaintiffs filed suit on January 29, 2024, so only violations occurring on or after October 31, 2023 are actionable.

**The instruction ties the cutoff to the violation, not the report.** Defendants' language does not declare any report unprotected. It provides that protected activity supports a claim only if the City took adverse action because of it on or after October 31, 2023. That tracks the statute, which runs from "the occurrence of the alleged violation." Plaintiffs' undated definition invites the jury to treat any report followed by any reaction, at any time since January 2023, as actionable.

**Without the instruction, the jury will impose liability for time-barred events.** Plaintiffs' central allegations of threats predate the cutoff: Council Member Saab's alleged

September 27, 2023 statement that he would "release skeletons" (Am. Compl. ¶ 36) and the October 26, 2023 Rahal meeting (*id.* ¶¶ 38–41). Both are outside the 90-day period, and both will be presented as reactions to protected activity. A jury given an undated definition has no way to apply MCL 15.363(1).

**The limitation is a jury question here.** Whether a given threat or act occurred before or after the cutoff, and whether a timely act was a new decision or merely the consequence of an earlier one, are factual questions the jury must resolve to return a lawful verdict. Instructing the jury on the governing period is the only way to ensure that liability and damages rest on timely conduct. Defendants preserved the limitations defense.

## III. PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14
## TITLE VII — HOSTILE WORK ENVIRONMENT

### A. Proposed Language

Plaintiffs' complete proposed Instruction No. 14 is attached as **Exhibit A**. The specific language in dispute is:

**DEFENDANT'S LEGAL RESPONSIBILITY**

**(a) Harassment by the City Itself or Its Proxy.** The City Council is a governing body of the City. An employer is directly responsible for harassment committed by officials exercising such high-level authority that their conduct is treated as the employer's own conduct. If you find that the City Council, acting collectively in its official capacity, engaged in race-based harassment of a Plaintiff, that conduct is attributable to the City, and the City is legally responsible for it. The conduct of an individual councilmember is not automatically attributable to the City merely because that individual is a member of the City Council.

A City Council member's individual statements, threats, votes, or other conduct do not automatically constitute conduct of the Council simply because that person holds office. If you are asked to attribute an individual member's discriminatory motive to an official Council decision, you must find that the improper motive was a deciding cause of that decision. An individual official's own harassment may be treated as the City's own conduct under this paragraph only if that official possessed sufficient independent authority to act as the City itself in the matter at issue. Mere membership on the Council does not establish such authority. If you find that actionable race-based harassment was committed by the Council acting collectively, or by an official acting as the City's proxy,

the City is legally responsible for that harassment. The affirmative defense described below does not apply to this category.

**(b) Harassment by a Supervisor.** If the harassment was not the City's own conduct under paragraph (a), you must decide whether it was committed by a supervisor. A person or body, including the City Council if considered under this alternative, is a "supervisor" for these purposes only if the City empowered that person or body to take tangible employment actions against the Plaintiff. This means authority to effect a significant change in employment status, such as hiring, firing, failing to promote, demoting, reassigning the Plaintiff to significantly different responsibilities, or making a decision significantly changing his pay or benefits. The Plaintiff need not establish that such an action actually occurred to show supervisory status; the issue is the authority possessed by the alleged harasser. If you find harassment by a supervisor, the City is legally responsible unless the City proves the affirmative defense below and that defense is available.

**(c) Harassment by Other Officials or Employees.** If harassment was committed by a person who was neither acting as the City itself under paragraph (a) nor a supervisor under paragraph (b), the City is legally responsible for that harassment only if the Plaintiff proves both of the following:

- the City knew, or should have known, of the harassment; and
- the City failed to take prompt and appropriate action reasonably calculated to end it.

If more than one person or body engaged in the conduct you consider, apply the appropriate category to each. You may consider the conduct cumulatively in deciding

whether the working environment was hostile, but must determine the City's legal responsibility under the rules above.

**TANGIBLE EMPLOYMENT ACTION – SUPERVISOR HARASSMENT**

For the limited purpose of deciding whether the City may raise the affirmative defense to supervisor harassment under paragraph (b), you must determine whether the supervisor's race-based harassment culminated in a tangible employment action against the Plaintiff. A tangible employment action is an act that significantly changes the Plaintiff's employment status, such as discharge, demotion, failure to promote, reassignment with significantly different responsibilities, or a decision significantly changing his compensation or benefits. The tangible employment action must result from or culminate the supervisor's harassment; an unrelated employment action is not enough. A Plaintiff need not establish a tangible employment action to prove a hostile work environment or to establish that someone was a supervisor.

If a Plaintiff contends that he resigned because the working conditions became intolerable, the resignation alone does not eliminate this defense. On a constructive-discharge theory, the defense is unavailable if the resignation was a reasonable response to an official act by a supervisor that significantly changed the Plaintiff's employment status or situation and precipitated the resignation.

**DEFENDANT'S AFFIRMATIVE DEFENSE – SUPERVISOR HARASSMENT ONLY**

This defense may be considered only for harassment by a supervisor under paragraph (b), and only if that harassment did not culminate in a tangible employment

action as just defined. In that circumstance, the City is not legally responsible if it proves both of the following by a preponderance of the evidence:

1. the City exercised reasonable care to prevent, and to promptly correct, race-based harassment; and
2. the Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities the City provided, or unreasonably failed to avoid harm otherwise.

The existence of a written harassment policy is relevant to reasonable care, but a written policy alone does not establish the defense. This defense does not apply to the City's own conduct under paragraph (a) and does not apply to supervisor harassment that culminated in a tangible employment action.

**B. Plaintiffs' Argument and Authorities**

In support of Plaintiffs' proposed instruction and in opposition to Defendants' proposed instruction:

Plaintiffs' Instruction No. 14 properly separates three bases for holding the City responsible for a hostile work environment: the City's own conduct, supervisor harassment, and harassment by others. The central dispute concerns the first category, official actions of the City Council acting collectively, not merely an individual councilmember's personal conduct.

An employer is directly liable for discriminatory acts of officials sufficiently high in its organization to constitute its proxy. *Faragher v. City of Boca Raton*, 524 U.S. 775, 789–90 (1998); *Bivens v. Zep, Inc.*, No. 24-2109, slip op. at 4 (6th Cir. Aug. 8, 2025). A collective governing body likewise can act for the governmental employer. See *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 262–63 (6th Cir. 2006) (§ 1983).

*Blair v. Frenchko*, No. 23-3609, slip op. at 2–5 (6th Cir. Feb. 2, 2024), confirms the distinction: a board may be directly liable if it creates the hostile environment, but one member's independent conduct is not automatically the board's conduct. Paragraph (a) follows *Blair* by distinguishing collective Council action from individual misconduct and requiring a causal connection before attributing a member's discriminatory motive to a Council decision.

Here, the Council itself voted to eliminate compensation for the director positions and to remove Vanderplow's signing authority. ECF No. 148 at PageID. 6032-6034, 6042-6043. Whether those official acts contributed to race-based harassment remains for the jury; the instruction presumes no improper motive.

Paragraphs (b) and (c) supply the alternatives. Supervisor status turns on authority to take tangible employment actions, not whether such authority was exercised. *Vance v. Ball State Univ.*, 570 U.S. 421, 424, 431 (2013). For other harassers, liability requires notice and a failure to take appropriate corrective action. *Id*. at 424.

Finally, the *Faragher–Ellerth* defense applies to an employer's vicarious liability for supervisor harassment, not discriminatory harassment attributable directly to the employer through its proxy or alter ego. *Faragher v. City of Boca Raton*, 524 U.S. 775, 789–90, 807–08 (1998) (recognizing direct employer liability for harassment by high-ranking officials and establishing the affirmative defense for supervisory harassment); *O'Brien v. Middle East Forum*, 57 F.4th 110, 120 (3d Cir. 2023) (holding defense unavailable when harasser is employer's proxy or alter ego).

## IV. DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 14
## TITLE VII — HOSTILE WORK ENVIRONMENT

### A. Proposed Language

Defendants' complete proposed Instruction No. 14 is attached as **Exhibit B**. The specific language in dispute is:

**DEFENDANT'S LEGAL RESPONSIBILITY**

The City may be held legally responsible for harassment only in the circumstances described below. The rules differ depending on who engaged in the conduct. If more than one person or body engaged in the conduct you consider, you must identify who engaged in each act and apply the rule for that person or body. You may consider the conduct cumulatively in deciding whether the working environment was hostile, but you must determine the City's legal responsibility separately under these rules.

**a. Official Actions of the City Council Acting as a Body.** The City Council acts only as a body, by a vote of its members at a meeting. An official resolution or vote of the City Council is an action of the City. An official Council action may be treated as race-based harassment only if the Plaintiff proves that race was a but-for cause of that action, meaning that the Council would not have taken the action if the Plaintiff had been of a different race. It is not enough that one or more individual members held a racial motive. The Plaintiff must prove that the votes necessary to adopt the action were cast because of his race. If the Council acted for other reasons, such as its view of the City's budget, the City Charter, civil service requirements, or the manner in which positions were created or funded, the action is not race-based harassment, even if you disagree with the

decision. Whether a Council action was taken in retaliation for protected activity is a separate question addressed in other instructions.

**b. Individual Council Members.** An individual member of the City Council has no authority to act for the City alone. The statements, threats, votes, social-media posts, complaints, or other conduct of an individual Council member are not the conduct of the City Council or of the City, and no individual Council member is the City's proxy or alter ego. Elected Council members are not City employees.

**c. Harassment by a Supervisor.** A person or body is a Plaintiff's "supervisor" only if the City empowered that person or body to take tangible employment actions against the Plaintiff. This means authority to effect a significant change in employment status, such as hiring, firing, failing to promote, demoting, reassigning the Plaintiff to significantly different responsibilities, or making a decision significantly changing his pay or benefits. Authority to propose, debate, or vote on the City's budget or on resolutions, or to criticize a Plaintiff's performance, does not by itself make a person a supervisor. The Plaintiff has the burden of proving that the person was his supervisor. If you find harassment by a supervisor, the City is legally responsible unless the City proves the affirmative defense described below and that defense is available.

**d. Harassment by Persons Who Are Not City Employees.** Some of the conduct Plaintiffs complain about was allegedly committed by persons who were not City employees, including private citizens and individual elected members of the City Council. The City is not legally responsible for harassment by a non-employee merely because the City knew or should have known about it, or because it did not prevent or stop it. The City

is legally responsible for harassment by a non-employee only if the Plaintiff proves that the City itself intended the harassment, meaning that the City desired that the harassment occur, or knew that it was substantially certain to result from the City's own actions.

**TANGIBLE EMPLOYMENT ACTION: SUPERVISOR HARASSMENT**

For the limited purpose of deciding whether the City may raise the affirmative defense to supervisor harassment under paragraph (c), you must determine whether the supervisor's race-based harassment culminated in a tangible employment action against the Plaintiff. A tangible employment action is an act that significantly changes the Plaintiff's employment status, such as discharge, demotion, failure to promote, reassignment with significantly different responsibilities, or a decision significantly changing his compensation or benefits. The tangible employment action must result from or culminate the supervisor's harassment; an unrelated employment action is not enough. A proposal, threat, or resolution that was not carried out, including one that was vetoed, enjoined, or never implemented, and that did not actually change the Plaintiff's pay, position, or benefits, is not a tangible employment action.

If a Plaintiff contends that he resigned because the working conditions became intolerable, the resignation alone does not eliminate this defense. On a constructive-discharge theory, the defense is unavailable only if the resignation was a reasonable response to an official act of the City by a supervisor that significantly changed the Plaintiff's employment status or situation and precipitated the resignation. A resignation to accept other employment, or for reasons other than intolerable working conditions created by race-based harassment, is not a tangible employment action.

**DEFENDANT'S AFFIRMATIVE DEFENSE: SUPERVISOR HARASSMENT**

This defense may be considered for harassment by a supervisor under paragraph (c) that did not culminate in a tangible employment action as just defined. In that circumstance, the City is not legally responsible if it proves both of the following by a preponderance of the evidence:

1. the City exercised reasonable care to prevent, and to promptly correct, race-based harassment; and
2. the Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities the City provided, or unreasonably failed to avoid harm otherwise.

In deciding whether the City exercised reasonable care, you may consider its policies and all steps taken by City officials with authority to act, including the Mayor, to prevent, stop, or reverse the conduct. The existence of a written harassment policy is relevant to reasonable care, but a written policy alone does not establish the defense.

**B. Defendants' Argument and Authorities**

In support of Defendants' proposed instruction and in opposition to Plaintiffs' proposed instruction:

While the City accepts Plaintiffs' general structure of this Jury Instruction, it objects to four misstatements of law.

**First, no individual Council member is the City's proxy.** Proxy liability is limited to officials so high in the organization that they are the employer's alter ego, such as an owner or president. *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998). Under the City's strong-mayor Charter, the Council acts only by majority vote, and no single member can hire, fire, or bind the City. Plaintiffs' own authority recognizes that one member's independent conduct is not the board's conduct. *Blair v. Frenchko*, No. 23-3609 (6th Cir. Feb. 2, 2024). Plaintiffs' paragraph (a) nevertheless lets the jury treat an individual as "the City itself" on an undefined "sufficient independent authority" standard, which would impose strict liability without the *Faragher/Ellerth* defense. *Scarbrough* is a § 1983 policymaker case, and *O'Brien* is out-of-circuit; neither supports applying the proxy doctrine to an individual municipal legislator under Title VII.

**Second, Council actions require but-for causation tied to the vote.** Title VII's "because of" standard is but-for causation. *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020). A seven-member body acts only through the votes needed to adopt a measure, so one member's motive cannot be imputed unless it caused the outcome. The record contains non-racial reasons for the Council's actions: the budget, the Charter, and Act 78. ECF No. 116, Exs. E–F (Saab Dep. 40:21–41:1; Wencel Dep. 46:7–13, 63:13–20).

**Third, harassment by non-employees requires intent.** Plaintiffs' paragraph (c) applies a negligence standard to "other officials." But *Bivens v. Zep, Inc.*, No. 24-2109 (6th Cir. Aug. 8, 2025), which Plaintiffs cite, rejected negligence liability for harassment by non-employees and held the employer liable only where it intends the harassment. Elected officials are not "employees." 42 U.S.C. § 2000e(f). Private citizens such as Khalil Rahal plainly are not. Defendants' paragraph (e) follows *Bivens*; paragraph (d) correctly limits the negligence standard to co-workers. *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013).

**Fourth, unimplemented actions are not tangible employment actions, and the City's remedial steps are relevant.** Unfulfilled threats are not tangible employment actions. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54, 761 (1998). Resolution 11-A was vetoed by the Mayor and enjoined by this Court, and Plaintiffs continued to receive their pay and benefits. ECF No. 48, Ex. 6; ECF No. 116, Ex. C at 104:14–22, Ex. D at 207:18–208:1. And because reasonable care is measured by the employer's actual response, the jury may consider the Mayor's veto and his directives that Plaintiffs remain in their positions. *Faragher*, 524 U.S. at 807; ECF No. 48, Exs. 6, 8. The Court should give Defendants' Instruction No. 14.

**EXHIBIT A**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14**

**TITLE VII — HOSTILE WORK ENVIRONMENT**

Kevin Swope and Paul Vanderplow each allege that he was subjected to a hostile work environment based upon race in violation of Title VII of the Civil Rights Act of 1964. This is a separate Title VII theory. You must evaluate each Plaintiff's hostile work environment claim independently of any race-discrimination claim concerning a particular employment action.

Unlike a claim challenging a particular employment action, this claim does not require a Plaintiff to prove that Defendant discharged him, demoted him, or took any other formal employment action against him. Title VII is violated when an employee is required to work in an environment so permeated with discriminatory intimidation, ridicule, or insult that the conditions of his employment are altered.

Title VII protects employees of every race equally. The same legal standards apply to this claim regardless of a Plaintiff's race.

Plaintiffs contend that they were subjected to race-based harassment while employed by the City. Defendant denies that either Plaintiff was subjected to a hostile work environment and denies that it is legally responsible for any harassment.

**HOSTILE WORK ENVIRONMENT - ELEMENTS**

To establish a hostile work environment claim, each Plaintiff must prove by a preponderance of the evidence that:

1. While employed by Defendant, the Plaintiff was subjected to harassment;

2. The harassment was unwelcome;

3. The harassment was because of the Plaintiff's race;

4. The harassment was sufficiently severe or pervasive that a reasonable person in the Plaintiff's position would find the work environment hostile or abusive; and

5. Plaintiff believed his work environment to be hostile or abusive as a result of Defendant's conduct; and

6. Defendant is legally responsible for the harassment, as I will explain below.

If a Plaintiff proves each of these elements, your verdict on this claim must be for that Plaintiff, unless Defendant proves the defense described below. If a Plaintiff fails to prove any element, your verdict on this claim must be for Defendant as to that Plaintiff.

**BECAUSE OF RACE – DEFINED**

Harassment is "because of" race if the Plaintiff would not have been subjected to it had he been of a different race. The conduct need not include explicit racial language to be because of race. You may consider all of the circumstances, including the content of the conduct, the context in which it occurred, and whether persons of a different race were treated differently.

**SEVERE OR PERVASIVE – DEFINED**

Harassment is actionable if it is either severe or pervasive. It need not be both. A single incident, or a small number of incidents, may be sufficient if severe enough. Less serious conduct may be sufficient if it was frequent or continuing.

In deciding whether the harassment was severe or pervasive, you must consider all of the circumstances. These may include:

- How often the conduct occurred;
- How severe it was;
- Whether it was physically threatening or humiliating; or merely an offensive remark;
- The position and authority of the persons engaging in it; and
- The context in which it occurred.

No single factor is required.

You must consider the cumulative effect of the conduct rather than evaluating each incident in isolation. Actions affecting job responsibilities, restrictions, or employment privileges may contribute to the overall environment, even if they would not independently establish a discrimination claim, if the evidence connects them to race. A single extremely serious incident may suffice. A Plaintiff need not establish a measurable decline in work performance or a psychological injury.

**REASONABLE PERSON - DEFINED**

Element 4 is an objective standard. You must consider whether a reasonable person in the Plaintiff's position, considering all the circumstances, would find the environment hostile or abusive. Element 5 is a subjective standard. You must consider whether the Plaintiff himself actually perceived the environment as hostile or abusive.

**DEFENDANT'S LEGAL RESPONSIBILITY**

**(a) Harassment by the City Itself or Its Proxy.** The City Council is a governing body of the City. An employer is directly responsible for harassment committed by officials exercising such high-level authority that their conduct is treated as the employer's own conduct. If you find that the City Council, acting collectively in its official capacity, engaged in race-based harassment of a Plaintiff, that conduct is attributable to the City, and the City is legally responsible for it. The conduct of an individual councilmember is not automatically attributable to the City merely because that individual is a member of the City Council.

A City Council member's individual statements, threats, votes, or other conduct do not automatically constitute conduct of the Council simply because that person holds office. If you are asked to attribute an individual member's discriminatory motive to an official Council decision, you must find that the improper motive was a deciding cause of that decision. An individual official's own harassment may be treated as the City's own conduct under this paragraph only if that official possessed sufficient independent authority to act as the City itself in the matter at issue. Mere membership on the Council does not establish such authority. If you find that actionable race-based harassment was committed by the Council acting collectively, or by an official acting as the City's proxy, the City is legally responsible for that harassment. The affirmative defense described below does not apply to this category.

**(b) Harassment by a Supervisor.** If the harassment was not the City's own conduct under paragraph (a), you must decide whether it was committed by a supervisor. A person or

body, including the City Council if considered under this alternative, is a "supervisor" for these purposes only if the City empowered that person or body to take tangible employment actions against the Plaintiff. This means authority to effect a significant change in employment status, such as hiring, firing, failing to promote, demoting, reassigning the Plaintiff to significantly different responsibilities, or making a decision significantly changing his pay or benefits. The Plaintiff need not establish that such an action actually occurred to show supervisory status; the issue is the authority possessed by the alleged harasser. If you find harassment by a supervisor, the City is legally responsible unless the City proves the affirmative defense below and that defense is available.

**(c) Harassment by Other Officials or Employees.** If harassment was committed by a person who was neither acting as the City itself under paragraph (a) nor a supervisor under paragraph (b), the City is legally responsible for that harassment only if the Plaintiff proves both of the following:

- the City knew, or should have known, of the harassment; and
- the City failed to take prompt and appropriate action reasonably calculated to end it.

If more than one person or body engaged in the conduct you consider, apply the appropriate category to each. You may consider the conduct cumulatively in deciding whether the working environment was hostile, but must determine the City's legal responsibility under the rules above.

**TANGIBLE EMPLOYMENT ACTION – SUPERVISOR HARASSMENT**

For the limited purpose of deciding whether the City may raise the affirmative defense to supervisor harassment under paragraph (b), you must determine whether the supervisor's race-based harassment culminated in a tangible employment action against the Plaintiff. A tangible employment action is an act that significantly changes the Plaintiff's employment status, such as discharge, demotion, failure to promote, reassignment with significantly different responsibilities, or a decision significantly changing his compensation or benefits. The tangible employment action must result from or culminate the supervisor's harassment; an unrelated employment action is not enough. A Plaintiff need not establish a tangible employment action to prove a hostile work environment or to establish that someone was a supervisor.

If a Plaintiff contends that he resigned because the working conditions became intolerable, the resignation alone does not eliminate this defense. On a constructive-discharge theory, the defense is unavailable if the resignation was a reasonable response to an official act by a supervisor that significantly changed the Plaintiff's employment status or situation and precipitated the resignation.

**DEFENDANT'S AFFIRMATIVE DEFENSE – SUPERVISOR HARASSMENT ONLY**

This defense may be considered only for harassment by a supervisor under paragraph (b), and only if that harassment did not culminate in a tangible employment action as just defined. In that circumstance, the City is not legally responsible if it proves both of the following by a preponderance of the evidence:

1. the City exercised reasonable care to prevent, and to promptly correct, race-based harassment; and
2. the Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities the City provided, or unreasonably failed to avoid harm otherwise.

The existence of a written harassment policy is relevant to reasonable care, but a written policy alone does not establish the defense. This defense does not apply to the City's own conduct under paragraph (a) and does not apply to supervisor harassment that culminated in a tangible employment action.

**TITLE VII DAMAGES:**

If you find that Defendant violated Title VII as to Swope or Vanderplow, award that Plaintiff compensatory damages, if any, for injuries proved to have been caused by the discrimination. These may include emotional distress, mental anguish, inconvenience, humiliation, embarrassment, and loss of enjoyment of life. They may also include proven medical or counseling expenses and other compensable out-of-pocket or pecuniary losses attributable to the discrimination.

No precise dollar formula is required for noneconomic injury, but any award must be reasonable and based on the evidence. Do not award damages to punish Defendant.

**BACK PAY AND LOST EMPLOYMENT BENEFITS:**

If the verdict form asks you to determine back pay for a Title VII violation, calculate the compensation and employment benefits the Plaintiff would have received but for the discriminatory action from the time of that action through the date of trial. Consider salary, wages, overtime, bonuses, reasonably supported raises, employer retirement contributions,

health-insurance benefits, and other lost fringe benefits established by the evidence. A Plaintiff who remained employed but lost compensation or benefits may recover the proven difference between what he received and what he would have received absent the discrimination.

In making that calculation, subtract earnings from replacement employment that offset the claimed loss. Defendant bears the burden of proving a failure to make reasonable efforts to mitigate the loss and the additional amount the Plaintiff could reasonably have earned. If Defendant proves such an amount, reduce the award accordingly.

**FRONT PAY – FUTURE LOST WAGES AND BENEFITS:**

If the verdict form asks you to determine front pay for a Title VII violation, calculate wages and employment benefits the Plaintiff is reasonably certain to lose after trial because of the discrimination. Consider the likely length of that loss, compensation and benefits he would have received, his employment prospects, and earnings and benefits reasonably expected from other employment. Consider reasonably supported future raises, retirement benefits, and other relevant compensation. Do not assume the loss necessarily runs through retirement, and do not base an award on speculation.

**EXHIBIT B**

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 14**

**TITLE VII — HOSTILE WORK ENVIRONMENT**

Plaintiffs Kevin Swope and Paul Vanderplow each allege that he was subjected to a hostile work environment based upon race in violation of Title VII of the Civil Rights Act of 1964. This is a separate Title VII theory. You must evaluate each Plaintiff's hostile work environment claim independently of any race-discrimination claim concerning a particular employment action.

Unlike a claim challenging a particular employment action, this claim does not require a Plaintiff to prove that Defendant discharged him, demoted him, or took any other formal employment action against him. Title VII is violated when an employee is required to work in an environment so permeated with discriminatory intimidation, ridicule, or insult that the conditions of his employment are altered.

Title VII protects employees of every race equally. The same legal standards apply to this claim regardless of a Plaintiff's race.

Plaintiffs contend that they were subjected to race-based harassment while employed by the City. Defendant denies that either Plaintiff was subjected to a hostile work environment and denies that it is legally responsible for any harassment.

**HOSTILE WORK ENVIRONMENT: ELEMENTS**

To establish a hostile work environment claim, each Plaintiff must prove by a preponderance of the evidence that:

1. While employed by Defendant, the Plaintiff was subjected to harassment;
2. The harassment was unwelcome;

3. The harassment was because of the Plaintiff's race;

4. The harassment was sufficiently severe or pervasive that a reasonable person in the Plaintiff's position would find the work environment hostile or abusive; and

5. Plaintiff believed his work environment to be hostile or abusive as a result of Defendant's conduct; and

6. Defendant is legally responsible for the harassment, as I will explain below.

If a Plaintiff proves each of these elements, your verdict on this claim must be for that Plaintiff, unless Defendant proves the defense described below. If a Plaintiff fails to prove any element, your verdict on this claim must be for Defendant as to that Plaintiff.

**BECAUSE OF RACE: DEFINED**

Harassment is "because of" race if the Plaintiff would not have been subjected to it had he been of a different race. The conduct need not include explicit racial language to be because of race. You may consider all of the circumstances, including the content of the conduct, the context in which it occurred, and whether persons of a different race were treated differently.

**SEVERE OR PERVASIVE: DEFINED**

Harassment is actionable if it is either severe or pervasive. It need not be both. A single incident, or a small number of incidents, may be sufficient if severe enough. Less serious conduct may be sufficient if it was frequent or continuing.

In deciding whether the harassment was severe or pervasive, you must consider all of the circumstances. These may include:

- How often the conduct occurred;
- How severe it was;

- Whether it was physically threatening or humiliating; or merely an offensive remark;
- The position and authority of the persons engaging in it; and
- The context in which it occurred.

No single factor is required.

You must consider the cumulative effect of the conduct rather than evaluating each incident in isolation. Actions affecting job responsibilities, restrictions, or employment privileges may contribute to the overall environment, even if they would not independently establish a discrimination claim, if the evidence connects them to race. A single extremely serious incident may suffice. A Plaintiff need not establish a measurable decline in work performance or a psychological injury.

**REASONABLE PERSON: DEFINED**

Element 4 is an objective standard. You must consider whether a reasonable person in the Plaintiff's position, considering all the circumstances, would find the environment hostile or abusive. Element 5 is a subjective standard. You must consider whether the Plaintiff himself actually perceived the environment as hostile or abusive.

**DEFENDANT'S LEGAL RESPONSIBILITY**

The City may be held legally responsible for harassment only in the circumstances described below. The rules differ depending on who engaged in the conduct. If more than one person or body engaged in the conduct you consider, you must identify who engaged in each act and apply the rule for that person or body. You may consider the conduct

cumulatively in deciding whether the working environment was hostile, but you must determine the City's legal responsibility separately under these rules.

**a. Official Actions of the City Council Acting as a Body.** The City Council acts only as a body, by a vote of its members at a meeting. An official resolution or vote of the City Council is an action of the City. An official Council action may be treated as race-based harassment only if the Plaintiff proves that race was a but-for cause of that action, meaning that the Council would not have taken the action if the Plaintiff had been of a different race. It is not enough that one or more individual members held a racial motive. The Plaintiff must prove that the votes necessary to adopt the action were cast because of his race. If the Council acted for other reasons, such as its view of the City's budget, the City Charter, civil service requirements, or the manner in which positions were created or funded, the action is not race-based harassment, even if you disagree with the decision. Whether a Council action was taken in retaliation for protected activity is a separate question addressed in other instructions.

**b. Individual Council Members.** An individual member of the City Council has no authority to act for the City alone. The statements, threats, votes, social-media posts, complaints, or other conduct of an individual Council member are not the conduct of the City Council or of the City, and no individual Council member is the City's proxy or alter ego. Elected Council members are not City employees. If you find that an individual Council member harassed a Plaintiff because of his race, the City is legally responsible for that harassment only under paragraph (c) or paragraph (d) below.

c. **Harassment by a Supervisor.** A person or body is a Plaintiff's "supervisor" only if the City empowered that person or body to take tangible employment actions against the Plaintiff. This means authority to effect a significant change in employment status, such as hiring, firing, failing to promote, demoting, reassigning the Plaintiff to significantly different responsibilities, or making a decision significantly changing his pay or benefits. Authority to propose, debate, or vote on the City's budget or on resolutions, or to criticize a Plaintiff's performance, does not by itself make a person a supervisor. The Plaintiff has the burden of proving that the person was his supervisor. If you find harassment by a supervisor, the City is legally responsible unless the City proves the affirmative defense described below and that defense is available.

d. **Harassment by Persons Who Are Not City Employees.** Some of the conduct Plaintiffs complain about was allegedly committed by persons who were not City employees, including private citizens and individual elected members of the City Council. The City is not legally responsible for harassment by a non-employee merely because the City knew or should have known about it, or because it did not prevent or stop it. The City is legally responsible for harassment by a non-employee only if the Plaintiff proves that the City itself intended the harassment, meaning that the City desired that the harassment occur, or knew that it was substantially certain to result from the City's own actions.

**TANGIBLE EMPLOYMENT ACTION: SUPERVISOR HARASSMENT**

For the limited purpose of deciding whether the City may raise the affirmative defense to supervisor harassment under paragraph (c), you must determine whether the supervisor's race-based harassment culminated in a tangible employment action against

the Plaintiff. A tangible employment action is an act that significantly changes the Plaintiff's employment status, such as discharge, demotion, failure to promote, reassignment with significantly different responsibilities, or a decision significantly changing his compensation or benefits. The tangible employment action must result from or culminate the supervisor's harassment; an unrelated employment action is not enough. A proposal, threat, or resolution that was not carried out, including one that was vetoed, enjoined, or never implemented, and that did not actually change the Plaintiff's pay, position, or benefits, is not a tangible employment action.

If a Plaintiff contends that he resigned because the working conditions became intolerable, the resignation alone does not eliminate this defense. On a constructive-discharge theory, the defense is unavailable only if the resignation was a reasonable response to an official act of the City by a supervisor that significantly changed the Plaintiff's employment status or situation and precipitated the resignation. A resignation to accept other employment, or for reasons other than intolerable working conditions created by race-based harassment, is not a tangible employment action.

**DEFENDANT'S AFFIRMATIVE DEFENSE: SUPERVISOR HARASSMENT**

This defense may be considered for harassment by a supervisor under paragraph (c) that did not culminate in a tangible employment action as just defined. In that circumstance, the City is not legally responsible if it proves both of the following by a preponderance of the evidence:

1. the City exercised reasonable care to prevent, and to promptly correct, race-based harassment; and

2. the Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities the City provided, or unreasonably failed to avoid harm otherwise.

In deciding whether the City exercised reasonable care, you may consider its policies and all steps taken by City officials with authority to act, including the Mayor, to prevent, stop, or reverse the conduct. The existence of a written harassment policy is relevant to reasonable care, but a written policy alone does not establish the defense.

**TITLE VII DAMAGES:**

If you find that Defendant violated Title VII as to Swope or Vanderplow, award that Plaintiff compensatory damages, if any, for injuries proved to have been caused by the discrimination. These may include emotional distress, mental anguish, inconvenience, humiliation, embarrassment, and loss of enjoyment of life. They may also include proven medical or counseling expenses and other compensable out-of-pocket or pecuniary losses attributable to the discrimination.

No precise dollar formula is required for noneconomic injury, but any award must be reasonable and based on the evidence. Do not award damages to punish Defendant.

**BACK PAY AND LOST EMPLOYMENT BENEFITS:**

If the verdict form asks you to determine back pay for a Title VII violation, calculate the compensation and employment benefits the Plaintiff would have received but for the discriminatory action from the time of that action through the date of trial. Consider salary, wages, overtime, bonuses, reasonably supported raises, employer retirement contributions, health-insurance benefits, and other lost fringe benefits established by the evidence. A Plaintiff who remained employed but lost compensation or benefits may recover the

proven difference between what he received and what he would have received absent the discrimination.

In making that calculation, subtract earnings from replacement employment that offset the claimed loss. Defendant bears the burden of proving a failure to make reasonable efforts to mitigate the loss and the additional amount the Plaintiff could reasonably have earned. If Defendant proves such an amount, reduce the award accordingly.

**FRONT PAY: FUTURE LOST WAGES AND BENEFITS:**

If the verdict form asks you to determine front pay for a Title VII violation, calculate wages and employment benefits the Plaintiff is reasonably certain to lose after trial because of the discrimination. Consider the likely length of that loss, compensation and benefits he would have received, his employment prospects, and earnings and benefits reasonably expected from other employment. Consider reasonably supported future raises, retirement benefits, and other relevant compensation. Do not assume the loss necessarily runs through retirement, and do not base an award on speculation.