**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

KEVIN SWOPE, PAUL VANDERPLOW, JERROD HART,

Plaintiffs,

v

CITY OF DEARBORN HEIGHTS, a Michigan Municipal Corporation,

Defendant,

CITY OF DEARBORN HEIGHTS CITY COUNCIL, in its official capacity only,

Intervening Defendant.

Case No. 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

---

# PLAINTIFFS' TRIAL BRIEF

## (ON THE SUPREMACY OF PERA OVER ACT 78 AND THE VALIDITY OF PLAINTIFFS' EMPLOYMENT CONTRACTS FOR PURPOSES OF FRCP 50)

NOW COME Plaintiffs, KEVIN SWOPE, PAUL VANDERPLOW, AND JERROD HART, by and through their undersigned counsel, and for their Trial Brief on the Supremacy of PERA Over Act 78 and the Validity of Plaintiffs' Employment Contracts, Plaintiffs state as follows:

## Introduction

Plaintiffs Swope and Vanderplow posit to this Court that they can prove that their employment contracts ended up being ratified and memorialized in a collective bargaining agreement and were therefore approved under the Michigan Public Employment Relations Act ("PERA").

If Swope and Vanderplow can back up that claim with evidence (see attached), then Defendant's attacks on the validity of such employment contracts, to the extent such attacks are based in the fire and police civil service act, 1935 PA 78 ("Act 78"), are legally invalid. Michigan law forecloses any attack on the validity of an employment contract approved under PERA if that attack is based in Act 78 or alleges contractual invalidity for lack of compliance with Act 78. PERA unquestionably controls because any arrangement approved by a collective bargaining agreement under PERA is considered to provide even broader and more potent protections to employees than Act 78. Put simply, when it comes to Michigan labor and employment law, PERA trumps and primes Act 78. The controlling authority is *Int'l Ass'n of Fire Fighters v. City of Warren*, 411 Mich. 642 (1981). The Warren case is attached as **Exhibit 1** for the Court's convenience.

***Thus, there will come a juncture at trial in which this Court will need to determine under Federal Rule of Civil Procedure (FRCP) 50 whether the Jury***

***may even consider evidence pertaining to Act 78-based attacks on the validity of the Swope and Vanderplow employment contracts.***

If the Jury should make the predicate factual findings that allow this Court to rule that, as a matter of law, Swope's and Vanderplow's employment contracts were indeed ratified under PERA and that both men's jobs were "grandfathered" under a collective bargaining agreement (see Exhibit 5), then this Court should not allow the Jury to even consider Defendant's Act 78 attack on the enforceability and validity of these contracts.

Assuming the employment contracts are valid and enforceable (which they are), then what will remain for the future Jury is narrow—the triggering contractual condition for the payment of severance is documented and undisputed as to Swope, effectively admitted by the City as to Hart, and, at most, a fact question for the jury as to Vanderplow (although the subject of a direct admission by the City's Mayor). The City's non-payment of severance benefits to Swope/Vanderplow is admitted and was publicized by the Defendant as if it were a meaningful achievement. See **Exhibit 2** (featuring admissions from City Attorney Gary Miotke and City Mayor Mo Baydoun). The legal question of validity, however, could either be decided now and in Plaintiffs' favor based on the available evidence, or at the very least it should be decided once the Jury has made factual findings that show that PERA applies to the Swope and Vanderplow employment contracts. This will not prevent Defendant

from raising any defense to the validity of the employment contracts so long as such defense is not based in Act 78.

**Relevant Facts Pertaining to the Applicability of PERA**

Former City of Dearborn Heights Mayor Bill Bazzi hired Plaintiffs to reform a Dearborn Heights Police Department ("DHPD") that he and his appointees had identified as deeply corrupt. Jerrod Hart was hired as Police Chief, a position not subject to Act 78.[1] Paul Vanderplow and Kevin Swope were hired as "Directors" working within the DHPD, in roles historically filled by police officials, and they were appointed outside the procedures of Act 78 because they were directors.

A police labor union called the Command Officers Association of Michigan ("COAM" or the "Union") objected to the Swope and Vanderplow appointments precisely because those two were non-union hires brought in outside Act 78 to perform functions ordinarily performed by Union lieutenants or captains. Mayor Bazzi resolved that objection through negotiation with the Union. The Union agreed that Swope and Vanderplow would be "grandfathered," and that agreement was incorporated into a new PERA-based collective bargaining agreement ("CBA") that

---

[1] Act 78 is a Michigan law controlling how civil servants such as police officers can be promoted or hired and allows for a transparent and orderly process generally based on seniority and meritocracy. *See Clinton v. Contrera,* 92 Mich. App. 297, 301 (1979); MCL 38.501 et seq.

identified Swope and Vanderplow by name. *See* ECF No. 48-2, PageID.763, 765. Bazzi, in turn, agreed not to name other directors in the future outside of Act 78. See **Exhibit 3.**

On February 7, 2023, Mayor Bazzi transmitted the proposed CBA to the City Council for approval. ECF No. 48-2, PageID.762. On February 28, 2023, the City Council voted 5–2 to approve the CBA under PERA, in Resolution 23-099. The CBA grandfathered and ratified the employment of Swope and Vanderplow, naming each of them; Hart, as Police Chief, held a position not subject to Act 78 and required no such ratification. Then-Councilman Mo Baydoun, now Mayor, voted in favor of adoption in Resolution 23-099. ECF No. 48-2, PageID.761. **Exhibit 4.**

With the City Council's approvals in hand, the Collective Bargaining Agreement was signed and is found at **Exhibit 5.** As the Court can read for itself, it mentions Hart, Swope, and Vanderplow by name and states that they shall "retain their positions." *See* Exhibit 5 at PageID.5419-20.

Ten months later, in January 2024, the same Council reversed course and voted, in Resolution 24-017, to defund Plaintiffs' positions, invoking entirely pretextual and unprecedented budgetary and "constitutional" charter concerns that it had never raised when it ratified the CBA under PERA (and has never raised since then, even under similar facts). By that time, Swope and Vanderplow had been

working for the City under PERA-approved employment contracts and drawing paychecks for nearly a year. After Plaintiffs were separated from their employment, the City refused to pay the contractual severance owed to Swope and Vanderplow because the contracts were supposedly invalid from the beginning under Act 78, and publicly announced that it had voided those agreements. See Exhibit 2. The Defendant's refusal to pay Swope and Vanderplow their contractual severance is not disputed.

## Controlling Law

The controlling authority is *Int'l Ass'n of Fire Fighters v. City of Warren*, 411 Mich. 642 (1981). *Warren* presented the identical question at issue here: whether a collective bargaining agreement provision entered into under PERA is valid and enforceable when it conflicts with the provisions of a city charter and Act 78. *Id*. at 648. The Michigan Supreme Court held that it is. *Id*. at 668.

The Court held that the contract provision "entered into under PERA is valid and enforceable," and that it governs "notwithstanding conflicting provisions in Act 78 or the Warren charter." *Id*. at 649. The Court further held that "PERA is the dominant law governing public employment negotiations." *Id*. at 668. See Exhibit 1.

FRCP 50 provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party; and . . . grant a motion for judgment as a matter of law against the party . . . ."

## Argument

### I. PERA primes Act 78 and forecloses the Act 78 defense to contractual validity as a matter of law, and thus, the jury should not be allowed to consider the Act 78 defense once PERA is proven to apply to the employment contracts of Swope and Vanderplow.

Defendant's only known challenge to the validity of the directors' contracts is that Swope and Vanderplow were appointed outside Act 78. *Warren* forecloses that challenge. There, a collective bargaining agreement's promotion and seniority provisions—entered under PERA—conflicted with the city's Act 78 civil-service scheme, and the Michigan Supreme Court held that the PERA provision was "valid and enforceable" and controlled "notwithstanding conflicting provisions in Act 78 or the [city] Charter." 411 Mich. at 649. The same rationale governs here. The subject the CBA addressed—whether the supervisory positions Swope and Vanderplow filled must be staffed through Act 78 civil-service procedures or by bargaining-unit members—is a term and condition of employment and a proper subject of bargaining, no less than the promotion and seniority terms in *Warren*. The Union

bargained over that subject and agreed to grandfather Swope and Vanderplow, and the City Council subsequently adopted that agreement under PERA. The fact that Swope and Vanderplow were being grandfathered under the PERA Agreement was not buried in fine print but rather plainly stated in both the CBA and in summary materials. *See* Exhibit 3, ECF No. 48-2, PageID.763, Paragraph 5(B). The resulting PERA provision prevails over Act 78.

This is not a case where PERA and Act 78 can be harmonized. In *St. Clair Prosecutor v. AFSCME*, 425 Mich. 204, 235 (1986), the Michigan Supreme Court declined to apply *Warren* because it found no conflict between PERA and the competing statute. Here, the conflict is direct and unavoidable: Act 78 would require these positions to be filled through civil-service procedures, while the PERA agreement expressly permits Swope and Vanderplow to hold them. When a PERA agreement and Act 78 cannot both be given effect, *Warren* dictates that PERA prevails. 411 Mich. at 662-663.

The consequence is that Act 78 cannot be considered as a ground for invalidating the two directors' contracts. Whether the Act 78 procedures were followed, whether an exception applied, or whether the appointments were otherwise "regular" are all irrelevant once PERA governs. The only predicate is that the City Council adopted a CBA under PERA, a fact which the record establishes through the 5-2 vote on Resolution 23-099, which named and grandfathered Swope and

Vanderplow. *See* Exhibit 4. Given that predicate, the validity of the contracts against the Act 78 challenge is a question of law for the court.

Hart's contract requires no resort to PERA at all. The office of Police Chief is not subject to Act 78, and no party disputes that Mayor Bazzi held the authority to appoint a Police Chief outside Act 78. The Act 78 objection therefore never applied to Hart. In sum, Act 78 cannot invalidate any of the three contracts—as to Swope and Vanderplow because PERA controls, and as to Hart because Act 78 never governed his appointment.

**II. With the Act 78 defense removed, only the contractual triggering conditions (for payment of severance) remain, and they are undisputed or, at most, a narrow jury question.**

Establishing validity does not, by itself, award severance. Each contract pays severance only upon a triggering condition, and Plaintiffs do not ask the Court to find those conditions as a matter of law where they are genuinely disputed. But the record shows that little, if anything, is left to try.

Swope's severance is triggered when the Mayor asks him to resign (it therefore does not matter why the Mayor made the request). See **Exhibit 6, ¶ 4.1**. Mayor Bazzi did exactly that, in writing, so that he could install Hussein Farhat as Interim Police Chief outside Act 78. See **Exhibit 7**. Swope's triggering condition is thus

documented and not reasonably disputable; it does not depend on the multi-factor constructive-discharge analysis at all and is entirely objective in nature.

Hart's severance is triggered by constructive discharge, but the City has already treated his separation as a qualifying one: it paid Hart a full year of severance salary under Section 4.1 of his contract. A party that has performed the salary half of a severance obligation cannot seriously contend that the obligation never arose. Hart's only remaining contractual dispute is the City's failure to pay the promised COBRA benefits and various other benefits.

Vanderplow's severance is likewise triggered by constructive discharge. The record supporting that condition is strong—including a memo from Mayor Bazzi himself confirming Vanderplow's constructive termination—but Defendant disputes it. Materials pertaining to Vanderplow's constructive discharge, including the Memo from the Mayor, are found at ECF No. 124 (PageID.5382-83) and reattached at **Exhibit 8** hereto.[2] Vanderplow is thus eligible for a year of severance, which has been denied him, in breach of Section 4.1 of his contract. See **Exhibit 9**. Plaintiffs acknowledge that Vanderplow's constructive discharge is a fact-intensive question measured against a multi-factor standard, and for that reason it is a question for the

[2] ECF No. 124 was a "Notice of Error" filing that supplied the missing Exhibit 4 to Plaintiffs' filing found at ECF No. 123, which was Plaintiffs' Omnibus response in opposition to Defendants' motions for summary judgment.

jury, not one this Court can resolve on the papers. It is enough, for present purposes, that the validity of Vanderplow's contract is established as a matter of law, leaving only that triggering question for trial. The jury can consider the Mayor's own admission that Vanderplow had been constructively discharged. See Exhibit 8.

The final element of breach—non-payment to Swope and Vanderplow—is admitted and was publicly acknowledged in the Detroit press. See Exhibit 2. The City has paid Swope and Vanderplow nothing under their severance provisions and has publicly announced that the City "voids" – i.e., breaches – those agreements. Resolving the Act 78 question in Plaintiffs' favor now therefore eliminates the only legal objection Defendant has raised to the contracts.

## III. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court hold, consistent with *Int'l Ass'n of Fire Fighters v. City of Warren*, that the City Council's ratification of the CBA under PERA forecloses the Act 78 defense and establishes the validity of Plaintiffs' employment contracts as a matter of law; that Act 78 cannot be considered as a basis to invalidate any of the three contracts; and that, with validity resolved and non-payment admitted, the only issue remaining for trial is the contractual triggering condition—which is documented and undisputed as to Swope,

effectively admitted by the City as to Hart, and potentially only a jury question as to Vanderplow.

Respectfully submitted,

Dated: November 10, 2026

/s/ Stephen J. Brown
FAUSONE & GRYSKO PLC
Attorney for Plaintiffs
41700 Six Mile Road, Suite 101
Northville, MI 48168
(248) 380-0000; FAX (248) 380-3434
jbrown@thefgfirm.law

## LOCAL RULE CERTIFICATION

I, Attorney Stephen J. Brown, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

/s/ Stephen J. Brown

## CERTIFICATE OF SERVICE

I, Stephen J. Brown, hereby certify that on the 10th day of November, 2026, I served a copy of **PLAINTIFFS' TRIAL BRIEF ON THE SUPREMACY OF PERA OVER ACT 78 AND THE VALIDITY OF PLAINTIFFS' EMPLOYMENT CONTRACTS** on all appearing attorneys and service recipients registered for receipt via electronic filing. I declare under penalties of perjury that this Proof of Service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

/s/ Stephen J. Brown