UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SWOPE, PAUL VANDERPLOW, JERROD HART,

Plaintiffs,

v.

CITY OF DEARBORN HEIGHTS, a Michigan Municipal Corporation,

Defendant,

CITY OF DEARBORN HEIGHTS CITY COUNCIL, in its official capacity only,

Intervening Defendant.
_______________________________________/

Case No. 2:24-cv-10240
Hon. Mark A. Goldsmith
Magistrate David R. Grand

**OPINION & ORDER DENYING MOTIONS FOR RECONSIDERATION (Dkts. 149, 150, 151)**

The matters before the Court are (i) Plaintiffs Kevin Swope, Paul Vanderplow, and Jerrod Hart's motion for reconsideration, (ii) Defendant City of Dearborn Height's motion for reconsideration, and (iii) Defendant City of Dearborn Heights City Council's motion for reconsideration (Dkts. 149, 150, 151). The parties ask the Court to reconsider parts of its 8/28/26 Opinion & Order granting in part and denying in part Defendants' motions for summary judgment (Dkt. 148). For the reasons that follow, the Court denies all three motions.[1]

## I. BACKGROUND

[1] In addition to the Plaintiffs' motion, the briefing includes the City's response (Dkt. 152) and Council's response (Dkt. 153). In addition to Defendants' motions, the briefing includes Plaintiffs' response (Dkt. 154), the City's reply (Dkt. 156) and Council's reply (Dkt. 155).

The Court has previously set forth the full background in this case, and it need not provide the full background here. See 8/28/26 Op. & Order. Plaintiffs were all former top officials in the Dearborn Heights Police Department who claim they were constructively discharged and otherwise victimized by the City due to racial prejudice and Council's displeasure over Plaintiffs' efforts to clean up an allegedly corrupt city government. Plaintiffs bring claims for alleged violations of federal and state law regarding alleged mistreatment during and after their employment.

The City and Council brought motions for summary judgment (Dkts. 115, 116). The Court granted the motions in part and denied them in part. See 8/28/26 Op. & Order. The remaining claims in this case are: (i) Swope and Vanderplow's claims for race discrimination under Title VII and Michigan's Elliott-Larsen Civil Rights Act (ELCRA); (ii) Plaintiffs' whistleblower claim; and (iii) Plaintiffs' breach of contract claims related to the severance and health insurance provision of their employment contracts. Id. at PageID.6065. Plaintiffs, the City, and Council move for reconsideration of parts of the Court's order.

## II. ANALYSIS

The parties move for reconsideration under Eastern District of Michigan Local Rule 7.1(h)(2)(A). Pl. Mot. at PageID.6058; Council Mot. at PageID.6070; City Mot. at PageID.6086–6087. To succeed under Local Rule 7.1(h)(2)(A), a movant must show "(1) that the court made a mistake, (2) that correcting the mistake changes the outcome of the prior decision, and (3) that the mistake was based on the record and law before the court at the time of its prior decision." Hillman Power Co., LLC v. On-Site Equip. Maint., Inc., 582 F. Supp. 3d 511, 515 (E.D. Mich. 2022). "[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance

positions that could have been argued earlier but were not." Smith v. Mount Pleasant Pub. Schs., 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (punctuation modified).

**A. Plaintiffs' Motion (Dkt. 149)**

Plaintiffs argue that the Court cited to older versions of Swope and Vanderplow's employment contracts when it analyzed their breach of contract claims. Pl. Mot. at PageID.6059. Plaintiffs argue that those older versions of Swope and Vanderplow's employment contracts stated that they were entitled to 180 days of severance, but that the operative versions of the contracts state that Swope is entitled to one year of severance and Vanderplow is entitled to two and a half years of severance. Id. Plaintiffs seek an order clarifying that Swope and Vanderplow's severance claims are not limited to 180 days of severance. Id. at PageID.6062.

The scope of review on a motion for reconsideration is limited to issues that were actually before the Court. See Shah v. NXP Semiconductors USA, Inc., 507 F. App'x 483, 495 (6th Cir. 2012) ("It is well-settled that parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.") (punctuation modified). The operative versions of Swope and Vanderplow's employment contracts were not an issue before this Court on the City and Council's motions for summary judgment. See City MSJ; Council MSJ; Pl. Resp. (Dkts. 115, 116, 123). Therefore, Court will not determine which version is operative on a motion for reconsideration.

Plaintiffs' motion for reconsideration is denied.

**B. Council's Motion (Dkt. 150)**

Council objects to the Court's conclusion that Tucker v. Union Needletrades, Indus. & Textile Emp., 407 F.3d 784 (6th Cir. 2005) does not foreclose Swope and Vanderplow from asserting constructive discharge as the adverse action element in their race discrimination and

whistleblower claims, despite the fact that they did not allege they were constructively discharged in their amended complaint. Council Mot. at PageID.6078–6083; 8/28/26 Op. & Order at PageID.6041–6042, fn. 10.

The Court found that Tucker was not applicable because Tucker held that a new claim could not be raised in response to summary judgment. 8/28/26 Op. & Order at PageID.6041–6042, fn. 10; Tucker, 407 F.3d at 787–789. The Court reasoned that, in arguing constructive discharge as the adverse action theory in their discrimination and whistleblower claims, Swope and Vanderplow were not raising new claims. 8/28/26 Op. & Order at PageID.6041–6042, fn. 10.

Council argues that the Court's interpretation of Tucker is incorrect and that two other cases—West v. Wayne Cnty., 672 F. App'x 535, 541 (6th Cir. 2016) and Kurtz v. McHugh, 423 F. App'x 572, 579 (6th Cir. 2016)—cited in its reply brief prohibit Swope and Vanderplow from "adding a theory of a previously pled claim" at summary judgment. Council Mot. at pageID.6079–6080. Further, Council argues that Swope and Vanderplow's constructive discharges occurred after the amended complaint was filed—therefore it is improper because Council did not have "fair notice" of Swope and Vanderplow's allegations. Id. at PageID.6082–6083. Council also argues that Plaintiffs' Title VII claim should be barred for failure to exhaust administrative remedies. Id. The Court considers each argument in turn and disagrees with all of them.

In Tucker, the Sixth Circuit considered whether the district court erred in granting summary judgment in favor of defendants because plaintiff raised a promissory estoppel claim for the first time in response to summary judgment. The court found that the district court did not err because if a plaintiff decides to plead a new claim as a result of discovery, she must amend her complaint. 407 F.3d at 788. Otherwise, defendants would be subjected to an "unfair surprise," and defendants

would not have the opportunity to investigate the claim and conduct their own discovery. Id. (punctuation modified).

As the Court stated in its opinion, Swope and Vanderplow's constructive discharge theory of adverse action is an element of their claim; it is not a new claim. 8/28/26 Op. & Order 6041–6042, fn. 10. Therefore, Tucker does not prohibit their constructive discharge theory despite it not being pled in their amended complaint.

Further, Tucker's reasoning—that claims raised for the first time in response to summary judgment would not give defendants fair notice or the opportunity to explore the new claims through discovery—is not present here. Both Council and the City's motions for summary judgment assert that Plaintiffs do not have claims for constructive discharge. Council MSJ at PageID.3496, 3485 (Dkt. 115) ("Although there have been allusions to constructive discharge by the Plaintiffs, only Hart actually attempted to plead any claim for constructive discharge in the FAC.") (punctuation modified); City MSJ at PageID.4763–4764 (Dkt. 116) (stating that Swope and Vanderplow claim that they were constructively discharged). And Swope and Vanderplow's constructive discharge allegations were raised and discussed during their depositions and in other discovery. Vanderplow Dep. at PageID.4474, 4499 (Dkt. 115-4) (Q: "And you retained that position until you left in May of '25?" A: "Until I was constructively terminated, yes."); (Q: "How were you retaliated against?" A: "Well, again, I mean, I was constructively fired in May of this year."); Swope Dep. at PageID.4006–4008 (Dkt. 115-3) (discussing the conversations that Swope and Bazzi had before Swope resigned, Bazzi's email asking Swope to resign, and Swope agreeing that he would resign); 12/4/24 Email at PageID.5209 (Dkt. 123-8) (stating that Bazzi wanted Swope to submit his resignation).

Council's motion for reconsideration also acknowledges that it was aware of Plaintiffs' constructive discharge theory when it moved for summary judgment. Council Mot. at PageID.6079 (citing its motion for summary judgment and stating that "[s]pecifically, the City Council noted that Plaintiffs failed to even plead constructive discharge as a type of adverse employment action in their FAC."). Council claims that Plaintiffs responded to their motion for summary judgment with "new, alternative theories of constructive discharge and breaches of contract," again arguing that Tucker prohibited Plaintiffs from introducing new "theories" at summary judgment. Council Mot. at PageID.6079. However, Council never explains what these "new theories" were. Thus, Defendants cannot claim that they did not have fair notice of Swope and Vanderplow's constructive discharge theories.

West and Kurtz do not help Council's argument. In West, the plaintiff's complaint alleged claims of freedom of speech and freedom of association in violation of the First Amendment. 672 F. App'x at 541. The complaint alleged facts to substantiate the free-speech claim but none to substantiate the political association claim. Id. Then, in response to defendant's summary judgment motion, the plaintiff advanced only his political association theory. Id. Citing Tucker, the Court found that the plaintiff could not raise a new claim of political association on summary judgment because it would give the defendant insufficient notice to investigate the claim. Id. Further, even though plaintiff offered a "wisp of a mention" of a political association claim at the onset of the lawsuit, that was no longer sufficient at the summary judgment stage because defendants were not on notice of the nature of the political association claim. Id.[2]

---

[2] There is no discussion in the opinion as to whether plaintiff's political association claim was advanced or discussed in discovery as is the case here.

Council asserts that it was the West plaintiff's failure to "articulate the freedom of association element of his First Amendment claim" that the court found that he could not assert his claim. Council Mot. at PageID.6081 (emphasis in original). Council is incorrect. The court found that freedom of association was a new claim that could not first be brought in response to summary judgment. West, 672 F. App'x at 541.[3]

Kurtz does not warrant a different conclusion either. The Sixth Circuit in Kurtz analyzed whether the district court erred by refusing to consider two additional claims for employment retaliation that were not included in the complaint. 423 F. App'x at 579. Plaintiff argued that defendants were on notice of these claims because she referenced the instances of alleged retaliation in her interrogatory response. Id. The court found that excluding the claims was not an error because an interrogatory answer was insufficient notice of the claims when the complaint "narrowed" the claims being asserted in the lawsuit. Id.

Council argues that Kurtz is on point because it "required even more precision in articulating particular elements of a claim" when the plaintiff failed to "articulate claims based on specific adverse actions. . . ." Council Mot. at PageID.6081–6082 (emphasis in original). Council is again incorrect. The Kurtz court did not find that the plaintiff had failed to "articulate particular elements" of the claim, just that the court would not consider instances of alleged retaliation that were not included in the complaint. 423 F. App'x at 579.

In a last ditch effort, Council argues that because Swope and Vanderplow did not exhaust their administrative remedies with the EEOC, they should be barred from pursuing their Title VII claim. Council Mot. at PageID.6083. This is a new argument that Council could have raised in

[3] Freedom of association is a type of First Amendment violation, not an element to a freedom of speech claim.

their motion for summary judgment, therefore, it is not properly before the Court on a motion for reconsideration. Smith, 298 F. Supp. 2d at 637.

The Court denies Council's motion for reconsideration.

**C. City's Motion (Dkt. 151)**

The City asserts four issues with the Court's 8/28/26 opinion and order: (i) the Court did not consider the City's causation argument when evaluating Plaintiffs' whistleblower claim; (ii) the Court failed to consider the argument that Swope accepted a new position as evidence that he was not constructively discharged; (iii) the Court relied on Plaintiffs' affidavits even when they were contrary to other facts in the record; and (iv) the Court is incorrect in its conclusion that Plaintiffs may proceed on certain severance theories of their breach of contract claim when it denied Plaintiffs' constructive discharge theory. The Court considers each argument and disagrees with them all.

**1. Causation**

The City objects to the Court's statement that the Defendants only challenged the adverse action and pretext elements of Plaintiffs' whistleblower claim. City Mot. at PageID.6094; 8/28/26 Op. & Order at PageID.6052. The City argues that they also challenged Plaintiffs' causation argument when it argued that Plaintiffs failed to offer evidence, outside of their own testimony, to show that their protected activity was a motivating factor for the Defendants' adverse actions. City Mot. at PageID.6094. It also asserts that it raised causation in its reply brief when it stated that "Plaintiffs fail to cite to any record facts to establish that Defendants intentionally made working conditions 'so intolerable' that Plaintiffs were forced to resign related to any protected activity Plaintiffs might have engaged in." Id. at PageID.6094–6095 (punctuation modified); City Reply at PageID.5440 (Dkt. 126). The City also argues that the one-year time between the protected

activity and the alleged adverse action shows that causation is not established. Id. at PageID.6095. And that "[c]orrecting this oversight changes the outcome" as it would result in a dismissal of Plaintiffs' whistleblower claim. Id.

The Court disagrees. Pretext is essentially an inquiry into causation. The Court's opinion found a triable issue of fact as to pretext. 8/28/26 Op. & Order at PageID.6045–6047. This triable issue of fact was based on more than just Plaintiffs' testimony; it was based on the fact that Plaintiffs were constructively discharged from positions other than the Director position. Id. And the Director position was the position that the City stated it had a fiscal duty to eliminate. Id.

As for the City's assertion in its reply that Plaintiffs have not pointed to any facts in the record to establish that Defendants intentionally made working conditions intolerable, the Court disagrees. The 8/28/26 opinion and order laid out the facts that it found demonstrated that Plaintiffs have established a question of fact as to whether they were constructively discharged. 8/28/26 Op. & Order at PageID.6042–6044, 6052–6053.

Despite citing to a page in its summary judgment motion, the City's one-year time lapse argument is new. The citation to their summary judgment motion merely supports the fact that Plaintiffs alleged they started reporting violations in January of 2023—the brief does not take the further step to argue that the lapse in time between the two events demonstrates that there is no causation. This argument could have been raised on summary judgment but it was not. The Court will not consider it in a motion for reconsideration. Smith, 298 F. Supp. 2d at 637.

**2. Constructive Discharge**

The City next argues that the Court did not consider two arguments it made in support of its assertion that Swope was not constructively discharged. City Mot. at PageID.6095–6098.

First is the City's argument that Swope accepted a new position as evidence that he was not constructively discharged. City Mot. at PageID.6095–6098.

The Court's opinion does not analyze that argument. That argument does not, however, change the ultimate outcome. Hillman Power Co., LLC, 582 F. Supp. 3d at 514. Evidence that an individual accepted another job does not defeat their employment discrimination claim. In fact, under Title VII and ELCRA, a plaintiff has a duty to mitigate damages. 42 U.S.C. § 2000e-5(g) (Title VII); see Rasheed v. Chrysler Corp., 517 N.W.2d 19, 27 (Mich. 1994) (ELCRA). That is exactly what Swope did—by finding and accepting a new job.

The City also points to evidence in the record where Bazzi explained that his email asking Swope to resign was in response to Swope's request for an email. City Mot. at PageID.6096–6097. And that Bazzi's statement demonstrates that Swope was not constructively discharged. Id. The Court already considered and rejected this argument because it demonstrates a dispute of material fact which is for the jury to resolve. 8/28/26 Op. & Order at PageID.6043–6044 ("Bazzi disputes that he asked Swope to resign. Bazzi Dep. at PageID.5069. Thus, there is a dispute of material fact as to whether Swope was asked to resign, which must be resolved by a jury.").

**3. Affidavits**

The City argues that the Court should not have relied on Plaintiffs' affidavits when they are at odds with Plaintiffs' testimony. City Mot. at PageID.6098-6100. The City provides two examples of these alleged contradictions. Id.

The City argues that Swope's affidavit states that he was "asked to resign to advance Hussain Farhat" to police chief but in his deposition, Swope claims he felt pressure to resign because of ongoing negotiations with the police union filing an unfair labor practice claim. Id. at PageID.6099.

The deposition testimony cited in the City's reconsideration motion is not as clear as the City makes it out to be. The full exchange states:

> Q: Did you tell him why you were resigning?
>
> A: We had a conversation about the resignation, yes.
>
> Q: Okay. And what was that conversation?
>
> A: Mayor Bazzi was stressed out about an unfair labor practice that was filed by the unions, based on negotiations that were going on. So there was also multiple grievances due to the fact that Hussein Farhat was placed into a position contrary to what the negotiations were -- were, and there was multiple grievances. And so we had a conversation about -- about those things.
>
> Q: When you say Hussein Farhat was placed in a position that there was action regarding, what position was he placed in?
>
> A: Well, initially I think it was a director of police operations, and then it spiraled into the deputy chief position.

Swope Dep. at PageID.4007–4008.

Later in the deposition, Swope was asked:

> Q: Well, let me ask you this, though. Was there anything preventing you from just continuing to work for the City of Dearborn Heights in your role as chief?
>
> A: Other than the fact that the Mayor said resign by this date? No, not necessarily.

Swope Dep. at PageID.4171–4172.

And again,

> Q: But what I'm trying to see is at that point, why don't you just say, you know, Mr. Wilson, Mr. Farinha, you all chime in and say, 'Mayor, we're going to lose these grievances. We're going to lose this unfair labor practice.' And then you just say that and continue to act as chief. I don't understand why you couldn't just continue to act as chief.
>
> A: Because the pressure I was getting from all different areas was to the point where Hussein Farhat was not going anywhere. Hussein Farhat was being forced upon, you know, the police department. Hussein Farhat was brought in against, you know, the -- the best wishes of not only myself but also Ken Wilson, who negotiates the contract. He specifically told me that. But with that being said, the Mayor, you

> know, he wanted Hussein Farhat, for whatever reason, to be part of the police department, and, therefore, that caused major issues for -- for the Mayor; right? And the Mayor, the only way he could keep Hussein Farhat, right, was to get rid of me; right? And that was talked about and the Mayor said, 'Yeah, let's do it.' And then he asked me to resign.

Swope Dep. at PageID.4174–4175.

The City's assertion cherry picks parts of Swope's deposition testimony to advance its argument while ignoring other parts that do not support its argument. These excerpts show that Swope testified about the police union and ongoing labor practices claim, and as part of resolving that dispute, he was asked to resign so that Farhat could be police chief. Swope Dep. at PageID.4007–4008, 4171–4172, 4174–4175. Swope's affidavit is not at odds with his deposition testimony.

The City also argues that Vanderplow's assertion that he was "stripped of his core responsibilities rendering his employment untenable" is contradicted by his deposition testimony stating that he was only not allowed to present in front of Council. City Mot. at PageID.6099.

Again, the City's argument fails to acknowledge another place in Vanderplow's deposition testimony where he explains another duty he was prevented from doing—consistent with his affidavit:

> Q: Does not being able to sign checks necessarily keep you from being able to do accounting for the city?
>
> A: Yes
>
> Q: How is that?
>
> A: I can't facilitate transactions as promulgated by their [sic] job description.

Vanderplow Dep. at PageID.4535.

Because the City has not shown that Swope and Vanderplow's testimony was at odds with their affidavits, the Court's reliance on them is not an error.

**4. Severance**

The City argues that the Plaintiffs' severance claims should not be allowed to proceed because the Court found that the contracts were terminable at-will and that there was no breach. City Mot. at PageID.6100. The City reasons that the severance provisions only applied if the City terminated the contracts before they expired and it is "undisputed" that Plaintiffs resigned. Id.

The City's argument views the Court's opinion as to Plaintiffs' breach of contract claim in a vacuum instead of considering all of the claims alleged in this lawsuit. While the Court found that Plaintiffs' breach of contract claim under a constructive discharge theory could not continue because the contract was terminable at-will, it found that Plaintiffs' breach of contract claim under its severance theories could continue because there was a dispute of material fact as to whether Plaintiffs were constructively discharged related to other claims they bring in this lawsuit—their discrimination and whistleblower claims. 8/26/26 Op. & Order at PageID.6053–6055.

As the City acknowledges, the severance obligations in the employment contracts are conditioned on Plaintiffs being terminated before the end of their contracts. City Mot. at PageID.6100. However, the Court disagrees with the City's statement that it is "undisputed that the Plaintiffs resigned." Id. The Court found that there was a genuine issue of material fact as to whether Plaintiffs were constructively discharged related to their discrimination and whistleblower claims. 8/28/26 Op. & Order at PageID.6042–6044, 6052–6053.

## III. CONCLUSION

For the reasons stated above, the Court denies the parties' motions for reconsideration (Dkts. 149, 150, 151).

**SO ORDERED.**

Dated: November 17, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 17, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager